# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| RAVENWHITE LICENSING LLC,<br><br>   Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.,<br><br>   Defendants. | Case No. 2:24-CV-0688-JRG-RSP<br>LEAD CASE<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS RAVENWHITE'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. THE PATENT VENUE STATUTE .................................................................................... 2

III. ARGUMENT: HOME DEPOT HAS NOT COMMITTED AN "ACT OF INFRINGEMENT" IN EDTX UNDER THE PATENT VENUE STATUTE ................... 2

    A. The EDTX Decision in *AML* Is Directly Applicable. ........................................... 2

    B. *SEVEN Networks* Is The Sole Authority Supporting A "Single Element" Act Of Direct Infringement, And Its Reliance On *Blackbird* Is Misplaced. .......... 6

IV. ARGUMENT: NO PLAUSIBLE ALLEGATION SUPPORTS A CLAIM OF INDIRECT INFRINGEMENT IN THIS DISTRICT ....................................................... 8

V. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AML IP, LLC v. Am. Eagle Outfitters, Inc.*,
    No. 6:21-CV 00823-ADA, 2022 WL 11456095 (W.D. Tex. Oct. 19, 2022) ............................7

*AML IP, LLC v. Bath & Body Works Direct, Inc.*,
    No. 4:22-CV-216-SDJ, 2024 WL 3825242 (E.D. Tex. Aug. 13, 2024) .......................... *passim*

*AML IP, LLC v. Bed Bath & Beyond, Inc.*,
    No. 6:21, CV-00600-ADA, 2022 WL 1085617 (W.D. Tex. Apr. 11, 2022).............................7

*AML IP, LLC v. J.C. Penney Corp. Inc.*,
    No. 6:21-cv-0522-ADA, 2022 WL 10757631 (W.D. Tex. Oct. 18, 2022)................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................9

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
    No. 2:17-CV-503, 2019 WL 2017541 (E.D. Va. May 7, 2019), *aff'd sub nom.*
    28 F.4th 1247 (Fed. Cir. 2022) ................................................................................................1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................9

*Blackbird Tech LLC v. Cloudflare, Inc.*,
    No. 1:17-CV-00283, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ...................................6, 7, 8

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l., Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)...........................................................................................9, 10

*In re: Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985)..................................................................................................3

*In re: Cray, Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017)............................................................................................2, 6

*Green Source Holdings, LLC v. Ingevity Corp.*,
    No. 1:18-CV-1067, 2019 WL 1995402 (W.D. Ark. May 6, 2019) .........................................1

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)................................................................................................4

*Kranos IP Corp. v. Riddell, Inc.*,
    No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ....................................4

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
    572 U.S. 915 (2014)..................................................................................................7

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005).........................................................................3, 4, 9

*Raytheon Co. v. Cray, Inc.*,
    258 F. Supp. 3d 781 (E.D. Tex. 2017)..................................................................1, 3

*Schnell v. Peter Eckrich & Sons, Inc.*,
    365 U.S. 260 (1961)..............................................................................................2, 6

*SEVEN Networks, LLC v. Google LLC*,
    315 F. Supp. 3d 933 (E.D. Tex. 2018)...........................................................2, 3, 6, 7

**Statutes**

28 U.S.C. § 1391(c)(2)........................................................................................................6

28 U.S.C. § 1400(b) ...............................................................................................2, 3, 6, 7

35 U.S.C. § 271...............................................................................................................3, 6

35 U.S.C. § 271(a) .........................................................................................................3, 5, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)..................................................................................................9, 10

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 9, 10

I.  **INTRODUCTION**

In an effort to stretch venue into the Eastern District of Texas ("EDTX"), RavenWhite claims that Home Depot improperly applies a merits-based test, identifies purported claim construction and factual disputes which preclude granting of Home Depot's motion, and asserts that Home Depot relies only on *dicta* or mere commentary from key governing precedent. As set forth below, each of RavenWhite's positions are fundamentally flawed, and should be rejected:

- The *AML*[1] court did not assess infringement on the merits; rather, it clarified (like this Court and others[2]) that the "act of infringement" referenced in the venue statute is the same "act of infringement" set forth in the infringement statute;

- RavenWhite never pled (and could not plead) that Home Depot controls and obtains beneficial usage of the system in EDTX, and its claim that this so-called factual issue precludes granting of Home Depot's Motion is a red herring;

- RavenWhite's assertion that Home Depot relied on mere *dicta* from *AML* and that the plaintiff in *AML* was situated differently from RavenWhite is simply wrong, as AML (like RavenWhite) alleged that only certain elements of the claim at issue were performed in EDTX; and

- The question of whether performing just one step of a method claim or one element of a system claim in EDTX suffices for venue (or whether an allegation that all elements are performed in District is required, as *AML* holds) is in no way reliant on claim construction.

The viability of RavenWhite's indirect infringement claims under Fed. R. Civ. P. 12(b)(6) against Home Depot hinge on a plausible allegation that a Home Depot customer directly infringes all elements of one or more claims of the patents-in-suit. But RavenWhite contends

---

[1] *AML IP, LLC v. Bath & Body Works Direct, Inc.*, No. 4:22-CV-216-SDJ, 2024 WL 3825242, at *3 (E.D. Tex. Aug. 13, 2024).

[2] *See, e.g.*, Opp. at 6 (citing *Raytheon Co. v. Cray, Inc.,* 258 F. Supp. 3d 781, 788 (E.D. Tex. 2017)); *Green Source Holdings, LLC v. Ingevity Corp.*, No. 1:18-CV-1067, 2019 WL 1995402, at *3 (W.D. Ark. May 6, 2019); *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-CV-503, 2019 WL 2017541, at *5 (E.D. Va. May 7, 2019), *aff'd sub nom.* 28 F.4th 1247 (Fed. Cir. 2022).

1

instead that customers perform only *one* element of each of the asserted claims (apparently attempting to import the venue test from *SEVEN Networks*, 315 F. Supp. 3d at 944-45, which is a fatal omission. Moreover, RavenWhite's contention that Home Depot's customers "use" the Home Depot system, including Home Depot's own back-end web servers and processors, is implausible and should be rejected.

This Court should grant Home Depot's Motion and dismiss the First Amended Complaint ("FAC") in its entirety.

## II.     THE PATENT VENUE STATUTE

As a threshold matter, the policy underlying the enaction of the patent venue statute (28 U.S.C. § 1400(b)) strongly supports the interpretation urged by Home Depot. The statute "clearly narrows jurisdiction relative to the courts that previously allowed patent suits wherever the defendant could be served." *In re: Cray, Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017). The Supreme Court has likewise instructed that the venue requirement is "not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction," *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 262 (1961), and the Federal Circuit has stated that courts should be "careful not to conflate showings that may be sufficient for other purposes, e.g., personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *In re: Cray, Inc.*, 871 F.3d at 1361.

## III.     ARGUMENT: HOME DEPOT HAS NOT COMMITTED AN "ACT OF INFRINGEMENT" IN EDTX UNDER THE PATENT VENUE STATUTE

### A.     The EDTX Decision in *AML* Is Directly Applicable.

RavenWhite's attempts to distinguish or discredit the decision in *AML* miss the mark for several reasons.

First, RavenWhite criticizes *AML*'s "decision to apply *NTP's* extraterritoriality analysis of § 271(a) to § 1400(b)" and states that *NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1317 (Fed. Cir. 2005) "speaks to the merits of the infringement claim under § 271(a)" while "venue, on the other hand, considers location for jurisdictional purposes, which has nothing to do with the merits of infringement." Dkt. 59 ("Opp.") at 14. But the *AML* court was simply clarifying that the § 271(a) definition of an act of infringement (make, use, sell or offer for sale) is the same definition that should be used in determining what constitutes an act of infringement under § 1400(b). *AML,* 2024 WL 3825242, at *3. While RavenWhite states on the one hand that "the two statutes are inapposite as 'the issue of infringement is not reached on the merits in considering venue requirements,'"[3] it concedes on the other that "[a]cts of infringement are determined by reference to 35 U.S.C. § 271 and thus include making, using, offering to sell, and selling a patented invention" and that the same definition applies to evaluate compliance with the patent venue statute. Opp. at 6 (citing *Raytheon Co.,* 258 F. Supp. 3d at 788 (E.D. Tex. 2017)).[4]

While it contests the applicability of *NTP* to the question of venue, RavenWhite asserts that "whether 'control of the system is exercised' and 'beneficial use of the system is obtained'" in EDTX (as referenced in *NTP*) are "questions of fact" preventing the Court from granting Home Depot's Motion. *See* Opp. at 2, 21. But the FAC contains no plausible allegation whatsoever on either point—so there is no factual dispute before this Court. Instead, the venue allegations from the FAC state only that "Home Depot's in-store routers in this District participate in the function of 'receiving' network resource requests as described in claim 1 of the

---

[3] *See* Opp. at 14 (citing *In re: Cordis Corp.,* 769 F.2d 733, 737 (Fed. Cir. 1985)).

[4] *Accord SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 942 (E.D. Tex. 2018) ("[T]he meaning of 'acts of infringement' in [§] 1400(b) must be determined by reference to 35 U.S.C. [§] 271(a).").

3

'823 patent and the function of 'displaying' advertisements as described in claim 10 of the '402 patent." Opp. at 20 (citing FAC ¶¶ 16-21, 24). There is no allegation that the Home Depot System, as defined in the FAC and referenced in the attached claim charts, is controlled in EDTX, nor could there be; as RavenWhite concedes, the focus of the Home Depot System is on "the servers through which [Home Depot] operates the Home Depot website and allows customers to make online shopping decisions that can be fulfilled at local stores." *See e.g.* FAC ¶¶ 51, 61.[5] Home Depot filed uncontroverted declarations explaining that all systems and servers that process transactions and furnish content on Home Depot's website and mobile app are outside of EDTX. Motion at 6; *see also Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017). The FAC is likewise completely silent as to where beneficial use of any system is obtained, and RavenWhite could not plead such use in EDTX because that would require that Home Depot benefit "from each and every element of the claimed system" in EDTX, not just "from the system as a whole." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017).

Second, RavenWhite seeks to demote the clear holding of *AML* to mere "dicta" or even just a "comment." Opp. at 1, 9, 12, 14, 20. But in doing so, RavenWhite misrepresents the record by claiming that "the *AML* court's comment about the applicability of *NTP* to venue addressed an issue that was neither raised by the parties nor essential to the court's holding that AML failed to establish venue." *Id.* at 12-13. In support of its contention, RavenWhite carefully cites to the opposition and reply briefs in *AML*, but omits that the opening motions filed by each of the three defendants directly and explicitly argue for the *AML* court's holding. *See, e.g.,*

---

[5] RavenWhite also states without basis in its Opposition that, "RavenWhite also alleges that Home Depot makes and uses claimed systems within this District." Opp. at 15. The FAC contains no allegation that Home Depot "makes" any system in EDTX.

Declaration of Nicholas G. Papastavros, dated Feb. 14, 2025 ("Papastavros Dec."), Ex. 1 (Defendant Big Lots Stores, LLC's Motion to Dismiss for Improper Venue and Failure to State a Claim at 8 ("The place where a party commits direct infringement of a method claim under 35 U.S.C. § 271(a) is the place where a party performs all the steps of the accused method.")) (citations omitted); *accord* Ex. 2 at 8; Ex. 3 at 8.

Third, the Opposition states that *AML* is distinguishable because "the *AML* parties agreed to accept certain claim constructions for the motion to dismiss, which is not the case here" and "the *AML* plaintiff did not even challenge the location of the infringing steps, whereas RavenWhite does challenge Home Depot's factual assertions." Opp. at 15-16.  However, disposition of the instant motion in no way relies on claim construction; as RavenWhite's statement of issues makes clear, the dispute in this case can be distilled to whether—contrary to the holding in *AML*—alleged performance of a single element in EDTX of a multiple-element system or method claim suffices to establish venue under the patent venue statute.  Moreover, RavenWhite is situated similarly to AML, which presented the same contentions when it comes to venue: "Although AML alleges that certain steps of the alleged infringement occur in this district, it does not allege that *all* of the steps take place here. Nor does it challenge Defendants' declarations that their data centers—which operate the allegedly infringing websites—are located outside of this district." *AML,* 2024 WL 3825242, at *3.  As the Opposition states repeatedly, RavenWhite contends that Home Depot "committed direct infringement in this District by performing *at least one* step of an asserted method claim." Opp. at 3 (emphasis added).  Thus, precisely like the plaintiff in *AML*, RavenWhite "does not allege that *all* of the steps take place here." *AML,* 2024 WL 3825242, at *3.

5

### B. *SEVEN Networks* Is The Sole Authority Supporting A "Single Element" Act Of Direct Infringement, And Its Reliance On *Blackbird* Is Misplaced.

Relying on *SEVEN Networks*, RavenWhite claims that the ruling Home Depot urges would be "nonsensical" and would result in Home Depot "evad[ing] venue by distributing the steps or components of its infringing system over two or more districts." Opp. at 12. But it is RavenWhite that urges a reading of the patent venue statute wholly inconsistent with the drafters' intent to narrow jurisdiction. The logical conclusion of RavenWhite's argument is that venue would be appropriate nationwide in a scenario like the case at bar, in which *one* element of *one* claim concerns the online display of advertisements to end users. *See* '402 patent, claim 10. This is the exact result that the drafters of § 1400(b) wanted to avoid. *See In re: Cray*, 871 F.3d at 1361; *Schnell,* 365 U.S. at 262 (finding § 1400(b) enacted "to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served").

In contrast, under Home Depot's proposal (consistent with the Court's holding in *AML*), venue would still be proper in multiple Districts—just not in EDTX. Home Depot could be sued at least in its place of incorporation under the first prong of the § 1400(b) test, and additionally where the servers or systems that process transactions and furnish content on Home Depot's website and mobile application sit.[6] The result of RavenWhite's approach is that § 1400(b) collapses into the general venue test for corporations under 28 U.S.C. § 1391(c)(2)—where suit can be brought "in any judicial district in which such defendant is subject to the court's personal

---

[6] Of course, in the event a Defendant made, sold, or offered for sale allegedly infringing technology consistent with the acts of infringement as defined in 35 U.S.C. § 271, venue would be appropriate in those Districts as well. *See Blackbird Tech LLC v. Cloudflare, Inc.,* No. 1:17-CV-00283, 2017 WL 4543783 (D. Del. Oct. 11, 2017).

6

jurisdiction with respect to the civil action in question." But this "is the world § 1400(b) was intended to leave behind." *SEVEN Networks*, 315 F. Supp. 3d at 945 n.13.

RavenWhite also suggests that cases in the Western District of Texas likewise support a finding that performing just one method step in the District suffices to establish venue and criticizes the Eastern District's *AML* decision for failing to take those cases into consideration.[7] But the *Am. Eagle* and *J.C. Penney* cases simply fall back on *SEVEN Networks* to substantiate their holdings, and the *Bed Bath* decision is wholly distinguishable.[8] No court before *SEVEN Networks* held that practicing a single element of a patent claim constitutes an act of infringement, whether in context of venue or otherwise. That departure is unjustified because the Supreme Court has emphasized that a "patent is not infringed unless all the steps are carried out." *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915, 921 (2014).

RavenWhite likewise misconstrues the holding in *Blackbird*. At issue in *Blackbird* were special servers housed in data centers "that contain processing devices for monitoring data communications between user systems and origin systems." *Blackbird Tech*, 2017 WL 4543783 at *2. Certain of those data centers were sited in the Northern District of California ("NDCA"). *See* Papastavros Dec., Ex. 4 at p. 3 ¶ 12 (Cloudflare data centers located in San Jose, San Diego and Los Angeles, California; none in Delaware). Cloudflare controlled the accused functionality

---

[7] *AML IP, LLC v. Am. Eagle Outfitters, Inc.*, No. 6:21-CV 00823-ADA, 2022 WL 11456095, at *6 (W.D. Tex. Oct. 19, 2022); *AML IP, LLC v. J.C. Penney Corp. Inc.*, No. 6:21-cv-0522-ADA, 2022 WL 10757631, at *6 (W.D. Tex. Oct. 18, 2022); *AML IP, LLC v. Bed Bath & Beyond, Inc.*, No. 6:21, CV-00600-ADA, 2022 WL 1085617, at *5 (W.D. Tex. Apr. 11, 2022).

[8] *See AML IP, LLC v. Bed Bath & Beyond, Inc.,* 2022 WL 1085617 at *5 ("Here, AML alleges that BB&B used, sold, and introduced products and services in the WDTX that infringed the Asserted Patent—specifically by maintaining, operating, and administering 'payment products and services that facilitate purchases from a vendor using a bridge computer that infringes ... [the Asserted Patent].'").

from its principal place of business in San Francisco, and likewise developed the functionality there. *Id.* at p. 2 ¶ 7. As Cloudflare stated in its reply brief:

> Almost any "act" that Blackbird could accuse as infringing occurs in San Francisco—Cloudflare employees use the accused systems at Cloudflare's San Francisco headquarters, offer to sell the systems' services there, sell the services from there, and design and make the systems there. D.I. 22 (Merritt Decl.) ¶¶ 6-9, 11; see 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent"). These are the same acts that Blackbird points to as infringing.

*Blackbird Tech*, D.I. 32 at 1. The court agreed and held that venue was proper in NDCA given the testimony from Cloudflare's Chief Revenue Officer Chris Merritt. *Blackbird Tech,* 2017 WL 4543783 at *4. RavenWhite cites to plaintiff's argument that "the data channels connecting the various network elements are found throughout the country" and that Cloudflare had other data centers outside NDCA (Opp. at 10), but neither of these issues were relevant to *Blackbird*'s holding that venue was proper in NDCA given the undisputed evidence that the accused functionality in that case was made, used, and sold there. *Blackbird* is not a case where the court relied on performance of a single element of a single claim to establish venue.

### IV. ARGUMENT: NO PLAUSIBLE ALLEGATION SUPPORTS A CLAIM OF INDIRECT INFRINGEMENT IN THIS DISTRICT

RavenWhite does not dispute that its indirect infringement allegations against Home Depot depend upon adequately pleading customer direct infringement. *See* Opp. at 21-24. Its indirect infringement claims thus fail because it is undisputed that it charts only to *Home Depot's* purported direct infringement, given the claims' focus on back-end servers and processors. Motion at 18-20; *see also* Opp. at 22 (describing claim charts as "demonstrating infringement by *the Home Depot system* on an element-by-element basis") (emphasis added).

In an attempt to salvage its claims, RavenWhite contends in its Opposition that Home Depot's *customers' use* of the purportedly infringing Home Depot System constitutes direct

8

infringement, rather than what is set forth in its claim charts. Opp. at 22. But as set forth in Home Depot's Motion, this is wholly implausible given RavenWhite's focus on *Home Depot's* infringement in its element-by-element claim charts, and this does not comport with the *Iqbal/Twombly* standard of pleading.[9] RavenWhite also concedes that, at best, customers use *only one element* of each of the asserted claims. *See* Opp. at 22-23 ("[W]ith regard to claim 1 of the '823 patent, Home Depot's customers' use of the patented system occurs in this District when customers use the Home Depot system, including the in-store routers and hardware, to 'receive' network resource requests… [W]ith regard to claim 10 of the '402 patent, Home Depot's customers' use of the patented system occurs in this District when customers use the Home Depot System, including the in-store routers and hardware, to 'display' the advertisement."). But Home Depot challenges RavenWhite's indirect infringement claim on the merits under Fed. R. Civ. P. 12(b)(6) for failure to state a claim,[10] and to state a cognizable claim that Home Depot induced infringement, RavenWhite must plead that the customers directly infringe *all* elements of a claim. It failed to do so.

RavenWhite also relies on *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l., Inc.,* 631 F.3d 1279, 1285 (Fed. Cir. 2011) for the proposition that a customer can "use" a system even if the defendant physically possesses the accused back-end system (*see* Opp. at 23-24), but *Centillion* is clearly distinguishable on its facts. As a threshold matter, *Centillion* applied the *NTP* test for use (*Centillion,* 631 F.3d at 1284 ("[w]e hold that to 'use' a system for purposes of

---

[9] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[10] *See* Opp. at 3 FN 2 (acknowledging the Rule 12(b)(3) and 12(b)(6) aspects of Home Depot's indirect infringement claim).

9

infringement, a party must put the invention into service, *i.e.,* control the system as a whole and obtain benefit from it")), and RavenWhite has not pled this standard of "use" in the case at bar. *See supra* p. 3-4. What RavenWhite does plead is that Home Depot customers use the Home Depot System, defined as "the system of physical stores and computer networks, including the servers through which it operates the Home Depot website and allows customers to make online shopping selections," which is wholly implausible since the customers neither deploy the servers nor operate the website.[11] Moreover, in *Centillion*, the customers were found to control the system *and* obtain beneficial use since they put the system into service and used every element of the system by creating queries triggering the system to provide periodic reports for downloading. By comparison, in the case at bar, Home Depot allegedly provides software to customer client devices so that customers can access Home Depot's systems and computer program products (FAC, ¶ 27 at 8), and Home Depot allegedly operates the Orange Apron Media platform and independently generates and supplies targeted advertising to customers. *Centillion* is inapposite on these facts.

## V.     CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue; RavenWhite's indirect infringement claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); and/or the Court should grant any other and additional relief it may deem appropriate.

---

[11] The Home Depot System is defined as the "system of physical stores and computer networks, including the servers through which it operates the Home Depot website and allows customers to make online shopping selections that can be fulfilled at physical stores, including Home Depot's Orange Apron Media platform, the Home Depot website, and Home Depot Mobile Applications … and include the associated software and data, associated hardware, and processes and methods related thereto, such as edge servers, data centers, and/or hosted software." *See* FAC Ex. 1 at 1.

Dated: February 14, 2025

Respectfully submitted,

*/s/ Nicholas G. Papastavros*
Eric H. Findlay
Texas Bar No. 00789886
**FINDLAY CRAFT, P.C.**
7270 Crosswater Avenue, Suite B
Tyler, TX 75703
Tel: 903-534-1100
Fax: 903-534-1137
Email: efindlay@findlaycraft.com

Nicholas G. Papastavros
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6000
Facsimile: 617.406.6119
nick.papastavros@us.dlapiper.com
***Counsel for Defendants The Home Depot, Inc. and Home Depot U.S.A., Inc***

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on February 14, 2025, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service.

*Nicholas G. Papastavros*
Nicholas G. Papastavros

1617256558