**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC | |
| Plaintiff, | CASE NO. 2:24-CV-00688-JRG-RSP (LEAD CASE) |
| vs. | |
| WALMART INC., ET AL. | CASE NO. 2:24-CV-00689-JRG-RSP (MEMBER CASE) |
| Defendants. | |
| | **JURY TRIAL DEMANDED** |

**DEFENDANTS' OBJECTIONS TO THE MAGISTRATE'S REPORT &
RECOMMENDATION REGARDING DEFENDANT'S
MOTION TO DISMISS**

Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC ("Defendants") respectfully object to the Magistrate Judge's Report & Recommendation ("Report") (Dkt. No. 123) as follows.

## I.   ANALYSIS

### A.   The Report Erroneously Concludes The '402 Patent Claims Are Directed To Something More Than The Abstract Idea Of Targeted Advertising

In evaluating step one of the *Alice* framework, the Report erred in concluding that Defendants failed to carry their burden to establish that the claims of the '402 Patent were directed towards an abstract idea.[1] In particular, the Report found that "[w]hile computer-based targeted advertising is a 'fundamental practice, long prevalent in our system,' the '402 Patent examiner specifically identified 'clustering' in its § 101 analysis to find patentability." Dkt. No. 123 at 5.

The Federal Circuit has held that Patent Office findings regarding § 101 are not entitled to a presumption of truth when those supposed findings are not mentioned in the operative Complaint. *Aviation Cap. Partners, LLC v. SH Advisors, LLC*, No. 2024-1099, 2025 WL 1303663, at *3 (Fed. Cir. May 6, 2025) ("Here, the complaint included no factual findings made by the Patent Office. [] Accordingly, the district court did not err by declining to accept as true any unalleged factual findings that the Patent Office may have made in its § 101 eligibility analysis."). The operative Complaint in this case makes no mention of the prosecution history events regarding the addition of the word "clustering" to the claims or this supposed "§ 101 eligibility analysis" relied on in the Report. Thus, it was error to simply presume the truth of this statement (or to consider it as it is not part of the pleadings). There is no legal basis for the Report to accept relying solely on allegations which are not included in the Complaint to deny Defendants' Motion.

More importantly, the mere addition of the phrase "clustering" to the claims does not

---

[1] Plaintiff does not dispute that claim 19 of the '402 Patent is representative of all claims. Dkt. No. 123 at 4 (citing Dkt. No. 33 at 11).

**DEFENDANTS' OBJECTIONS TO THE**
**MAGISTRATE'S REPORT AND RECOMMENDATION**                                    1

modify the analysis regarding invalidity of the '402 Patent, which is directed to targeted advertising based on, *inter alia*, "clustering." The Federal Circuit has held that patent claims directed at targeted advertising technologies are nevertheless directed to abstract ideas even when the claims include supposed improvements to how targeted advertisements are served as opposed to how the computer operates. *See, e.g.*, *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) ("The specification states that the invention filled a need for a system which would "ensure higher access rates, longer browse times, and increased consumption of media" by users. '747 col. 3 ll. 15–22. But each of these goals is in the abstract realm—an improvement in the success or monetization of tracking users with personalized markings in order to serve advertisements—not an improvement in networking or computer functionality. None of these alleged improvements 'enables a *computer* ... to do things it could not do before.' *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) (emphasis added).").

Here, simply relying on known techniques, namely "clustering," to deliver targeted ads doesn't improve networking or computer functionality. In fact, the '402 Patent explicitly states that for purposes of "clustering" this could be performed by "[a] variety of clustering techniques." '402 Patent at 12:63-65, 12:65-13:9; *see also id.* at Fig. 6, 12:46-62 (identifying clusters that likely indicate three distinct users by plotting two different measures of user behavior in a graph). In other words, the clustering techniques relied upon by RavenWhite are not specific or inventive.

Finally, courts have found claims to be directed to abstract ideas which include far more explicit recitations of "clustering" functionalities. For example, in *Software Rights Archive, LLC v. Facebook, Inc.* the court found the claims were directed to abstract ideas because they "recite broad functions—'identifying' and 'accessing' hyperjump data, 'identifying' and 'analyzing' URLs, 'displaying' a document, and **'generating' cluster links**, among others—which 'provide[

**DEFENDANTS' OBJECTIONS TO THE**
**MAGISTRATE'S REPORT AND RECOMMENDATION**                                                    **2**

] only a results-oriented solution.'" *Software Rts. Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1108 (N.D. Cal. 2020) (emphasis added). The court went on to explain that:

> "The invention's **'cluster links'** are, at their core, **values obtained through statistical analysis of various related data points**, which are then used to further analyze and display information. [] 'Although these data structures add a degree of particularity to the claims, the underlying concept embodied by the limitations merely encompasses the abstract idea itself'— namely, collecting, analyzing, and displaying information. *Intellectual Ventures II*, 850 F.3d at 1341. **There is nothing to indicate that these supposed structures somehow improve the computer's functioning**."

*Id.* at 1109 (emphasis added). The same is true here. Taking an abstract concept such as targeted advertisements and implementing it in a computer-based environment using data-analysis techniques ("clustering") which were well-known is simply *not* enough to modify the underlying abstract idea for the reasons above. The '402 Patent mentions the word "cluster" or "clustering" exactly eight times (three of which are in the three independent claims), yet RavenWhite treats this admittedly well-known data analysis technique as its saving grace. That is mistaken.

Because the Report failed to properly address step one, it was an error to ignore step two.

**B.    The Report Erroneously Concludes The '823 Patent Claims Are Directed To Something More Than Storing And Utilizing Cookies In The Context Of Delivering Targeted Advertisements**

The Report also erroneously determines the claims of the '823 Patent are not directed to an abstract idea by allowing RavenWhite to: (1) read in limitations or improvements not found in the claims; and (2) advocate positions which are inconsistent with Federal Circuit precedent.

First, the relevant inquiry for *Alice* step one is directed at the claim language—not on importing unclaimed information or attorney argument beyond the Complaint. *Symbology Innovations, LLC v. Dexcom, Inc.*, 742 F. Supp. 3d 702, 714 (E.D. Tex. 2024) ("At *Alice* Step One the Court looks to the claims' 'character as a whole' to determine whether the claims are directed to ineligible subject matter, such as an abstract idea."). RavenWhite relies on multiple supposedly

**DEFENDANTS' OBJECTIONS TO THE**
**MAGISTRATE'S REPORT AND RECOMMENDATION**                                      **3**

innovative concepts cited in the Report—namely "new cookies," "layers of authentication," "website customization," and "fraud prevention"—which appear nowhere in the claim language. The only concept above which is tangentially referenced is a "first type of cookie" and a "second type of cookie" which does not describe or explain some "new type of cookie." That portion is pure attorney argument, which is not referenced anywhere in the Complaint, let alone with supporting statements of fact. *See id.* at 716 ("The First Amended Complaint never states how the claims improve the hardware or software, just that they improve them. These are not 'specific and plausible statements of fact.' The First Amended Complaint is devoid of any explanation how the Asserted Patents provide improvements to the way a computer functions.").

RavenWhite's attorneys argued that RavenWhite invented a "new type of cookie"—that is false. The '823 Patent mentions two types of well-known cookies: (1) a "traditional cookie" and (2) a "cache cookie." *See* Dkt. No. 33 at 5-8; '823 patent, 1:46-2:10, 4:56-5:9. In the '823 Patent's provisional application, the inventor acknowledged that "[prior artists] note that cache cookies can serve the same function as ordinary cookies, permitting Web sites to identify users." Dkt. No. 56-1, Ex. A at 7. Not only were these "new types of cookies" already known in the art, but the inventor had acknowledged that others viewed them simply to be used the same way as ordinary, conventional cookies. This "new type of cookie" attorney argument is simply wrong.

In any event, courts routinely find that patents directed to targeted advertising based on supposedly novel, non-prior art involvement, or absence, of cookies may nevertheless be invalid under § 101. *See, e.g., WSOU Invs. LLC v. Google LLC*, 786 F. Supp. 3d 1065, 1079-80 (W.D. Tex. 2025) ("Brazos' expert supports this conclusion by opining that 'prior targeted electronic content delivery systems deposited cookies onto user devices and did not use behavioral

**DEFENDANTS' OBJECTIONS TO THE**
**MAGISTRATE'S REPORT AND RECOMMENDATION**                                                        **4**

information collectors or DPI modules to build behavioral profiles.'[2] [] Brazos' argument regarding the purported cookie-less nature of the claimed targeted content delivery system is essentially that it 'functions differently than prior art targeted content delivery systems,' which is insufficient. *See Bridge & Post*, 778 F. App'x at 892.").

In *Ask Sydney, LLC v. Amazon.com Servs., LLC*, the Court analyzed numerous patent claims directed to "utiliz[ing] 'cookies' and other systems of user engagement (for example, 'like' or 'dislike' buttons) as tags and input to determine user preferences." 688 F. Supp. 3d 403, at 415 (W.D. Tex. 2023). In analyzing the claims under *Alice*, the Court agreed with defendants' arguments that for purposes of step one the claims were directed to ineligible material:

> [B]ecause they are directed towards the abstract ideas of "generating and presenting an image to a user in order to determine the user's interest" and "methods of organizing human activity." ECF No. 108-11 at 17 (citing *Broadband iTV, Inc. v. Amazon.com, Inc.*, 6:20-cv-921-ADA, 2022 WL 4703425, at *11 (W.D. Tex. Sept. 30, 2022) for the proposition that "the Federal Circuit has held patents directed to collecting information about a user's past behavior and providing content based on that information to be abstract and ineligible under § 101"); *see also* ECF No. 112-11 at 14–18 (arguing Patents fall into the categories of "methods of organizing human activity" and "generating and presenting an image to a user in order to determine the user's interest"); *id.* at 15 ("This is nothing more than using a computer as a tool to do what humans have long done—make recommendations by analyzing a user's preferences.").

*Id.* at 418. The Report states that "[w]hile the '823 Patent might not improve how computers operate, it specifically creates a new type of cookie that better identifies individual users[.]" Dkt. No. 123 at 6. While RavenWhite's "new cookie" argument is false for the reasons above, the finding that the '823 Patent does <u>not</u> improve computer operation is unquestionably relevant given

---

[2] The asserted patent that invalidated in the *WSOU* case was directed towards targeted advertisements and acknowledged that "[a]s a user visits the portals, **cookies and/or web beacons can be used to track and log the user** and the user's behavior within the ad network. Advertisements are selected for delivery with the content of a portal according to the identity of the user and the user's tracked behavior." *See* U.S. Patent No. 8,041,806 (emphasis added).

**DEFENDANTS' OBJECTIONS TO THE**
**MAGISTRATE'S REPORT AND RECOMMENDATION**                                                    **5**

that "the Court's task is to examine "whether the claims [ ] focus on a specific means or method that improves the relevant technology[.]" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); *see also B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3d 188, 201 (D. Del. 2020) ("Functions such as 'maintaining a library of recordings,' 'methods of record keeping,' and **'setting cookies' are generic processes performed on conventional computer machinery**. The claim does not demonstrate an improvement in the way computers operate.") (citing *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-37 (Fed Cir. 2016)) (emphasis added). The Report did not mention any computer improvement and merely improving targeting advertising with other types of data collection/analysis is not sufficient. *Software Rts. Archive, LLC,* 485 F. Supp. 3d at 1108.

Because the Report failed to properly address step one, it was an error to ignore step two.

## II.    CONCLUSION

For all the foregoing reasons, Defendants request that this Court overrule Report based on these objections and enter an Order dismissing Plaintiff's claims in their entirety.

Dated: March 25, 2026

Respectfully submitted,

**JACKSON WALKER LLP**


By: */s/ Blake T. Dietrich*
Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Blake Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
Abby A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
2323 Ross Avenue, Suite 600,
Dallas, TX  75201
Telephone: (214) 953-6000

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
1401 McKinney, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4278


*Attorneys for Defendants Walmart Inc. and*
*Wal-Mart Stores Texas, LLC,*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2026, a true and correct copy of the foregoing has been served on all counsel of record by CM/ECF.


<u>/s/ Blake T. Dietrich</u>
Blake T. Dietrich