IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § § | CASE NO. 2:24-CV-00688-JRG-RSP |
| *Plaintiff,* | § § | *(Lead Case)* |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § § | CASE NO. 2:24-CV-00689-RWS-RSP |
| *Plaintiff,* | § § | *(Member Case)* |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | |
| *Defendants.* | § § | |

**WALMART'S MOTION FOR SUMMARY JUDGMENT OF NON-ENFORCEABILITY OF THE ASSERTED PATENTS AND LACK OF ARTICLE III STANDING**

███████████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL BACKGROUND .................................................................................. 1

    A.      Obviousness-Type Double Patenting and Terminal Disclaimers .......................... 1

    B.      Determination of Ownership and the Transfer of All Substantial Rights .............. 2

    C.      Constitutional Standing ......................................................................................... 3

III.    FACTUAL BACKGROUND ............................................................................. 3

    A.      The '823 Patent ...................................................................................................... 3

        1.      The Terminal Disclaimers Filed by RavenWhite Security, Inc. ..................... 3

        2.      RavenWhite Licensing LLC's Acquisition of Rights ..................................... 4

    B.      The '402 Patent ...................................................................................................... 5

        1.      The Terminal Disclaimer Filed by RightQuestion, LLC ............................... 5

        2.      RavenWhite Licensing LLC's Acquisition of Rights ..................................... 6

IV.     LEGAL ANALYSIS .......................................................................................... 7

    A.      RavenWhite Licensing is the Effective Owner of the Asserted Patents ................ 7

    B.      RavenWhite Licensing is Not the Effective Owner of the Prior Patents .............. 10

    C.      The Relevant Patents are Not "Commonly Owned" Under the Law .................... 11

    D.      RavenWhite Licensing Does Not Have Article III Standing ................................ 11

V.      CONCLUSION .................................................................................................. 15

███████████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) ................................................................ 12, 13, 14

*Alfred E. Mann Foundation for Sci. Research v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010). ....................................................................... 3, 8

*Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*,
  Case No. 6:18-cv-407, 2019 WL 13218778 (E.D. Tex. Jul. 26, 2019) ............................. 13, 15

*Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*,
  579 F.3d 546 (5th Cir. 2009) .................................................................................. 7

*Immunex Corp. v. Sandoz Inc.*,
  964 F.3d 1049 (Fed. Cir. 2020) ....................................................................... 2, 3, 8, 9

*In re Fallaux*,
  564 F.3d 1313 (Fed. Cir. 2009) ......................................................................... 2, 11

*In re Hubbell*,
  709 F.3d 1140 (Fed. Cir. 2013) ............................................................................. 2

*In re Yamazaki*,
  702 F.3d 1327 (Fed. Cir. 2012) ............................................................................ 14

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019) ............................................................................. 2

*Midwest Athletics and Sports Alliance LLC v. Ricoh USA, Inc.*,
  Case No. 19-514, 2019 WL 3387061(E.D. Pa. Jul. 25, 2019)............................................ 12, 13

*Paradise Creations, Inc. v. UV Sales, Inc.*,
  315 F.3d 1304 (Fed. Cir. 2003) ..................................................................... 12, 13, 14, 15

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)....................................................................................... 3, 12

**Statutes**

35 U.S.C. § 253................................................................................................ 14

35 U.S.C. § 253(a) ............................................................................................. 2

**Rules**

37 C.F.R. § 1.321(c)(3)..................................................................................... 2, 12

## I.    INTRODUCTION

On August 21, 2024, Plaintiff RavenWhite Licensing LLC filed suit against Defendants Walmart Inc. and Wal-Mart Texas Stores, LLC (collectively, "Walmart") alleging infringement of U.S. Patent No. 10,594,823 and U.S. Patent No. 11,562,402.  Critically, during prosecution of both the '823 Patent and the '402 Patent, the respective applicants each submitted terminal disclaimers to overcome an obviousness-type double patenting rejection.  In addition to disclaiming any patent term that would extend beyond the expiration date of certain identified prior patents, these terminal disclaimers expressly state that "any patent so granted on the instant application shall be enforceable only for and during such period that it and the [Prior Patents] are commonly owned." *See* Ex. A and Ex. B.[1]  However, at least as of July 30, 2023, each of the Asserted Patents and their respective Prior Patents ceased to be commonly owned under the law.

Accordingly, for the reasons detailed below, each of the Asserted Patents currently are and were, as of the start of this litigation, not enforceable.  As a result, Walmart seeks summary judgment that the Asserted Patents are not enforceable (until any future date when common ownership may be restored) and summary judgment that Plaintiff RavenWhite Licensing LLC therefore lacks standing under Article III of the U.S. Constitution.

## II.    LEGAL BACKGROUND

### A.    Obviousness-Type Double Patenting and Terminal Disclaimers

The doctrine of obviousness-type double patenting is designed "to prevent claims in separate applications or patents that do not recite the 'same' invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend the life of patent

---

[1] Specifically, the '402 Patent's terminal disclaimer identifies U.S. Patent No. 10,977,696 and U.S. Patent No. 10,438,246, while the '823 Patent's terminal disclaimers identify U.S. Patent No. 8,930,549 and U.S. Patent App. No. 14/560,906, which later issued as U.S. Patent No. 10,659,551. *See* Exs. A and B.  Walmart refers to these patents collectively as the "Prior Patents" in this motion.

1

protection." *See In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013). One of the chief concerns underpinning this doctrine is the risk of "multiple infringement suits by different assignees asserting essentially the same patented invention." *Id.*; *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020) (stating that "preventing harassment from multiple suits" is one of the main principles underlying the doctrine of obviousness-type double patenting).

To address this risk, the law permits an applicant to overcome an obviousness-type double patenting rejection by filing a terminal disclaimer with a "common ownership" provision. *See* 37 C.F.R. § 1.321(c)(3) (stating that any patent granted "shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting"); *see also In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009) (noting that "the co-ownership requirement is a creative solution to potential harassment suits from two separate patents"). Under the patent statute, once the disclaimer is recorded by the Patent Office, it becomes "part of the original patent" itself. *See* 35 U.S.C. § 253(a).

### B.    Determination of Ownership and the Transfer of All Substantial Rights

"Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (noting that the "inquiry depends on the substance of what was granted rather than formalities or magic words"). In determining the effective "owner" of a patent, courts "examine the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." *Id.* Under the law, "[a] patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee." *See Alfred E. Mann Foundation for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1358-60 (Fed. Cir. 2010) (stating

that when a licensee holds "all substantial rights" then "the licensee becomes the owner of the patent" and "gains the right to sue on its own").

Although the "all substantial rights" test is commonly applied to determine whether a licensee has statutory standing, it is also used to evaluate the "common ownership" requirement in situations involving obviousness-type double patenting.  Given that a driving purpose of the doctrine is to prevent harassment from multiple suits—and given that a licensee with all substantial rights has the right to sue on its own—the Federal Circuit has held that the "all substantial rights" test is "informative in determining common ownership in the obviousness-type double patenting context."  *See Immunex*, 964 F.3d at 1059 (noting that a contrary rule would allow entities to circumvent this goal "by using the nominal label of licensee").

### C.    Constitutional Standing

In order to have Constitutional standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

## III.    FACTUAL BACKGROUND

### A.    The '823 Patent

#### 1.    The Terminal Disclaimers Filed by RavenWhite Security, Inc.

On April 9, 2018, during prosecution of the '823 Patent, the Examiner rejected the underlying application under the doctrine of obviousness-type double patenting, noting that one of the purposes of the doctrine was "to prevent possible harassment by multiple assignees." *See* Ex.

E at 2.  To overcome this rejection, the applicant represented in its response to that Office Action that it "will submit a terminal disclaimer to obviate that double patenting rejection" pending allowance of the application.  *See* Ex. E at 7.

On October 9, 2019, the applicant filed two terminal disclaimers.  *See* Ex. A.  Both terminal disclaimers included the required common ownership provision specifying that "any patent so granted on the above-identified application shall be enforceable only for and during such period that it and [the prior patent/other patent application] are commonly owned."  *Id.*  At that time, the underlying application and both the "prior patent" (U.S. Patent No. 8,930,549) and the "other patent application" (U.S. Patent App. No. 14/560,906) giving rise to the rejection were assigned to an entity called RavenWhite Security, Inc.  *Id.*  Under the law, these terminal disclaimers became part of the issued '823 patent.  *See* 35 U.S.C. § 253(a) (stating that a disclaimer "shall thereafter be considered as part of the original patent").

### 2.    RavenWhite Licensing LLC's Acquisition of Rights

On July 30, 2023, third-party RavenWhite Security, Inc. entered into an agreement transferring all substantial rights in the '823 Patent exclusively to Plaintiff RavenWhite Licensing LLC.  *See* Dkt. 167-1 at ¶ 6 and Ex. C.  As stated in the operative Complaint, "RavenWhite Licensing LLC is the exclusive licensee of all right, title, and interest in and to the '823 Patent, including the right to assert all causes of action arising under said patent and to seek damages and all other remedies for the infringement thereof."  *See* Dkt. 26 at ¶ 31.  Although RavenWhite Security, Inc. is the nominal "owner" of the '823 Patent, it has no rights over RavenWhite Licensing LLC, no rights to prosecute or settle this case, and no rights to grant any licenses to the '823 Patent.  *See* Dkt. 167-1 at ¶ 8.

Importantly, whereas the agreement assigned all substantial rights in the '823 Patent to RavenWhite Licensing LLC, it notably ***did not transfer any rights*** in either U.S. Patent No.

4



8,930,549 or U.S. Patent App. No. 14/560,906, the "prior patent" and "other patent application" cited in the above terminal disclaimers.

### B.     The '402 Patent

#### 1.     The Terminal Disclaimer Filed by RightQuestion, LLC

Similar to the '823 Patent discussed above, during prosecution of the '402 Patent, the applicant also submitted a terminal disclaimer "to obviate a double patenting rejection." *See* Ex. B.  This terminal disclaimer, which was filed on September 16, 2022, included the required common ownership provision specifying that "any patent so granted on the above-identified application shall be enforceable only for and during such period that it and the prior patent[s] are commonly owned." *Id.*  At that time, both the underlying application and the two "prior patents" giving rise to the rejection (U.S. Patent No. 10,977,696 and U.S. Patent No. 10,438,246) were assigned to an entity called RightQuestion, LLC.  *Id.*  Under the law, this terminal disclaimer became part of the issued '402 patent. *See* 35 U.S.C. § 253(a).

████████████████████████████████████████████████████

### 2.    RavenWhite Licensing LLC's Acquisition of Rights

On December 22, 2022, RightQuestion, LLC transferred the '402 Patent and the two "prior patents" to an entity called SecurityInnovation LLC.  Subsequently, on August 22, 2023, SecurityInnovation LLC transferred those patents to Security Technology, LLC.

Similar to the '823 Patent's history discussed above, on July 30, 2023, third-party Security Technology, LLC entered into an agreement transferring all substantial rights in the '402 Patent exclusively to Plaintiff RavenWhite Licensing LLC.  *See* Dkt. 167-1 at ¶ 4 and Ex. D.  As with the '823 Patent, the Complaint states that "RavenWhite Licensing LLC is the exclusive licensee of all right, title, and interest in and to the '402 Patent, including the right to assert all causes of action arising under said patent and to seek damages and all other remedies for the infringement thereof." *See* Dkt. 26 at ¶ 34.  Although Security Technology, LLC is the nominal "owner" of the '402 Patent, it has no rights with respect to RavenWhite Licensing LLC, no rights to prosecute or settle this case, and no rights to grant any licenses to the '402 Patent.  *See* Dkt. 167-1 at ¶ 8.

Like the '823 Patent agreement discussed above, whereas Security Technology, LLC assigned all substantial rights in the '402 Patent to RavenWhite Licensing LLC, it notably ***did not transfer any rights*** in either U.S. Patent No. 10,977,696 or U.S. Patent No. 10,438,246, the two "prior patents" cited in the above terminal disclaimer.  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

## IV.      LEGAL ANALYSIS

### A.      RavenWhite Licensing is the Effective Owner of the Asserted Patents

Plaintiff RavenWhite Licensing LLC does not dispute that the agreements referenced above give it all substantial rights in the Asserted Patents.  For example, RavenWhite Licensing states in its Complaint that it holds "all right, title, and interest in and to" the Asserted Patents.  *See* Dkt. 26 at ¶¶ 31 and 34; *see also Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 550 (5th Cir. 2009) (holding that "[f]actual assertions in the complaint are judicial admissions conclusively binding on the plaintiff").  Similarly, the affidavit of RavenWhite Licensing's corporate representative, Mr. Bjorn Jakobsson, acknowledges that the respective agreements gave RavenWhite Licensing "all rights" in the Asserted Patents.  *See* Dkt. 167-1 at ¶¶ 4 and 6; *see also* Dkt. 167 at 1 (admitting that RavenWhite Licensing has "all substantial rights in the patents").  Indeed, as stated by Mr. Jakobsson, RavenWhite Licensing has "the sole and full authority to prosecute or settle this case, or to grant licenses to the '402 and '823 [Patents]" and that the nominal "owners" of these patents, third-parties Security Technology and RavenWhite Security, "do not have any such rights with respect to Plaintiff RavenWhite Licensing LLC or this case, or to grant licenses to the '402 and '823 Patents."  *See id.* at ¶ 8.

A review of the corresponding agreements, which are substantively identical, confirms these facts.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

7



In evaluating "common ownership" in the context of obviousness-type double patenting, the Federal Circuit has held that courts should look to the substance of any licenses and the rights transferred. Specifically, in *Immunex*, defendant Sandoz argued that the patents-in-suit were invalid for obviousness-type double patenting in view of a separate set of prior patents owned by

███████████████████████

plaintiff Immunex.  *See Immunex*, 964 F.3d at 1056-63.  In response, Immunex maintained that the doctrine of obviousness-type double patenting did not apply because the patents-in-suit were not in "common ownership" with Immunex's prior patents.  *Id.* at 1056 (stating that "[t]he doctrine applies to all commonly-owned patents").  As argued by Immunex, the patents-in-suit were instead owned by third-party Roche, and Immunex was merely the "exclusive licensee" of those patents. *Id.* at 1057.  In rejecting this formulistic argument, the Federal Circuit noted that the policies underpinning the obviousness-type double patenting doctrine—including "preventing harassment from multiple suits"—would be thwarted if the common ownership analysis turned merely on "the nominal label of licensee."  *Id.* at 1057-59 (agreeing with Sandoz that a contrary rule would allow circumvention of the doctrine "by simply reclassifying an assignment as a license").  Instead, the Federal Circuit held that the "all substantial rights" test was "informative in determining common ownership in the obviousness-type double patenting context."  *Id.* (further noting that this approach is "consistent with both principles underlying obviousness-type double patenting").

Although the Federal Circuit in *Immunex* ultimately concluded that Immunex did not have all substantial rights in the patents-at-issue, the Court's analysis is instructive.  For example, in determining that Roche did not transfer substantial rights to Immunex, the Federal Circuit focused on the fact that Roche retained: a "secondary right to sue;" a "right to practice the patents for internal, non-clinical research;" and a "right to veto the assignment of Immunex's interest under the agreement to any unrelated party."  *Id.* at 1061-62.

As discussed above, however, neither Security Technology nor RavenWhite Security retained any such rights, including any right to enforce or practice the Asserted Patents.  Instead, all rights to practice, enforce, or grant licenses to the Asserted Patents were given to RavenWhite Licensing exclusively to exercise in its sole discretion.  ███████████████

███████████████████████████████████████████



To the extent anyone has any rights to the Asserted Patents, those rights are held by RavenWhite Licensing.

### B.    RavenWhite Licensing is Not the Effective Owner of the Prior Patents

Conversely, RavenWhite Licensing has no rights to the Prior Patents referenced in the relevant terminal disclaimers. *See* Ex. F at 223:23-224:10. As highlighted above in the factual background, the agreements at issue explicitly carve out those Prior Patents, severing the patent law's common ownership requirement.

The net effect of this overall transaction is transparent. By design, RavenWhite Licensing acquired all substantial rights in the Asserted Patents, including the exclusive right to file and control any lawsuits, while Security Technology and RavenWhite Security each retained all substantial rights in the respective Prior Patents, including the exclusive rights to enforce those other patents. By design, this fracture in ownership of the corresponding substantive rights in what is essentially the same invention seeks to immunize those other patents from any negative effect of this lawsuit. However, this risk of multiple lawsuits is precisely the sort of gamesmanship that

████████████████████████████████████████████

the terminal disclaimer's common ownership requirement is meant to guard against. *See In re Fallaux*, 564 F.3d at 1319 (noting that "the co-ownership requirement is a creative solution to potential harassment suits from two separate patents").

### C.    The Relevant Patents are Not "Commonly Owned" Under the Law

There is also no dispute as to the disparate ownership of RavenWhite Licensing, Security Technology, and RavenWhite Security. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████    Thus, even if a terminal disclaimer's requirement of common ownership could be preserved under the law through "indirect" ownership interests, that fact pattern is simply not present here.

As a result, as of July 30, 2023, there ceased to be any common ownership between the Asserted Patents on the one hand and the cited Prior Patents on the other hand. Pursuant to the terminal disclaimers cited above, the Asserted Patents are currently not enforceable and were not enforceable as of the filing of this lawsuit. *See* Ex. A and Ex. B (stating that the Asserted Patents "shall be enforceable only for and during such period" of common ownership). Accordingly, the Court should find that the Asserted Patents are not enforceable from the period beginning on July 30, 2023, through any future date when common ownership may be restored.

### D.    RavenWhite Licensing Does Not Have Article III Standing

For purposes of Constitutional standing, RavenWhite Licensing has the burden of showing that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

11

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.  In order for there to be a cognizable injury, RavenWhite Licensing must show that it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*

As stated by the Federal Circuit, "in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent ***at the inception of the lawsuit***." *See Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (emphasis in original); *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (same).  In *Paradise Creations*, the Federal Circuit concluded that "the appellant in this case ***held no enforceable rights*** whatsoever in the patent at the time it filed suit, and therefore ***lacked a cognizable injury*** necessary to assert standing under Article III of the Constitution." *See Paradise Creations*, 315 F.3d at 1310 (further stating that the plaintiff cannot "retroactively claim enforceable patent rights on the day it filed its complaint) (emphasis added).

In *Midwest Athletics*, the district court relied on the Federal Circuit's holdings in *Paradise Creations* and *Abraxis* to conclude that a plaintiff lacked Article III standing if the asserted patent was not enforceable under a terminal disclaimer.  *See Midwest Athletics and Sports Alliance LLC v. Ricoh USA, Inc.*, Case No. 19-514, 2019 WL 3387061, at *2 (E.D. Pa. Jul. 25, 2019) (quoting *Paradise Creations*, 315 F.3d at 1309, and *Abraxis*, 625 F.3d at 1364).  Referencing the common ownership requirement in 37 C.F.R. § 1.321(c)(3), the court observed that "[t]o enforce a patent subject to a terminal disclaimer filed to obviate a double patenting rejection, the plaintiff must also own the disclaimer patent." *Id.*  Based on that enforcement requirement and the Federal Circuit's cases on standing, the court then concluded that "a plaintiff who does not also own the terminal disclaimer patent lacks standing to bring an infringement claim" and that the plaintiff "may not cure this defect by acquiring the terminal disclaimer patent and amending its complaint to assert

12

its common ownership of both patents." *Id.*  For the same reasons, RavenWhite Licensing not only currently lacks standing, but lacked such standing at the time it filed this lawsuit.

In candor to the Court, Walmart notes that there is currently a split among district courts as to whether a plaintiff has Article III standing to assert patents that are not enforceable pursuant to a terminal disclaimer.  Specifically, in a decision issued literally one day after the above *Midwest Athletics* decision, Judge Schroeder of this District reached the opposite conclusion on the same substantive question.  In *Fall Line*, although the court recognized that "a violation of the common ownership requirement of the Terminal Disclaimer renders [the asserted patent] unenforceable," the court nonetheless concluded that this defect did not raise an Article III standing issue.  *See Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, Case No. 6:18-cv-407, 2019 WL 13218778, at *3 (E.D. Tex. Jul. 26, 2019).  In particular, the court concluded that the Federal Circuit's reference to "enforceable title" in cases like *Paradise Creations* and *Abraxis* referred merely to the superiority of title.  As stated by the court, "[h]olding enforceable title means that the owner has title that is superior to all others, whereas enforceability concerns equitable issues that may preclude or limit recovery." *Id.*  After distinguishing *Paradise Creations* and *Abraxis* on that basis, the court denied defendant's motion to dismiss for lack of standing.

Although Walmart understands and appreciates the comity between the Judges in this District, Walmart respectfully submits that there is good reason for this Court to depart from Judge Schroeder's approach.  Notably, Judge Schroeder's distinction between "enforceable title" and "enforceability" is not reflected in either *Paradise Creations* or *Abraxis*, and neither opinion mentions "superior title" or otherwise differentiates "enforceable title" from "enforceability" under the law.  *See generally Paradise Creations*, 315 F.3d 1304, and *Abraxis*, 625 F.3d 1359.  Indeed, in *Paradise Creations*, the Federal Circuit specifically refers to "enforceable rights" as a requirement for Article III standing, meaning that "enforceable title" and "enforceable rights" are

13

synonymous concepts to the Federal Circuit.  For example, in finding that the plaintiff lacked Article III standing, the Federal Circuit explicitly stated that "the appellant in this case *held no enforceable rights* whatsoever in the patent at the time it filed suit, and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution." *See Paradise Creations*, 315 F.3d at 1310 (further stating that the plaintiff cannot "retroactively claim *enforceable patent rights* on the day it filed its complaint) (emphasis added).

Moreover, while Judge Schroeder is correct that unenforceability may concern equitable issues that preclude or limit recovery, the enforceability of a patent subject to a terminal disclaimer is a product of the patent statute.  Specifically, terminal disclaimers are governed by 35 U.S.C. § 253, which provides that they are "recorded in the Patent and Trademark Office" and "shall thereafter be considered *part of the original patent* to the extent of the interest possessed by the disclaimant and by those claiming under him."  35 U.S.C. § 253 (emphasis added); *see also In re Yamazaki*, 702 F.3d 1327, 1333 (Fed. Cir. 2012) (stating that "[w]hen a patent issues subject to a terminal disclaimer, the patentee therefore has not just agreed to forgo some amount of its enforceable term, but has in fact reduced the term itself by effectively eliminating the disclaimed portion from the original patent").  As a result, a terminal disclaimer does not merely operate *post hoc* to preclude or limit recovery in a litigation—rather, the terminal disclaimer becomes part of the original patent property right and affirmatively "eliminates" enforceability of the patent during periods when the common ownership requirement is not met.

Thus, even if the Federal Circuit in *Paradise Creations* and *Abraxis* intended to use the term "enforceable title" narrowly, a terminal disclaimer "runs with" the patent and defines the underlying property right itself.  *See* Exs. A and B (stating that the disclaimer "runs with any patent granted on the instant application").  When the common ownership requirement is not met, the patent itself does not provide a legal right of enforcement.  In this regard, RavenWhite Licensing

14

████████████████████████████████████████████

"*held no enforceable rights whatsoever in the patent* at the time it filed suit, and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution." *See Paradise Creations*, 315 F.3d at 1310 (emphasis added).

Lastly, although Judge Schroeder weighed in on the Article III standing question, his ultimate decision to deny defendant's motion for judgment on the pleadings was premised on the existence of "a factual dispute concerning whether the March 2017 assignment assigned the '816 Patent to Plaintiff." *See Fall Line*, 2019 WL 13218778 at *4 (finding "dismissal under Rule 12(c)" to be inappropriate at the time). Setting aside the court's views on standing, this factual dispute alone foreclosed the ability for Judge Schroeder to render an early judgment on the pleadings under Rule 12(c). However, in the present case, Walmart notes that it is not seeking judgment on the pleadings, but instead is moving for summary judgment and dismissal based on the full record. For the above reasons, the Federal Circuit's caselaw is instructive on this issue and the Court should dismiss the case for lack of Article III standing.

## V.    CONCLUSION

The relevant facts are not in dispute. During prosecution of both Asserted Patents, the respective applicants filed terminal disclaimers to obviate an obviousness-type double patenting rejection. Under the patent statute, these disclaimers became part of the original patents and conditioned each Asserted Patent's enforceability on being "commonly owned" with the Prior Patents. The central purpose of this requirement is to prevent the risk of multiple assignees filing multiple lawsuits on what is essentially the same invention.

Despite these terminal disclaimers, on July 30, 2023, the respective assignees of these collective patents carved out the Asserted Patents and transferred all substantial rights to those two patents to RavenWhite Licensing in two mirror-image transactions. ███████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████  Plaintiff does not dispute—and even asserts in its Complaint—that it holds "all right, title, and interest in and to" the Asserted Patents.

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████  By design, the nominal "owners" of the Asserted Patents did not retain any substantive rights in those patents. Instead, by design, those entities retained all rights to the Prior Patents in an attempt to immunize those other patents from any negative effect of this lawsuit.  But this is precisely the sort of gamesmanship that the common ownership requirement seeks to prevent.

As a result, the Court should not only grant summary judgment that the Asserted Patents are not enforceable (until any restoration of common ownership), but should also grant summary judgment that RavenWhite Licensing LLC lacks standing under Article III of the U.S. Constitution and dismiss this case.

16

Dated:  June 18, 2026

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

17

█████████████████████████████████

Facsimile:  (713) 221-2021

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile:  (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile:  (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC*

18



## CERTIFICATE OF SERVICE

I hereby certify that, on June 18, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record whom have consented to electronic service.

/s/ Amir H. Alavi
Amir H. Alavi

19