IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § | CASE NO. 2:24-CV-00688-JRG-RSP |
| Plaintiff, | § § | *(Lead Case)* |
| v. | § § § | |
| | § | JURY TRIAL DEMANDED |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| | § § | |
| RAVENWHITE LICENSING LLC | § § | CASE NO. 2:24-CV-00689-RWS-RSP |
| Plaintiff, | § § | *(Member Case)* |
| v. | § § | |
| | § § | JURY TRIAL DEMANDED |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | |
| Defendants. | § § | |
| | § | |

**WALMART'S MOTION TO EXCLUDE OR STRIKE CERTAIN OF
MR. WEINSTEIN'S OPINIONS UNDER *DAUBERT* AND RULE 702**

████████████████████████████████████████████

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD.................................................................................................... 1

III. LEGAL ARGUMENT................................................................................................... 2

    A.  Mr. Weinstein Uses the Wrong Licensor at the Hypothetical Negotiations for Both Asserted Patents. ................................................................................................. 2

        1.  The Hypothetical Negotiation for the '823 Patent........................................... 2

        2.  The Hypothetical Negotiation for the '402 Patent........................................... 3

        3.  Mr. Weinstein's Opinions are Unreliable and Inadmissible............................ 4

    B.  Mr. Weinstein's Use of ROIC is an Impermissible "Rule of Thumb." ..................... 5

    C.  Mr. Weinstein Does Not Apportion for the Value of Walmart's ███████████ ████████, Resulting in an Inflated Royalty Base for the '402 Patent................ 8

    D.  Mr. Weinstein Improperly Includes Revenues from Non-Infringing Activities for Both Asserted Patents. ........................................................................................ 9

        1.  For the '823 Patent, Mr. Weinstein Uses GMV Revenues from Walmart's Unaccused Mobile App.................................................................................... 10

        2.  For the '402 Patent, Mr. Weinstein Uses Revenues from Unaccused ████ ████████.................................................................................................. 11

    E.  Mr. Weinstein's Calculations Using Purported "GMV Lift" are Unsupported and Improper............................................................................................................ 12

        1.  For the '823 Patent, Mr. Weinstein Improperly Uses a ██████████ from Unrelated ██████████████████████ as a Proxy for the Benefits Provided by the Accused ██████████████. ................................. 12

        2.  For the '402 Patent, Mr. Weinstein Improperly Uses a Third-Party ROAS to Calculate Walmart's Purported GMV Lift. ..................................................... 13

IV. CONCLUSION............................................................................................................ 15

████████████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Daedalus Blue LLC v. SZ DJI Tech. Co., Ltd.,*
No. W-20-CV-00073-ADA, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022) ............................ 2

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993) .............................................................................................................. 1

*Ericsson, Inc. v. D–Link Sys., Inc.,*
773 F.3d 1201 (Fed. Cir. 2014) ......................................................................................... 8, 9

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.,*
879 F.3d 1332 (Fed. Cir. 2018) ............................................................................................ 7

*Fundamental Innovation Sys. Int'l LLC v. Anker Innovation Ltd.,*
No. 1:21-cv-339-RGA, Dkt. 261 (D. Del. Feb. 11, 2025) ................................................. 7, 8

*Garretson v. Clark,*
111 U.S. 120 (1884) ............................................................................................................. 9

*IP Innovation L.L.C. v. Red Hat, Inc.,*
705 F. Supp. 2d 687 (E.D. Tex. 2010) ................................................................................ 10

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ............................................................................................................. 1

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
694 F.3d 51 (Fed. Cir. 2012) ............................................................................................... 4

*Lucent Techs., Inc. v. Gateway, Inc.,*
580 F.3d 1301 (Fed. Cir. 2009) ........................................................................................... 4

*Mahurkar v. C.R. Bard, Inc.,*
79 F.3d 1572 (Fed. Cir. 1996) ............................................................................................. 4

*MicroSource, LLC v. Eco World Group, LLC,*
587 F. Supp. 3d 770 (N.D. Iowa 2022) ................................................................................ 5

*Opticurrent, LLC v. Power Integrations, Inc.,*
No. 17-cv-3597-WHO, 2018 WL 6727826 (N.D. Cal. Dec. 21, 2018) .............................. 4, 5

*Oracle Am., Inc., v. Google, Inc.,*
798 F. Supp. 2d 1111 (N.D. Cal. 2011) ................................................................................ 5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
904 F.3d 965 (Fed. Cir. 2018) ............................................................................................ 10

████████████████████████████

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) ........................................................................... 2

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ................................................................... passim

*United States v. Valencia*,
  600 F.3d 389 (5th Cir. 2010) ............................................................................. 1

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ......................................................................... 9

*WSOU Investments, LLC v. Salesforce.com, Inc.*,
  No. 6:20-cv-01165-ADA (W.D. Tex. Apr. 25, 2025) .......................................... 4

**Statutes**
35 U.S.C. § 100(d) ................................................................................................ 2

**Rules**
Fed. R. Evid. 702 ................................................................................................. 1

Fed. R. Evid. 702 Adv. Comm. Notes ................................................................. 2

██████████████████████████████████████

## I.    INTRODUCTION

Defendants Walmart Inc. and Wal-Mart Texas Stores, LLC (collectively, "Walmart") move the Court for an order excluding certain opinions of Plaintiff RavenWhite Licensing LLC's ("Plaintiff") damages expert, Mr. Roy Weinstein, under *Daubert* and Fed. R. Evid. 702.[1] Mr. Weinstein's opinions suffer from multiple methodological flaws that render them both unreliable and inadmissible. ***First***, Mr. Weinstein uses the wrong licensor at the hypothetical negotiations, rendering his opinions subject to exclusion on this basis alone. ***Second***, his use of Walmart's ROIC (return on invested capital) is flawed because it is not tied to the technology or the hypothetical negotiations. ***Third***, he does not apportion for the value of Walmart's ███████████ in calculating damages under the '402 Patent, resulting in an inflated royalty base. ***Fourth***, he includes revenues from Walmart's unaccused mobile app and ███████████, which he has conceded is not appropriate. ***Fifth***, his use of a ███████████ from Walmart's ███████████ ███████████ as a proxy for the unrelated, accused ███████████ is unsupported and untethered to the facts. ***Finally***, his use of Walmart ***advertisers'*** ROAS (return on ad spend) is untethered to the facts because he has not shown any incremental benefit to Walmart.

## II.    LEGAL STANDARD

The standards for admissibility of expert opinions under Rule 702 are well established. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). The trial judge plays a "gatekeeping role," *Daubert*, 509 U.S. at 597, to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," *id*. at 589. In 2023, Rule 702 was amended to clarify that the Rule considers questions related to the

---

[1] Referenced exhibits are attached to the Declaration of Amanda Woodall ("Woodall Decl.") filed in support of this Motion.

███████████████████████████████████

sufficiency of an expert's basis and application of his methodology as issues of admissibility, not simply credibility and weight. Fed. R. Evid. 702 Adv. Comm. Notes. Accordingly, "a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.* 802 F.3d 1283, 1295 (Fed. Cir. 2015).

## III.    LEGAL ARGUMENT

### A.    Mr. Weinstein Uses the Wrong Licensor at the Hypothetical Negotiations for Both Asserted Patents.

A reliable damages analysis must consider the perspectives of the correct parties to the hypothetical negotiations. Mr. Weinstein's analysis fails to do so because he does not apply the correct legal framework. This fatal error is one of admissibility, not weight, and "exclusion is appropriate on this basis alone." *Daedalus Blue LLC v. SZ DJI Tech. Co., Ltd.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *8 (W.D. Tex. Feb. 24, 2022) (Albright, J.) (excluding expert opinion for using wrong party in hypothetical negotiation and *Georgia-Pacific* analysis).

### 1.    The Hypothetical Negotiation for the '823 Patent.

The '823 Patent issued on March 17, 2020, to RavenWhite Security, Inc. Dkt. 26, Ex. 1; *see also* Ex. A, Weinstein Rpt., ¶ 13. Mr. Weinstein and Walmart agree that Plaintiff's infringement allegations would place the hypothetical negotiation for the '823 Patent in March 2020. *Id.*, ¶ 32. ***RavenWhite Security, Inc.'s*** status as patentee in March 2020 is uncontested. 35 U.S.C. § 100(d); Ex. E, Plaintiff's Suppl. Resp. to Interrogatory No. 8 at 16; Ex. M, Name Change (RW00007568). Nonetheless, Mr. Weinstein identifies ***Plaintiff, RavenWhite Licensing, LLC***, as the hypothetical licensor even though that entity ███████████████████████, Ex. B, Holmes Dep., Ex. 2 at RW00007523, and indisputably did not own the '823 Patent in March 2020, Ex. A, Weinstein Rpt., ¶ 32; *see also id.*, n.51 ("For purposes of this report, I refer to RavenWhite

2

as party to the hypothetical negotiation involving the '823 patent."), ¶ 4 (defining "RavenWhite Licensing LLC" as "RavenWhite").

This legal error is compounded by Mr. Weinstein's factually incorrect "basis" for using Plaintiff as licensor. He opines that his analysis for the '823 Patent would be unchanged if RavenWhite Security, Inc. or Plaintiff were the hypothetical licensor because he says the entities are ███████ and ████████████████████████ *Id.*, n.51. But this is contrary to record evidence in this case, which confirms Raven White Licensing is, and always has been, ████ ████████████████. Ex. B at RW00007523 (████████████████████████████) and RW00007539 (████████████████████████████████); Ex. C, Holmes Tr. at 25:16-18 (████████████████████████████); *id.* at 10:3-10:10 (████████████████████████████████). Moreover, Mr. Weinstein never explains how ████████████ (even if it were true) puts these legally distinct entities in an identical bargaining position.

### 2.    The Hypothetical Negotiation for the '402 Patent.

On December 22, 2022, RightQuestion LLC assigned the application that matured into the '402 Patent to SecurityInnovation LLC. Ex. D, Patent Assignment (RW00007504). The '402 Patent issued on January 24, 2023. Dkt. 26, Ex. 2 at 1. Mr. Weinstein and Walmart agree that Plaintiff's infringement allegations would place the hypothetical negotiation for the '402 Patent in January 2023. Ex. A, Weinstein Rpt., ¶ 33. ***SecurityInnovation LLC was the patentee*** on the date of the hypothetical negotiation. *See* 35 U.S.C. § 100(d); Ex. D; Ex. E at 17; Ex. N, Patent Assignment (RW00007510); Ex. O, Patent Assignment Abstract of Title (RW00005885). Yet, again, Mr. Weinstein identifies ***Plaintiff, RavenWhite Licensing LLC***, as the hypothetical licensor, even though that entity ████████████████████████, Ex. B at RW00007523, and indisputably did not own the '402 Patent in January 2023, Ex. A, Weinstein Rpt., ¶ 33; *see also*

3

████████████████████████████████████

*id.*, n.53; *id.*, ¶ 4.

Again, Mr. Weinstein's legal error is compounded by his factually incorrect "basis" for using Plaintiff RavenWhite Licensing as licensor, i.e., that RavenWhite Security, Inc. and RavenWhite Licensing LLC are ██████ entities ████████████████████████ *id.*, n.53. But again, this is contrary to record evidence, which confirms that RavenWhite Licensing is, and has always been, ████████████████████████. Ex. B, Holmes Dep. Ex. 2 at RW00007523 and RW00007539; Ex. C, Holmes Tr. at 10:3-10, 25:16-18. Moreover, RavenWhite Security Inc. **has never owned** the '402 Patent, Ex. E at 17. Notably, Mr. Weinstein ignores SecurityInnovation— the correct hypothetical licensor. Ex. A, ¶ 33; Ex. D; Ex. E at 17; Ex. N; Ex. O.

### 3. Mr. Weinstein's Opinions are Unreliable and Inadmissible.

The "hypothetical negotiation" framework seeks to determine "the value of the patented technology to the parties in the marketplace when infringement began," *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), "[an] analysis [that] must begin with the proper parties in mind," *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-3597-WHO, 2018 WL 6727826, at *9 (N.D. Cal. Dec. 21, 2018) (excluding damages opinion for using wrong hypothetical licensor). The hypothetical negotiation is "between the patentee and infringer … at the time infringement began." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996).

Mr. Weinstein's use of the wrong licensor for both Asserted Patents is a methodological flaw that renders his opinions unreliable and inadmissible. *See WSOU Investments, LLC v. Salesforce.com, Inc.*, No. 6:20-cv-01165-ADA (W.D. Tex. Apr. 25, 2025) (Albright J.), Dkt. 473 at 2 (*excluding Mr. Weinstein's opinions* and explaining: his "reasonable royalty opinion…is especially unreliable because it uses the wrong parties to the hypothetical negotiation"); *see also Daedalus Blue*, 2022 WL 831619, at *8 (excluding damages opinion for using wrong hypothetical

4

████████████████████████████████████

licensor); *Oracle Am., Inc., v. Google, Inc.*, 798 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) ("Injecting [plaintiff] into the bargaining room was wrong" because at the time the alleged infringement began plaintiff was not the patentee.); *MicroSource, LLC v. Eco World Group, LLC*, 587 F. Supp. 3d 770, 828 (N.D. Iowa 2022) ("Exclusion of a damages report is appropriate when that report relies on a hypothetical agreement involving a party who did not own the infringed patent at the time of the infringement."). Making matters worse, Mr. Weinstein not only identified the wrong hypothetical licensor, but also chose an entity that ███████████████████████ ██████ *See Opticurrent*, 2018 WL 6727826, at *9 (excluding damages opinion for using hypothetical licensor that did not exist at time of hypothetical negotiation). Mr. Weinstein's opinions should be excluded in their entirety.

### B.    Mr. Weinstein's Use of ROIC is an Impermissible "Rule of Thumb."

Mr. Weinstein's use of ROIC to split (alleged) incremental profits in his reasonable royalty calculations for both Asserted Patents is an attempt to apply an impermissible "rule of thumb" to the profit split between the parties—without any analysis of fit based on the facts of the case. Like the defunct "25% rule of thumb" rejected by the Federal Circuit in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011), Mr. Weinstein's use of ROIC is an impermissible one-size-fits-all substitution for a fact-based analysis tied to the technology at issue and the parties' respective bargaining positions and must be rejected. Mr. Weinstein admits: (1) he has never seen ROIC used in real-world patent licensing, and (2) there is no record evidence suggesting any party in this case would have used ROIC in the hypothetical negotiation. Moreover, Mr. Weinstein's ROIC is based on ***uncorroborated UBS "estimates."***

Mr. Weinstein's split of (alleged) incremental profits between Plaintiff and Walmart is the last step of his reasonable royalty analysis. This leaves Walmart with incremental profits equal to its purported ROIC ██████ for the '823 Patent and ██████ for the '402 Patent). Plaintiff, a ███

██████████████████████████████████████

████ enterprise[2] with ████████████████ , receives █████ and █████ respectively. *See* Ex. A, Weinstein Rpt., Ex. 9, row 6 ('823 Patent) & Ex. 8/8A, row 40 ('402 Patent).

While Mr. Weinstein walks through the *Georgia-Pacific* factors, his analysis is perfunctory because it in no way informs his end-step incremental profit split. Rather, he simply concludes "that Walmart would be willing to accept a share of the incremental contribution of the patents-in-suit that was equal to its return on invested capital…because…it leaves Walmart as well off in connection with this transaction, namely the licensing of the patents-in-suit, as it is in connection with other investments that its (sic) made in its business." Ex. A, Weinstein Rpt. ¶ 136; Ex. F, Weinstein Tr. at 125:22-126:5. His conclusion is thus admittedly untethered to the facts of ***this*** hypothetical negotiation, rendering it unreliable and inadmissible under Federal Circuit law. *See Uniloc*, 632 F.3d at 1315 (rejecting use of routine "rule of thumb" incremental profit splits).

Indeed, Mr. Weinstein concedes that use of ROIC is counter to real-world patent licensing and contrary to the parties' practices. During his deposition, he conceded that:

- He has never been in a patent license negotiation where the licensor's or licensee's ROIC was factored into the payment. Ex. F, Weinstein Tr. at 133:15-22.

- He has never seen a real-world patent license that factored in the licensor's or licensee's ROIC. *Id.* at 135:12-23.

- None of the Walmart license agreements produced in discovery used ROIC. *Id.* at 138:23-139:6.

- He has no evidence that RavenWhite ████████████████████████████ ████████████████ .[3] *Id.* at 136:16-137:1, 137:21-138:2.

---

[2] SecurityInnovation and RavenWhite Security, the proper parties to the hypothetical negotiation, *supra* § III.A, also had ████████████ Ex. F, Weinstein Tr. at 141:25-142:8; *id.* at 147:11-16.
[3] Mr. Weinstein did not know whether SecurityInnovation had entered into any licenses. Ex. F, Weinstein Tr. at 135:4-6. And for good reason; there is ████████████████████ ████████████████ .

6

███████████████████████████████████████████

- He has no evidence that any prior licensor of the '402 Patent (including ███████████ ████████████████████████████. *Id.* at 134:21-135:3.

In *Fundamental Innovation Sys. Int'l LLC v. Anker Innovation Ltd.*, No. 1:21-cv-339-RGA, Dkt. 261 (D. Del. Feb. 11, 2025), the court addressed Mr. Weinstein's use of ROIC in the context of splitting incremental benefits between the parties to the hypothetical negotiation. *See* Ex. G (Memorandum Opinion). While Mr. Weinstein testified in a *Daubert* hearing that numerous courts had accepted his use of ROIC and Fundamental had submitted an article on ROIC, the court "struggle[d] to see how the article…support[ed] the idea that two companies, in a negotiation where each would want to maximize profits, would use [ROIC], ***only as applied to the potential licensee***, to arrive at a reasonable royalty." *Id.* at 33 (emphasis added). In excluding Mr. Weinstein's use of ROIC, the court stated that it:

> fail[ed] to see how Anker's ROIC is tied to the facts and parties of this case, aside from Anker being a party to the case…. The only connection the report has to this case is providing information (an ROIC number for 2020) about Anker. ***Mr. Weinstein is unaware if Anker has ever used ROIC to split cost savings.*** (Tr. 107:25-108:5). There is no connection to Fundamental or the technology at issue. Fundamental has not shown that the methodology is reliable.

*Id.* at 33-34 (emphasis added). Mr. Weinstein's ROIC "analysis" in this case is at least as flawed as in *Fundamental* because Mr. Weinstein makes no effort to tie ROIC to the technology or hypothetical licensor in this case—and the evidence in this case shows no hypothetical negotiator has used ROIC. *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (experts "must sufficiently tie" opinions to "facts of the case").

Finally, Mr. Weinstein has not independently calculated Walmart's ROIC in this matter; he has relied exclusively on proprietary calculations by UBS. Ex. F, Weinstein Tr. at 130:1-6. But some of the calculations underlying UBS's calculations are merely "estimated" and subject to undisclosed "analyst adjustments." Ex. H, Weinstein Dep., Ex. 12 at 1 (2023 UBS Rep. on Walmart indicating that EBIT and net earnings, used in ROIC (EBIT) come from "UBS estimates"

7

███████████████████████████████████

and "have had analyst adjustments applied"). Mr. Weinstein's reliance on estimated ROIC calculations from UBS renders his analysis unreliable. As the court found in *Fundamental*, "Mr. Weinstein did not corroborate this data with any financial data provided by Anker to Fundamental, or Anker's actual ROIC." Ex. G, *Fundamental*, Dkt. 261 at 35. Mr. Weinstein's use of ROIC is untethered to the technology or the parties' positions at the hypothetical negotiation and must be excluded.

    **C.    Mr. Weinstein Does Not Apportion for the Value of Walmart's ███████ ████████████, Resulting in an Inflated Royalty Base for the '402 Patent.**

The accused products are certain ████████ and ██████████ ads that are made possible only through the combination of Walmart's proprietary ████████████ ████████████████████████████████████ ███████ in a discrete manner accused of infringing the '402 Patent. Under Federal Circuit law, the first step in a reasonable royalty analysis for infringement must be to carve out unpatented contributions from the accused ads revenue base. *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more").

Walmart documents, Walmart witness testimony, and the opinion of Plaintiff's technical expert, Dr. Smith, all confirm that Walmart's ████████████████████████ ██████████████████████████████████████████████████████." Ex. A, Weinstein Rpt., ¶ 92 (citing Walmart document). In describing the Walmart Connect system (which sells the accused ████████ and ██████████ ads), Dr. Smith endorsed Walmart's estimate ████████████████████████████ ██████████████████ Ex. L, Smith Rpt., Ex. D, ¶ 23. While Mr. Weinstein acknowledged its importance to Walmart Connect's success, Ex. F, Weinstein Tr. at 51:20-23, he conceded that he



has not included any apportionment factor for Walmart's ███████████████ in his calculation of damages under the '402 Patent, found in Exhibit 8 to his report. *Id.* at 59:2-5 ("████████ ... is not noted in Exhibit 8).

Mr. Weinstein has failed to apportion Walmart's accused ad revenues as between the value of Walmart's ███████████████████████████ and the patented technology ███████████████████████████. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (a patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features") (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). Additionally, Mr. Weinstein's use of un-apportioned accused ads revenue risks prejudicing the jury. *See Uniloc*, 632 F.3d at 1320 (testimony about total revenue may "skew the damages horizon for the jury"); *Ericsson*, 773 F.3d at 1226 ("[C]are must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product."). Mr. Weinstein's use of 100% of accused ads revenues as the royalty base instead of the residual maximum ██████ of everything other than Walmart's ████████████ must be excluded.

### D.    Mr. Weinstein Improperly Includes Revenues from Non-Infringing Activities for Both Asserted Patents.

Mr. Weinstein's damages calculations improperly include revenues that are not tied to accused infringing activities, as Plaintiff's own infringement expert, Dr. Smith, concedes.[4] Specifically, Mr. Weinstein has included revenues from Walmart's unaccused mobile app in his '823 Patent damages calculation and Walmart's unaccused ████████ ads in his '402 Patent damages calculations. Mr. Weinstein's analysis, thus, is unreliable and insufficient to meet the

---

[4] Walmart has concurrently moved for partial summary judgment of no infringement for these features, i.e., Walmart's mobile application ('823 Patent) and ████████ ('402 Patent).

standard set by the Federal Circuit: while 35 U.S.C. § 284 requires that damages be "adequate to compensate for the infringement," "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features…." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). A patentee can only meet its burden to prove damages by "sufficiently [tying] the expert testimony on damages to the facts of the case." *Uniloc*, 632 F.3d at 1315 (internal quotation marks and brackets removed). "Where, as here, such sound economic and factual predicates are absent from a reasonable royalty analysis, Rule 702 requires this court to exclude that unreliable proffered evidence." *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) (Rader, J., sitting by designation).

### 1.    For the '823 Patent, Mr. Weinstein Uses GMV Revenues from Walmart's Unaccused Mobile App.

Mr. Weinstein's calculation of damages for infringement of the '823 Patent by Walmart's accused ██████ functionality within Walmart's mobile app, contained in Exhibit 9 of his report, must be excluded because Plaintiff's infringement expert, Dr. Smith, has offered no opinion that Walmart's mobile app infringes the asserted claims. Ex. J, Smith Tr. at 83:5-14 Mr. Weinstein conceded that "if there's a failure of proof on infringement [here, Walmart's mobile app] damages that are based on, that infringement would no longer be appropriate." Ex. F, Weinstein Tr. at 66:9-11.

It is undisputed that Mr. Weinstein has included GMV (gross merchandise value) for all of Walmart's eCommerce business, including sales through Walmart's mobile app, as the starting point in his damages calculations. *See*, *e.g.*, Ex. A, Weinstein Rpt., Ex. 5 & Ex. 9. Mr. Weinstein's Exhibit 9 shows collective Walmart.com GMV and refers to Exhibit 5 for his GMV totals inputs.



In turn, Exhibit 5 refers to a Walmart spreadsheet (WMT-RW0029147), which provides month-by-month GMV totals for the entirety of Walmart's eCommerce business. *See* Ex. I, WMT-RW0029147 (excerpt for 2025 calendar year[5] totaling ████████████ ).

Mr. Weinstein's inclusion of GMV from Walmart's mobile app in his damages calculations is unsupported by evidence and contrary to the testimony of Plaintiff's own expert on infringement. Ex. J, Smith Tr. at 83:5-14 (conceding he "did not do an analysis of Walmart's mobile application for the '823 patent" and is not alleging infringement). Thus, Mr. Weinstein's opinions related to GMV for Walmart's unaccused mobile app, shown in Exhibit 9, line 1, should be excluded.

### 2.    For the '402 Patent, Mr. Weinstein Uses Revenues from Unaccused ████████████ .

Mr. Weinstein's calculation of damages for infringement of the '402 Patent from Walmart's ████████ ads, contained in Exhibits 8 and 8A of his Report, must be excluded because Plaintiff's infringement expert, Dr. Smith, has offered no opinion that Walmart's ████ ████ ads infringe the asserted claims of the '402 Patent. Ex. J, Smith Tr. at 25:23-27:5. Mr. Weinstein conceded that "if I've included [████████] revenues that are not associated with infringement, then they should not be included." Ex. F, Weinstein Tr. at 70:23-25.

---

[5] Walmart's fiscal year ends in January; thus, the majority of 2025 data falls into fiscal year 2026.

███████████████████████████████████████

Following the June 24, 2026 deposition of Dr. Smith, it is now undisputed that Dr. Smith has not rendered an infringement opinion regarding Walmart's ██████████ ads. Ex. J, Smith Tr. at 25:23-27:5. It is also undisputed that Mr. Weinstein has included Walmart's ██████████ ads in his damages calculations, as shown by the following excerpt from Exhibit 8 to his Report:



Ex. A, Weinstein Rpt., Ex. 8; *see also id.*, Ex. 8A.

Mr. Weinstein's inclusion of ██████████ ads in his damages calculations is unsupported by any evidence and is now admittedly contrary to the testimony of Plaintiff's own expert on infringement. Accordingly, Mr. Weinstein's opinions related to unaccused ██████ ██████ ads should be excluded, including lines 4-8 of Exhibits 8/8A; calculations dependent upon lines 4-8 of Exhibits 8/8A require revision to exclude all ██████████ ads.

### E. Mr. Weinstein's Calculations Using Purported "GMV Lift" are Unsupported and Improper.

**1. For the '823 Patent, Mr. Weinstein Improperly Uses a ████████ ██████ from Unrelated ██████████████████████ as a Proxy for the Benefits Provided by the Accused ████████ ██████████.**

Mr. Weinstein's damages calculation for the '823 Patent relies on a single theory—that Walmart's use of the accused ██████████ functionality provides Walmart with a ██████████ ██ equivalent to that from its ██████████████████████████ Ex. A, Weinstein Rpt., ¶ 103. To this GMV lift, Mr. Weinstein simply applies Walmart's margin for its eCommerce

12

███████████████████████████████████████████████

business and the aforementioned ROIC. While ████████████████████████ recommend new complementary items to customers based on what they add to their basket, the accused ████ ████ functionality preserves items already in the cart when a user logs out and back in. Dr. Smith testified that the accused ████████ functionality has nothing to do with ████████████. *See* Ex. J, Smith Tr. at 166:7-10 ("Q. ████████ doesn't provide ████ ████████ based on what is in the cart, does it? A. No…").

Nevertheless, Mr. Weinstein relies on a single Walmart document from October 2020 stating that the unaccused ███████████████████ would ████████████ ████████████████████████. Ex. A, Weinstein Rpt., ¶ 103. He then opines that "the ██████████████████████████ associated with ██████████ ████████ is a conservative proxy for the benefits provided by the accused ████████ functionality taught by the '823 patent." *Id.* Mr. Weinstein has failed to justify his use of a metric that Plaintiff's technical expert testified is unrelated to the patented technology, rendering his "proxy" analysis contrary to record evidence. He also fails to isolate any value of the purported technical contribution from the '823 Patent to Walmart.[6] Because Mr. Weinstein's opinion is untethered to the facts, it is unreliable and must be excluded. *Uniloc*, 632 F.3d at 1315.

2.       **For the '402 Patent, Mr. Weinstein Improperly Uses a Third-Party ROAS to Calculate Walmart's Purported GMV Lift.**

Mr. Weinstein also uses "GMV lift" in the context of additional damages[7] under the '402 Patent for alleged "lift" to Walmart's eCommerce GMV (gross merchandise value) from the

---

[6] To wit, nowhere in his analysis does Mr. Weinstein address the infrequency with which the accused cart merge occurs, thus inflating the purported GMV lift at issue, nor does he address apportionment.

[7] These damages are in addition to Mr. Weinstein's calculation of reasonable royalty damages on Walmart's accused ████████; these "GMV lift" damages seek additional compensation from the alleged impact of Walmart's ad sales on Walmart's eCommerce sales.

████████████████████████████████████████████

accused ads revenue, using ███████████████████████████████████████████. Ex. A, Weinstein Rpt., Ex. 8 & 8A (lines 33-35). But Mr. Weinstein provides no evidence or analysis to justify attributing the purported sales "lift" *to Walmart* (versus to the ████████████ ████████████████████). That is, there is no analysis by Mr. Weinstein to show that, but for the accused ad, *Walmart* would not have made a sale ██████████████████████ ████████████████████████████. Mr. Weinstein admitted in his deposition that he could not claim accused ████████ were incremental to Walmart in a basic hypothetical:

> **Question:** Let's say that I'm a walmart.com shopper and I'm looking for laundry detergent. I like the Great Value [Walmart's] brand, so that's what I'm guessing I'll buy, planning to buy, but I see ██████████████████████████████████ ██████████████████████ incremental to Walmart?
>
> **Mr. Weinstein:** I can't say that it is. I wouldn't say that it is….

Ex. F, Weinstein Tr. at 193:5-11, 13; *see also id.* at 152:10-12 ("████████████ would represent incremental sales to Walmart ████████████████████████████████*e*") (emphasis added) & 151:2-6, 151:19-23. Yet Mr. Weinstein never performed a but-for analysis in his report. Instead, he relied on Walmart documents that discussed ROAS generally, without any mention of "incremental" *anything* (sales, profits, etc.) to Walmart. Ex. A, Weinstein Rpt., ¶ 89 (discussing ████████ROAS); Ex. F, Weinstein Tr. at 164:10-166:12 (referencing ¶ 89 as demonstrating ROAS for Walmart); *id.* at 168:4-171:15 (admitting underlying document does not address incremental Walmart sales).

And there is no doubt that the ROAS on which Mr. Weinstein relies is a measurement for the ████████████████████, not Walmart's:

> **Question:** So as used internally at Walmart, do you understand that ROAS is with respect to the ██████████████████████████████████████████ ████████████████

14

██████████████████████████████████████████

**Mr. Weinstein:** Yes, I understand that.

Ex. F, Weinstein Tr. at 150:14-18. Yet, Mr. Weinstein appears to assume, without analysis, that ███████████ equals incremental GMV to Walmart. But a Walmart document cited in dozens of footnotes in Mr. Weinstein's Report provides a graphic explaining the need for a control group (but-for) analysis to determine whether Walmart sales are incremental to ███████████████.



Ex. K, WMT-RW0028885-968 at WMT-RW0028956 (full presentation cited in Ex. A, Weinstein Rpt., n.175-191, 193-194, 196-200). Mr. Weinstein admits that but-for testing is necessary to determine whether ███████████ incremental Walmart sales. Ex. F, Weinstein Tr. at 152:10-12. Yet, he failed to do conduct such an analysis, rendering his ROAS lift opinions even more untethered to the technology at issue and the facts of the case. Mr. Weinstein's calculation of damages using █████ ROAS must be excluded. *Uniloc*, 632 F.3d at 1315.

## IV.    CONCLUSION

For the reasons set forth herein, Walmart respectfully requests that the Court exclude Mr. Weinstein's expert opinions and testimony under Rule 702 and *Daubert*.

██████████████████████████████

Dated:  June 30, 2026

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

16

Facsimile:  (713) 221-2021

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile:  (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile:  (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC*

17



## CERTIFICATE OF CONFERENCE

The parties met and conferred by phone on June 25, 2026, and by email on June 26, 2026, regarding the issues raised in Walmart's motion. The parties could not reach agreement and the discussion ended in an impasse. Accordingly, the motion is opposed.

*/s/ Amir H. Alavi*
Amir H. Alavi

## CERTIFICATE OF SERVICE

I hereby certify that, on June 30, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record who have consented to electronic service.

*/s/ Amir H. Alavi*
Amir H. Alavi