# EXHIBIT M



8513789

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

August 7, 2024

THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE
RECORDS OF THIS OFFICE OF A DOCUMENT RECORDED ON

*May 3, 2019*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

Pam Grant
Certifying Officer

RW00007568

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                              EPAS ID: PAT5507460
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| **NATURE OF CONVEYANCE:** | CHANGE OF NAME |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| RAVENWHITE INC. | 12/22/2010 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| **Name:** | RAVENWHITE SECURITY, INC. |
| **Street Address:** | 160 GREENTREE DRIVE, SUITE 101 |
| **City:** | DOVER |
| **State/Country:** | DELAWARE |
| **Postal Code:** | 19904 |

**PROPERTY NUMBERS Total: 13**

| Property Type | Number |
|---|---|
| **Patent Number:** | 8844003 |
| **Patent Number:** | 8533350 |
| **Patent Number:** | 9432199 |
| **Patent Number:** | 9195834 |
| **Application Number:** | 60967675 |
| **Application Number:** | 60732025 |
| **Application Number:** | 11548367 |
| **Application Number:** | 60725852 |
| **Application Number:** | 60836641 |
| **Application Number:** | 61355149 |
| **Application Number:** | 11890408 |
| **Application Number:** | 60918781 |
| **Application Number:** | 61441562 |

**CORRESPONDENCE DATA**

**Fax Number:**            (408)973-2595

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:**                 4089732585
**Email:**                 csimmons@ip-patent.com
**Correspondent Name:**    VAN PELT, YI & JAMES LLP
**Address Line 1:**        10050 N. FOOTHILL BLVD.

RW00007569

| Address Line 2: | STE. 200 |
| Address Line 4: | CUPERTINO, CALIFORNIA 95014 |

| ATTORNEY DOCKET NUMBER: | RAVE G000 |
| NAME OF SUBMITTER: | ROBYN WAGNER |
| SIGNATURE: | /Robyn Wagner/ |
| DATE SIGNED: | 05/03/2019 |

**Total Attachments: 13**
source=RavenWhite Cert of Incorporation name change#page1.tif
source=RavenWhite Cert of Incorporation name change#page2.tif
source=RavenWhite Cert of Incorporation name change#page3.tif
source=RavenWhite Cert of Incorporation name change#page4.tif
source=RavenWhite Cert of Incorporation name change#page5.tif
source=RavenWhite Cert of Incorporation name change#page6.tif
source=RavenWhite Cert of Incorporation name change#page7.tif
source=RavenWhite Cert of Incorporation name change#page8.tif
source=RavenWhite Cert of Incorporation name change#page9.tif
source=RavenWhite Cert of Incorporation name change#page10.tif
source=RavenWhite Cert of Incorporation name change#page11.tif
source=RavenWhite Cert of Incorporation name change#page12.tif
source=RavenWhite Cert of Incorporation name change#page13.tif

PATENT
REEL: 050260 FRAME: 0822

RW00007570



PAGE   1

## State of Delaware

SECRETARY OF STATE
DIVISION OF CORPORATIONS
P.O. BOX 898
DOVER, DELAWARE 19903

131119526

*9991417*
*RAVENWHITE SECURITY, INC.*
*2440 SAND HILL RD, SUITE 400*
*MENLO PARK              CA     94025-6900*

*09-23-2013*

*ATTN: MARK HOLMES*

| DESCRIPTION | AMOUNT |
|---|---|
| RAVENWHITE SECURITY, INC. | |
| 4055140    8100   Certified Copy | |
| Certification Fee | 50.00 |
| Document Page Fee | 22.00 |
| Expedite 24 Hr., 1-4 Cert. | 50.00 |
| FILING TOTAL | 122.00 |
| TOTAL PAYMENTS | 122.00 |
| SERVICE REQUEST BALANCE | .00 |

PATENT
REEL: 050260 FRAME: 0823

RW00007571

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE RESTATED CERTIFICATE OF "RAVENWHITE INC.", CHANGING ITS NAME FROM "RAVENWHITE INC." TO "RAVENWHITE SECURITY, INC.", FILED IN THIS OFFICE ON THE TWENTY-SECOND DAY OF DECEMBER, A.D. 2010, AT 10:42 O'CLOCK A.M.

4055140    8100

131119526

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 0758868

DATE: 09-23-13

PATENT
REEL: 050260 FRAME: 0824

RW00007572

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 10:42 AM 12/22/2010*
*FILED 10:42 AM 12/22/2010*
*SRV 101221480 - 4055140 FILE*

## SECOND AMENDED & RESTATED CERTIFICATE OF INCORPORATION

### of

### RavenWhite Inc.

\* \* \* \* \* \*

1. The present name of the Corporation is RavenWhite Inc., which is the name under which the Corporation was originally incorporated. The date of filing of the original Certificate of Incorporation of the Corporation with the Secretary of State of the State of Delaware was November 3, 2005.

2. The Certificate of Incorporation of the Corporation, as so amended too date, is hereby amended and restated as set forth in the Restated Certificate of Incorporation hereinafter provided for.

3. The provisions of the Certificate of Incorporation of the Corporation as heretofore amended and/or supplemented, and as herein amended, are hereby restated and integrated into the single instrument which is hereinafter set forth, and which is entitled the Second Amended & Restated Certificate of Incorporation of RavenWhite Inc., without any further amendment(s) other than the amendment(s) herein certified and without any discrepancy between the provisions of the certificate of incorporation as heretofore amended and supplemented and the provisions of the said single instrument hereinafter set forth.

4. The amendments and the restatement of the certificate of incorporation herein certified have been duly adopted by the stockholders in accordance with the provisions of Sections 242 and 245 of the General Corporation Law of the State of Delaware.

5. The Certificate of Incorporation of the Corporation, as amended and restated herein, shall at the effective time of this Second Amended & Restated Certificate of Incorporation, shall read as follows:

\* \* \* \* \* \* \*

FIRST.    The name of the corporation is **RavenWhite Security, Inc.,** (formerly RavenWhite Inc.) (the "Corporation").

SECOND.    The address, including street, number, city, and county, of the registered office of the corporation in the State of Delaware is 160 Greentree Drive, Suite 101, City of Dover, Delaware 19904; and the name of the registered agent of the corporation in the State of Delaware at such address is *National Registered Agents.* In Kent County.

THIRD.    The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

PATENT
REEL: 050260 FRAME: 0825

RW00007573

- 2 -

**FOURTH.** The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is Ten Million (10,000,000) shares, consisting of Nine Million (9,000,000) shares of Common Stock, with a par value of $.001 per share (the "Common Stock"), and One Million (1,000,000) shares of Preferred Stock, with a par value of $0.001 per share (the "Preferred Stock").

A description of the respective classes of stock and a statement of the designations, preferences, voting powers (or no voting powers), relative, participating, optional or other special rights and privileges and the qualifications, limitations and restrictions of the Preferred Stock and Common Stock are as follows:

**A.    PREFERRED STOCK**

The Preferred Stock may be issued in one or more series at such time or times and for such consideration or considerations as the Corporation's Board of Directors may determine. Each series of Preferred Stock shall be so designated as to distinguish the shares thereof from the shares of all other series and classes. Except as otherwise provided in this Certificate of Incorporation, different series of Preferred Stock shall not be construed to constitute different classes of shares for the purpose of voting by classes.

The Board of Directors is expressly authorized to provide for the issuance of all or any shares of the Preferred Stock in one or more series, each with such designations, preferences, voting powers (or no voting powers), relative, participating, optional or other special rights and privileges and such qualifications, limitations or restrictions thereof as shall be stated in the resolution or resolutions adopted by the Board of Directors to create such series, and a certificate of said resolution or resolutions shall be filed in accordance with the General Corporation Law of the State of Delaware. The authority of the Board of Directors with respect to each such series shall include, without limitation of the foregoing, the right to provide that the shares of each such series may: (i) have such distinctive designation and consist of such number of shares; (ii) be subject to redemption at such time or times and at such price or prices; (iii) be entitled to the benefit of a retirement or sinking fund for the redemption of such series on such terms and in such amounts; (iv) be entitled to receive dividends (which may be cumulative or non-cumulative) at such rates, on such conditions, and at such times, and payable in preference to, or in such relation to, the dividends payable on any other class or classes or any other series of stock; (v) be entitled to such rights upon the voluntary or involuntary liquidation, dissolution or winding up of the affairs, or upon any distribution of the assets of the Corporation in preference to, or in such relation to, any other class or classes or any other series of stock; (vi) be convertible into, or exchangeable for, shares of any other class or classes or any other series of stock at such price or prices or at such rates of exchange and with such adjustments, if any; (vii) be entitled to the benefit of such conditions, limitations or restrictions, if any, on the creation of indebtedness, the issuance of additional shares of such series or shares of any other series of Preferred Stock, the amendment of this Certification of Incorporation or the Corporation's By-Laws, the payment of dividends or the making of other distributions on, or the purchase, redemption or other acquisition by the Corporation of, any other class or classes or series of stock, or any other corporate action; (viii) be entitled to voting rights, special voting rights, or no voting rights, as may be set forth in the applicable instrument; or (ix) be entitled to such other preferences, powers, qualifications, rights and privileges, all as the Board of Directors may deem advisable and as are not inconsistent with law and the provisions of this Certificate of Incorporation.

**A.1.    Description of the Terms of the Series A Preferred Stock**

**1.    Description and Designation.** A total of Two Hundred Fifty Thousand (250,000) shares of the Corporation's previously undesignated Preferred Stock, $.001 par value, shall be designated as the

**PATENT**
**REEL: 050260 FRAME: 0826**

RW00007574

- 3 -

"Series A Preferred Stock." The deemed original issue price of the Series A Preferred Stock shall be $1.92 per share (the "Original Issue Price").

2.      **Participating Dividends on Cash Dividends.** In the event that the Board of Directors shall declare a cash dividend payable upon the then outstanding shares of Common Stock (*other than* a stock dividend on the Common Stock distributed solely in the form of additional shares of Common Stock), the holders of the Series A Preferred Stock shall be entitled to the amount of dividends on the Series A Preferred Stock as would be declared payable on the largest number of whole shares of Common Stock into which the shares of Series A Preferred Stock held by each holder thereof could be converted pursuant to the provisions of Section 5 hereof, such number determined as of the record date for the determination of holders of Common Stock entitled to receive such dividend. Such determination of "whole shares" shall be based upon the aggregate number of shares of Series A Preferred Stock held by each holder, and not upon each share of Series A Preferred Stock so held by the holder. Notwithstanding the foregoing, no cash dividend or other distribution or dividend of assets to the holders of the Common Stock (other than a stock split accomplished through a stock dividend) shall be authorized or effected without the approval or written consent of the holders of a majority of the outstanding shares of Series A Preferred Stock.

3.      **Liquidation, Dissolution or Winding Up.**

(a)      **Treatment at Liquidation, Dissolution or Winding Up.** In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, before any distribution or payment is made to any holders of Common Stock or any other class or series of capital stock of the Corporation designated to be junior to the Series A Preferred Stock (and subject to the liquidation rights and preferences of any class or series of Preferred Stock designated in the future to be senior to, or on a parity with the Series A Preferred Stock with respect to liquidation preferences), the holders of each share of Series A Preferred Stock shall be entitled to be paid first out of the assets of the Corporation available for distribution to holders of the Corporation's capital stock of all classes, whether such assets are capital, surplus or earnings, an amount equal to the Original Issue Price per share of Series A Preferred Stock held by any holder, plus any declared but unpaid dividends (the "Series A Preferred Liquidation Value").

If, upon liquidation, dissolution or winding up of the Corporation, the assets of the Corporation available for distribution to its stockholders shall be insufficient to pay the holders of the Series A Preferred Stock the full amounts to which they otherwise would be entitled, the holders of Series A Preferred Stock shall share ratably in any distribution of available assets pro rata in proportion to the respective liquidation preference amounts which would otherwise be payable upon liquidation with respect to the outstanding Series A Preferred Stock if all liquidation preference amounts with respect to such shares were paid in full, based upon the aggregate Series A Liquidation Value payable upon all shares of Series A Preferred Stock then outstanding.

(b)      **Treatment of Reorganization, Consolidations, Mergers and Sales of Assets.** Any of the following transactions shall be deemed a liquidation for purposes of this Section 3 if elected in writing by the holders of a majority of the outstanding shares of Series A Preferred Stock: (A) the acquisition of this Corporation by another entity by means of any business combination or series of business combinations (including, without limitation, any reorganization, merger or consolidation) that results in the transfer of fifty percent (50%) or more of the outstanding voting power of this Corporation; (B) any merger, reorganization, consolidation or acquisition of the outstanding capital stock of the Corporation in a business combination transaction or series of related transactions in which the stockholders of the Corporation prior to such business combination do not own a majority of the outstanding voting securities of the surviving corporation; (C) any merger, reorganization, consolidation or recapitalization transaction or transactions, whether or not the Corporation is the surviving or continuing corporation in such

PATENT
REEL: 050260 FRAME: 0827

RW00007575

- 4 -

transaction; provided that such transaction or series of related transactions shall not be deemed a liquidation if the stockholders of the Corporation immediately prior to such transaction or transactions will, immediately after such transaction or transactions, hold at least 50% of the voting power of the surviving, continuing or purchasing entity in substantially the same relevant proportions as existed prior to such transaction or series of transactions; or (D) a sale of all or substantially all of the assets of this Corporation (each of the foregoing, a "Business Combination").

For purposes hereof and Section 5(h), a Business Combination shall *not* include any reorganization, merger or consolidation involving (1) only a change in the state of incorporation of the Corporation, (2) a merger of the Corporation with or into a wholly-owned subsidiary of the Corporation that is incorporated in the United States of America, or (3) an acquisition, whether by merger, reorganization, consolidation or other form of business combination, of which the Corporation is substantively the acquiring and surviving corporation and operates as a going concern, of another corporation and does not involve (in a single transaction or series of interrelated transactions) a transfer of more than 51% of the voting power of the Corporation in a business combination (other than as may be part of a financing transaction).

(c)     **Distributions Other than Cash.** Whenever the distributions provided for in this Section shall be payable in property other than cash, the value of such distribution shall be the fair market value of such property as determined in good faith by the Board of Directors. All distributions (including distributions other than cash) made hereunder shall be made pro rata to the holders of Series A Preferred Stock.

4.     **Voting Power with Common Stock.**

(a)     **General Voting Power; Voting with Common Stock.** Except as otherwise expressly provided in this Section 4, each holder of Series A Preferred Stock shall be entitled to vote on all matters and shall be entitled to that number of votes equal to the largest number of whole shares of Common Stock into which such holder's shares of Series A Preferred Stock could be converted, pursuant to the provisions of Section 5 hereof, at the record date for the determination of stockholders entitled to vote on any matter or, if no such record date is established, at the date such vote is taken or any written consent of stockholders is solicited. Except as otherwise set forth herein, the holders of shares of Series A Preferred Stock and Common Stock shall vote together (or render written consents in lieu of a vote) as a single class on all matters submitted to the stockholders of the Corporation. Such determination of "whole shares" shall be based upon the aggregate number of shares of Series A Preferred Stock held by each holder, and not upon each share of Series A Preferred Stock so held by the holder.

(b)     **Election of Director by Series A Preferred Stock.** The holders of record of a majority of the outstanding shares of Series A Preferred Stock, exclusively and as a separate class, shall be entitled to elect one (1) director of the Corporation (the "Series A Director"). The Series A Director may be removed with or without cause, by and only by, the affirmative vote of the holders of majority of the outstanding shares of Series A Preferred Stock, given either at a special meeting of such stockholders duly called for that purpose or pursuant to a written consent of stockholders. At any meeting held for the purpose of electing a director, the presence in person or by proxy of the holders of a majority of the outstanding shares of the Series A Preferred Stock shall constitute a quorum for the purpose of electing such director. A vacancy in the Series A Director shall be filled by the holders of a majority of the outstanding shares of Series A Preferred Stock.

5.     **Conversion Rights.** The holders of the Series A Preferred Stock shall have the following rights with respect to the conversion of such shares into shares of Common Stock:

PATENT
REEL: 050260 FRAME: 0828

RW00007576

- 5 -

      (a)    <u>General</u>. Subject to and in compliance with the provisions of this Section 5, any shares of the Series A Preferred Stock may, at the option of any holder, be converted at any time into fully-paid and non-assessable shares of Common Stock. The number of shares of Common Stock to which a holder of Series A Preferred Stock shall be entitled to receive upon conversion shall be determined as provided in Section 5(b).

      (b)    <u>Applicable Conversion Rate</u>. The Series A Preferred Stock shall be converted into shares of Common Stock upon the closing of an initial public offering in which the Corporation receives $20,000,000 (or more) in gross proceeds (a "<u>Conversion Event</u>"). Initially, each share of Series A Preferred Stock shall convert into one share of Common Stock, subject to adjust as set forth herein.

      Upon the occurrence of the Conversion Event, the holders of the Series A Preferred Stock shall surrender the certificates representing such shares to the Corporation in exchange for shares of Common Stock. Thereupon, there shall be issued and delivered to such holder a certificate for the number of shares of Common Stock into which the shares of Series A Preferred Stock so surrendered were convertible on the date on which such conversion is deemed to have occurred. The Corporation shall not be obligated to issue such certificates unless certificates evidencing the shares of Series A Preferred Stock being converted are either delivered to the Corporation, or the holder notifies the Corporation that such certificates have been lost, stolen or destroyed and executes an agreement satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it.

      (c)    <u>Adjustments to Series Conversion Rate for a Stock Dividend or Stock Split</u>. Upon the happening of a Common Stock Recapitalization (as hereinafter defined), the conversion rate of the Series A Preferred Stock shall be equitably adjusted as if the conversion occurred immediately prior to the Common Stock Recapitalization. A "<u>Common Stock Recapitalization</u>" shall mean (i) the issuance of additional shares of Common Stock as a stock dividend or other distribution on outstanding shares of Common Stock, (ii) a subdivision of outstanding shares of Common Stock into a greater number of shares of Common Stock, or (iii) a combination or reverse stock split of outstanding shares of Common Stock into a smaller number of shares of the Common Stock.

      (d)    <u>Dividends Other Than Common Stock Dividends</u>. In the event the Corporation shall make or issue, or shall fix a record date for the determination of holders of Common Stock entitled to receive a dividend or other distribution (other than a distribution in liquidation or other distribution otherwise provided for herein) with respect to the Common Stock payable in (i) securities of the Corporation <u>other than</u> shares of Common Stock, or (ii) other assets (excluding cash dividends or distributions), then and in each such event provision shall be made so that the holders of the Series A Preferred Stock shall receive upon conversion thereof in addition to the number of shares of Common Stock receivable thereupon, the number of securities or such other assets of the Corporation which they would have received had their Series A Preferred Stock been converted into Common Stock (in accordance with paragraph (b) above) on the date of such event and had they thereafter, during the period from the date of such event to and including the Conversion Date (as that term is hereafter defined in Section 5(i)), retained such securities or such other assets receivable by them during such period, giving application to all other adjustments called for during such period under this Section 5 with respect to the rights of the holders of the Series A Preferred Stock.

      (e)    <u>Capital Reorganization or Reclassification</u>. If the Common Stock issuable upon the conversion of the Series A Preferred Stock shall be changed into the same or different number of shares of any class or classes of capital stock, whether by capital reorganization, recapitalization, reclassification or otherwise (other than a subdivision or combination of shares or stock dividend provided for elsewhere in this Section 5, or the sale of all or substantially all of the Corporation's capital stock or assets to any other person), then and in each such event the holders of Series A Preferred Stock shall have the right thereafter to convert such share into the kind and amount of shares of capital stock and other securities

PATENT
REEL: 050260 FRAME: 0829

RW00007577

- 6 -

and property receivable upon such reorganization, recapitalization, reclassification or other change by the holders of the number of shares of Common Stock into which such shares of Series A Preferred Stock might have been converted immediately prior to such reorganization, recapitalization, reclassification or change, all subject to further adjustment as provided herein.

(f) **Capital Reorganization, Merger or Sale of Assets.** Subject to the provisions of Section 3(b), if at any time or from time to time there shall be a capital reorganization of the Common Stock (other than a subdivision, combination, recapitalization, reclassification or exchange of shares provided for elsewhere in this Section 5) or a merger or consolidation of the Corporation with or into another corporation (other than a merger or reorganization involving only a change in the state of incorporation of the Corporation or the acquisition by the Corporation of other businesses where the Corporation survives as a going concern), or the sale of all or substantially all of the Corporation's capital stock or assets to any other person, then, as a part of such reorganization, merger, or consolidation or sale, provision shall be made so that the holders of the Series A Preferred Stock shall thereafter be entitled to receive upon conversion of the Series A Preferred Stock the number of shares of stock or other securities or property (including cash) of the Corporation, or of the successor corporation resulting from such merger, consolidation or sale, to which such holder would have been entitled if such holder had converted its shares of Series A Preferred Stock immediately prior to such capital reorganization, merger, consolidation or sale. In any such case, appropriate adjustment shall be made in the application of the provisions of this Section to the end that the provisions of this Section (including adjustment of the number of shares of Common Stock or other securities issuable upon conversion of such shares of Series A Preferred Stock) shall be applicable after that event in as nearly equivalent a manner as may be practicable.

(g) **Certificate as to Adjustments; Notice by Corporation.** In each case of an adjustment or readjustment of the Series A Preferred Stock, the Corporation at its expense will furnish each holder of Series A Preferred Stock with a certificate prepared by the President, Treasurer or Chief Financial Officer of the Corporation, showing such adjustment or readjustment, and stating in detail the facts upon which such adjustment or readjustment is based.

(h) **Exercise of Conversion Privilege.** To exercise its conversion privilege, a holder of Series A Preferred Stock shall surrender the certificate(s) representing the shares being converted to the Corporation at its principal office, and shall give written notice to the Corporation at that office that such holder elects to convert such shares. Such notice shall also state the name or names (with address or addresses) in which the certificate(s) for shares of Common Stock issuable upon such conversion shall be issued. The certificate(s) for shares of Series A Preferred Stock surrendered for conversion shall be accompanied by proper assignment thereof to the Corporation or in blank. The date when such written notice is received by the Corporation, together with the certificate(s) representing the shares of Series A Preferred Stock being converted, shall be the "Conversion Date." As promptly as practicable after the Conversion Date, the Corporation shall issue and shall deliver to the holder of the shares of Series A Preferred Stock being converted, or on its written order, such certificate(s) as it may request for the number of whole shares of Common Stock issuable upon the conversion of such shares of Series A Preferred Stock in accordance with the provisions of this Section 5, and cash, as provided in Section 5(i), in respect of any fraction of a share of Common Stock issuable upon such conversion. Such conversion shall be deemed to have been effected immediately prior to the close of business on the Conversion Date, and at such time the rights of the holder as holder of the converted shares of Series A Preferred Stock shall cease and the person(s) in whose name(s) any certificate(s) for shares of Common Stock shall be issuable upon such conversion shall be deemed to have become the holder(s) of record of the shares of Common Stock represented thereby.

(i) **Cash in Lieu of Fractional Shares.** No fractional shares of Common Stock or scrip representing fractional shares shall be issued upon the conversion of shares of Series A Preferred Stock. Instead of any fractional shares of Common Stock which would otherwise be issuable upon conversion of

**PATENT**
**REEL: 050260 FRAME: 0830**

RW00007578

- 7 -

Series A Preferred Stock, the Corporation shall pay to the holder of the shares of Series A Preferred Stock which were converted a cash adjustment in respect of such fractional share in an amount equal to the same fraction of the market price per share of the Common Stock (as determined in a reasonable manner prescribed by the Board of Directors) at the close of business on the Conversion Date.

(j)      **Reservation of Common Stock.** The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock, solely for the purpose of effecting the conversion of the shares of the Series A Preferred Stock, such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of the Series A Preferred Stock (including any shares of Series A Preferred Stock represented by any warrants, options, subscription or purchase rights for the Series A Preferred Stock), and if at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all then outstanding shares of the Series A Preferred Stock (including any shares of Series A Preferred Stock represented by any warrants, options, subscriptions or purchase rights for the Series A Preferred Stock), the Corporation shall use all reasonable efforts and take such action as may be necessary to increase its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose.

6.      **Notices of Record Date**. In the event of any:

(a)      taking by the Corporation of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any dividend or other distribution, or any right to subscribe for, purchase or otherwise acquire any shares of capital stock of any class or any other securities or property, or to receive any other right, or

(b)      capital reorganization of the Corporation, any reclassification or recapitalization of the capital stock of the Corporation, any merger or consolidation of the Corporation, or any transfer of all or substantially all of the assets of the Corporation to any other Corporation, or any other entity or person, or

(c)      voluntary or involuntary dissolution, liquidation or winding up of the Corporation,

then and in each such event the Corporation shall mail or cause to be mailed to each holder of Series A Preferred Stock a notice specifying (i) the date on which any such record is to be taken for the purpose of such dividend, distribution or right and a description of such dividend, distribution or right, (ii) the date on which any such reorganization, reclassification, recapitalization, transfer, consolidation, merger, dissolution, liquidation or winding up is expected to become effective, and (iii) the time, if any, that is to be fixed, as to when the holders of record of Common Stock (or other securities) shall be entitled to exchange their shares of Common Stock (or other securities) for securities or other property deliverable upon such reorganization, reclassification, recapitalization, transfer, consolidation, merger, dissolution, liquidation or winding up. Such notice shall be mailed by express overnight courier service, at least ten (10) days prior to the date specified in such notice on which such action is to be taken.

B.      **COMMON STOCK**

1.      **Relative Rights of Preferred Stock and Common Stock.** All preferences, voting powers, relative, participating, optional or other special rights and privileges, and qualifications, limitations, or restrictions of the Common Stock are expressly made subject and subordinate to those that may be fixed with respect to any series of the Preferred Stock designated.

2.      **Voting Rights.** Except as otherwise required by law, this Certificate of Incorporation or the terms of any series of Preferred Stock hereafter created, each holder of Common Stock shall have one

**PATENT**
**REEL: 050260 FRAME: 0831**

RW00007579

- 8 -

vote in respect of each share of stock held by the stockholder of record on the books of the Corporation for the election of directors and on all matters submitted to a vote of stockholders of the Corporation. Irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of Delaware, the number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding and required to be reserved for issuance upon conversion or exchange of, or acquisition of rights to acquire, any outstanding shares of capital stock, and rights to purchase, acquire or subscribe for shares of capital stock, including options, warrants and other Common Stock equivalents) by the affirmative vote of the holders of a majority of the outstanding shares of capital stock of all classes and series entitled to vote thereon, voting together as a single class.

     3.     **Dividends.** Subject to the preferential rights of any series of the Preferred Stock, if any, the holders of shares of Common Stock shall be entitled to receive, when and if declared by the Board of Directors, out of the assets of the Corporation which are by law available therefor, dividends payable either in cash, in property or in shares of capital stock.

     4.     **Dissolution, Liquidation or Winding Up.** In the event of any dissolution, liquidation or winding up of the affairs of the Corporation, after distribution in full of the preferential amounts, if any, to be distributed to the holders of shares of the Preferred Stock, holders of Common Stock shall be entitled, unless otherwise provided by this Certificate of Incorporation, to receive all of the remaining assets of the Corporation of whatever kind available for distribution to stockholders ratably in proportion to the number of shares of Common Stock held by them respectively, and subject to the preferential or participating rights of the Preferred Stock.

     **FIFTH.**     The Corporation is to have perpetual existence.

     **SIXTH.**     In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware:

     A.     The Board of Directors of the Corporation is expressly authorized to adopt, amend or repeal the By-Laws of the Corporation.

     B.     Elections of directors need not be by written ballot unless the By-Laws of the Corporation shall so provide.

     C.     The books of the Corporation may be kept at such place within or without the State of Delaware as the By-Laws of the Corporation may provide or as may be designated from time to time by the Board of Directors of the Corporation.

     **SEVENTH.**     1.     **Elimination of Personal Liability.** The Corporation eliminates the personal liability of each member of its Board of Directors to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided, however, that, to the extent provided by applicable law, the foregoing shall not eliminate the liability of a director (i) for any breach of such director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of Title 8 of the Delaware Code or (iv) for any transaction from which such director derived an improper personal benefit. No amendment to or repeal of this provision shall apply to or have any effect on the liability or alleged liability of any director for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

If the Delaware General Corporation Law is amended in the future to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Delaware General Corporation Law, as so amended from time to time.

**PATENT**
**REEL: 050260 FRAME: 0832**

RW00007580

- 9 -

Any repeal or modification of this Article shall not increase the personal liability of any director of this Corporation for any act or occurrence taking place prior to such repeal or modification, or otherwise adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

2. **Indemnification**.

(a) **Right to Indemnification.** Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*"), by reason of the fact that he or she is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director, officer or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans (hereinafter an "indemnitee"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than such law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection therewith. Such indemnification shall continue as to an indemnitee who has ceased to be a director, officer or agent and shall inure to the benefit of the indemnitee's heirs, executors and administrators; provided, however, that except as provided in paragraph (b) hereof with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board of Directors of the Corporation. The right to indemnification conferred in this Section shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending any such proceeding in advance of its final disposition (hereinafter an "advancement of expenses"); provided, however, that, if the Delaware General Corporation Law so requires, an advancement of expenses incurred by an indemnitee in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such indemnitee, including without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that such indemnitee is not entitled to be indemnified for such expenses under this Section, the Delaware General Corporation Law or otherwise (hereinafter an "undertaking").

(b) **Right of Indemnitee to Bring Suit.** If a claim under paragraph (a) of this Section is not paid in full by the Corporation within ninety days after a written claim has been received by the Corporation, the indemnitee may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim. If successful in whole or in part in any such suit or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit. In (i) any suit brought by the indemnitee to enforce a right to indemnification hereunder (but not in a suit brought by the indemnitee to enforce a right to an advancement of expenses) it shall be a defense that, and (ii) any suit by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking the Corporation shall be entitled to recover such expenses upon a final adjudication that the indemnitee has not met the applicable standard of conduct set forth in the Delaware General Corporation Law. Neither the failure of the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the indemnitee is proper in the circumstances because the indemnitee has met the applicable standard

**PATENT**
**REEL: 050260 FRAME: 0833**

RW00007581

- 10 -

of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the Corporation (including its Board of Directors, independent legal counsel, or its stockholders) that the indemnitee has not met such applicable standard of conduct, shall create a presumption that the indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the indemnitee, be a defense to such suit. In any suit brought by the indemnitee to enforce a right hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is entitled to be indemnified or to such advancement of expenses under this Section or otherwise shall be on the indemnitee. No potential indemnitee shall be entitled to advancement of expenses under this Certificate of Incorporation or the By-Laws in any action involving a proceeding by the Corporation against the indemnitee for any claim by the Corporation involving a breach of fiduciary duty of the indemnitee to the Corporation, gross negligence, bad faith, intentional misconduct or unlawful conduct.

(c) **Non-Exclusivity of Rights.** The rights to indemnification and to the advancement of expenses conferred in this Section shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, this Certificate of Incorporation, By-law, contract or agreement, vote of stockholders or disinterested directors or otherwise.

(d) **Insurance.** The Corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

(e) **Indemnification of Employees or Agents of the Corporation.** The Corporation may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification and to the advancement of expenses, to any employee or agent of the Corporation to the fullest extent of the Provisions of this Section with respect to the indemnification and advancement of expenses of directors, and officers of the Corporation.

EIGHTH.    The Corporation reserves the right to amend or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon a stockholder herein are granted subject to this reservation.

NINTH.    In the event that a director of the Corporation who is also a partner, manager or officer of an entity that is a holder of Preferred Stock and that is in the business of investing and reinvesting in other companies or entities, or an employee or principal of an entity that manages or controls such an entity (each, a "Fund"), acquires knowledge of a potential transaction or matter in such person's capacity as a partner, principal or employee of the Fund or the manager or general partner of the Fund and such potential transaction may be a corporate opportunity for both the Corporation and such Fund (a "Corporate Opportunity"), then (i) such Corporate Opportunity shall belong to such Fund, (ii) by providing such Corporate Opportunity to the Fund such director shall, to the extent permitted by law, have fully satisfied and fulfilled his fiduciary duty to the Corporation and its stockholders with respect to such Corporate Opportunity, and (iii) the Corporation, to the extent permitted by law, waives any claim that such Corporate Opportunity constituted a corporate opportunity that should have been presented to the Corporation; *provided, however*, that such director acts in good faith and such opportunity was not offered to such director in his or her capacity as a director of the Corporation. The Fund shall provide written notice to the Corporation to the extent a Fund makes an investment in a corporation or other business or commercial venture which is competitive to the Corporation, in the reasonable judgment of that Fund.

****************************

PATENT
REEL: 050260 FRAME: 0834

RW00007582

- 11 -

**IN WITNESS WHEREOF**, the Corporation has caused this Second Amended and Restated Certificate of Incorporation to be signed by Markus Jakobsson, its President, as of this 22nd day of December, 2010.

RavenWhite Inc.

By: _____

SIGNATURE

*Markus Jakobsson, President*

RECORDED: 05/03/2019    REEL: 050260 FRAME: 0835

RW00007583