**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC<br><br>*Plaintiff,*<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00688-JRG-RSP<br>(*Lead Case*)<br><br><br>JURY TRIAL DEMANDED |
| RAVENWHITE LICENSING LLC<br><br>*Plaintiff,*<br><br>v.<br><br>WALMART INC. and WAL-MART STORES TEXAS, LLC<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-cv-00689-JRG-RSP<br>(*Member Case*)<br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INELIGIBILITY OF THE
ASSERTED PATENTS UNDER 35 U.S.C. § 101**

███████████████████████████

**TABLE OF CONTENTS**

I.     Introduction ................................................................................................ 1

II.    Statement of Issues ..................................................................................... 2

III.   Background.................................................................................................. 2

       A.  U.S. Patent No. 11,562,402 ................................................................ 2

       B.  U.S. Patent No. 10,594,823 ................................................................ 5

       C.  Walmart's Motion to Dismiss ............................................................ 6

IV.    Statement of Undisputed Material Facts ................................................... 7

V.     Legal Framework........................................................................................ 8

VI.    Argument .................................................................................................... 8

       A.  The '402 Patent ................................................................................... 8
           1.   Claims 10 and 19 are representative of all claims of the '402 Patent. ........................ 9
           2.   *Alice* Step One: Claims 10 and 19 of the '402 Patent are directed to the abstract idea of targeted advertising. ............................ 10
           3.   *Alice* Step Two: The claims of the '402 Patent contain no inventive concept sufficient to transform the abstract idea into patent-eligible subject matter. ................................ 15

       B.  The '823 Patent ................................................................................... 18
           1.   Claim 1 is representative of all claims of the '823 Patent........................................ 18
           2.   *Alice* Step One: The '823 Patent is direct to storing and using cookies to identify a client device or user. ................................ 19
           3.   *Alice* Step Two: The claims do not recite any inventive concept. ............................ 25

VII.   Conclusion................................................................................................. 27

TABLE OF AUTHORITIES

**Cases**

*AI Visualize, Inc. v. Nuance Comm'ns, Inc.*,
   97 F.4th 1371 (Fed. Cir. 2024) ...................................................................... 20

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).......................................................................... 8, 10, 15, 17

*Bridge & Post, Inc. v. Verizon Communications, Inc.*,
   778 F. App'x 882 (Fed. Cir. 2019) ............................................................. 11, 16

*Broadband iTV, Inc. v. Amazon.Com, Inc.*,
   113 F.4th 1359 (Fed. Cir. 2024) .............................................................. 1, 8, 11

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ...................................................................... 26

*BSG v Buyseasons*,
   899 F.3d 1281 (Fed. Cir. 2018) ...................................................................... 25

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ........................................................................ 9

*Customedia Technologies., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020) ................................................................. 11, 12

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)......................................................................................... 8

*Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020) ........................................................... 21, 22, 23

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ........................................................................ 9

*Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ...................................................................... 19

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) ...................................................................... 12

*GoTV Streaming, LLC v. Netflix, Inc.*,
   166 F.4th 1053 (Fed. Cir. 2026) ..................................................................... 20

*In re TLI Communs. LLC v. AV Auto., LLC (In re TLI Communs. LLC Patent Litig.)*,
   823 F.3d 607 (Fed. Cir. 2016) ........................................................................ 16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................. 9, 11, 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ...................................................................... 19

*Miller Mendel, Inc. v. City of Anna*,

████████████████████████████████

107 F.4th 1345 (Fed. Cir. 2024) ......................................................................... 20

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025) .......................................................................... 10

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........................................................................... 26

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ...................................................................... 14, 26

*Specialized Monitoring Sols., LLC v. ADT LLC*,
367 F. Supp. 3d 575 (E.D. Tex. 2019) ................................................................. 26

*Universal Secure Registry LLC v. Apple Inc. ("USR")*,
10 F.4th 1342 (Fed. Cir. 2021) ........................................................... 15, 21, 23, 25

**Statutes**

35 U.S.C. § 101 ........................................................................................... passim

## I.    INTRODUCTION

All asserted claims of both U.S. Patent No. 11,562,402 ("the '402 Patent") and U.S. Patent No. 10,594,823 ("the '823 Patent") are ineligible as a matter of law under 35 U.S.C. § 101 because they are directed to abstract ideas under *Alice* Step One. Further, neither patent embodies an inventive technological concept under *Alice* Step Two.

The '402 Patent is directed towards the abstract idea of targeted advertising. The Federal Circuit has repeatedly recognized that targeted advertising is a fundamental abstract idea that humans have long performed. *Broadband iTV, Inc. v. Amazon.Com, Inc.*, 113 F.4th 1359, 1371 (Fed. Cir. 2024) (citing cases). Moreover, the claims of the '402 Patent fail to recite an inventive concept that provides something more than the abstract concept; instead, each claim recites only functional determination steps specified at a high level of generality. The '402 claims do not provide any particular technological improvement and the only structure recited is a general-purpose computer system with "a processor" and "a memory". Thus, the '402 patent claims fail both Steps One and Two of the *Alice* test and are ineligible under § 101.

The '823 Patent is directed towards the abstract idea of using cookies to identify a device or user. The claims do not recite a specific technical solution to overcome a technical problem that could render such claims patent eligible under *Alice* Step One. Rather, the '823 Patent itself acknowledges that it simply rearranges existing, well-known elements of the prior art (*i.e.*, cookies) to identify a client device. The undisputed evidence confirms that the use of cookies for this purpose was well-known. The claims also fail to recite an inventive concept that would confer eligibility on the otherwise abstract concept under *Alice* Step Two. None of the claims are inherently related to any improvement in computer technology. The only structures recited are generic computer components (for example, a "cookie," "a processor," "a server," "a browser,"

1

"a memory"). All claims of the '823 Patent are therefore ineligible under § 101.

The Court previously denied Walmart's motion to dismiss on § 101 grounds at the pleading stage, relying on since-rejected claim interpretations propounded by RavenWhite that sought to impute technical improvements into the claims. With respect to the '402 Patent, RavenWhite argued that the claimed "clustering" was a technological solution that involved machine learning. And with respect to the '823 Patent, RavenWhite argued that the claims invented a new type of cookie that allowed improvements in authenticating users of a computer. The Court relied on these representations to deny Walmart's motion to dismiss.

Importantly, the Court later rejected both of those arguments during claim construction. RavenWhite can no longer contend that these features imbue the claims with new or inventive concepts. Instead, in view of the Court's Claim Construction Order, both patents are directed to an abstract idea, and neither provides an inventive concept that could render its claims patent eligible. Accordingly, Walmart respectfully requests that the Court grant summary judgment and find the asserted claims invalid under 35 U.S.C. § 101.

## II.    STATEMENT OF ISSUES

Whether, under the Court's claim constructions, the asserted claims of the '402 Patent and the '823 Patent are invalid under 35 U.S.C. § 101 because they are directed to abstract ideas and recite no inventive concepts.

## III.    BACKGROUND

### A.    U.S. Patent No. 11,562,402

The '402 Patent is directed toward a targeted Internet advertising method in which "quality level[s]" are calculated for users to whom advertisements are to be shown. Ex. A ("'402 Patent), cover. Advertisers bid for the right to display internet ads to users based on quality level. '402 Patent, Abstract, 1:21–29, 3:1–14. The '402 Patent suggests that "quality levels" are related

2

to the quality of a user for purposes of advertising, *i.e.*, how likely a user is to make a purchase, referred to in the '402 patent as a "conversion assessment." *Id.*, 3:56–61, 6:1–51, 8:7–9:2, 10:10–13, 14:61–16:19.

The claims of the '402 Patent require determining first and second quality levels and displaying ads to a user based at least in part on one of the first and second quality levels. *Id.* at 18:51-19:30 (Claim 10), Ex. D ¶524. The claims also recite a number of additional concepts, some of which are used in determining the first or second quality levels, and others of which are determined, calculated and/or stored, but not used for any purpose in the claims. '402 Patent at 18:51-19:30 (Claim 10); Ex. D ¶524.

The '402 Patent also claims that quality levels are determined based on several factors, including determining whether a need associated with a user profile has been met for an interest category, an estimate of a likelihood of an event such as a conversion or a purchase, and a conversion assessment. '402 Patent, cls. 1, 8, 9; Ex. D ¶535. The '402 Patent suggests that a determination that a need has been met can be made based on user searches or purchases. '402 Patent, 5:31–50.

The '402 Patent also claims "determining of the first quality level is based at least in part on a unique identifier and clustering," *i.e.*, the quality level is determined based on a unique user ID, which is itself determined by a clustering technique. *See id.*, 3:26–44, 11:40–55, 12:46–13:9, Fig. 6. The '402 Patent describes clustering generally as a technique to ascertain a unique user of a device that has multiple users, based on the users' characteristics. *Id.*, 12:63–13:9. By clustering aspects of a user's behavior, on an X and Y-axis for example (FIG. 6), according to dimensions such as "time, distance, and session click-through rate . . . interest of different topics, search terms, and average time spent per page," the '402 patent states "a clustering of behavior

3

can be performed for each device, where a device may correspond to multiple users, and each user may correspond to multiple personae." *Id.*, 12:46–13:9.

The '402 Patent claims also that "at least one of the first quality level or the second quality level is determined with respect to the advertisement." *Id.*, cl. 6. The '402 patent suggests the quality level is determined with respect to the product category of the advertisement eventually served to the user. *Id.*, 5:51–6:17 (the conversion assessment, a basis of the quality level, is made as to the product category of the advertisement).

The specification confirms that the claimed processes and components are entirely conventional. First, in all instances, the claimed steps are those that have long been performed by human minds in the advertising world ("determining a [] quality level," "determining … an indication of interest," "storing … the indication of interest," "determining … that a need [] has been met," "determining a [] quality level," and "displaying an advertisement"). Second, no claim recites any specific structure; some claims recite no structure whatsoever (for example, claim 19), and for those claims that do, the recited structure is nothing more than generic computer components ("a processor" and "a memory"). There is no suggestion in the '402 Patent that any of these structures were a technological improvement to solve a problem; to the contrary, the specification defines "processor" as a generic computer processor: "as used herein, the term 'processor' refers to one or more devices, circuits, and/or processing cores configured to process data, such as computer program instructions." *Id.* at 1:67-2:2. The claimed "memory" is described as "a general component . . . temporarily configured to perform the task." *Id.*, 1:62-66. Similarly, the advertising platform (*i.e.*, server) may comprise "standard commercially available server hardware." *Id.*, 2:53-59. The '402 Patent adds that "[t]hese details are provided for the purpose of example and the invention may be practiced according to claims without all of these

4

specific details." *Id.*, 2:13-16; *see also id.*, 17:46-51.

> **B.**     **U.S. Patent No. 10,594,823**

The '823 Patent "relates generally to client-server communications and more specifically to causing a browser to store information in a browser storage area of a client device." Ex. B ("'823 Patent") at 1:31-34. In a preferred embodiment, the information stored in the browser storage area of the client device includes cache cookies, which, unlike a traditional cookie, "cannot be blocked or cleared via spyware or a browser setting." *Id.*, 5:21-22. The cache cookie is similar to a standard cookie in that it can identify the client device. *Id.*, 5:16-18. For example, when "browser 116 establishes a second network session with the server 104 ... the server 104 'reads' the data (the cache cookie 174) ... to identify the client device." *Id.*, 5:29-34.

According to the '823 Patent specification, all components and processes used in the claimed system were routine and conventional. With respect to the "receive network resource request" step, the patent acknowledges that using and storing cookies associated with website resources via a browser was "typical." *See id.*, 1:35-45 ("A user typically uses a Web browser … to access a Web page over the Internet. … When the user accesses the same Web page at a later time, the server may … customize the Web page for the user."), 1:50-52 (a typical browser would send a cookie "back to the server each time the browser request[ed] a Web page from the server."), 1:55-65 ("This customization of a Web page is typically the result of cookies. A cookie is a message transmitted to a browser by a server. The message can include user-specific identifiers or personal information about the user. The browser typically stores the message in a text file. The message (*i.e.*, cookie) is then sent back to the server each time the browser requests a Web page from the server."), 4:56-5:9 (providing "a brief background of the browser storage area 170 and how a browser typically uses its browser storage area"); *see also id.*, 1:31-2:10. Similarly, the specification makes clear that "perform[ing] [an] identification" and "performing a

determination" based on cookies was also common and well-known. *Id.*, 1:47-48 ("The message [cookie] can include user-specific identifiers or personal information about the user"), 1:53-57 (such cookies encode the user's name to "enable[e] the server to identify [the user] automatically"), 2:5-10 ("Further, the identification of a user may provide security benefits. . . . Cookies enable the Web page to display specific information (e.g., username, password, or home address) about a user to the user and not to other users.").

## C. Walmart's Motion to Dismiss

Walmart originally moved to dismiss RavenWhite's complaint because both patents are ineligible under 35 U.S.C. § 101. Dkt. No. 33 at 1. As part of its motion, Walmart argued that no claim construction was required to resolve its motion and that the claims of both patents only recited conventional elements. *Id.* at 29-30.

In its opposition, though RavenWhite did not explicitly provide any constructions, Dkt. No. 52 at 17, 26, it argued that certain claim elements of its patents rendered the claims eligible. With respect to the '402 Patent, RavenWhite argued that the patent and its pleading showed the claimed "clustering" was a "specific, detailed algorithm" that enables "machine learning technology" to deliver targeted advertisements. *Id.* at 22. With respect to the '823 Patent, RavenWhite argued and pleaded that the patent claimed a "new type of cookie" that was not known in the art. *Id.* at 12-14.

In light of these arguments, and the facts as plead by RavenWhite's complaint, the Court issued its Report and Recommendation recommending that Walmart's motion to dismiss be denied. Dkt. No. 123 at 7. With respect to the '402 Patent, the Court concluded under Alice Step One that "[w]hile computer-based targeted advertising is a 'fundamental practice, long prevalent in our system,' the '402 Patent examiner specifically identified 'clustering' in its § 101 analysis to find patentability. This 'technological solution,' which applies 'machine learning' to the

problem of targeted advertising suffices to demonstrate the '402 Patent's patentability." *Id.* at 5 (citation omitted).

With respect to the '823 Patent, the Court found that "Plaintiff's complaint had pleaded sufficient facts to demonstrate that the '823 Patent is not directed at a patent ineligible concept. While the '823 Patent might not improve how computers operate, it specifically creates a new type of cookie that better identifies individual users for 'website customization' and 'fraud prevention.'" *Id.* at 6. The Court concluded that "[b]ecause of these improvements, the '823 Patent rises above ineligibility." *Id.* at 7. The Court adopted the Report and Recommendation over Walmart's objections. Dkt. No. 131.

After the Report and Recommendation, the Court issued its claim construction order resolving the parties' disputes over both the clustering and first and second cookie terms that were at issue in the motion to dismiss. Dkt. No. 128 at 6-12, 36-39. Contrary to RavenWhite's arguments and complaint, the Court concluded that neither term was narrowly directed towards a specific technological innovation. The Court determined that "clustering" as used in the '402 Patent means "grouping based on analysis of data indicative of user behavior," and the "second cookie of a second type different from the first type" as used in the '823 Patent only differs from the first cookie "with respect to how they are accessed by a server." *Id.* 12, 39.

## IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The concept of targeted advertising existed well before the '402 Patent, and the inventors of the '402 Patent did not invent targeted advertising. Ex. D ¶856.

2.      The concept of clustering existed well before the '402 Patent, and the inventors of the '402 Patent did not invent clustering. Ex. D ¶866-881.

3.      The concept of cache cookies existed before the '823 Patent, and the inventors of the '823 patent did not invent cache cookies. EX. D ¶504; *see generally id.* ¶¶91-117.

███████████████████████

4.      The concept of using multiple cookies to identify a user or a device existed before the '823 Patent and the inventors of the '823 Patent did not invent the use of multiple cookies in a single system. Ex. D ¶495.

5.      The '823 patent claims do not recite and are not limited to the use of cache cookies. Ex. D ¶505; *see also* Ex. H at 11-12 (RavenWhite's infringement expert asserting ███████████

███████████████████████████████████████).

## V.      LEGAL FRAMEWORK

As the Court is aware, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Determining whether a claim is impermissibly directed to an abstract idea involves two steps. First, the court determines whether the claims at issue are directed to an abstract idea. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Second, if so, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18.

## VI.     ARGUMENT

The claims of both the '402 and '823 Patents are invalid under 35 U.S.C. § 101 because, as the complete record now establishes, they fail at both steps of the *Alice* test.

### A.      The '402 Patent

The '402 Patent's claims are directed to the idea of targeted advertising, which the Court recognized is an idea that has long been held to be abstract. Dkt. No. 123 at 5 ("computer-based targeted advertising is a fundamental practice, long prevalent in our system") (quotation omitted); *see also Broadband iTV, Inc. v. Amazon.Com, Inc.*, 113 F.4th 1359, 1371 (Fed. Cir. 2024) (citing cases). Now, with the benefit of a complete record and the Court's claim

construction, it is clear that the claims of the '402 Patent are not directed to any particular "technological solution" because the claimed "clustering" is generic and conventional.

### 1. Claims 10 and 19 are representative of all claims of the '402 Patent.

The claims of the '402 Patent are directed only to the abstract idea of using user information to deliver targeted advertisements. Representative[1] claims 10 and 19 are the only asserted independent claims, and they include nearly identical elements. Specifically, they claim a "system" or a "computer program product" that execute the exact same steps.

Dependent claims 11-15 and 18 do not add anything inventive to the claims. Instead, these claims merely "recite well-known, routine, and conventional functions of . . . computers." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). The dependent claims recite similar results-oriented (and thus ineligible) language as independent claims 10 and 19 of the '402 Patent. None of the dependent claims recite any additional specific structure whatsoever; they merely limit the independent claims "to a particular field of use or technological environment," which does not confer eligibility. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Specifically, claims 10 and 19 require "determin[e/ing] an indication of interest in a second category," which is insubstantially different from claim 11 that requires "the second quality level is determined with respect to the second category." Similarly, claim 12 requires that a quality level "is based at least in part on an assessment of a purchase likelihood associated with the user profile," which is insubstantially different from claim 10 and 19's requirement that a quality level be "based at least in part on a conversion assessment associated with the user

---

[1] In the motion to dismiss, RavenWhite did not dispute that claim 19 is representative of the claims of the '402 Patent. Dkt. No. 123 at 4.

profile." Claim 13 requires that "the purchase likelihood is determined relative to the advertisement," which is similar to claims 10 and 19 which recite "display[ing] an advertisement to the user based at least in part on at least one of the first quality level or the second quality level." Claim 14 requires the generic and unqualified use "of machine learning" for ascertaining one of the quality levels, which adds little to the requirement in claims 10 and 19 to "determine a first quality level and determine a second quality level" and does not make the claim patent eligible. *See Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025) (The "argument that its patents are eligible simply because they introduce machine learning techniques to the fields of event planning and creating network maps directly conflicts with our § 101 jurisprudence."). And claim 15 requires that a quality level be "with respect to the advertisement," which is insubstantially different from claim 10 and 19's requirement for "displaying an advertisement to the user based at least in part on at least one of the first quality level or the second quality level." In short, none of the dependent claims add anything inventive beyond the limitations recited in independent claim 10 and 19. RavenWhite identified no meaningful distinctions between the independent and dependent claims in opposing Walmart's motion to dismiss. *See generally* Dkt. Nos. 52 and 58.

### 2. *Alice* Step One: Claims 10 and 19 of the '402 Patent are directed to the abstract idea of targeted advertising.

In determining patent eligibility under § 101, the Court first determines whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217-18. In making this inquiry, the Court must evaluate "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to" an abstract idea. *Recentive Analytics*, 134 F.4th at 1211-12. "In the context of software patents (which includes machine learning patents), the step-one inquiry determines whether the claims focus on 'the specific asserted improvement in

computer capabilities . . . or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 1212 (internal quotation removed). Here, under any plausible reading, the '402 Patent claims are directed to an abstract idea because they are directed to the longstanding concept of targeted advertising, not any specific means for method for improving technology, as discussed above. The Federal Circuit has repeatedly found similar patent claims ineligible for patent protection. For example, in *Customedia Technologies., LLC v. Dish Network Corp.*, claims that recited a "data delivery system for providing automatic delivery of . . . specifically identified advertising data" were directed only to the abstract idea of "using a computer to deliver targeted advertising to a user." 951 F.3d 1359, 1362-63 (Fed. Cir. 2020). Though the claims required that "advertising data is received and processed by a 'programmable local receiver unit,' which includes at least one 'individually controlled and reserved advertising data storage section adapted specifically for storing the specifically identified advertising data,'" they did not "improve the functionality of the computer itself" and were ineligible. *Id.*

Similarly, in *Bridge & Post, Inc. v. Verizon Communications, Inc.*, claims that retrieved an identifier, analyzed information associated with it, and placed directed media were held "directed to the abstract idea of using persistent identifiers to implement targeted marketing." 778 F. App'x 882, 887 (Fed. Cir. 2019). "Targeted marketing is a form of 'tailoring information based on [provided] data,' which we have previously held is an abstract idea." *Id.* (citing *Intell. Ventures I*, 792 F.3d at 1369). The court also noted that this is "a fundamental practice that dates back to newspaper advertisements." *Id.* (quotation removed). Likewise, in *Broadband iTV, Inc. v. Amazon.com, Inc.*, the court held that a claim that collected viewing history to recommend content was "directed to the abstract idea of collecting and using viewing history data to recommend categories of video content," a type of targeted advertising, and was abstract. 113

11

F.4th 1359, 1371 (Fed. Cir. 2024). The court noted that it has repeatedly found claims directed to targeted advertising to be abstract. *Id.* (citing *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361-62 (Fed. Cir. 2021); *Intell. Ventures I*, 792 F.3d at 1369; *Customedia Techs., LLC*, 951 F.3d at 1363). And finally, in *Free Stream Media Corp. v. Alphonso Inc.*, the patent at issue related to systems providing a mobile phone user with targeted advertising information deemed relevant to the user based on data gathered from the user's television. 996 F.3d at 1358. The court explained that the claims were directed to nothing more than "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device." *Id.* at 1361-62.

Like these cases, the '402 Patent claims a mental process that happens to be done on a computer. The claims are directed to a process that would have been performed by a sales or customer relations professional. That person could keep tabs on their customers' purchases, talk with customers about their interests, or even observe what is physically in a shopping cart, and suggest other products accordingly. The '402 Patent confirms this. In the preferred embodiment, the '402 Patent describes a user interested in buying a camera and begins looking for one, and tracking the user's search. '402 Patent at 5:15-30. The user's subsequent searches for camera accessories are tracked and indicate that the user bought a camera. *Id.* at 31-40. Appropriate ads can then be shown to the user based on the purchase. *Id.* 6:1-17. None of these steps require a computer or improve the functioning of computer technology (or any other technology). In response to Plaintiff's motion to dismiss, RavenWhite argued the '402 claims were not abstract because they recited "clustering." Dkt. 58 at 9. In light of that argument, the Court concluded that RavenWhite's complaint pleaded sufficient facts that, taken as true, demonstrated the claims

were not directed to an abstract idea. Dkt. No. 123 at 5. More specifically, though the Court recognized that "computer-based targeted advertising is a 'fundamental practice, long prevalent in our system,'" the claimed "clustering" appeared to be a "'technological solution,' which applies 'machine learning' to the problem of targeted advertising." *Id.* However, this reasoning no longer applies.

With the benefit of the Court's claim construction argument, granting summary judgment for Walmart on 101 grounds is appropriate. During claim construction, RavenWhite proposed a narrow construction of the claimed "clustering" that was in line with its arguments from the motion to dismiss: "Processor-executed technique that applies a statistical or machine learning algorithm to group users into one or more personas based on similarity of measurable behavioral patterns." Dkt. No. 110 at 22. The Court rejected this attempt to narrow the claim, observing that "[t]he claim does not specify what is being clustered, what algorithm or mechanism performs the clustering, or what purpose the clustering serves beyond its role as an input to quality level determination." Dkt. No. 138 at 36. The Court also noted: "[n]o claim language requires that clustering employ a processor, a statistical algorithm, or a machine learning technique." *Id.* at 37. In light of those observations, the Court concluded that "clustering" simply means "grouping based on analysis of data indicative of user behavior." *Id.* at 39. Under this construction, RavenWhite's proposed "technical solution" and "machine learning"—which the Court relied to deny the motion to dismiss—is not actually part of the claims.

Moreover, after briefing concluded on the motion to dismiss—and after the Patent Office found the claims eligible based on their use of machine learning—the Federal Circuit, in *Recentive Analytics, Inc. v. Fox Corp.*, held as a matter of law that introducing machine learning to a field does not render a patent's claims eligible. 134 F.4th at 1214. The court reiterated that

13

"patents may be directed to abstract ideas where they disclose the use of an 'already available [technology], with [its] already available basic functions, to use as [a] tool[] in executing the claimed process.'" *Id.* at 1214 (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169-70 (Fed. Cir. 2018)). Applying this, the court determined that the claim were "not rendered patent eligible by the fact that (using existing machine learning technology) they perform a task previously undertaken by humans with greater speed and efficiency than could previously be achieved." *Id.* at 1214.

Despite the Court's claim construction and guidance from the Federal Circuit, RavenWhite's expert, Dr. Jansen maintains essentially the same arguments that RavenWhite made in opposing the motion to dismiss. *See* Ex. C ¶¶321-329. As an initial matter, he does not dispute that targeted advertising was well-known, conventional, and predated the '402 Patent. *Id.* ¶327. Instead, Dr. Jansen contends that "[t]he '402 patent utilizes a user's Internet behavior such as a sequence of their searches and purchases, to identify advertisements to display to that particular user." *Id.* ¶324. He argues that "[t]he '402 patent teaches making various quality assessments about users, to achieve this goal." *Id.* ¶324. As an example, Dr. Jansen contends that "'user account information' can include 'user-provided information (e.g., demographic information supplied directly by the user); observed behavior (e.g., observed by platform 102); and reported behavior (e.g., purchases observed by a third-party provider, such as site 120 and provided to platform 102).'" *Id.* ¶325. All of these examples are nothing more than traditional human sales and advertising activity done on a computer.

To avoid this inevitable conclusion, Dr. Jansen also focuses in part on techniques such as "tiered bidding." *Id.* ¶ 324. But no such bidding system is claimed by the '402 Patent. Dr. Jansen also asserts that "[t]he '402 patent also teaches an advertising platform that determines when a

14

user's 'need has been met,' i.e., they no longer need whatever item they were previously shopping for." *Id.* ¶ 325. But again, the claims do not require an "advertising platform." Instead, this is another example of traditional human activity. Dr. Jansen's repeated reliance on unclaimed embodiments confirms that the claims are directed only to an abstract idea.

In sum, the overwhelming evidence shows the '402 Patent's claims are only directed towards the abstract idea of targeted advertising.

### 3. *Alice* Step Two: The claims of the '402 Patent contain no inventive concept sufficient to transform the abstract idea into patent-eligible subject matter.

Since it is now clear, post-*Markman*, that the '402 claims are directed to an abstract idea, the Court must determine whether the patent contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). To pass this step, the claims "must do more than simply recite 'well-understood, routine, conventional activity.'" *Universal Secure Registry LLC v. Apple Inc. ("USR")*, 10 F.4th 1342, 1346 (Fed. Cir. 2021). Here, the asserted claims are broadly generic and do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea. Because there is no material fact dispute regarding step two, patent-eligibility can be decided as a matter of law.

The claims of the '402 Patent only recite functional determination steps that are specified at a high level of generality; specifically, "determining a first quality level associated with a user profile," "determining for a user associated with the user profile, an indication of interest in a first category," "storing, in a record associated with the user, the indication of interest in the first category," "determining for the user, that a need relative to the first category has been met," "determining an indication of interest in a second category," "determining a second quality level associated with the user," and "displaying an advertisement." Ex. D ("Almeroth Report") at

15

¶¶863-64. These abstract functional descriptions are devoid of any technical explanation as to how to implement the purported invention in any inventive way. *Id.*; *see In re TLI Communs. LLC v. AV Auto., LLC (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice's* Step Two where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). To accomplish the aforementioned steps, the claims recite only conventional and well-understood tools, such that they cannot meet the threshold to qualify as an inventive concept regardless of whether they are considered either individually or as an ordered combination. Ex. D ¶864; *Bridge & Post*, 778 F. App'x at 892-93 (specification confirmed that alleged inventive concept was known and conventional).

The only hardware elements recited in the claims are "a processor" and "a memory," and the specification emphasizes that both are generic components. '402 Patent, 1:62-2:2; Ex. D ¶882. The specification also makes clear that the other components used in carrying out the claimed method were similarly conventional. Ex. D ¶882. For example, the advertisement platform server may "comprise[] standard commercially available server hardware . . . and run[] typical server-class operating systems (e.g., Linux), and also run[] Apache HTTP Server software." *Id.*; '402 Patent, 2:53-59, 2:59-67. As another example, the claimed "unique identifier" is exemplified by the age-old concept of "cookies … stored on [a] notebook." '402 Patent, 3:30-35, 13:35-37; *see also id.*, 15:58-67 (unique identifier may be "HMTL cookie, a user agent, a cash [sic] cookie, and an identifier similar to a UDID [unique device identifier]"); Ex. D ¶882.

Though RavenWhite previously argued that the '402 Patent claimed a novel form of clustering involving machine learning, Dkt. Nos. 52 at 24 and 58 at 9, the Court's claim

16

construction order rejected and recognized that the claimed "clustering" can be any "variety of clustering techniques." Dkt. No. 128 37-38; Ex. D ¶882; *see also* Ex. D ¶¶866-881. But even accepting RavenWhite's arguments, the Federal Circuit has recognized that adding machine learning to an otherwise abstract claim does not survive Step Two. *Recentive Analytics*, 134 F.4th at 1214-45.

Similarly, RavenWhite argued that the claimed "conversion assessment based in part on historical click behavior" satisfied Step Two. Dkt. No. 110 at 4, 24. However, the conversion assessment is only a computer-automated version of a standard sales process. As the specification explains, conversion assessment is not limited to computers, but rather, is merely "an indication of how likely it is that a given individual will engage in a desired behavior if presented with an advertisement." Dkt. 128 at 41.

The '402 Patent also does not claim to have combined its known elements in a novel way. Instead, the claims just take the age-old concept of using user information to deliver targeted advertisements and apply it with an off-the-shelf computer. *See Bridge & Post*, 778 Fed. App'x at 891 ("Even as an ordered combination, the limitations of claim 1 recite no more than a computer implementation of the abstract idea of using persistent identifiers to implement targeted marketing, lacking anything 'significantly more.'"). The claimed sequence is performed in the logical order that flows from the abstract idea (iteratively observing the actions of a potential customer, then sending an ad accordingly). This cannot "transform the nature of the claim into a patent-eligible application" "as an ordered combination." *See Alice*, 573 U.S. at 217-18; *Intell. Ventures I*, 792 F.3d at 1371 ("Requiring the use of a 'software' 'brain' 'tasked with tailoring information and providing it to the user' provides no additional limitation beyond applying an abstract idea, restricted to the Internet, on a generic computer.").

In sum, using known components to carry out an age-old practice is not patentable, and the claims of the '402 Patent fail both steps of the *Alice*.

## B.    The '823 Patent

The '823 Patent's claims are direct to the idea of using cookies to identify a client device or a user. Though RavenWhite contends this invention is tied to a technological improvement, it claims only the abstract idea. RavenWhite did not invent a new type of cookie or anything else tied to the functioning of cookies, and the claims cannot survive the *Alice* two-step test. In addition, the '823 claims do not recite a "cache cookie," and RavenWhite's infringement allegations ████████████████████████████████████. *See* Ex. H at 11-12 (████████████ ████████████████████).

### 1.  Claim 1 is representative of all claims of the '823 Patent

RavenWhite now only asserts infringement of claims 1 and 2. Those claims recite a "system" with a processor and memory configured to perform certain steps:

1. A system, comprising:

one or more processors configured to:

receive a network resource request from a client device, wherein the network resource request corresponds to a first cookie of a first type that was caused to be stored to the client device during a first previous network session, wherein the first cookie of the first type was caused to be stored to the client device at least in part by causing the client device to initiate a set of network resource requests determined during the first previous network session, wherein the client device initiating the set of network resource requests caused data representative of the set of network resource requests to be stored at the client device, wherein a second cookie of a second type different from the first type was caused to be stored at the client device during a second previous network session, and wherein the first cookie of the first type is stored in a first client device browser storage area and the second cookie of the second type is stored in a second client device browser storage area different from the first client device browser storage area;

based at least in part on the network resource request from the client device corresponding to the first cookie of the first type caused to be stored at the client device during the first previous network session, determine information that was

encoded and stored in the client device;

perform a first identification of at least one of the client device and a user of the client device using the first cookie of the first type, wherein the first identification is performed using the first cookie of the first type at least in part by using the determined information that was encoded and stored in the client device;

perform a second identification of at least one of the client device and the user of the client device using the second cookie of the second type; and

perform a determination based at least in part on (1) a presence of a network resource request associated with one of the first cookie and the second cookie, and (2) an absence of a network resource request associated with the other of the first cookie and the second cookie; and

a memory coupled to the one or more processors and configured to provide the one or more processors with instructions.

2. The system of claim 1 wherein the client device is identified by a server in a domain different from a server that caused the two different types of cookies to be stored to the client device during the first and second previous network sessions.

Though it is not necessary to address all claims for the purposes of this motion, RavenWhite did not dispute at the motion to dismiss phase that claim 1 was representative of all the claims of the '823 Patent. Regardless, claim 2 is materially the same for purposes of patent-eligibility.

### 2. *Alice* Step One: The '823 Patent is direct to storing and using cookies to identify a client device or user.

Though at first blush the claims of the '823 Patent include technological jargon, they really claim nothing more than the longstanding use of cookies to identify a client device or user. *See, e.g., Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) (claims for access-control software were ineligible because focus was on longstanding activity, despite "technical jargon"); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) (claims for virus screening were ineligible because, although the idea "originated in the computer era," it "was a long prevalent practice in the field of computers"). Indeed, the patent admits that the invention is simply "causing a browser to store information in a browser storage area of a client device," '823 Patent at 1:31-34, and admits that

19

such storage—including of cookies—was a longstanding activity, as discussed above. *See also* Ex. D ¶¶494-495.

In addition, Claim 1 describes generic functional steps (receiving network resource requests from a client device corresponding to cookies, determining information encoded and stored in the client device, performing an identification, performing a determination) on generic computer systems (a processor, a memory, client device, and client device browser storage area). *Id.* ¶502-503; *see* '823 Patent, cl. 1. Each of these steps amounts to nothing more than abstract steps taking place on off-the-shelf hardware, and there is nothing in the patent to suggest otherwise. Ex. D ¶¶502-503.

Moreover, the '823 Patent does not claim a "new type of cookie." *Id.* ¶504; *see generally id.* ¶¶91-117. The Court's claim construction order confirms that the first and second cookie only differ in where they are stored and can be any of a number of well-known cookie types. Dkt. No. 128 at 12; '823 Patent, 1:46-2:10, 4:56-5:9; *see, e.g., AI Visualize, Inc. v. Nuance Comm'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) (holding ineligible verbose claims for storing and retrieving user's 3D data because they boiled down to "functionally-oriented steps," with no new technology).  Thus, Claims 1 and 2 do not require use of a cache cookie. And, regardless, even if the claims provide some specificity as to the cookie type, that is insufficient. *See GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1066 (Fed. Cir. 2026) ("Abstract ideas routinely encompass concrete examples, so that property does not make the claimed category non-abstract.").

Claims directed to both tracking a user and data collection and storage have long been held to be ineligible. In *Miller Mendel, Inc. v. City of Anna*, the Federal Circuit affirmed this Court's grant of a Rule 12(c) motion finding patent ineligible a claim reciting a "method for a

20

computing device with a processor and a system memory to assist an investigator in conducting a background investigation" because the claim steps were "directed to receiving, storing, transmitting, determining, selecting, and generating information, which place them in the 'familiar class of claims directed to a patent-ineligible concept.'" 107 F.4th 1345, 1352 (Fed. Cir. 2024) (citation omitted).

In *USR*, the Federal Circuit determined that the claim at issue (which recited the functional steps of "receiving" a transaction request, "mapping" a code to a customer's identity, "accessing" the customer information, "providing" identifying information to a third party but not to a merchant, and "enabling or denying" the merchant to perform the transaction without the customer's identifying information) was "directed to the abstract idea of obtaining the secure verification of a user's identity to enable a transaction." *USR*, 10 F.4th at 1346-47 (collecting Federal Circuit cases holding claimed authentication technologies patent ineligible). The Court in *USR* reasoned that the claims "simply recite conventional actions in a generic way (e.g., receiving a transaction request, verifying the identity of a customer and merchant, allowing a transaction) and do not purport to improve any underlying technology." *Id.* at 1349 (citation and internal quotation marks omitted).

Similarly, in *Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, the Federal Circuit found abstract claims focused on monitoring the location of a "mobile thing" and using authentication software to increase security. 958 F.3d 1178, 1181 (Fed. Cir. 2020). In that case, the claims recited code that "(1) enables a first party to input authentication information; (2) stores the authentication information; . . . (5) provides the authentication information to the first party; and (6) enables the party to select whether or not to communicate with a second party having access to particulars of the pickup or delivery." *Id.* At *Alice* Step One, the court singled

out the authentication limitations and determined that these limitations were abstract. *Id.* The court reasoned that the claimed authentication information could be essentially any information recognizable to the party being contacted and noted that businesses have long been recording customer information that would qualify as authentication information as broadly defined in the specification. *Id.* at 1181-82. The court also noted that the process of recording authentication information and including the same in a subsequent customer communication is abstract because it amounts to nothing more than "gathering, storing, and transmitting information." *Id.* at 1182.

Like the claims in *ShoppersChoice*, which were directed to inputting, storing, and providing authentication information to enable a determination, claim 1 of the '823 Patent is directed to receiving, storing, and providing cookies to enable a determination. The only difference between *ShoppersChoice* and claim 1 is merely the direction in which information flows—in *ShoppersChoice*, the authentication information originated with the user/customer, was stored at the server/merchant, and was sent back to the user/customer. Here, the cookies originate with the server/merchant, are stored at the user/customer device, and are sent back to the server/merchant.

And, in *Content Extraction*, the Federal Circuit found claims unpatentable that were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in memory." 776 F.3d at 1347-48. Claim 1 of the '823 Patent is no different. It recites "receiv[ing] a network resource request from a client device," which causes "data representative of the set of network resource requests," "a first cookie of a first type," and "a second cookie of a second type different from the first type" to be stored at a client device, which is nothing more than collecting and storing information. Claim 1 next recites "determin[ing] information that was encoded and stored in the client device,"

22

performing a "first identification," a "second identification," and "a determination" based on the stored information, which is simply analyzing (and using) the collected and stored information.

Consistent with these cases, the Federal Circuit has distinguished unpatentable claims relating to data collection, storing, and analysis from those found to be patent-eligible specific improvements in the way computers operate. *See ShoppersChoice*, 958 F.3d at 1182 (explaining that a claim amounting to "nothing more than gathering, storing and transmitting information" is "quite unlike the 'improvements in computer capabilities'" that courts have found eligible at Step One). Similarly, the Federal Circuit has recognized that "[i]n cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *USR*, 10 F.4th at 1346 (collecting cases). The claims of the '823 Patent are no different.

In response to the motion to dismiss, RavenWhite argued that the claims of the '823 Patent are "directed to specific novel technologies for network communication security." Dkt. No. 52 at 12. RavenWhite specifically identified the claims' recitation of "two different types of cookies, stored in different browser storage areas and from different previous network session" as the technological innovation. *Id.* The Court agreed, finding that the complaint "pleaded sufficient facts to demonstrate that [w]hile the '823 Patent might not improve how computers operate, it specifically creates a new type of cookie that better identifies individual users for 'website customization' and 'fraud prevention.'" Dkt. No. 123 at 6.

However, like with the '402 Patent, claim construction has eliminated RavenWhite's previous argument. During claim construction, and unlike at the motion to dismiss stage, RavenWhite proposed broad definitions for the cookie and browser storage area terms. RavenWhite only argued that the claimed two cookies differed in "access procedure," and that

23

the first and second storage areas were functionally identical, but merely "different." Dkt. No. 110 at 9, 11. The Court's construction largely embraced RavenWhite's position, and the Court determined the cookies differed in "how they are accessed by a server." Dkt. No. 128 at 11. The Court also adopted a construction of the two "browser storage area" terms, only requiring that they are "managed by a browser on the client device" and different from each other. *Id.* at 17.

These constructions confirm that '823 Patent does not claim or require a "new type of cookie"; nor is it used for "website customization" or "fraud prevention." Instead, the claim construction only requires a second type of cookie as part of identifying a device or user, which was a well-known concept at the time of the invention. *See, e.g.*, Ex. E, Dep. Of Dr. Jakobsson at 172:9-20 (stating that the invention used existing technologies); 187:3-18 (acknowledging work by others prior to the '823 Patent that identified other types of cookies); Ex. F, Dep. of Holmes at 87:7–88-2 (conceding that RavenWhite did not invent cookies or cache cookies); Ex. G, '823 Provisional, at 7 ("[prior artists] note that cache cookies can serve the same function as ordinary cookies, permitting Web sites to identify users"); *see also* Ex. D ¶504. The '823 Patent itself cites work by others describing these other types of cookies, for example, the articles titled "Local Shared Object—'Flash Cookie'" and "Timing Attacks on Web Privacy." The '823 Patent also discloses that one of the second cookies, the cache cookie, is a uniform resource locator (URL) or a temporary internet file (TIF) stored in the browser, both of which are indisputably conventional.'823 Patent, 5:10-16, 6:24-27, 6:27-32, 6:39-41, 7:1-13.

RavenWhite's expert, Dr. Jansen, agrees that "cache cookies were in the prior art." Ex. C ¶215. Instead, Dr. Jansen raises an argument that has already been foreclosed by the Court's claim construction—namely, that "the '823 patent claims teach…the use of two cookies including a new type of cache cookie that is an improvement over prior cache cookies because,

24

for example, the new type of cache cookies protect privacy by restricting access to the domain that set them." *Id.* But, as the Court and its construction recognizes, the claims of the '823 Patent are not directed to a *new type* of cache cookie. Moreover, the claims only require performing two "determination[s]," and Dr. Jansen improperly imputes the preferred embodiment into the claims by arguing these "new cache cookies" protect privacy or restrict access. Dr. Jansen's arguments highlight that there is no material factual dispute about what is or is not conventional in the claims, and summary judgment is appropriate.

Without this purported inventive hook, claim 1 merely recites generalized steps performed on a computer using generic and well-known techniques, and does not identify any special (or novel) methods, interfaces, protocols, or data structures. The specification suggests in one embodiment that authenticating a user may be performed by combining the storage and use of a traditional cookie and a cache cookie. *Id.* at 8:11-13 ("A cache cookie may also be combined with a traditional cookie, for example to provide another layer of identification (e.g., authentication)."), 14:7-10 ("[C]ache cookies can also be used to authenticate a user, for example, after a server uses traditional cookies to identify a user."). But, simply combining and rearranging well-known, routine, and conventional techniques and elements to achieve an expected result (i.e., increased security) does not make the claim patent eligible. *USR*, 10 F.4th at 1350.

### 3.   *Alice* Step Two: The claims do not recite any inventive concept.

As noted above, the test in step two is whether the claims, apart from the abstract idea, are well-understood, routine, and conventional. *BSG v Buyseasons*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). As the above discussion confirms, nothing about the claims is unconventional. And because there is no material fact dispute regarding step two, patent-eligibility can be decided as a matter of law.

In addition to using well known cookie types, the claims only recite such generic steps as "receive a network resource request," "determine information," "perform an identification," and "perform a determination." That the claim recites numerous, lengthy individual abstract steps does not save it: "[a]t Alice step two, it is irrelevant whether [the claim] may have been non-routine or unconventional as a factual matter. As a matter of law, narrowing or reformulating an abstract idea does not add significantly more to it." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018); *see SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1168-69 (Fed. Cir. 2018) ("[w]hat is needed is an inventive concept in the non-abstract application realm," so "claim details" that "are themselves abstract" are insufficient) ; *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (combining abstract ideas is insufficient). Indeed, the '823 patent acknowledges that it takes existing elements of the prior art (i.e., cookies) and merely arranges these elements in identified storage locations by admitting that a typical prior art browser would send cookies with the user's name (and encoded information) to "enabl[e] the server to identify [the user] automatically." '823 patent, 1:56-2:4; *see supra* Sections II.B, VI.B.2.

The requirement that the cookies be stored in "different" browser storage areas does not render the claim any less abstract, particularly when the existence of cookies stored in different storage areas was a conventional aspect of a known type of cookie, "non-traditional" cookies. Ex. D ¶504; *see Specialized Monitoring Sols., LLC v. ADT LLC*, 367 F. Supp. 3d 575, 582 (E.D. Tex. 2019) ("As for the limitation that specifies a database containing a plurality of secure storage areas, it is clear that the database is simply the location where the information is stored after being analyzed[.] … Using a database to store information in discrete categories is itself an abstract idea."). To the extent claim 1 can be understood to be directed to storing cookies, the

26

claim is still directed to an abstract idea. *Specialized Monitoring Sols.*, 367 F. Supp. 3d at 582.

In opposing Walmart's motion to dismiss, RavenWhite argued that the "use of different types of Internet cookies in alternative storage locations" is enough to satisfy *Alice* Step Two. Dkt. No. 52 at 7-8. But, as explained at length, the '823 Patent does not claim any new type of cookie or new way to store those cookies. RavenWhite also identified "at least four innovative elements: the type of the files, the timing of the files' storage, the location of the files, and the use of the files." *Id.* at 7. But these "four innovative elements" are merely conventional files, the time and location they are saved, and conventional use of cookies. *Id.*; Ex. ¶509 Saving conventional files in two different locations is conventional and was specifically a conventional aspect of the different cookie types claimed by the '823 Patent. Ex. D ¶¶507, 509-510; *see supra* Section III.B.

As courts have repeatedly acknowledged, using known components (a processor, a memory, client device, and browser) to store and organize data is not patentable. Claims 1 and 2 of the '823 patent fail both steps of the Alice test and are patent ineligible under § 101.

## VII.    CONCLUSION

Post-*Markman,* it is now clear that the claims are only directed toward abstract ideas, and there is no inventive concept. Accordingly, Walmart respectfully requests that the Court grant summary judgment finding all asserted claims of the '402 and '823 Patent ineligible under 35 U.S.C. § 101.

27

█████████████████████████████████████████

DATED:  June 30, 2026

Respectfully submitted,

By:   /s/ William B. Collier, Jr.
      Michael F. Heim
      Texas State Bar No. 09380923
      mheim@hpcllp.com
      Eric J. Enger
      Texas State Bar No. 24045833
      eenger@hpcllp.com
      R. Allan Bullwinkel
      Texas Bar No. 24064327
      abullwinkel@hpcllp.com
      Blaine A. Larson
      Texas State Bar No. 24083360
      blarson@hpcllp.com
      William B. Collier, Jr.
      State Bar No. 24097519
      wcollier@hpcllp.com
      HEIM, PAYNE & CHORUSH, LLP
      609 Main Street, Suite 3200
      Houston, Texas 77002
      Telephone: (713) 221-2000
      Facsimile: (713) 221-2021

      Amir H. Alavi
      Texas Bar No. 00793239
      aalavi@aatriallaw.com
      Demetrios Anaipakos
      Texas Bar No. 00793258
      danaipakos@aatriallaw.com
      Michael McBride
      Texas Bar No. 24065700
      mmcbride@aatriallaw.com
      ALAVI & ANAIPAKOS PLLC
      609 Main Street, Suite 3200
      Houston, Texas 77002
      Telephone: (713) 751-2362
      Facsimile: (713) 751-2341

      Nathaniel St. Clair, II
      Texas Bar No. 24071564
      nstclair@jw.com
      Abigail A. Lahvis
      Texas Bar No. 24138136

28

alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile: (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

***Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC***

29

████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record by electronic mail on June 30, 2026.

/s/ William B. Collier, Jr.

William B. Collier, Jr.

*Via E-mail*

Robert F. Kramer
CA Bar No. 181706
rkramer@kramerllp.com
Robert C. Mattson *(pro hac vice)*
VA Bar No. 43568
rmattson@kramerllp.com
KRAMER LLP
1133 Broadway, Suite 1510
New York, New York 10010
Telephone: (415) 419-1895

Nicole E. Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
KRAMER LLP
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 791-9250

Zachariah A. Higgins *(pro hac vice)*
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong *(pro hac vice)*
CA Bar No. 253705
jarmstrong@kramerllp.com
Ryan Dooley *(pro hac vice)*
CA Bar No. 321645
rdooley@kramerllp.com
Robert Xie
CA Bar No. 329126
rxie@kramerllp.com
Rachael Catherine Chan *(pro hac vice)*
CA Bar No. 265002
rchan@kramerllp.com
KRAMER LLP
303 Twin Dolphin Dr., Suite 600
Redwood City, California 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Counsel for Plaintiff RavenWhite Licensing LLC*

30