███████████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE HOME DEPOT, INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00688-JRG-RSP <br> (Lead Case) |
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00689-JRG-RSP <br> (Member Case) <br><br> ███████████████ |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF
NO INVALIDITY OF THE '823 AND '402 PATENTS UNDER 35 U.S.C. § 101**

████████████████████████████████

**TABLE OF CONTENTS**

I.     Statement of Issues to be Decided by the Court ....................................................... 2

II.    Statement of Undisputed Material Facts ("SOF") .................................................. 2

III.   Relevant Legal Standards and Authority................................................................ 4

IV.  Argument ................................................................................................................ 5

    A.   The Court Has Already Held That the Asserted Patents Are Not Ineligible Because They Are Not Directed to Abstract Ideas ............................................... 5

    B.   Walmart Cannot Prove by Clear and Convincing Evidence That the Asserted Patents Are Ineligible Under § 101........................................................ 6

       1.   The '823 Claims Are Directed to Patentable Subject Matter ........................................ 8

       2.   The '402 Claims Are Directed to Patentable Subject Matter ...................................... 14

V.  Conclusion ........................................................................................................... 21

███████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)..................................................................*passim*

*Ancora Techs., Inc. v. HTC Am., Inc.,*
908 F.3d 1343 (Fed. Cir. 2018)................................................11

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)...................................................................4

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)................................................5

*Cardionet, LLC v. InfoBionic, Inc.,*
955 F.3d 1358 (Fed. Cir. 2020)..................................7, 18, 19

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
927 F.3d 1306 (Fed. Cir. 2019)................................................5

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...................................................................4

*Contour IP Holding LLC v. GoPro, Inc.,*
113 F.4th 1373 (Fed. Cir. 2024) ....................................6, 7, 8

*Cosmokey Sols. GmbH & Co., KG v. Duo Sec. LLC,*
15 F.4th 1091 (Fed. Cir. 2021) ..............................................14

*DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed. Cir. 2014).................................................7

*Duffy v. Leading Edge Prods., Inc.,*
44 F.3d 308 (5th Cir. 1995) ......................................................4

*Eli Lilly & Co. v. Barr Lab's, Inc.,*
251 F.3d 955 (Fed. Cir. 2001)...................................................4

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016)..............................7, 12, 13, 18

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
879 F.3d 1299 (Fed. Cir. 2018)..............................................11

*Intel. Ventures I LLC v. Erie Indem. Co.,*
850 F.3d 1315 (Fed. Cir. 2017)................................................4

ii

*Intell. Ventures II v. BITCO Gen. Ins. Corp.*,
   362 F. Supp. 3d 370 (E.D. Tex. 2019)...................................................................................18

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019)............................................................................................11

*Maxell, Ltd. v. Apple Inc.*,
   No. 5:19-cv-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ........................12, 18

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)..........................................................................................7, 17

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
   No. 2:15-cv-01366-JRG, 2021 WL 2696561 (E.D. Tex. Jan. 29, 2021) ...................................6

*Seacor Holdings, Inc. v. Commonwealth Ins. Co.*,
   635 F.3d 675 (5th Cir. 2011) ..................................................................................................4

*SimpleAir, Inc. v. Google Inc.*,
   136 F. Supp. 3d 745 (E.D. Tex. 2015)...............................................................................12, 18

*Smartflash LLC v. Apple*,
   No. 6:13-cv-447-JRG-KNM, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015)............................20

*Sri Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)...................................................................................11, 12, 18

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278,1292-93 (Fed. Cir. 2020) ........................................................................passim

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020)................................................................................................7

*Weisner v. Google LLC*,
   51 F.4th 1073 (Fed. Cir. 2022) .............................................................................................20

**Statutes**

35 U.S.C. § 101.................................................................................................................passim

35 U.S.C. § 282.........................................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2

Fed. R. Civ. P. 56(a) .................................................................................................................4

███████████████████████████████████████████████

## TABLE OF EXHIBITS

| Ex. | Description |
|-----|-------------|
| A | U.S. Patent No. 10,594,823 (excerpts) |
| B | U.S. Patent No. 11,562,402 (excerpts) |
| C | '823 Patent File History, Office Action of 4/9/18 (excerpt) |
| D | Defendants' Ineligibility Contentions for U.S. Patent No. 10,594,823 ("'823 Patent") |
| E | Defendants' Ineligibility Contentions for U.S. Patent No. 11,562,402 ("'402 Patent") |
| F | '823 Patent File History, Office Action of 5/13/19 (excerpt) |
| G | Opening Invalidity Expert Report of Kevin C. Almeroth, Ph.D., served on May 21, 2026 (excerpts) |
| H | Rebuttal Expert Report of Bernard J. Jansen, Ph.D., Relating to Validity of U.S. Patent Nos. 10,594,823 and 11,562,402, served on June 18, 2026 (excerpts) |
| I | '402 Patent File History, Notice of Allowability of 10/3/2022 (excerpt) |

Plaintiff RavenWhite Licensing LLC ("RavenWhite") respectfully moves for summary judgment that U.S. Patent Nos. 10,594,823 ("the '823 Patent") and 11,562,402 ("the '402 Patent") (collectively, the "asserted patents") are not invalid under 35 U.S.C. § 101.

Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC (collectively, "Walmart") have contended that all claims of the '823 Patent (the "'823 claims") and '402 Patent (the "'402 claims") (collectively, the "patents' claims") claim ineligible patent subject matter under 35 U.S.C. § 101. Specifically, Walmart asserts that each of the patents' claims contain an abstract idea without any inventive concept and are thus invalid under § 101. However, there is no genuine dispute of material fact that the patents' claims are patent eligible, for several reasons. First, the asserted patents are presumed valid under § 101. Second, this Court has already held, on Walmart's motion to dismiss, the asserted patents are patent eligible under *Alice* Step 1. Third, Walmart cannot present clear and convincing evidence of ineligibility under either *Alice* Step 1 or 2 because its arguments with respect to both asserted patents overgeneralize the patents' claims and fail to consider the combination of the elements.

The '823 Patent is patent eligible because its claims are directed to complex network communication solutions that overcome technical problems associated with the deletion of traditional cookies. And even if the claims were directed to an abstract idea (they are not), when properly considered individually and as an ordered combination, they provide an inventive step that transforms them into something that is patent eligible. Specifically, the '823 claims recite the creation of different types of Internet cookies in different locations to prevent the identified problem of deletion, manipulation, and editing. As to the '402 Patent, its claims are patent eligible because they are directed to a specific computerized model that improves Internet advertising technology through a data-driven process that analyzes user behavior and accordingly implements

1

selection of advertisements, resulting in more efficient targeting and more cost-effective advertising. Even if the '402 claims were directed to an abstract idea (they are not), they provide inventive concepts on their own or when considered in an ordered combination as recited in the structured steps of the claims. In particular, the '402 claims recite inventive steps such as clustering and conversion assessment. Therefore, the Court should grant this Motion.

## I.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

**Issue 1:** Whether the Court should grant summary judgment that the '823 claims are subject matter eligible under 35 U.S.C. § 101.

**Issue 2:** Whether the Court should grant summary judgment that the '402 claims are subject matter eligible under 35 U.S.C. § 101.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOF")

1.    RavenWhite has asserted the '823 and '402 Patents against Walmart. Dkt. 26; Exs. A, B. On November 5, 2024, Walmart filed a Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss"), asserting that all claims of the asserted patents were patent ineligible under 35 U.S.C. § 101. Dkt. 33. RavenWhite filed its Opposition to the Motion to Dismiss ("Opposition") on December 10, 2024, arguing that the asserted patents were eligible. Dkt. 52. On January 9, 2025, Walmart filed its Reply in Support of its Motion to Dismiss. Dkt. 56. On January 16, 2025, RavenWhite filed its Sur-Reply supporting its Opposition. Dkt. 58.

2.    Walmart served Ineligibility Contentions setting forth its contentions that the patents' claims are invalid under § 101. Exs. D, E. Walmart's Ineligibility Contentions included claim charts for the asserted patents. *See* Exs. D, E. For purposes of the eligibility analysis, Walmart submitted that for the '823 Patent, Claims 1 and 6 are representative of each remaining claim of the '823 Patent. Ex. D at 2. Walmart further submitted that for the '402 Patent, Claims 1, 10, and 19 are representative of each other and the remaining claims of the '402 Patent. Ex. E at 2.

2

3.      On March 10, 2026, Magistrate Judge Roy S. Payne issued a Report & Recommendation recommending denial of Walmart's Motion to Dismiss ("R&R"), finding that the complaint pleaded sufficient facts to demonstrate that the asserted patents are not directed to patent-ineligible concepts. Dkt. 123. Walmart filed objections to the R&R ("R&R Objections") on March 25, 2026. Dkt. 129. On March 30, 2026, this Court issued an Order overruling the R&R objections, adopting the R&R, and denying Walmart's Motion to Dismiss. Dkt. 131.

4.      The R&R stated: "While computer-based targeted advertising is a 'fundamental practice, long prevalent in our system,' the '402 Patent examiner specifically identified 'clustering' in its § 101 analysis to find patentability. This 'technological solution,' which applies 'machine learning' to the problem of targeted advertising suffices to demonstrate the '402 Patent's patentability." Dkt. 123 at 5.

5.      The R&R stated: "While the '823 Patent might not improve how computers operate, it specifically creates a new type of cookie that better identifies individual users for 'website customization' and 'fraud prevention.' These improvements ultimately allow a computer to perform tasks—more accurately serving advertisements—more effectively than before. Because of these improvements, the '823 Patent rises above ineligibility." Dkt. 123 at 6-7.

6.      On May 21, 2026, Walmart served the Opening Invalidity Expert Report of Kevin C. Almeroth, Ph.D. Ex. G. Dr. Almeroth's report included an opinion regarding invalidity pursuant to 35 U.S.C. § 101. On June 18, 2026, RavenWhite served its Rebuttal Expert Report of Bernard J. Jansen, Ph.D., Relating to Validity of U.S. Patent Nos. 10,594,823 and 11,562,402. Ex. H. Dr. Jansen's report included a rebuttal opinion that the '823 and '402 Patents are not invalid under § 101.

3

## III.  RELEVANT LEGAL STANDARDS AND AUTHORITY

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A dispute of material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson*, 477 U.S. at 247). The evidence is viewed "in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

A challenge to patent eligibility under § 101 constitutes an affirmative defense. *Intel. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1324 (Fed. Cir. 2017). Since Walmart bears the burden of proof on invalidity, RavenWhite may satisfy its initial burden on summary judgment by producing evidence negating an element of Walmart's subject matter ineligibility defenses, or by showing there is an absence of evidence to support the same. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[A] moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Lab's, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

A determination of patent eligibility requires a court to "distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into

4

something more, thereby transforming them into a patent-eligible invention." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216-17 (2014) (internal citation omitted). The Supreme Court has established a two-step framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 217. At *Alice* Step 1, the court must determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, then at *Alice* Step 2, the court must "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient" to "transform the nature of the claim" into a patent-eligible application. *Id.* at 217-18.

## IV.   ARGUMENT

Pursuant to 35 U.S.C. § 282, the asserted patents are presumed valid under § 101. To overcome this presumption, a defendant must show ineligibility by clear and convincing evidence under both prongs of the *Alice* framework. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Thus, Walmart must prove by clear and convincing evidence that the claims are both directed to ineligible concepts and lack any inventive concept. *Alice*, 573 U.S. at 217, 221. Walmart cannot for the reasons set forth below.

### A.   The Court Has Already Held That the Asserted Patents Are Not Ineligible Because They Are Not Directed to Abstract Ideas

This Court has already determined that the asserted patents claim patent eligible subject matter. On March 10, 2026, rejecting Walmart's arguments in its Motion to Dismiss, Magistrate Judge Payne issued his R&R making specific findings of eligibility of both asserted patents. First, Magistrate Judge Payne concluded that the "clustering" claimed in the '402 Patent is a "'technological solution,' which applies 'machine learning' to the problem of targeted advertising" and this "suffices to demonstrate the '402 Patent's patentability." Dkt. 123 at 5. Second, he found

that the '823 Patent claimed improvements in the form of "a new type of cookie that better identifies individual users for 'website customization' and 'fraud prevention,'" which "ultimately allow[s] a computer to perform tasks—more accurately serving advertisements—more effectively than before." *Id*. at 6-7. He accordingly held that "the '823 Patent rises above ineligibility." *Id*. This Court, under *de novo* review, overruled the R&R Objections, adopted Judge Payne's R&R, and ordered denial of the Motion to Dismiss, noting that it "agrees with the reasoning provided within the Report and Recommendation." Dkt. 131.

The Court should reaffirm these prior section 101 rulings because Walmart cannot "present any evidence that [should] cause[ the] Court to question" its *Alice* step 1 findings, and thus the Court should "maintain[] that the claims of the [Asserted] Patent[s] are not directed to an abstract idea." *See Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG, 2021 WL 2696561, at *3 (E.D. Tex. Jan. 29, 2021) (after denial of defendant's § 101-based motion to dismiss, denying defendant's motion for summary judgment in part due to lack of evidence to disturb the Court's prior ruling that the claims were not directed to an abstract idea).

**B.  Walmart Cannot Prove by Clear and Convincing Evidence That the Asserted Patents Are Ineligible Under § 101**

*Alice* Step 1 requires courts to "determine whether the claims are directed to patent ineligible subject matter [] often [by] examin[ing] the focus of the claimed advance over the prior art." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) (internal citation omitted). The analysis "must focus on the language of the asserted claims themselves … considered in light of the specification." *TecSec, Inc. v. Adobe Inc.,* 978 F.3d 1278,1292-93 (Fed. Cir. 2020). To determine the "focus of the claimed advance," courts "look to whether the claims are directed to 'a specific means or method that improves the relevant technology' rather than simply being directed to 'a result or effect that itself is the abstract idea.'" *Contour IP,* 113 F.4th

6

at 1379 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Claims must be considered "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO*, 837 F.3d at 1312. Courts must "avoid describing the claims at a high level of abstraction, divorced from the claim language itself." *Contour IP*, 113 F.4th at 1379; *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule"); *Alice*, 573 U.S. at 217 ("we tread carefully in construing this exclusionary principle lest it swallow all of patent law").

Courts "may consult the intrinsic evidence and conclude that the claims are directed to improving functionality of a computer or network" without "consult[ing] the prior art to see if, in fact, the assertions of improvement in the patent's written description are true." *Cardionet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1373 (Fed. Cir. 2020). The Federal Circuit has "routinely held software claims patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform itself." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020); *see, e.g., DDR Holdings, LLC v. Hotels.com*, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014) (claims eligible when they recited a "solution [that] is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"); *Enfish*, 822 F.3d at 1335-36 (claims are not abstract under Step 1 where "the focus of the claims is on the specific asserted improvement in computer capabilities" and "to the way computers operate, embodied in the self-referential table"). Courts often inquire: (1) "whether the focus of the claimed advance is on a solution to 'a problem specifically arising in the realm of computer networks' or computers"; and (2) "whether the claim is properly characterized as identifying a 'specific' improvement in computer capabilities or network functionality, rather than

only claiming a desirable result or function." *TecSec*, 978 F.3d at 1293 (internal citations omitted). If the claims are not directed to ineligible subject matter, like an abstract idea, the patent is eligible and the *Alice* inquiry ends. *Contour IP*, 113 F.4th at 1378. If the claims are directed to a patent-ineligible concept, *Alice* Step 2 asks if the elements, individually and as an ordered combination, transform the claims' nature into a patent-eligible application. *Alice*, 573 U.S. at 217-18.

### 1.    The '823 Claims Are Directed to Patentable Subject Matter

There is no genuine dispute of material fact that the '823 claims, which focus on network communication solutions to address a specific problem in the technology (*see* Ex. H ¶ 208; Ex. A at 7:58-8:51), are directed to patentable subject matter, for the reasons set forth below.

### a.    The '823 Claims Are Not Directed to an Abstract Idea

The '823 Patent is titled "Method and Apparatus for Storing Information in a Browser Storage Area of a Client Device." Ex. A. It generally relates to "causing a browser to store information in a browser storage area of a client device" that can later be used for "identification of a user." *Id.* at 1:31-34, 2:5-6; Dkt. 110-16 ¶ 22; Ex. H ¶ 30.

The '823 Patent identifies a technological problem. Prior to the '823 Patent, webpages relied on cookies to customize webpages for users by sending a message to the server and requesting, transmitting, and storing user information in the web browser, which is sent back to the server each time the browser requests a web page from the server. Ex. A at 1:39-52; Ex. H ¶ 209; Dkt. 128 at 9; Dkt. 110-16 ¶¶ 22-23. But these conventional cookies had drawbacks. For example, users had security and privacy concerns with storing cookies on a user's computer without the user's consent, and the potential for sharing information about a user with third parties. Ex. A at 2:10-23; Ex. H ¶ 210. This led to some users blocking or clearing cookies, or using common spyware programs to target cookies—ultimately leading to problems such as the loss of business by ecommerce organizations, and financial institutions having to rely on a username and

8

password for identification, which is prone to fraud. '823 Patent at 2:24-40; Ex. H ¶ 210; Dkt. 110-16 ¶ 23; s*ee also* Dkt. 128 at 9-10.

The '823 claims focus on a server-side solution to the technological limitations and problems with Web browsers, and are thus directed to an improvement in computer functionality. *See TecSec*, 978 F.3d at 1293. Claim 1, which Walmart has argued is representative (*see* Dkt. 33 at 21-22; Ex. G ¶ 496; Ex. D at 2), recites:

1.  A system, comprising:

one or more processors configured to:

receive a network resource request from a client device, wherein the network resource request corresponds to a first cookie of a first type that was caused to be stored to the client device during a first previous network session, wherein the first cookie of the first type was caused to be stored to the client device at least in part by causing the client device to initiate a set of network resource requests determined during the first previous network session, wherein the client device initiating the set of network resource requests caused data representative of the set of network resource requests to be stored at the client device, wherein a second cookie of a second type different from the first type was caused to be stored at the client device during a second previous network session, and wherein the first cookie of the first type is stored in a first client device browser storage area and the second cookie of the second type is stored in a second client device browser storage area different from the first client device browser storage area;

based at least in part on the network resource request from the client device corresponding to the first cookie of the first type caused to be stored at the client device during the first previous network session, determine information that was encoded and stored in the client device;

perform a first identification of at least one of the client device and a user of the client device using the first cookie of the first type, wherein the first identification is performed using the first cookie of the first type at least in party by using the determined information that was encoded and stored in the client device;

perform a second identification of at least one of the client device and the user of the client device using the second cookie of the second type; and

perform a determination based at least in part on (1) a presence of a network resource request associated with one of the first cookie and the second cookie, and (2) an absence of a network resource request associated with the other of the first cookie and the second cookie; and

9

a memory coupled to the one or more processors and configured to provide the one or more processors with instructions.

Ex. A, Claim 1. This Court has construed the terms "first cookie of a first type" and "second cookie of a second type different from the first type" to "mean that the cookies are different with respect to how they are accessed by a server." Dkt. 128 at 12. The '823 Patent describes pioneering technology that allows devices and servers to communicate without further exclusive reliance on conventional cookies. Ex. H ¶ 211. Its claims are directed to network communication solutions to overcome technical problems associated with the deletion of traditional cookies. Ex. H ¶ 208; Ex. A at 7:58-8:51.

As one example, a server may write or read a cache cookie to and from a browser storage area that is different from where the conventional cookie is stored, which circumvents traditional cookie technology's security concerns. *See, e.g.,* Ex. A at 2:66-3:4; Ex. H ¶ 211; Dkt. 110-16 ¶ 24. The '823 Patent describes exemplary embodiments where "[t]he browser storage area may include a history cache and/or a Temporary Internet Files (TIFs) area," shown in Figure 2. Ex. A at 3:3-4; Dkt. 110-16 ¶ 24. In one embodiment, a new type of "cookie may also be combined with a traditional cookie, for example to provide another layer of identification (e.g., authentication)." Ex. A at 8:11-13. These features enhance authentication by obstructing the deletion and manipulation of cookies and related information. '823 Patent at 3:5-12; Ex. H ¶ 211; Dkt. 110-16 ¶ 24. Combining different types of cookies in this way requires a user desiring to delete cookies "to clear or block cookies during the same interval of time that the browser storage area [] is cleared." Ex. A at 8:15-18. Furthermore, the invention enhances server identification—and thereby reduces fraud risk—without requiring installation of additional software, instead relying solely on

10

a browser. Ex. H ¶ 211. This feature advantageously increases the number of identifiable client computers because it does not depend on voluntary user opt-in, such as software installation. *Id.*

The Federal Circuit has held claims, like those in the '823 Patent, to be patentable that are directed to a specific improvement in computer functionality. *See, e.g., Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-05 (Fed. Cir. 2018) (patent eligible claims involving "scanning a downloadable and attaching the results of that scan to the downloadable itself in the form of a security profile" recited a specific improvement to computer functionality and more than a mere result; claims "recite[d the] specific steps" of "generating a security profile that identifies suspicious code and linking it to a downloadable."); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (improving computer security by storing a software verification record in BIOS memory constituted a technological improvement because it made hacking more difficult than prior art approaches that stored the record elsewhere on the computer); *see also Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150-51 (Fed. Cir. 2019) (claims directed to detection of errors in data transmission were non-abstract because they specifically recited a permutation for reordering information that solved problem in the prior art); *Tecsec*, 978 F.3d at 1297 (patent eligible and non-abstract claims were directed to specific improvements to basic function of computer data distribution network); *Sri Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303-04 (Fed. Cir. 2019) (claims directed to monitoring and surveillance of computer networks for intrusion detection not directed to abstract idea). Similarly, the '823 claims are directed to a specific, non-abstract improvement in computer functionality by using two types of cookies to identify users and devices even when browser history is cleared. Moreover, the '823 Patent is not results-based, but rather describes *how* to accomplish the desired result, step by step,

11

including facilitating the identification of client devices and users, by combining different cookie types, from different previous network sessions, from different browser storage areas.

Walmart has argued that the '823 claims are directed to an abstract idea regarding collection and storage of information, and specifically "storing and using cookies associated with website resources." *See, e.g.,* Dkt. 33 at 1, 22; Ex. G ¶¶ 493, 500-01; Ex. D at 5-6. Citing the specification, prior art, and deposition testimony, it bases this argument on its contention that storing and using cookies was well-known and conventional prior to the '823 Patent. *See, e.g.,* Dkt. 33 at 7-8 (citing the '823 Patent's "background of the invention"); Ex. G ¶¶ 493, 500 (citing Felten and Schneider, specification, and testimony of Dr. Bjorn Markus Jakobsson and Mark Homes with purported concessions about not inventing conventional cookies or the browser storage area, and prior usage of the term "cache cookies"); Ex. D at 6 (citing prior art). This evidence, however, is not material and presents no dispute because it addresses only Walmart's characterization of the claims, which overgeneralizes them and is made at too "high [a] level of abstraction and untethered from the language of the claims." *See Enfish,* 822 F.3d at 1337; *see also Maxell, Ltd. v. Apple Inc.,* No. 5:19-cv-00036-RWS, 2020 WL 8269548, at *11 (E.D. Tex. Nov. 11, 2020) (denying motion for summary judgment because defendant's characterization of asserted patent as "directed to the abstract concept of classifying information into low and high priority categories" was "wholly general and oversimplifie[d] its claims"); *Sri Int'l,* 930 F.3d at 1303 (the "claims [we]re more complex than merely reciting the performance of a known business practice on the Internet and [we]re better understood as being necessarily rooted in computer technology in order to solve a specific problem in the realm of computer networks"); *SimpleAir, Inc. v. Google Inc.,* 136 F. Supp. 3d 745, 750-51 (E.D. Tex. 2015). Contrary to Walmart's characterization, the claimed system is a concrete, discernable solution, using one of the cookies to determine encoded

12

information stored on the client device and using both cookies to identify the client device or the user in separate identification processes (Ex. A at 15:55-16:3). In so doing, the '823 Patent provides another layer of authentication (*id*. at 8:11-13), since clearing the combination of two different cookies in two different browser storage areas requires the user to clear the cookies at the same time (*id*. at 8:15-18). Ex. H ¶ 212. Further, the claimed system applies the two cookies to make determinations based on the presence/absence of network resource requests associated with the two cookies. Ex. A at 16:4-9.

In addition, during prosecution of the '823 Patent, the patent examiner expressly considered the eligibility of the '823 claims under section 101, and initially issued a rejection. Ex. C, Office Action of 4/9/18 at 8-13. The applicant subsequently amended the claims and ultimately, the examiner withdrew the rejection, finding that "the claims do not present an abstract idea." Ex. F, Office Action of 5/13/19 at 2.

In sum, when its claims are viewed properly, the '823 Patent is patent eligible because it improves computer functionality and presents a technical solution for security and webpage customization problems via a specific, unconventional approach using different cookie types from different browser storage areas and different network sessions. This technique requires specific, technical steps that a user would not perform mentally, nor are they conventionally executed by general-purpose computers. *See Enfish*, 822 F.3d at 1339.

b.   **The '823 Claims Disclose Innovative Steps, Including New Uses, Types, and Storage Locations of Internet Cookies**

The '823 Patent describes and claims multiple specific inventive technological steps, which include the creation of different types of cookies in different browser locations to prevent deletion, manipulation, and editing, unlike generic computer systems. *See supra* section IV.B.1.a. Walmart has made arguments that the '823 Patent does not include an inventive step because it "recites only

functional steps that are disclosed at a high level of generality," and that the '823 claims "merely involve 'generic and conventional computer components … .'" Ex. G ¶¶ 502-503; *see also* Dkt. 33 at 1, 27; Ex. D at 7-8. However, Walmart's argument ignores the innovative combination of at least four aspects of the claimed cookies: (i) the different types of cookies; (ii) the timing of the cookies' storage relative to different network sessions; (iii) the different locations of the cookies in browser storage; and (iv) the use of network resource requests associated with the cookies to make determinations. Ex. A at 15:32-67, 16:4-9; Ex. H ¶¶ 220-21, 225, 230. This is not the recitation of generic computer components. The claims of the '823 Patent specifically differentiate between sequentially-stored "first" and "second" cookie types stored in different browser storage areas. Ex. H ¶ 225; Dkt. 128 at 6-12. This novel arrangement enables dual-layered identification and customization through the use of persistent, differentiated storage locations, thereby avoiding the conventional problems associated with erasable, changeable, or movable files. *See supra* section IV.B.1.a. Therefore, even if the '823 claims failed *Alice* step 1 (they do not), the particular arrangement of these extra steps recited in the claims provide an inventive step sufficient to satisfy *Alice* step 2, and involve techniques that are not well-understood, routine, or conventional. *See, e.g., Cosmokey Sols. GmbH & Co., KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098-99 (Fed. Cir. 2021).

### 2. The '402 Claims Are Directed to Patentable Subject Matter

There is no genuine dispute of material fact that the '402 claims, which relate to improved advertising systems for tiered bidding and selection of ads based on quality metrics, are directed to patentable subject matter, for the reasons set forth below.

#### a. The '402 Claims Are Directed to Complex Multistep Methods and Systems to Form Individual User Profiles With Various Applications

The '402 Patent is titled "Advertising Model." Ex. B. Its claims focus on improved advertising systems that enable "'[t]iered advertisement bidding,' in which '[a]n advertisement bid

is selected from a plurality of tiered bids' based on 'quality metrics associated with a user profile.'"

Ex. B, Abstract; Dkt. 110-16 ¶ 53; Ex. H ¶ 321.

The '402 Patent identifies a technological problem, explaining that "approaches to online advertising typically involve pricing schemes in which multiple advertisers specify an amount of money they are willing to pay per impression (or per click or per other action), and in which an advertisement is selected for display to a user based on which advertiser is willing to pay the most money." Ex. B at 1:21-26; Ex. H ¶¶ 38, 322; Dkt. 110-16 ¶ 53. However, "there are inefficiencies in this approach," which does not properly assess "the quality of the user to whom the advertisement will be shown." Ex. B at 1:26-29, 3:2-7; Ex. H ¶¶ 38, 322; Dkt. 110-16 ¶ 53.

The '402 Patent provides a technological solution that performs three quality assessments of the user in a cascaded series of interrelated calculations. Walmart has argued (and the Court has ruled) that Claim 1 is representative. Dkt. 33 at 11; Ex. G at ¶ 857; Dkt. 128 at 31. It recites:

> A method, comprising:
>
> determining a first quality level associated with a user profile, wherein the first quality level is based at least in part on an estimate of a likelihood of an event, wherein the first quality level is determined based at least in part on at least one of: (1) a first search associated with the user profile or (2) a first purchase associated with the user profile, and wherein the determining of the first quality level is based at least in part on a unique identifier and clustering;
>
> determining, for a user associated with the user profile, an indication of interest in a first category, wherein the indication of interest in the first category is determined based at least in part on at least one of: (1) a second search associated with the user profile or (2) a second purchase associated with the user profile;
>
> storing, in a record associated with the user, the indication of interest in the first category;
>
> subsequent to determining the indication of interest in the first category, determining, for the user, that a need relative to the first category has been met based at least in part on at least one of: (1) a third search associated with the user profile or (2) a third purchase associated with the user profile;

15

based at least in part on the determination that the need relative to the first category has been met, determining an indication of interest in a second category, wherein the indication of interest in the first category and the indication of interest in the second category comprise a sequence of related indications of interest;

in response to determining that the need relative to the first category has been met, determining a second quality level associated with the user, wherein the second quality level is determined with respect to the first category;

wherein at least one of the first quality level or the second quality level is based at least in part on a conversion assessment associated with the user profile, and wherein the conversion assessment is based at least in part on historical click behavior; and

displaying an advertisement to the user based at least in part on at least one of the first quality level or the second quality level.

Ex. B, Claim 1. As such, the '402 Patent describes a technological solution to the identified problem, by claiming several innovative elements that improve computer functionality. *See TecSec*, 978 F.3d at 1293. Its claims are directed to a specific computerized model that improves Internet advertising technology by adapting to and learning from user behavior to determine their value to advertisers and identify advertisements that are more helpful to individual users, leading to greater efficiency and lower spending for advertisers. Ex. H ¶ 323. Indeed, the '402 Patent examiner observed during prosecution that the '402 claims were not conventional: "Claims 2, 15-16, and dependent claim(s) 5, 8-14, and 17-24, are directed to a technical solution to a technical problem associated with determining quality levels, including determining a first category, and a second category of interest based on a unique identifier and clustering … based on the foregoing analysis, the aforementioned claims are patent eligible." Ex. I at 3-4; Ex. H ¶ 328.

In the '402 Patent's embodiments, users are identified based on "unique identifiers." A unique identifier is a value that "correspond[s] to a single, readily identifiable user" and can include "cookies" or a "UDID" (Unique Device Identifier). Ex. B at 3:30-35, 15:63-65; Dkt. 110-16 at ¶ 58; Ex. H ¶¶ 43, 332. Quality assessments can then be based on many factors, including "user

16

████████████████████

account information," "user context information," and "general context information," which in turn include many factors. Ex. B at 4:23-5:13; Dkt. 110-16 ¶ 59; Ex. H ¶ 44. The '402 Patent utilizes a user's Internet activity which can include sequences of searches and purchases for related products. For instance, in Figure 1 which "illustrates an embodiment of an environment in which advertisements are served," "a user first searches for a camera, lenses, and related merchandise; then searches for and accesses material describing how to use SLR cameras; and later purchases photo display material." Ex. B at 2:20-21, 17:7-11; Dkt. 110-16 ¶ 55. From this activity, the model generates first and second quality levels, which are then used in selecting which advertisement to display to the user. The Court has construed "quality level," which is recited in Claim 1, as "computed value to a merchant or advertiser." Dkt. 128 at 35. Claim 1 also recites determining when a need has been met. For example, a user interested in buying a camera runs searches using terms like "camera," and later the user uses different search terms to buy a lens cap. The advertising platform can use this information to determine the need for a camera was met, which leads to a "conversion assessment." Ex. B at 5:15-36, 6:1-12, 7:11-15; Dkt. 110-16 ¶ 60; Ex. H ¶¶ 326, 334.

The Federal Circuit has held that claims are directed to an improved technological process and are patent eligible when they include a series of structured, computational steps, like those claimed by the '402 Patent. *See, e.g.*, *McRO*, 837 F.3d at 1314 (patent eligible claims directed to improvement in computer animation did not "simply use a computer as a tool to automate conventional activity"; there was "no evidence the process previously used by animators [wa]s the same as the process required by the claims"); *TecSec*, 978 F.3d at 1294 (claims were patent eligible because they did not simply "use computers to perform" pre-existing human practice more quickly and efficiently). Also, the Federal Circuit has held patent eligible claims for an improved technological process using specific rules and algorithms, similar to the '402 Patent's claimed

17

generation of first and second quality scores (*see infra* section IV.B.2.b). *See, e.g., CardioNet,* 955 F.3d at 1368 ("In our view, the claims 'focus on a specific means or method that improves' cardiac monitoring technology; they are not 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'").

Walmart has argued that the '402 claims are directed to an abstract idea regarding "targeted advertising," or "using user information to deliver targeted advertisements." *See, e.g.,* Dkt. 33 at 1, 13; Ex. G ¶¶ 855, 860; Ex. E at 7. But this is an overgeneralization of the '402 claims and completely untethered to the claim language, which is directed to a structured series of interrelated calculations that, among other things, determine the value of a user to an advertiser. *See Enfish,* 822 F.3d at 1337; *Maxell,* 2020 WL 8269548, at *11; *Sri Int'l,* 930 F.3d at 1303; *SimpleAir,* 136 F. Supp. 3d at 750-51. As such, Walmart's cited evidence does not present a genuine dispute of material fact because Walmart "ignore[s] what plainly are important aspects of the claims and the focus of the claimed advance in the combination." *TecSec,* 978 F.3d at 1296; *see also Intell. Ventures II v. BITCO Gen. Ins. Corp.,* 362 F. Supp. 3d 370, 377 (E.D. Tex. 2019) ("Contrary to Defendants' focus on the abstractness of developing a personalized access point, Claim 14 is directed to using the selection and contribution of content by the users to their respective personalized access points to distribute content through a network.").

Therefore, the claims of the '402 Patent are not abstract because they are directed to complex multistep methods and systems to form individual user profiles that have various applications and advantages, including selecting ads that are useful to a customer and improving the efficiency of tiered advertisement bidding. Also, as discussed herein, the claims identify *how* this functionality is achieved through limitations such as, for example, determination of quality levels, clustering, and conversion assessment. The '402 claims are eligible under *Alice* Step 1.

18

**b.    The '402 Claims Disclose Innovative Steps, Including Calculations Regarding First and Second Quality Levels**

Even if the '402 claims were directed to an abstract idea (they are not), Walmart cannot prove by clear and convincing evidence that there is no inventive step that transforms a purported abstract idea into something that is patent eligible. Walmart has argued that the '402 claims do not include an innovative step, and "merely involve 'generic and conventional computer components … .'" *see, e.g.*, Dkt. 33 at 1, 19; Ex. G ¶ 864; Ex. E at 9-10. But this ignores the combination of the elements.

The '402 claims present unconventional and non-routine computer-based approaches, including clustering techniques and performing a conversion assessment. For example, the claims recite several structured, computational steps, including at least both a first quality level and a second quality level, that were not well-known or conventional prior to the '402 Patent. *See CardioNet*, 955 F.3d at 1368. For example, the "first quality level" is a score predicting the likelihood of an event based on a user's search or purchase activity. Ex. B at 3:62-4:25; Ex. H ¶ 332. To generate this score, the claimed system combines clustering techniques—which the Court has construed as "grouping based on analysis of data indicative of user behavior" (Dkt. 128 at 39)—for multiple users with a unique identifier and user profile associated with prior purchase history. Ex. B at 3:39-44, 11:23-13:34; Ex. H ¶ 332. Also, the first and/or second quality level is based in part on a conversion assessment, which the Court construed as "an indication of how likely it is that a given individual will engage in a desired behavior if presented with an advertisement." Dkt. 128 at 41; Ex. B at 5:51-6:17; Ex. H ¶ 333.

The second quality level is an assessment of advertisement relevance by evaluating whether a user's need within a category has been satisfied, and, if so, predicting related categories of interest. Ex. B at 5:14-50, 10:22-46, 11:6-22; Ex. H ¶ 334. For example, after determining that

19

a user interested in cameras has purchased a camera, the system may infer interest in related categories such as lenses or instructional materials and generate a second quality level reflecting the likelihood of the user responding to advertisements related to those categories. *Id.*

Importantly, the claimed invention provides two routes by which the invention can provide an advertisement to a user. Ex. B at 18:27-29. Specifically, the system can display the advertisement to the user based on either the first quality level or the second quality level. In this manner, the system can use different valuations (quality levels) of the user, depending on the type of ad to be displayed. In practice, for example, a banner ad could be displayed based on the first quality level and an ad in a carousel could be displayed based on the second quality level.

For the '402 Patent, "[t]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Smartflash LLC v. Apple*, No. 6:13-cv-447-JRG-KNM, 2015 WL 661174, at *8-9 (E.D. Tex. Feb. 13, 2015) (on summary judgment, claims directed to validating payment data satisfied *Alice* Step 2 because they "recite[d] an inventive concept for resolving a particular 'Internet-centric problem'"). The Federal Circuit has regularly held claims patent eligible at *Alice* Step 2 based on similar reasoning. *See DDR Holdings,* 773 F.3d at 1257, 1265. (similar reasoning finding *Alice* Step 2 satisfied on summary judgment; claims directed to system where a website visitor clicks on an advertisement hyperlink and a composite "hybrid" webpage is generated that retains the look and feel of site while displaying third-party products); *Weisner v. Google LLC*, 51 F.4th 1073, 1086 (Fed. Cir. 2022) (inventive concept found in "a specific technique for using physical location history data to improve computerized search results" because it "solve[d] a problem particular to the Internet"). Similarly here, the '402 claims introduce unconventional and non-routine computer-based approaches, including: (1) using clustering techniques to make predicted associations based on

20

user behavior and (2) performing a conversion assessment based in part on historical click behavior to determine the first or second quality level. *See supra* section IV.B.2.a. These approaches constitute inventive concepts on their own or when considered in an ordered combination as recited in the structured steps of the claims.

In conclusion, the '402 Patent presents several innovative steps that would transform a purported abstract idea into something patentable.

## V.    CONCLUSION

The Court should grant this motion because there is no genuine dispute of material fact that the asserted patents are patent eligible under section 101.

Dated: June 30, 2026

Respectfully submitted,

*/s/ Robert F. Kramer*

Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone:  (212) 755-6475
Facsimile:  (212) 730-8885

Zachariah A. Higgins (*pro hac vice*)
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
jarmstrong@kramerllp.com
Ryan Dooley (*pro hac vice*)
rdooley@kramerllp.com
Robert Xie (*pro hac vice*)
rxie@kramerllp.com
Rachel C. Chan (*pro hac vice*)
rchan@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600

Redwood City, CA 94065
Telephone: (212) 812-8937

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

22

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on June 30, 2026. A confidential version of this filing was served upon all counsel of record by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on October 15, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer

23