**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00688-JRG-RSP<br>(Lead Case) |
| `<br>RAVENWHITE LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00689-JRG-RSP<br>(Member Case) |

**PLAINTIFF'S OPPOSITION TO WALMART'S
MOTION FOR SUMMARY JUDGMENT OF NON-ENFORCEABILITY
OF THE ASSERTED PATENTS AND LACK OF ARTICLE III STANDING**

████████████████████████

## TABLE OF CONTENTS

I.    Introduction ................................................................................................................. 1

II.   Response to Statement of Issues.................................................................................. 2

III.  Response to Statement of Undisputed Material Facts ................................................ 2

IV.   Legal Standard............................................................................................................ 4

    A.   Summary Judgment........................................................................................... 4

    B.   Ownership .......................................................................................................... 4

    C.   Article III Standing ........................................................................................... 4

V.    Argument..................................................................................................................... 5

    A.   RavenWhite Security and Security Technology hold legal title to both
the Asserted Patents and the Terminal Disclaimer Patents............................... 5

    B.   RavenWhite Security and Security Technology did not transfer *all*
substantial rights to RavenWhite. ..................................................................... 8

    C.   Walmart's motion improperly relies on extrinsic evidence, statements
taken out of context, and speculation.............................................................. 10

    D.   A break in common ownership would not deprive RavenWhite of
Article III standing. ........................................................................................ 13

    E.   Unenforceability is a late-raised defense that Walmart should have
raised long ago. ............................................................................................... 17

VI.   Conclusion................................................................................................................. 18

████████████████

## TABLE OF AUTHORITIES

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
   625 F.3d 1359 (Fed. Cir. 2010),.................................................................................... 14, 15

*ALM Holding Co. v. Zydex Indus. Private Ltd.,*
   176 F.4th 1326 (Fed. Cir. 2026) .......................................................................................... 4

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).............................................................................................................. 4

*Fall Line Patents, LLC v. Zoe's Kitchen, Inc.,*
   2019 WL 13218778 (E.D. Tex. July 26, 2019) ............................................................. 14, 16

*Immunex Corp. v. Sandoz, Inc.,*
   964 F.3d 1049 (Fed. Cir. 2020).................................................................................... passim

*Imperium IP Holdings (Cayman) Ltd. v. Samsung Elecs. Co., Ltd.,*
   203 F. Supp. 3d 755 (E.D. Tex. 2016)................................................................................ 18

*Integrity Worldwide, Inc. v. Rapid-EPS, Ltd.,*
   2021 WL 3130082 (N.D. Tex. July 22, 2021) .................................................................... 14

*Keranos, LLC v. Silicon Storage Tech. Inc.,*
   797 F.3d 1025 (Fed. Cir. 2015)........................................................................................... 16

*Lexmark International v. Static Control Components,*
   572 U.S. 118 (2014)............................................................................................................ 15

*Lone Star Silicon Innovations LLC v. Nanya Techs. Corp.,*
   925 F.3d 1225 (Fed. Cir. 2019).................................................................................... passim

*Midwest Athletics and Sports Alliance LLC v. Ricoh USA, Inc.,*
   Case No. 19-514, 2019 WL 3387061(E.D. Pa. Jul. 25, 2019)....................................... 14, 15

*Paradise Creations, Inc. v. UV Sales, Inc.,*
   315 F.3d 1304 (Fed. Cir. 2003)...................................................................................... 14, 15

*Propat Int'l Corp. v. Rpost, Inc.,*
   473 F.3d 1187 (Fed. Cir. 2007)......................................................................................... 8, 9

*Schwendimann v. Arkwright Advanced Coating Inc.,*
   959 F.3d 1065 (Fed. Cir. 2020)..................................................................................... 15, 16

*Silicon Innovations LLC v. Nanya Techs.,*
   925 F.3d 1225 (Fed. Cir. 2019)...................................................................................... 5, 8

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*,
  967 F.3d 1339 (Fed. Cir. 2020).......................................................................... 10

**Statutes**

35 U.S.C. § 253 ................................................................................................... 16

35 U.S.C. § 261 ..................................................................................................... 4

35 U.S.C. § 281 ................................................................................... 6, 7, 13, 15

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................... 2, 4

**Regulations**

37 C.F.R. § 1.321(c)........................................................................................... 16

**TABLE OF EXHIBITS**

| Ex. | Description |
|---|---|
| 1 | Exclusive Patent License Agreement between RavenWhite Security, Inc. and RavenWhite Licensing LLC (RW00006994 – RW00007003) |
| 2 | First Amended and Restated Exclusive Patent License Agreement between Security Technology and RavenWhite (RW00007544 – RW00007553) |
| 3 | Terminal Disclaimer in U.S. Patent Application No. 15/706,556 |
| 4 | U.S. Patent No. 10,594,823 (excerpted) |
| 5 | Terminal Disclaimer in U.S. Patent Application No. 17/201,306 |
| 6 | Intellectual Property Purchase and Sale Agreement between RightQuestion LLC and SecurityInnovation LLC (RW00007616 – RW00007628) |
| 7 | U.S. Patent No. 11,562,402 (excerpted) |
| 8 | August 22, 2023, SecurityInnovation LLC assigned the '696, '246, and '402 patents to Security Technology, LLC. (RW00007510 – RW00007515) |
| 9 | Email chain between counsel for RavenWhite and counsel for Walmart, dated from June 10, 2026, to June 20, 2026 |
| 10 | Declaration of Robert F. Kramer in Support of Plaintiff's Opposition to Walmart's Motion for Summary Judgment of Non-Enforceability of the Asserted Patents and Lack of Article III Standing |

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| RavenWhite | Plaintiff RavenWhite Licensing LLC |
| Walmart | Defendants Walmart Inc. and Walmart Stores Texas, LLC |
| RavenWhite Security | RavenWhite Security, Inc. |
| Security Technology | Security Technology LLC |
| '823 patent | U.S. Patent No. 10,594,823 |
| '402 patent | U.S. Patent No. 11,562,402 |
| Asserted Patents | '823 and '402 patents |

iv

████████████████████████████████

| Terminal Disclaimer Patents | U.S. Patent Nos. 8,930,549; 10,438,246; and 10,977,696 |
|---|---|
| Exclusive License Agreements | The Exclusive License Agreement between RavenWhite Security, Inc. and RavenWhite Licensing LLC and the First Amended and Restated Exclusive Patent License Agreement between Security Technology, LLC and RavenWhite Licensing LLC |
| Kramer Decl. | Declaration of Robert F. Kramer in Support of Plaintiff's Opposition to Walmart's Motion for Summary Judgment of Non-Enforeceability of the Asserted Patents and Lack of Article III Standing, submitted concurrently herewith |

Plaintiff RavenWhite Licensing LLC ("RavenWhite") submits this opposition to Walmart's motion for summary judgment of non-enforceability and lack of Article III standing. For the reasons stated herein, the motion should be denied.

## I.    Introduction

RavenWhite Security and Security Technology LLC hold legal title to the Asserted Patents and their respective Terminal Disclaimer Patents.[1] On July 30, 2023, and August 15, 2024, RavenWhite Security and Security Technology respectively granted plaintiff RavenWhite *some*, but not all, substantial rights to the '823 and '402 patents. *See* Ex. 1 (Exclusive License Agreement) and Ex. 2 (First Amended and Restated Exclusive License Agreement). These agreements did not transfer *effective* ownership of the Asserted Patents to RavenWhite, because RavenWhite did not receive *all* substantial rights to the patents.

As such, RavenWhite Security remains the sole owner of the '823 patent and Security Technology remains the sole owner of the '402 patent. It necessarily follows that the Asserted Patents have, at all times, remained commonly owned with their respective Terminal Disclaimer Patents. Walmart's motion for summary judgment of unenforceability of the Asserted Patents based on a non-existent break in common ownership should be denied.

Walmart's motion for summary judgment based on lack of Article III standing falls with its unenforceability argument. In addition, even if common ownership between the Asserted Patents and Terminal Disclaimer Patents was somehow broken, any resulting unenforceability of the Asserted Patents would not deprive RavenWhite of standing under Article III. Enforceability is an affirmative defense to patent infringement – not a standing requirement.

---

[1] RavenWhite Security holds legal title to the '823 patent and its Terminal Disclaimer patent, U.S. Patent No. 8,930,549. Security Technology holds legal title to the '402 patent and its Terminal Disclaimer patents, U.S. Patent Nos. 10,977,696 and 10,438,246.

1

Walmart could have, and should have, raised unenforceability months ago during discovery. Its motion for summary judgment should be denied for improperly raising an untimely new defense.

## II.    Response to Statement of Issues

Walmart's motion fails to include the required Statement of Issues to be Decided. *See* Local Rule CV-56(a). RavenWhite identifies here what it believes are the issues that should be decided by the Court:

1.    Does RavenWhite Security commonly own both the '823 patent and its Terminal Disclaimer Patent?

2.    If not, does RavenWhite nevertheless have Article III standing to sue Walmart for infringement of the '823 patent?

3.    Does Security Technology commonly own both the '402 patent and its Terminal Disclaimer Patents?

4.    If not, does RavenWhite nevertheless have Article III standing to sue Walmart for infringement of the '402 patent?

## III.    Response to Statement of Undisputed Material Facts

Walmart's motion fails to include the required Statement of Undisputed Material Facts. *See* Local Rule CV-56(a). RavenWhite identifies here what it believes to be the undisputed facts that are material to Walmart's motion:

1.    On October 19, 2019, RavenWhite Security filed a terminal disclaimer in U.S. Application No. 15/706,556 (the '556 application), disclaiming the terminal part of any statutory term extending beyond the statutory term of U.S. Patent No. 8,930,549 (the '549 patent). Ex. 3. On the date of this terminal disclaimer, RavenWhite Security owned the '556 application and the '549 patent. RavenWhite Security has remained the owner of the '549 patent at all times since.

2.      The '556 application issued as the '823 patent on March 17, 2020. Ex. 4 ('823 patent). On July 30, 2023, RavenWhite Security granted RavenWhite certain rights to the '823 patent pursuant to an Exclusive License Agreement. Ex. 1. At the time RavenWhite Security entered into this agreement, it owned the '823 and '549 patents.

3.      RavenWhite's First Amended Complaint states that "[t]he '823 patent is owned by RavenWhite Security, Inc.," and "Plaintiff RavenWhite Licensing LLC is the exclusive licensee of all right, title, and interest in and to the '823 patent, including the right to assert all causes of action arising under said patent and to seek damages and all other remedies for the infringement thereof." Dkt. 26 (First Amended Complaint), ¶¶ 29, 31.

4.      On September 16, 2022, RightQuestion, LLC filed a terminal disclaimer in U.S. Application No. 17/201,306 (the '306 application) disclaiming the terminal part of any statutory term extending beyond the statutory term of U.S. Patent Nos. 10,977,696 and 10,438,246 (the '696 and '246 patents). Ex. 5. On the date of this terminal disclaimer, RightQuestion, LLC owned the '306 application and the '696 and '246 patents.

5.      On December 22, 2022, RightQuestion, LLC assigned the '696 and '246 patents and the '306 application to SecurityInnovation LLC. Ex. 6. On January 24, 2023, the '306 application issued as the '402 patent. Ex. 7 ('402 patent). On August 22, 2023, SecurityInnovation LLC assigned the '696, '246, and '402 patents to Security Technology, LLC. Ex. 8.

6.      On August 15, 2024, Security Technology granted RavenWhite certain rights to the '402 patent pursuant to a First Amended and Restated Exclusive Patent License Agreement. Ex. 2. At the time of this agreement, Security Technology owned the '696, '246, and '402 patents.

7.      RavenWhite's First Amended Complaint states that "[t]he '402 patent is owned by Security Technology, LLC," and "Plaintiff RavenWhite Licensing LLC is the exclusive licensee of all right, title, and interest in and to the '402 patent, including the right to assert all causes of

3

action arising under said patent and to seek damages and all other remedies for the infringement thereof." Dkt. 26 (First Amended Complaint) ¶¶ 33, 34.

## IV.    Legal Standard

### A.  Summary Judgment

The court shall grant a motion for summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### B.  Ownership

Ownership of a patent transfers by assignment. *See* 35 U.S.C. § 261. To determine whether an exclusive license agreement is tantamount to an assignment, thereby transferring ***effective*** ownership of the licensed patents to the licensee, the Court "must ascertain the intention of the parties to the license agreement and examine the substance of what was granted." *Immunex Corp. v. Sandoz, Inc.*, 964 F.3d 1049, 1059 (Fed. Cir. 2020). In doing so, the Court should "examine the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained ***all*** substantial rights in the patent." *Id*. (emphasis added). Whether an exclusive license agreement transfers effective ownership is a question of law that should be answered according to Federal Circuit precedent. *Id*. at 1060.

### C.  Article III Standing

Article III requires a plaintiff to establish "'the irreducible constitutional minimum' of standing: (1) injury in fact; (2) causation; and (3) redressability." *ALM Holding Co. v. Zydex Indus. Private Ltd.*, 176 F.4th 1326, 1331 (Fed. Cir. 2026). In a patent infringement case, the standing inquiry generally turns on "whether a party has *an* exclusionary right," such as the right to sue for infringement. *Id.* (emphasis in original). The Article III standing inquiry does ***not*** require a plaintiff

4

to establish that it possesses all substantial rights in the asserted patents.[2] *Lone Star Silicon Innovations LLC v. Nanya Techs. Corp.*, 925 F.3d 1225, 1235-1236 (Fed. Cir. 2019).

## V.     Argument

The Asserted Patents and their respective Terminal Disclaimer Patents have, at all times, been commonly owned. As such, the Asserted Patents have been enforceable since the day RavenWhite sued Walmart for infringement.

Walmart's arguments to the contrary apply an incorrect "effective ownership" standard for assessing common ownership of a terminally disclaimed patent. But even under the standard advocated by Walmart, its motion ignores the requirement that an exclusive licensee must receive *all* substantial rights in a patent in order to become its effective owner. Walmart also supports its argument with improper extrinsic evidence and statements taken out of context, while ignoring the unambiguous language of the Exclusive License Agreements that grants some, but not all, substantial rights in the Asserted Patents.

Walmart's motion should be denied based solely on the continuous common ownership of the Asserted Patents and Terminal Disclaimer Patents. But even if there had been a break in common ownership that rendered the Asserted Patents unenforceable, which there was not, that unenforceability would *not* deprive RavenWhite of its Article III standing to sue.

### A.     RavenWhite Security and Security Technology hold legal title to both the Asserted Patents and the Terminal Disclaimer Patents.

The patent owners, RavenWhite Security and Security Technology, have not assigned title to the Asserted Patents to plaintiff RavenWhite. Rather, they have granted certain rights to RavenWhite through the Exclusive License Agreements. Walmart's motion asks this Court to

---

[2] The "all substantial rights" test applies to statutory standing under 35 U.S.C. § 281. RavenWhite has filed a motion for leave to amend its complaint to add RavenWhite Security and Security Technology as co-plaintiffs. Dkt. 187. Joining these parties removes any defect in statutory standing. Walmart's motion for summary judgment only challenges Constitutional standing.

determine that those agreements have transferred, via a license (not an assignment), all substantial rights to RavenWhite, making it the "effective owner" of those patents. Motion, pp. 7-10. That is not the analysis the Court should be applying here.

The concept of effective ownership arises from 35 U.S.C. § 281, which states that "[a] patentee shall have a remedy by civil action for infringement." The Federal Circuit has developed a substantial body of case law holding that a "patentee," as used in § 281, is someone who has either acquired ownership by assignment or has been granted sufficient exclusive rights by the owner to sue for infringement. *See Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1057 (Fed. Cir. 2020); *Lone Star*, 925 F.3d at 1229.

Walmart's motion presumes that the concept of effective ownership developed under § 281 is the same common ownership required for patents subject to a terminal disclaimer. It is not. The Federal Circuit has considered this issue in the context of an obviousness-type double patenting defense. *Immunex*, 964 F. 3d at 1056-59. In *Immunex*, the Court noted that the "all substantial rights test—to date used only to determine who may sue for infringement as a patentee pursuant to 35 U.S.C. § 281" was a "novel theory of common ownership" for patents subject to obviousness-type double patenting. *Id*. at 1057. After considering the parties' arguments, it saw "no reason to import … the entirety of [its] body of law analyzing who is a statutory patentee pursuant to 35 U.S.C. § 281."

Instead, it narrowly concluded "only that where one of the rights transferred is *the right to prosecute the patent at issue*, identification of the effective 'patentee' is informative in evaluating whether the patents are 'commonly owned' for purposes of obviousness-type double patenting." *Id*. at 1059 (emphasis in original). Critically, the asserted patents in *Immunex* were *pending applications* at the time of the operative license agreement. *Id*. at 1055. Immunex therefore *controlled prosecution for the applications* that issued as the asserted patents as well as for the

6

prior art used in the defendant's obviousness-type double patenting defense. The Federal Circuit's conclusion and reasoning is based on that key fact:

> Where, as here, a party ultimately controls prosecution of *both* sets of patents, the "all substantial rights" test aids in *preventing* unjustifiable issuance of claims that are patentably indistinct from claims already owned by that party.

*Id*. at 1059 (emphasis added).

That is not the case for RavenWhite, which did not receive any rights in the Asserted Patents until after they issued. *See* Response to Statement of Undisputed Facts. RavenWhite therefore did not control prosecution of the pending applications that issued as the Asserted Patents and had no role in shaping issuance of the claims. As a result, the standard articulated by *Immunex* – or by any other case considering effective ownership under § 281 – does not apply here.

Rather, common ownership of the Asserted Patents and Terminal Disclaimer Patents should be based on who holds legal title to the patents, not the concept of effective ownership. RavenWhite Security and Security Technology have not assigned the Asserted Patents to RavenWhite outright. *See* Motion, pp. 4, 6 (acknowledging that RavenWhite Security is the nominal owner of the '823 patent and Security Technology is the nominal owner of the '402 patent). Under a straightforward assessment of who holds legal title, the Asserted Patents and Terminal Disclaimer Patents are commonly owned by RavenWhite Security and Security Technology.

Walmart's motion for summary judgment should be denied on this basis. But even under an effective ownership analysis, which is not applicable here, the result is the same. As described in the following sections, Walmart's motion should be denied because the Exclusive License Agreements did not transfer all substantial rights in the Asserted Patents to RavenWhite.

██████████████████████████████████████████

**B.        RavenWhite Security and Security Technology did not transfer all substantial rights to RavenWhite.**

In order for the Exclusive License Agreements to have transferred effective ownership of the Asserted Patents, those agreements must have transferred *all* substantial rights to RavenWhite. *See, e.g, Immunex,* 964 F.3d at 1059; *Lone Star Silicon Innovations LLC v. Nanya Techs.,* 925 F.3d 1225, 1229 (Fed. Cir. 2019). The Federal Circuit's consideration of whether all substantial rights have been transferred "often focuse[s] on two salient rights: enforcement and alienation." *Immunex,* 964 F.3d at 1060; *Lone Star,* 925 F.3d at 1231.

A restriction on alienation, such as a prohibition on assignment, weighs in favor of finding a transfer of fewer than all substantial rights. *Immunex,* 964 F.3d at 1062 ("restrictions on the ability to transfer patent rights are inconsistent with a transfer of all substantial rights."); *Lone Star,* 925 F.3d at 1232-33. *See also, Propat Int'l Corp. v. Rpost, Inc.,* 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent.").

███████████████████████████████████████

████████████████████████

█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

8



It necessarily follows that they did not convey *all* substantial rights in the Asserted Patents to RavenWhite, and that RavenWhite is not the effective owner of these patents. *See Propat,* 473 F.3d 1187 at 1191

Based on an examination of the totality of the Exclusive License Agreements, RavenWhite is not the effective owner of the Asserted Patents because it has not been granted *all* substantial rights in the patent,

9

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ . *Lone Star*, 925 F. 3d at 1233.

While Walmart's assessment of the Exclusive License Agreements identifies various other rights granted to RavenWhite and commitments made by RavenWhite Security and Security Technology, *see* Motion, pp. 7-10, Walmart fails to account for the standard repeatedly and clearly articulated by the Federal Circuit: effective ownership requires receiving **all** substantial rights in the patents. Walmart's motion fails to meet that standard and should be denied on that basis.

C.     **Walmart's motion improperly relies on extrinsic evidence, statements taken out of context, and speculation.**

The proper focus of an effective ownership inquiry is on the substance of what was granted by the Exclusive License Agreements, and the substance of what was granted is determined by interpreting the license under governing state law identified in the agreement, in this case, Delaware. *See Immunex*, 964 F.3d at 1060; Ex. 1 at 8, Ex. 2 at 9. Walmart nevertheless advances several incorrect and improper arguments that have nothing to do with what the agreements actually say.

First, Walmart relies on extrinsic evidence to contradict the unambiguous terms of the Exclusive License Agreements. This evidence includes an affidavit and deposition testimony provided by RavenWhite's corporate representative, Dr. Bjorn Jakobsson. Motion at 7. Under Delaware law, extrinsic evidence may not be relied upon to interpret the intent of the parties, vary the terms of the contract, or create an ambiguity. *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1345–46 (Fed. Cir. 2020). Thus, absent ambiguity in the agreements, which Walmart has not shown or alleged, it is improper for the Court to consider this evidence when determining whether the agreements transferred all substantial rights in the Asserted Patents to RavenWhite.

10



Even if this extrinsic evidence is considered, it does not establish effective ownership.

. It does not establish that RavenWhite received *all*

substantial rights.

As for Dr. Jakobsson's declaration, Walmart relies on selective sound bites while ignoring the surrounding context. *See* Motion p. 7. The declaration clearly states that RavenWhite Security owns the '823 patent and Security Technology owns the '402 patent. Dkt. 167-1 (Jakobsson Decl.) ¶¶ 3, 5, 7, and 9. It also states:



7.

*Id.* at ¶7. If anything, Dr. Jakobsson's declaration confirms that the parties did not intend to transfer ownership of the Asserted Patents to RavenWhite. *See Immunex*, 964 F.3d at 1059 ("To determine whether an exclusive license is tantamount to an assignment, we must ascertain the intention of the parties to the license agreement and examine the substance of what was granted."). Moreover, this declaration was filed in the context of an opposition to a motion to compel litigation funding agreements        Within this context, Dr. Jakobsson had no reason to consider or describe other rights granted or retained by the parties. And the statements in paragraphs 4 and 6 of his declaration, while they could have been worded better, were plainly about rights to assert the patents in the case, not more broadly about "all" rights in the patents such as the right to alienation, which expressly did not transfer. Dkt. 167-1 (Jakobsson Decl.) ¶¶ 4, 6.

11

Walmart also selectively quotes from RavenWhite's First Amended Complaint while ignoring the surrounding context, like it did with Dr. Jakobsson's declaration. *See* Motion p. 7. In relevant totality, the First Amended Complaint states the following:

> 29.    ***The '823 patent is owned by RavenWhite Security, Inc***., a Delaware corporation located at 145 La Sandra Way, Portola Valley, CA 94028….
>
> ***
>
> 31.    ***Plaintiff RavenWhite Licensing LLC is the exclusive licensee*** of all right, title, and interest in and to the '823 patent, including the right to assert all causes of action arising under said patent and to seek damages and all other remedies for the infringement thereof.
>
> ***
>
> 33.    ***The '402 patent is owned by Security Technology, LLC***, a Delaware limited liability company located at 7 East 20th Street #12f, New York, NY 10003.
>
> 34.    ***Plaintiff RavenWhite Licensing LLC is the exclusive licensee*** of all right, title, and interest in and to the '402 patent, including the right to assert all causes of action arising under said patent and to seek damages and all other remedies for the infringement thereof.

Dkt. 26, ¶¶ 29-34.

Read together, these paragraphs summarize the parties' respective interests in the Asserted Patents. Walmart's attempt to use a selective part of this language as an admission that RavenWhite is the owner of the Asserted Patents fails, because that conclusion is directly refuted by the Complaint's explicit statements to the contrary. Moreover, using the language "all right, title and interest" in a patent does not necessarily mean that there has been an ownership transfer. What matters is whether the totality of the underlying license agreement curtails this broad language. *See Lone Star*, 925 F.3d at 1230 (rejecting the argument that grant of "all right, title and interest" in the covered patents was dispositive of whether all substantial rights were transferred).

To the extent the Complaint could be construed as misstating RavenWhite's rights, RavenWhite has filed a motion to amend the operative complaint, replacing the language relied on by Walmart to recite that RavenWhite "is the exclusive licensee of the [Asserted Patents] with

12

certain limited rights in the [Asserted Patents], including the right to assert infringement." Dkt. 187-2 Ex. A (RavenWhite Second Amended Complaint (with redlines)) ¶¶ 33, 36. These amendments remove any perceived defect in how RavenWhite characterized its interests in the Asserted Patents.

Finally, Walmart speculates that the parties created a fracture in ownership "by design" in order "to immunize" the Terminal Disclaimer Patents "from any negative effect of this lawsuit." Motion, pp. 10-11. Walmart's argument presumes that a patentee must assert all of its patents at once, which is not the case. Even if RavenWhite (or any party) owned all of the Asserted Patents and Terminal Disclaimer Patents outright, it could have chosen which ones to assert (or not) against Walmart.

Neither this, nor any of the other, peripheral arguments raised by Walmart are relevant to the issue at the center of its motion, which is whether the Exclusive License Agreements granted RavenWhite all substantial rights in the asserted patents. The unambiguous language of the agreements answers that question in the negative.

**D.    A break in common ownership would not deprive RavenWhite of Article III standing.**

Given that the Asserted Patents have at all times been commonly owned with their respective Terminal Disclaimer Patents – whether based on actual ownership or an effective ownership analysis under § 281 – Walmart's motion for summary judgment of patent unenforceability and lack of Article III standing should be denied. But even if the Court were to find a break in common ownership, the Court should deny Walmart's motion for summary judgment for this simple reason: unenforceability is not an Article III standing issue. It is an affirmative defense to infringement arising under the Patent Act.

In patent infringement cases, Article III standing generally turns on whether a party has one or more "exclusionary rights" in a patent. *Lone Star*, 925 F.3d at 1234. "Exclusionary rights

13

involve the ability to exclude others from practicing an invention or to forgive activities that would normally be prohibited under the patent statutes." *Id.* (cleaned up). Whether an exclusive licensee holds one or more exclusionary rights in a patent is different from ***enforceability*** of that patent. *Integrity Worldwide, Inc. v. Rapid-EPS, Ltd.*, 2021 WL 3130082 at *5 (N.D. Tex. July 22, 2021); *Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, 2019 WL 13218778 (E.D. Tex. July 26, 2019).

In *Integrity*, the Court considered whether the plaintiff lacked Article III standing because the asserted patent was subject to a terminal disclaimer over a patent that was not commonly owned by the plaintiff. *Id*. As a result of the break in common ownership, the asserted patent was unenforceable when the plaintiff filed its complaint. The Court nevertheless concluded that the plaintiff, based on the terms of an exclusive license agreement, "had an enforceable title to the [asserted] patent at the inception of this action and therefore had standing to sue for patent infringement." *Id*. Based on *Lone Star*, the Court specifically distinguished holding enforceable title to the patent, which is a requirement for standing, from the issue of whether the patent was enforceable, which may preclude or limit recovery. *Id*.

The Court also rejected the precedent relied on by Walmart, adopting instead Judge Schroeder's reasoning in *Fall Line Patents. See* Motion pp. 12-15 (relying on *Midwest Athletics and Sports Alliance LLC v. Ricoh USA, Inc.*, Case No. 19-514, 2019 WL 3387061(E.D. Pa. Jul. 25, 2019); *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359 (Fed. Cir. 2010), and *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003)); *Integrity,* 2021 WL 3130082 at *5. It did so because it agreed with Judge Schroeder's conclusion that "even if the [asserted patent] was unenforceable at the time of filing due to lack of common ownership with the [disclaimer patent], Plaintiff still held enforceable title to the [asserted patent] and had standing to bring suit." *Id*. (quoting *Fall Line Patents*, No. 6:18-cv-00407-RWS, Dkt. 106 at 7, 2019 WL 13218778 at *4).

The Court also concluded that the "[t]he Federal Circuit's rulings in *Abraxis* and *Paradise* do not support the proposition that unenforceability implicates Article III standing." *Integrity*, 2021 WL 3130082 at *5. Indeed, the *Abraxis* and *Paradise* decisions relied on in *Midwest Athletics* and by Walmart have been abrogated by *Lone Star* and its application of the Supreme Court's decision in *Lexmark International v. Static Control Components,* 572 U.S. 118 (2014).

In *Lexmark*, the Supreme Court clarified that "so-called 'statutory standing' defects do not implicate a court's subject matter jurisdiction." *Lone Star*, 925 F.3d at 1235 (discussing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). As a result, the Federal Circuit concluded that "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235. It also ruled that "*Lexmark* is irreconcilable with our earlier authority treating § 281 as a jurisdictional requirement." *Lone Star*, 925 F.3d at 1235; *Schwendimann v. Arkwright Advanced Coating Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) ("intervening Supreme Court precedent made clear that our earlier decisions treating the prerequisites of the Patent Act as jurisdictional were wrong"). *Abraxis* and *Paradise* are precisely such earlier authority.

Moreover, Walmart's assertion – based on *Abraxis* and *Paradise* – that the Federal Circuit does not distinguish between "enforceable title" and "enforceable rights" is both incorrect and inconsistent with subsequent precedent. *See* Motion, pp. 13-14. In both *Abraxis* and *Paradise*, the Court considered only whether there were valid documents in place transferring legal title of the asserted patents to the plaintiffs. *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359, 1365 (Fed. Cir. 2010) (concluding that a break in chain of title based on a series of assignments left the plaintiff without legal title to the asserted patents at the time of filing its complaint); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1305-1306 (Fed. Cir. 2003) (concluding that the operative agreement relied on by plaintiff was invalid because plaintiff executed the agreement at

15

a time when it was administratively dissolved). In neither case did the Court consider, or the parties raise, the scope of exclusionary rights conveyed by the operative documents.

Subsequent precedent confirms that the Federal Circuit distinguishes between the validity of a license or assignment giving rise to standing (enforceable title) and the scope of rights held by the plaintiff (enforceable rights). In *Keranos v. Silicon Storage Tech,* the Federal Circuit concluded that an exclusive licensee had standing to sue for infringement, even though the asserted patents were expired. *Keranos, LLC v. Silicon Storage Tech. Inc*., 797 F.3d 1025, 1032-34 (Fed. Cir. 2015). It ruled that the same legal analysis applies to consideration of whether the operative license agreement gave the plaintiff statutory standing to sue, regardless of the scope of enforceable rights held by the licensee based on whether the asserted patents were expired or unexpired. *Id*.

Walmart also argues that unenforceability of a patent subject to a terminal disclaimer is a unique kind of statutory unenforceability that can destroy Article III standing. Motion, pp. 14-15. Walmart is correct that terminal disclaimers, as well as the subsequent unenforceability of a patent based on a break in common ownership, arise under the Patent Act. *See* 35 U.S.C. § 253; 37 C.F.R. § 1.321(c). But its Article III standing conclusion is wrong. Unenforceability based on § 253 and § 1.321(c) curtails a patentee's right to relief under the Patent Act. And as the Federal Circuit made clear in *Lone Star*, a statutory right to relief "does not implicate [Article III] standing or subject-matter jurisdiction." *Lone Star*, 925 F.3d at 1235. As such, a lack of common ownership in the context of a patent subject to a terminal disclaimer does not defeat Constitutional standing. *See*, *id*.; *Schwendimann,* 959 F.3d at 1071 (Fed. Cir. 2020) (statutory right to relief under the Patent Act does not implicate a district court's subject matter jurisdiction).

Consistent with Federal Circuit precedent*, Integrity* (and Judge Schroeder in *Fall Line*) correctly ruled that Article III standing depends on a party's interest in the asserted patents, not on

16

whether those patents are unenforceable under the Patent Act. Here, as in *Integrity*, there is no dispute that RavenWhite has the exclusive right to sue for infringement of the Asserted Patents. RavenWhite therefore holds the same kind of enforceable rights as the plaintiff in *Integrity*, giving it the same basis for Article III standing, notwithstanding any alleged unenforceability of the Asserted Patents. Even if Walmart is correct that the Asserted Patents are unenforceable based on a lack of common ownership with the Terminal Disclaimer Patents, its motion for summary judgment for lack of Article III standing should be denied.

### E.    Unenforceability is a late-raised defense that Walmart should have raised long ago.

Notably, Walmart's answer did not raise an unenforceability defense. Dkt. 154 at 30-31. Walmart first raised the issue of terminal-disclaimer-based unenforceability on June 10, 2026, more than two years after RavenWhite filed its first complaint. Ex. 9 (emails between counsel). The Asserted Patents state on their face that they are subject to terminal disclaimers. Ex. 4 ('823 patent), Ex. 7 ('402 patent). These disclaimers are publicly available documents and RavenWhite produced them on April 23, 2024, when it produced the prosecution histories for the Asserted Patents. Ex. 10 (Kramer Decl., ¶¶ 4, 5). RavenWhite also produced the Exclusive License Agreement with RavenWhite Security on May 13, 2024, and the First Amended and Restated Exclusive License Agreement with Security Technology on November 15, 2024. Ex. 10 (Kramer Decl., ¶¶ 1, 2).

Walmart has possessed all facts material to its motion for summary judgment for more than 18 months. As an affirmative defense to patent infringement, unenforceability should have, and could have, been raised by Walmart long ago. Instead, Walmart waited until after the close of discovery and just days before the parties made their pretrial disclosures. RavenWhite will be severely prejudiced by this delay through the potential loss of significant damages based on an issue that could have easily been mooted earlier in the case. Walmart's failure to timely raise this

17

affirmative defense provides an independent basis for denying its motion for summary judgment.

*See Imperium IP Holdings (Cayman) Ltd. v. Samsung Elecs. Co., Ltd.*, 203 F. Supp. 3d 755, 761

(E.D. Tex. 2016) (finding that defendant waived a license defense by failing to timely raise it).

## VI.    Conclusion

For the multiple reasons explained above, the Court should deny the Motion.

Dated: July 9, 2026                     Respectfully submitted,

/s/ Robert K. Kramer
Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Zachariah A. Higgins (*pro hac vice*)
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
jarmstrong@kramerllp.com
Ryan Dooley (*pro hac vice*)
rdooley@kramerllp.com
Robert Y. Xie (*pro hac vice*)
rxie@kramerllp.com
Rachael Chan (*pro hac vice*)
rchan@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street**,** Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

████████████████████████████████████████████

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 9, 2026, and any confidential versions are being served by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. No. 51) entered in this case on December 10, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer