IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § § | CASE NO. 2:24-CV-00688-JRG-RSP |
| *Plaintiff,* | § § | *(Lead Case)* |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | |
| *Defendants.* | § § | |

| | | |
|---|---|---|
| | § § | |
| RAVENWHITE LICENSING LLC | § § | CASE NO. 2:24-CV-00689-RWS-RSP |
| *Plaintiff,* | § § | *(Member Case)* |
| v. | § § | |
| | § | JURY TRIAL DEMANDED |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | |
| *Defendants.* | § § | |

**WALMART'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT TO JOIN RAVENWHITE SECURITY, INC. AND SECURITY TECHNOLOGY, LLC AS CO-PLAINTIFFS (Dkt. 187)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 2

    A.     The Prior Patent Owners Lack Article III Standing ................................... 2

    B.     Plaintiff Fails to Show Joinder is Warranted. ........................................... 8

        1.     Plaintiff's Explanation for its Delay is Meritless. ....................... 9

        2.     Joinder is Not Necessary or Important. ...................................... 11

        3.     Joinder Would Unduly Prejudice Walmart. ................................ 11

        4.     A Continuance is Unavailable to Cure Any Prejudice. ............... 12

III.   CONCLUSION ................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Cases**

*A.L.M. Holding Co. v. Zydex Indus. Private Ltd.*,
   176 F.4th 1326 (Fed. Cir. 2026) ................................................................................... 6

*Alfred E. Mann Foundation for Sci. Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010) .................................................................................... 4

*Fontenot v. McCraw*,
   777 F.3d 741 (5th Cir. 2015) .................................................................................... 2, 3

*Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*,
   579 F.3d 546 (5th Cir. 2009) ....................................................................................... 5

*In re Fallaux*,
   564 F.3d 1313 (Fed. Cir. 2009) .................................................................................. 11

*In re Hubbell*,
   709 F.3d 1140 (Fed. Cir. 2013) .................................................................................. 11

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
   946 F.3d 649 (5th Cir. 2019) ....................................................................................... 8

*Lewis v. Casey*,
   518 U.S. 343 (1996).................................................................................................... 2

*SB IP Holdings LLC v. Vivint Smart Home, Inc.*,
   No. 4:20-cv-886, 2022 WL 3331254 (E.D. Tex. Aug. 11, 2022).......................................... 9

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000) .................................................................................... 7

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
   944 F.2d 870 (Fed. Cir. 1991) ................................................................................... 7, 8

*WiAV Solutions LLC v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010) .................................................................................... 3

█████████████████

## I.    INTRODUCTION

Plaintiff's request to amend its Complaint to join Security Technology, LLC and RavenWhite Security, Inc. (collectively, the "Prior Patent Owners") as co-plaintiffs is not a typical motion.  To be clear, Walmart is not seeking to join the Prior Patent Owners or arguing that their joinder is required to cure any defect in *prudential* standing.  There is no such defect.

Plaintiff's own Complaint states that it holds "all right, title, and interest in and to" the Asserted Patents, and Plaintiff submitted a sworn declaration to the Court just two months ago reaffirming that it still has "all rights" in the Asserted Patents.  *See* Dkt. 26 at ¶¶ 31 and 34; Dkt. 167-1 at ¶¶ 4 and 6; *see also* Dkt. 167 at 1 (representing to the Court that Plaintiff has "all substantial rights in the patents").  This is further confirmed by the underlying agreements, in which the █████████████████████████████████████ the ████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████.  Indeed, by design, the underlying agreements ██ █████████████████████████████ ███████████████████████████████████ █████████████████████████████████████████████████    *See* Exs. 1 and 2 at ¶ 3.3 (emphasis added).  In other words, because the Prior Patent Owners did not want to be compelled to join any lawsuit, they purposefully ███████████████████████ ████████ so that Plaintiff alone would have standing to sue Walmart.

Given these facts, Plaintiff's motion is a transparent attempt to conflate the non-issue of prudential standing with Walmart's pending motion for summary judgment of non-enforceability.  As explained in Walmart's motion, the Asserted Patents are not enforceable because the Prior Patent Owners ████████████████████ in those two patents to Plaintiff while deliberately ███████████████████████ that formed the basis for a pair of obviousness-type double patenting rejections.  *See* Dkt. 176.  █████████████████████████

1

██████████ ████████████████████ as required by the corresponding terminal disclaimers. Joining the Prior Patent Owners as plaintiffs in this case does not change this fact, nor does it cure what Walmart contends is a **constitutional** standing defect under Article III.

Faced with the statutory non-enforceability of the Asserted Patents, Plaintiff now unilaterally claims—20 months after the Court's deadline for the joinder of parties—that it was wrong all along about the scope of its own rights. In what should be a huge red flag, Plaintiff now seeks to disavow the assertions in its own Complaint, disavow the sworn declaration of its own corporate representative, and disavow its own representations to this Court so that it can argue, for the first time, that it does not hold "all substantial rights" in the Asserted Patents. However, Plaintiff's desperate attempt to reverse course at such a late stage—after the close of discovery, after the exchange of expert reports, and after the filing of dispositive motions—has no basis in the facts or the law, and any joinder of the Prior Patent Owners would have no effect on the non-enforceability of the Asserted Patents or the corresponding lack of Article III standing. As a result, because all substantial rights—including all exclusionary rights—are held by Plaintiff, the Prior Patent Owners lack constitutional standing to join this case as plaintiffs, and the Court should deny Plaintiff's motion for leave to amend its complaint.

## II.    ARGUMENT

The Court should deny Plaintiff's motion for leave to amend for two independent reasons: (a) the Prior Patent Owners lack Article III standing and (b) Plaintiff fails to show joinder is warranted.

### A.    The Prior Patent Owners Lack Article III Standing.

As expressly stated by the Fifth Circuit, "[t]he court must evaluate each plaintiff's Article III standing for each claim; 'standing is not dispensed in gross.'" *See Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). For example,

2

in *Fontenot*, although her two co-plaintiffs had constitutional standing under Article III, the Fifth Circuit held that Plaintiff Fontenot lacked such standing for her "record correction claim" because the Department of Public Safety had already provided her with a complete remedy at the time of the complaint. *Id.* at 746-47 (holding that "Plaintiff Fontenot lacks standing to sue").

As a threshold matter, Plaintiff has not argued, and the record does not support, a finding that either of the Prior Patent Owners would have constitutional standing under Article III. Given the express provisions of the underlying agreements, the Prior Patent Owners cannot show that they have suffered a cognizable injury from any alleged infringement by Walmart.

In particular, neither of the Prior Patent Owners retained any exclusionary rights in the two Asserted Patents. In *WiAV Solutions*, the Federal Circuit stated that "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has ***an exclusionary right*** in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) (emphasis added). Without an exclusionary right, a nominal "owner" of a patent cannot claim that it has suffered a cognizable injury from an alleged infringement.

In this case, there is no reasonable dispute that ███████████████████████████████ ████████████████████████████████████. Under each agreement, Plaintiff has

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See* Exs. 1 and 2 at ¶ 2.1. This includes ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████     *Id.* The agreements further state that ████████████████████████

3



*Id.* at ¶ 3.1 (emphasis added).

Conversely, with respect to the Asserted Patents, the Prior Patent Owners agreed that ███

███████████████████████████████████████████████████████

██████████████████████████████████ *Id.* at ¶ 2.1.  Additionally, neither of the Prior

Patent Owners ████████████████████████████████████████████

████████████████████████████████ *See id.* at ¶¶ 3.1 and 3.3 (giving

Plaintiff ███████████████████████████████████████████████

████████████████████████).  Indeed, ██████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████ *See*

*id.* at ¶ 3.3 (emphasis added); *see also Alfred E. Mann Foundation for Sci. Research v. Cochlear*

*Corp.*, 604 F.3d 1354, 1358-60 (Fed. Cir. 2010) (stating that when a licensee holds "all substantial

rights" then "the licensee becomes the owner of the patent" and "gains the right to sue on its own").

Based on the above provisions, Plaintiff received all exclusionary rights, including ███

███████████████████████████████████████████████████████

███████████████████████████ The Prior Patent Owners ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████ *See* Exs. 1 and 2 at ¶ 3.1 (emphasis added).  Conversely, the Prior Patent

4



Owns ██████████████████████████████████, ███████████████████████

███████████████████████████████████████████████████.

Despite the ██████████████████████████████████, Plaintiff nonetheless

tries to argue that the █████████████████████████████████████████████

█████████████    See Dkt. 187 at 10-11.   Not only is this assertion contradicted by the

██████████████ (as explained below), but it is also directly contradicted by Plaintiff's own

Complaint and its recent sworn declaration to this Court.  For example, Plaintiff states in its

Complaint that it holds "all right, title, and interest in and to" the Asserted Patents.  *See* Dkt. 26 at

¶¶ 31 and 34; *see also Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d

546, 550 (5th Cir. 2009) (holding that "[f]actual assertions in the complaint are judicial admissions

conclusively binding on the plaintiff").  Similarly, the sworn declaration of Plaintiff's corporate

representative, Mr. Bjorn Jakobsson, acknowledges—without equivocation—that ████████

████████████████████████████████████    *See* Dkt. 167-1 at ¶¶ 4 and 6.

In fact, Mr. Jakobsson signed his sworn declaration a mere two months ago, after Walmart

moved to compel the production of any litigation funding agreements.  In direct response to

Walmart's attempts to probe the standing issue to see if Plaintiff had granted exclusionary rights

to any third-party funders, Plaintiff not only submitted Mr. Jakobsson's declaration to this Court

but affirmatively represented in its briefing that Plaintiff has "all substantial rights in the patents."

*See* Dkt. 167 at 1.  Indeed, in addition to stating that Plaintiff has "the sole and full authority to

prosecute or settle this case, or to grant licenses to the '402 and '823 [Patents]," Mr. Jakobsson

further stated under penalty of perjury that the Prior Patent Owners "do not have any such rights

with respect to Plaintiff RavenWhite Licensing LLC or this case, or to grant licenses to the '402

and '823 Patents."  *See* Dkt. 167-1 at ¶ 8.

5

███████████████████

Plaintiff's attempt to recant those sworn statements and argue that the Prior Patent Owners retained "certain substantial rights" lacks legal merit. Specifically, Plaintiff's motion identifies four alleged "substantial rights"—████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████. *See* Dkt. 187 at 10-11. But none of these provides any exclusionary rights—and thus the Prior Patent Owners lack Article III standing.

*First*, Plaintiff's claim that the Prior Patent Owners retained "the right to assign" the patents is directly contradicted by the underlying agreements. As expressly stated in Paragraph 2.1 of each agreement: ███████████████████████████████████████

██████████████████████████████████████████ *See* Exs. 1 and 2 at ¶ 2.1 (emphasis added). As a result, despite Plaintiff's assertion to the contrary, the

████████████████████████████████████████ and █████████

██████████████████████████ In stark contrast, both agreements state████

████████████████████████████████████████████████

████████████ *Id.* Thus, ████████████████████████████

██████████████████████████████████████.

*Second*, it is well-established that whether the Prior Patent Owners retained a "right to a portion" of any royalties is not an exclusionary right that confers Article III standing. Indeed, in *A.L.M. Holding*, the Federal Circuit expressly stated that a right to collect royalties, on its own, is "not itself an exclusionary right." *See A.L.M. Holding Co. v. Zydex Indus. Private Ltd.*, 176 F.4th 1326, 1334 (Fed. Cir. 2026) (stating that standing exists only when that right is "paired with other provisions that involve the ability to *exclude* others from practicing the invention") (emphasis added); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875

6

███████████████

(Fed. Cir. 1991) (holding that "the right to receive infringement damages was merely a means of compensation under the agreement" and was not an exclusionary right).  Here, although Plaintiff argues that the ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████.  As a result, under Federal Circuit law, the mere retention of a right to a portion of any paid royalties is not enough to confer standing under Article III.

*Third*, the Prior Patent Owners' ████████████████████ also does not confer Article III standing.  As highlighted by Plaintiff, the agreements provide that ████

████████████████████████████████████████████

████████████████████████ *See* Exs. 1 and 2 at ¶ 6.  ████████

████████████████████████████████████████████

██████████████████████.  However, as stated by the Federal Circuit in *Speedplay*, "a licensor does not retain a substantial right in a patent merely by reserving a reversion in the patent contingent upon the licensee's financial distress."  *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1252 (Fed. Cir. 2000).  Rejecting the very argument that Plaintiff makes in its motion, the Federal Circuit held that the nominal patent owners "retained no substantial rights" in the patent-at-issue and that the licensee "therefore may sue in its own name for infringement of that patent."  *Id.*

Similarly, in *Vaupel*, the Federal Circuit observed that the nominal patent owner had retained a variety of rights, including "a reversionary right to the patent in the event of bankruptcy."  *Vaupel*, 944 F.2d at 875.  However, despite the retention of this and other rights, the Federal Circuit held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license

7



or indicate an intent not to transfer all substantial rights." *Id.*  As a result, the mere fact that ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not provide the Prior Patent Owners with constitutional standing.

*Fourth*, for the same reasons above, the mere fact that ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ does not mean that the Prior Patent Owners currently possess those exclusionary rights or have suffered any cognizable injury.

For all of the reasons above, Plaintiff has failed to show that the Prior Patent Owners possess any exclusionary rights that would provide them with constitutional standing under Article III.  As a result, under Fifth Circuit law, Plaintiff's attempt to join those third parties to this lawsuit as additional plaintiffs is improper and should be denied.  *See Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (stating that "[e]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation").

Additionally, for the reasons explained in Walmart's pending motion for summary judgment of non-enforceability, the two Asserted Patents were not enforceable at the time of the lawsuit (and remain not enforceable today).  *See* Dkt. 176.  As a result, for those same reasons, anyone seeking to enforce the Asserted Patents would lack the required Article III standing to sue for infringement even if they otherwise retained an exclusionary right.

## B.    Plaintiff Fails to Show Joinder is Warranted.

Setting aside the lack of constitutional standing, Plaintiff has also failed to show that joinder is warranted under the law.  As Plaintiff recognizes in its motion, the deadline to join

parties was on November 14, 2024, roughly twenty months ago.  Because this deadline has passed, Plaintiff must show that it has "good cause" for any extension, which typically requires an analysis of four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  *See SB IP Holdings LLC v. Vivint Smart Home, Inc.*, No. 4:20-cv-886, 2022 WL 3331254, at *2 (E.D. Tex. Aug. 11, 2022).  As discussed below, none of these factors weigh in favor of extending the joinder deadline.

### 1. Plaintiff's Explanation for its Delay is Meritless.

Plaintiff's only argument for the first factor is that "it was not put on notice of Walmart's [non-enforceability] theory until well after the passing of the deadlines to amend the pleadings and add parties."  *See* Dkt. 187 at 7.  However, Walmart's "theory" (as clearly stated in its pending motion for summary judgment) is that the Asserted Patents are not enforceable under the relevant terminal disclaimers and, as a result, Plaintiff lacks constitutional standing under Article III. Walmart is ***not arguing*** that Plaintiff lacks prudential standing or that either the non-enforceability of the Asserted Patents or the resulting constitutional standing defect can be fixed by joining the Prior Patent Owners to this case.

In fact, joinder of the Prior Patent Owners does not and cannot cure these actual defects. Joining the Prior Patent Owners as "plaintiffs" to this lawsuit has ***no effect*** on the restoration of "common ownership" of the Asserted Patents with the Prior Patents cited in the terminal disclaimers.  Moreover, restoring the "common ownership" requirement can be accomplished ***without adding*** the Prior Patent Owners to this lawsuit.  For example, Plaintiff could obtain all

.  The fact that Plaintiff has failed to—

9

████████████

or cannot— take steps to fix this "common ownership" problem does not warrant joinder.

Similarly, as explained in Walmart's pending motion for summary judgment (Dkt. 176), because the Asserted Patents are, by operation of statute, subject to a terminal disclaimer that renders them not enforceable, the Asserted Patents do not provide an enforceable right that would give rise to a cognizable injury under Article III.  For the same reasons as above, this defect in constitutional standing cannot be "fixed" by joining the Prior Patent Owners.

As a result, Plaintiff fails to explain how Walmart's pending motion somehow entitles it to join the Prior Patent Owners to this case twenty months after the expiration of the Court's joinder deadline.  Indeed, Plaintiff's entire argument for why joinder is allegedly necessary hinges on Plaintiff disavowing its own complaint, its own sworn declaration, and its own prior briefing to this Court, all of which affirmatively state that Plaintiffs hold all substantial rights in the Asserted Patents.  Even if the Court entertains Plaintiff's excuse that it was simply wrong about the scope of its own rights, Plaintiff fails to explain why it was so wrong so consistently in this case.  And Plaintiff does not even try to explain why it did not identify this alleged prudential standing defect—based entirely on information within Plaintiff's own custody and control—earlier in this case.  The answer, of course, is obvious: Plaintiff's attempt to disavow its own statements and ignore the ████████████████████████ is a legally irrelevant,  after-the-fact attempt to evade the non-enforceability of the Asserted Patents.  But the underlying agreements are clear: by design, they gave Plaintiff ███████████████  ████████████

████████████████████████████████████████████████

███████████   *See* Exs. 1 and 2 at ¶ 3.3 (emphasis added).  As a result, this first factor weighs against Plaintiff.

10

### 2.   Joinder is Not Necessary or Important.

As explained above, joinder does not address the lack of "common ownership" between the Asserted Patents and the cited Prior Patents or the resulting lack of constitutional standing.  As a result, Plaintiff is wrong that joinder will "moot" Walmart's pending motion and "dispense with the purported terminal-disclaimer-related standing defect."  *See* Dkt. 187 at 7.

In fact, joinder of the Prior Patent Owners in this case does not even address the policy concerns that underpin the doctrine of obviousness-type double patenting.  As explained in Walmart's pending motion, one of the chief concerns underpinning this doctrine is the risk of "multiple infringement suits by different assignees asserting essentially the same patented invention."  *See In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013); *see also In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009) (noting that "the co-ownership requirement is a creative solution to potential harassment suits from two separate patents").  However, setting aside all the glaring problems above, the Prior Patent Owners do not even seek to assert the cited Prior Patents in this case, deliberately holding on to the threat of multiple lawsuits involving essentially the same patented invention.  *See* Dkt. 187 at 8 (stating that the Prior Patent Owners "are not seeking to add any new causes of action against Walmart").

As a result, joinder of the Prior Patent Owners does not address any of the fundamental problems raised in Walmart's pending motion and, for the reasons explained above, is not necessary given that Plaintiff holds all substantial rights in the Asserted Patents.  Given that joinder is futile, this second factor weighs against Plaintiff's motion.

### 3.   Joinder Would Unduly Prejudice Walmart.

There is no dispute that this case is in its late stages.  Discovery is closed, expert reports have been exchanged, and dispositive motions have been filed.  Allowing Plaintiff to add the Prior

11

████████████████████

Patent Owners to this case would force the Parties to revisit those earlier milestones. As "co-plaintiffs" to this case, Walmart would need to depose their corporate representatives and conduct additional discovery into their business practices, finances, licensing history, and other relevant topics. Afterward, Walmart would need to supplement or re-write its expert reports and pre-trial motions to account for Plaintiff's sudden change in position and that new discovery.

Moreover, prior to the close of discovery, Walmart was actively investigating whether Plaintiff had given up any of its exclusionary rights, including to any third-party litigation funders. To probe this issue, Walmart moved to compel the production of any litigation funding agreements. *See* Dkt. 158. In direct response to Walmart's motion to compel, Plaintiff submitted a sworn declaration to the Court stating ████████████████████████████████

████████████████████ *See* Dkt. 167-1 at ¶¶ 4 and 6. Further mooting Walmart's motion to compel, Plaintiff affirmatively represented in its briefing—without equivocation—that Plaintiff held "all substantial rights in the patents." *See* Dkt. 167 at 1. There is no ambiguity in these statements, and Walmart relied on them in deciding to withdraw its motion to compel and conserve the resources of the Court. As a result, allowing Plaintiff to disavow those statements and to now claim—after the close of discovery—that it was wrong and that it does not actually hold "all substantial rights" would deny Walmart the ability to conduct discovery into this issue.

As a result, this third factor weighs against Plaintiff's motion.

### 4. A Continuance is Unavailable to Cure Any Prejudice.

Likewise, there is no availability in the schedule to cure the resulting prejudice from joining two new plaintiffs. Trial is currently set for September 14, 2026 before this Court, and any "continuance" would necessitate reopening discovery, re-doing expert reports, and resetting the Court's pre-trial deadlines. As a result, this fourth factor weighs against Plaintiff's motion.

12

███████████████

## III.    CONCLUSION

Regardless of whether Plaintiff is seeking to extend that expired deadline under Rule 16 or seeking to amend its complaint under Rule 15, the analysis is the same.  Plaintiff has no valid explanation for its delay in seeking to join two new plaintiffs, and such joinder would only serve to unduly prejudice Walmart.  Moreover, Plaintiff's entire argument for why joinder is allegedly necessary hinges on Plaintiff disavowing its own complaint, its own sworn declaration, and its own prior briefing to this Court, as well as ████████████████████████████

████████  Plaintiff's abrupt reversal should raise a giant red flag with respect to the ownership of the Asserted Patents and their corresponding enforceability under the relevant terminal disclaimers.  Given that joinder has no impact on that issue or on the resulting defect in constitutional standing, any joinder would be futile and the Court should deny Plaintiff's motion.

Dated:  July 16, 2026

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

14

Facsimile:  (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile:  (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile:  (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B

15

Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and
Wal-Mart Stores Texas, LLC*



## CERTIFICATE OF SERVICE

I hereby certify that, on July 16, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record whom have consented to electronic service.

/s/ Amir H. Alavi
Amir H. Alavi

16