**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC<br><br>*Plaintiff,*<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00688-JRG-RSP<br>(*Lead Case*)<br><br><br>JURY TRIAL DEMANDED |
| RAVENWHITE LICENSING LLC<br><br>*Plaintiff,*<br><br>v.<br><br>WALMART INC. and WAL-MART STORES TEXAS, LLC<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-cv-00689-JRG-RSP<br>(*Member Case*)<br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
TO STRIKE OPINIONS OF DR. KEVIN ALMEROTH**

███████████████████████████████████████████

**TABLE OF CONTENTS**

I.      ANALYSIS.................................................................................................................1

    A.      Dr. Almeroth's Opinions Regarding Various Non-Infringing Alternatives Should Not be Excluded .................................................................................................................1

        1.      Dr. Almeroth's Rebuttal Repot (¶¶535-554) .................................................1

        2.      Dr. Almeroth's Opening Report (¶¶516-519) ................................................4

        3.      All Non-Infringing Alternatives in Both of Dr. Almeroth's Reports ............6

    B.      Dr. Almeroth's Opinions Regarding the Home Depot Covenant Not to Sue Should Not be Excluded .................................................................................................................7

        1.      Opening Report (¶¶214, 485, 542)................................................................8

        2.      Rebuttal Report (¶¶431-438).........................................................................9

        3.      RavenWhite's Corporate Representative and Damages Expert Have Opened the Door to Discuss the PTAB Proceedings.............................................................10

        4.      RavenWhite's Requested Relief is Extremely Broad ...................................11

    C.      Dr. Almeroth's Opinions Regarding the ████████████████ Not be Struck ...........12

II.     CONCLUSION.........................................................................................................13

████████████████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*CLO Virtual Fashion Inc. v. Zhejiang Lingdi Digit. Tech.*,
  2025 U.S. Dist. LEXIS 129865 (E.D. Tex. Jul. 9, 2025) ...........................................................5

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
  2024 U.S. Dist. LEXIS 53740 (E.D. Tex. Mar. 26, 2024) ..........................................................6

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ...................................................................................................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) .............................................................................................7

*Longhorn HD LLC v. Netscout Sys.*,
  2022 U.S. Dist. LEXIS 60153 (E.D. Tex. Mar. 31, 2022) ..........................................................5

*Mars, Inc. v. Coin Acceptors, Inc.*,
  527 F.3d 1359 (Fed. Cir. 2008) ...................................................................................................6

*Teva Pharms. Int'l v. Eli Lilly & Co.*,
  8 F.4th 1349 (Fed. Cir. 2021) .....................................................................................................8

*USAA v. Wells Fargo Bank*,
  2019 U.S. Dist. LEXIS 217004 (E.D. Tex. Dec. 17, 2019).........................................................5

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
  2018 U.S. Dist. LEXIS 218056 (E.D. Tex. Nov. 13, 2018).......................................................10

███████████████████████████████████████

The Court should deny RavenWhite's Motion to Strike Opinions of Expert Kevin C. Almeroth. Dkt. 185 ("Mot."). Dr. Almeroth served two reports—an opening invalidity report (Ex. A) and a rebuttal non-infringement report (Ex. B). RavenWhite raises a host of issues with both reports: that certain opinions are untimely; that certain opinions lack sufficient detail; and that certain opinions contain too much detail. None of these arguments have merit.

## I.      ANALYSIS

### A.      Dr. Almeroth's Opinions Regarding Various Non-Infringing Alternatives Should Not be Excluded

RavenWhite seeks to exclude the entirety of Dr. Almeroth's non-infringing alternatives analysis, across his opening and rebuttal reports. Mot. at 2-5. Importantly, RavenWhite does not argue that Walmart failed to disclose any alternatives in its interrogatory answers. Instead, RavenWhite raises various challenges to the level of detail or timing of Dr. Almeroth's analysis. Because Dr. Almeroth's opinions are timely and largely a direct response to opinions from RavenWhite's infringement expert (Dr. Smith), none should be excluded.

#### 1.      Dr. Almeroth's Rebuttal Repot (¶¶535-554)

RavenWhite first contends that all of Dr. Almeroth's analysis regarding non-infringing alternatives from his rebuttal report should be excluded. Mot. at 1, 3-4. Dr. Almeroth provides several opinions in his rebuttal report; some provide additional detail regarding opinions disclosed in his opening report, some are based on expanded infringement theories that were not disclosed in RavenWhite's infringement contentions, and some are direct rebuttals to opinions offered by Dr. Smith in his opening report. Even though RavenWhite grouped these disparate opinions together, because the context of each materially differs, Walmart will separately addresses each below.

1

### a. Paragraphs 535-539

Although RavenWhite moves to strike paragraphs 535-539 from Dr. Almeroth's rebuttal report (Proposed Order at 1), RavenWhite never separately addresses these paragraphs—likely because Dr. Almeroth's analysis in these paragraphs is different from the other paragraphs RavenWhite cites. *See* Mot. at 2-5. In Dr. Almeroth's opening report, he opines on various ways to modify Walmart's system that would be acceptable NIAs to the '823 Patent. Ex. A at ¶¶516-519. In particular, Dr. Almeroth states that Walmart's system could be modified so that cookies are not stored in browser storage areas or are only stored in a single browser storage area. *See id.*

In paragraphs 535-539 of his rebuttal report, Dr. Almeroth provides greater detail about these previously-disclosed NIAs by rebutting some of Dr. Smith's analysis from his opening report. Dr. Smith relies on a Walmart document to purportedly show that Walmart values storing cookies in two different browser storage locations (it does not). Ex. B at ¶538. Dr. Almeroth rebuts that opinion by citing other portions of that same document to show that the document never mentions storing cookies in different browser locations. *Id.* Dr. Almeroth cites no new documents; rather, he cites the same document Dr. Smith relies on and provides his rebuttal analysis to Dr. Smith. *Id.* Nor does Dr. Almeroth provide any new alternatives in this section. He merely adds more detail to previously-disclosed NIAs to rebut Dr. Smith's analysis.

Thus, Dr. Almeroth's opinions at paragraphs 535-539 of his rebuttal report should not be excluded: RavenWhite cannot complain that these NIA theories were not identified (they were) or that it suffers prejudice (given that the opinions are a direct rebuttal to Dr. Smith). Moreover, RavenWhite never requested additional discovery regarding these opinions, or an extension of the schedule; nor did RavenWhite seek to supplement Dr. Smith's opinions to address them. And RavenWhite does not argue that the opinions are not important, because it cannot since they are

2

necessary to address Dr. Smith's newly disclosed criticisms. Simply put, all the factors—including a potential continuance—weigh against exclusion.

### b.  Paragraphs 540-551

In paragraphs 540-551, Dr. Almeroth directly rebuts Dr. Smith's opinions in his opening report that certain prior art would not be a proper non-infringing alternative. Ex. 1 (Smith Rep.) at ¶¶124-129, 136-138. More specifically, in direct response to Dr. Smith's opinions regarding the prior art, Dr. Almeroth explains why various prior art references and combinations constitute acceptable non-infringing alternatives. Ex. B at ¶¶540-551. This does not warrant exclusion. RavenWhite identifies no specific prejudice if the opinions are allowed, fails to acknowledge that it took no steps to mitigate such alleged prejudice, and does not contend that Dr. Almeroth's opinions are somehow unimportant. Again, the factors weigh against exclusion.

### c.  Paragraphs 552-554

In these paragraphs, Dr. Almeroth provides a non-infringing alternative based on Dr. Smith's interpretation of Walmart's source code for the purposes of infringement. These infringement arguments were provided for the ***first time*** in Dr. Smith's opening report. Ex. B at ¶¶552-554. More specifically, Dr. Smith's opening report cites the ███████████ object within Walmart's source code to attempt to show how Walmart relies on customer purchase data. *Id*. at ¶552. ████████████████████  ██████████  █████████████████████ ██████████████████████████████████████████████  ██████████ █████████████████████████████. ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████. *Id*. This is a non-infringing alternative based on Dr.

██████████████████████████████████

Smith's specific infringement theory and source code analysis regarding the ████████████ disclosed for the first time in his opening report.

Dr. Almeroth's analysis regarding the ████████████ is timely because RavenWhite did not disclose this specific infringement theory (or corresponding source code) until Dr. Smith's opening infringement report. RavenWhite's infringement contentions never mention ████████████. Ex. 6 ('402 Claim Chart). Walmart could not have appreciated its applicability to this case until it reviewed Dr. Smith's infringement report. This means Walmart could not have identified this non-infringing alternative until it understood how Dr. Smith intended to rely on Walmart's source code. Had RavenWhite cited the ████████████ in its infringement contentions, Walmart could have identified this alternative sooner.

Moreover, RavenWhite does not challenge the substance of Dr. Almeroth's analysis regarding this NIA. Dr. Almeroth opines ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████Ex. B at ¶¶553-554. RavenWhite made no effort to mitigate its perceived prejudice; indeed, it did not ask Dr. Almeroth about the ████████████████████████████████████████████████████████████████. Ex. 2 (Almeroth Dep.) at 226:22-227:23. This all weighs against exclusion.

**2.      Dr. Almeroth's Opening Report (¶¶516-519)**

Next, RavenWhite contends that Dr. Almeroth's analysis from his opening report should be struck because his opinions are "incomplete and unreliable." Mot. at 4. RavenWhite does not dispute that these opinions were timely disclosed. Instead, RavenWhite argues Dr. Almeroth failed to explain how the alternatives were available and acceptable. Not so.

Dr. Almeroth opines ████████████████████████████████████████████████████████████████████████████, which RavenWhite relies on to show infringement. Ex. B at ¶517. Dr.

4

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Almeroth explains that this alternative does not infringe because there would be only one type of cookie (and the '823 claims clearly require two different types of cookies). *Id.* at ¶518. He explains that this alternative would be available to Walmart because Walmart could ██████████ ████████████████████████████████ *Id.* at ¶517. And he explains that this alternative would be acceptable to Walmart because Walmart already achieves much of the claimed improvements from the '823 Patent using non-accused techniques (*e.g.*, user logins). *Id.* at ¶518. Dr. Almeroth should be permitted to offer these opinions at trial.

Dr. Almeroth's analysis is similar to the analysis found acceptable in *USAA v. Wells Fargo Bank*, 2019 U.S. Dist. LEXIS 217004 (E.D. Tex. Dec. 17, 2019). There, the defendant's expert opined that a non-infringing alternative ██████████████████████████████ *Id.* at *7. The court held that this was sufficient to show the alternative would have been available. *Id.* This is very similar to Dr. Almeroth's opinion that ████████████████████████ ██████████████████████████████ Ex. B at ¶517.

RavenWhite cites *CLO* and *Longhorn* for the proposition that Dr. Almeroth's opinions should be struck for failing ████████████████████████████ Mot. at 4 (citing *Longhorn HD LLC v. Netscout Sys.*, 2022 U.S. Dist. LEXIS 60153, at *12-13 (E.D. Tex. Mar. 31, 2022) and *CLO Virtual Fashion Inc. v. Zhejiang Lingdi Digit. Tech.*, 2025 U.S. Dist. LEXIS 129865, at *18 (E.D. Tex. Jul. 9, 2025)). But Dr. Almeroth explained why his alternative did not infringe, why it was available, and why it was acceptable to Walmart. No more is required. RavenWhite also criticizes Dr. Almeroth for failing to ██████████████████ ██████████████ Mot. at 4. But RavenWhite cites no authority requiring an expert to discuss potential non-infringing alternatives with a party in order to opine on them.

5

███████████████████████████

### 3.    All Non-Infringing Alternatives in Both of Dr. Almeroth's Reports

Finally, RavenWhite seeks to strike all of Dr. Almeroth's non-infringing alternatives analysis (both reports) because Mr. Haas (Walmart's damages expert) purportedly did not rely on NIAs. But Mr. Haas's report contains a specific section criticizing RavenWhite's damages expert (Mr. Weinstein) for failing to account for NIAs in his opening report. Ex. G at ¶¶256-259.

RavenWhite's argument appears to be that, because Mr. Haas did not assign a specific dollar amount to the impact of NIAs, Dr. Almeroth cannot testify about them. *See* Mot. at 5. But that argument is illogical and not supported by the one case RavenWhite cites. Mr. Haas provided a rebuttal report, which by definition rebuts the report of RavenWhite's expert (Mr. Weinstein). Mr. Weinstein did not account for the impact of any purported non-infringing alternatives in his opening report. So in rebuttal, Mr. Haas rightly criticized Mr. Weinstein for failing to consider NIAs. *See* Ex. G at ¶¶256-259. Simply because Mr. Haas does not assign a numerical value to a NIA does not make his criticism of Mr. Weinstein any less applicable (or Dr. Almeroth's opinions any less relevant). *Cf. Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) (NIAs do not cap reasonable royalty damages as a matter of law).

RavenWhite cites *Correct Transmission* for the proposition that "absent Mr. Haas's reliance on Dr. Almeroth's NIA opinions, those opinions are irrelevant and will only serve to confuse the jury." Mot. at 5. The facts of that case differ significantly from this case. In *Correct Transmission*, there was no analysis whatsoever of NIAs in the report of the defendant's damages expert. *Correct Transmission, LLC v. Nokia of Am. Corp.*, 2024 U.S. Dist. LEXIS 53740, at *12 (E.D. Tex. Mar. 26, 2024). Here, Mr. Haas specifically criticized Mr. Weinstein for failing to account for NIAs. And both Dr. Almeroth and Mr. Haas discussed NIAs—including the impact of RavenWhite's failure to account for them. These opinions should not be struck.

### B.    Dr. Almeroth's Opinions Regarding the Home Depot Covenant Not to Sue Should Not be Excluded

It is easy to miss the forest through the trees when considering RavenWhite's arguments about the Home Depot covenant not to sue. The royalties the patentee has received for licensing the patents in suit is literally the first *Georgia-Pacific* factor. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). RavenWhite granted one of Walmart's competitors a covenant not to sue (the "Home Depot CNS") to the Asserted Patents for $0. Yet RavenWhite argues that Walmart's technical expert should not be able to tell the jury about the technical circumstances of that agreement, or the technical similarities between the Home Depot and Walmart systems.

RavenWhite sued Home Depot and Walmart for infringement of '402 and '823 Patents. Home Depot filed IPR petitions, and the PTAB instituted on both. After the PTAB instituted the IPRs, RavenWhite granted Home Depot a covenant not to sue on both patents in exchange for dismissal of the IPRs. Ex. B at ¶431. Home Depot did not pay any money for the CNS. And Mr. Holmes (the owner of RavenWhite) testified that he believes Home Depot is currently infringing both patents. Ex. 3 (Holmes Dep.) at 29:19-30:18.

This is important for two reasons. One – RavenWhite gave one of Walmart's competitors a *free* CNS to the Asserted Patents. This information is highly (and indisputably) relevant to damages in this case. Two – RavenWhite gave Home Depot a free CNS on patents its owner believes Home Depot currently infringes. It is reasonable to conclude the IPR risk factored into RavenWhite's decision.

In this motion to strike, RavenWhite seeks to have its cake and eat it too. RavenWhite admits the Home Depot CNS is technically comparable. *See* Mot. at 10. RavenWhite wants to tell the jury it granted Home Depot a free CNS to the Asserted Patents because RavenWhite "wished

not to have our case stayed." Ex. 4 (Weinstein Rep.) at ¶37 (quoting testimony from RavenWhite's 30(b)(6) witness). But RavenWhite also wants to preclude Walmart from telling the jury why the case was stayed. And it seeks to preclude Dr. Almeroth from explaining to the jury just how similar Home Depot's system is to the accused Walmart system. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (reasonable royalty analysis must "account for differences in the technologies and the economic circumstances of the contracting parties").

Even if Walmart is ultimately precluded from discussing proceedings before the PTAB, it is highly relevant that RavenWhite granted a zero-dollar CNS on the Asserted Patents to one of Walmart's competitors. Dr. Almeroth should be permitted to opine on the similarities between the two systems.

### 1.    Opening Report (¶¶214, 485, 542)

An important secondary consideration of non-obviousness is commercial success. *See Teva Pharms. Int'l v. Eli Lilly & Co.*, 8 F.4th 1349, 1363 (Fed. Cir. 2021). In paragraph 485, Dr. Almeroth states that no one has paid money to license the '823 Patent, which shows a lack of commercial success and suggests the '823 Patent is obvious. This opinion is therefore relevant to his invalidity analysis. RavenWhite mischaracterizes Dr. Almeroth's opinion to make it sound inflammatory. *See* Mot. at 8 ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ That is not what Dr. Almeroth said. Rather, Dr. Almeroth merely opines: "nor are there any licenses showing respect for the '823 Patent." Ex. A at ¶485. He never states that Home Depot ████████ "lack respect" for the '823 Patent.

In paragraphs 214 and 542, Dr. Almeroth opines about the strength of Home Depot's IPR arguments. This is exactly the type of analysis a technical expert typically performs. He considered

the prior art and the arguments raised and then offered his opinions on the strength of the IPRs. These opinions are entirely consistent with his considerable experience in IPR proceedings; they are not speculative. And his opinions do not contradict Mr. Haas, who merely recites various terms in the Home Depot CNS; Mr. Haas never opines that the only reason for entering the Home Depot CNS was to avoid delay and that it had nothing to do with validity concerns. Ex. G (Haas Report) at ¶¶77, 80-81. But even if the Court ultimately strikes portions of paragraphs 214 and 542, paragraph 485 is dissimilar and should not be struck.

### 2.    Rebuttal Report (¶¶431-438)

In his rebuttal report (Ex. B), Dr. Almeroth opines that the Home Depot CNS is technically comparable and provides extensive analysis to support his opinion. Dr. Almeroth starts by comparing the licensed patents with the Asserted Patents. In this case, they are identical. Ex. B at ¶433. Next, Dr. Almeroth compares RavenWhite's infringement allegations against Home Depot and Walmart. He notes that RavenWhite asserted substantially similar infringement theories against both defendants. *Id*. at ¶434. Dr. Almeroth then discusses various documents describing Home Depot's targeted advertising system. *Id*. at ¶435. RavenWhite criticizes this paragraph because Dr. Almeroth did not cite any ***confidential*** Home Depot documents. *See* Mot. at 9 ("The foundation for his opinion lacks relevant confidential information about Home Depot's products and services, which is something he should not have access to as Walmart's technical expert."). But it is common for technical experts to opine on license comparability without citing confidential information; RavenWhite cites no authority that Dr. Almeroth was wrong to rely on public data.

Next, Dr. Almeroth reviews sixteen (16) Home Depot patents "for better understanding of how the Home Depot system operates." Ex. B at ¶436. After that, Dr. Almeroth discusses Home Depot's privacy policies to assess the information Home Depot tracks to use in targeted advertising. *Id*. at ¶437. Finally, Dr. Almeroth describes his own testing of the Walmart and Home

Depot websites. He includes screen shots of various product searches on both websites to highlight the substantial similarities in the way the websites (and targeted advertising algorithms) operate. *Id*. As Dr. Almeroth concludes, "this further confirms that there are substantial similarities between the accused functionality in the Home Depot system and in the Walmart system." *Id*. Dr. Almeroth's analysis in these paragraphs is thorough, detailed, and reliable.

Much of RavenWhite's argument focuses on one sentence from Dr. Almeroth's report: "If Home Depot did not infringe the '402 and '823 Patents, then Walmart does not either." To be clear, Walmart does not intend to argue at trial that it does not infringe because Home Depot does not infringe. Dr. Almeroth was simply highlighting the "substantial similarities" between Walmart and Home Depot. But even if the Court concludes that Dr. Almeroth cannot make that specific statement, it does not impact the remainder of his rebuttal analysis explaining the technical comparability of the Home Depot CNS.

### 3.     RavenWhite's Corporate Representative and Damages Expert Have Opened the Door to Discuss the PTAB Proceedings

RavenWhite repeatedly argues that Dr. Almeroth (and Walmart) should not be permitted to discuss PTAB proceedings, citing the Court's standing MIL. *See* Mot. at 7-8. But RavenWhite's arguments indicate that it may open the door to this testimony through its characterization of the Home Depot CNS. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 U.S. Dist. LEXIS 218056, at *5 (E.D. Tex. Nov. 13, 2018) ("As with all limine orders, if a Party, by failing to comply with this Order, opens the door to such evidence, the Court will determine if the non-offending Party may properly go into such matters in response."). RavenWhite's corporate representative testified that RavenWhite granted Home Depot a CNS because it wished not to have its case against Walmart stayed. Ex. 4 (Weinstein Rep.) at ¶38. Mr. Weinstein relies on this testimony to conclude that "the Home Depot agreement is not informative as to the outcome of the

10

hypothetical negotiation." *Id*. But the case against Walmart *was* stayed because of the instituted Home Depot IPRs. *See* Ex. D.

RavenWhite cannot have it both ways. RavenWhite wants to tell the jury to ignore its $0 CNS to Home Depot because it was based on concerns over litigation delays, but RavenWhite also wants to preclude Walmart from telling the jury *why* RavenWhite was concerned over litigation delays in the first place. RavenWhite essentially wants to use the Home Depot CNS as a sword and a shield. If RavenWhite is permitted to say it gave Home Depot a free CNS to avoid a stay, then Walmart (and Dr. Almeroth) must be permitted to explain why the case was stayed.

### 4.    RavenWhite's Requested Relief is Extremely Broad

The narrow focus of RavenWhite's motion does not match the expansive relief sought in its proposed order. *See* Dkt. 185-11. RavenWhite's proposed order states that "Dr. Almeroth shall not offer at trial any opinion related to the Home Depot Agreement beyond what is stated in paragraph 433 of his Rebuttal Report." *Id*. Paragraph 433 is two sentences long:

> In my opinion, the RavenWhite-Home Depot covenant not to sue and release/license is technically comparable to any license that would have been agreed to at the hypothetical negotiation in this case; both licenses would cover the same '402 and '823 Patents. Thus, the licensed patents in both agreements would be identical, and it follows as a matter of logic that identical patents are technically comparable to themselves.

Ex. B at ¶433. In other words, RavenWhite believes Dr. Almeroth should be limited to testifying as to the one thing that cannot be disputed (and that Home Depot admitted in its Motion)—the Home Depot CNS covers the Asserted Patents. *See* Mot. at 10. As explained above, there is no basis to strike Dr. Almeroth's Home Depot analysis, and there is no basis to limit his testimony to the two sentences above. In addition to opining that the Home Depot CNS covers the Asserted Patents, Dr. Almeroth should be permitted to opine that the technology covered by the CNS is technically comparable to the Walmart technology.

11

████████████████████████████████

Much of Dr. Almeroth's Home Depot analysis is "run of the mill" technical expert analysis. He evaluates the licensed patents (Ex. B at ¶433, which are identical), he evaluates documents describing the licensed products and technology (Ex. B at ¶¶435-437), he tests the licensed products (Ex. B at ¶438), and he opines that that Home Depot CNS is technically comparable. This is standard technical analysis.

RavenWhite likely seeks to exclude Dr. Almeroth's detailed analysis because neither of its technical experts offered any opinions on the Home Depot CNS. But that was RavenWhite's tactical choice. RavenWhite's damages expert (Mr. Weinstein) briefly discusses the CNS in his analysis of *Georgia-Pacific* factor 1. Ex. 4 (Weinstein Rep.) at ¶¶37-38. RavenWhite's technical experts (Dr. Smith and Dr. Jansen) could have provided technical opinions in their reports, but they did not. RavenWhite's strategic decision to not offer a technical opinion on the Home Depot CNS cannot make Dr. Almeroth's analysis any less relevant or reliable.

C.    Dr. Almeroth's Opinions Regarding the █████████ Should Not be Struck

There is no basis to strike Dr. Almeroth's analysis regarding the █████████. *See* Mot. at 11. Dr. Almeroth gives a thorough, detailed analysis of why the patent at issue in the █████ ████████████████████ is comparable to the Asserted Patents. Ex. B at ¶¶524-534. Dr. Almeroth provides an overview of the █████████, then provides four reasons why it is technically comparable to each Asserted Patent. *See id.* This type of analysis is common in technical reports. Notably, RavenWhite does not challenge *any* of Dr. Almeroth's substantive analysis.

Instead, RavenWhite seeks to exclude Dr. Almeroth's █████████ simply because Walmart's damages expert (Mr. Haas) states in his report that the █████████ was not technically comparable. Ex. G at ¶267. To be blunt, this was the result of a miscommunication between Dr. Almeroth and Mr. Haas. *See* Ex. 5 (Haas Dep.) at 49:4-10 (testifying that he relied on

12

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dr. Almeroth for technical issues). Mr. Haas does not provide his own technical comparability analysis (he would not be qualified to do so), nor does he substantively contradict Dr. Almeroth's technical analysis. Thus, Dr. Almeroth did not provide "incorrect opinions about technical comparability," like RavenWhite says. *See* Mot. at 11. Dr. Almeroth's opinions are correct; there was just a miscommunication between the experts. This is an issue for cross-examination, not exclusion under *Daubert*.

Dr. Almeroth's ████████████ is relevant because Mr. Haas opines on the economic comparability of the ████████. *See* Ex. G at ¶267. Specifically, Mr. Haas states that the

████████████████████████████████████████████████

████████ RavenWhite cites *Correct Transmission* for the proposition that a technical opinion "is only relevant if Walmart's damages expert relies upon it." Mot. at 11. This case is easily distinguishable. Mr. Haas opines on the very agreement Dr. Almeroth says is technically comparable. Dr. Almeroth's analysis is proper and should not be struck.

## II.     CONCLUSION

RavenWhite's motion to strike Dr. Almeroth should be denied. On non-infringing alternatives, Dr. Almeroth provides timely, thorough disclosures in direct response to Dr. Smith. On the Home Depot CNS, Dr. Almeroth gives a detailed description of the Home Depot system to explain his comparability conclusion. And on the ████████, Dr. Almeroth performs a standard technical comparability analysis between the ████████ and the Asserted Patents. None of these opinions run afoul of *Daubert*.

████████████████████████████████████████

DATED:  July 14, 2026                    Respectfully submitted,

By:  /s/ Blaine A. Larson
Michael F. Heim
Texas State Bar No. 09380923
mheim@hpcllp.com
Eric J. Enger
Texas State Bar No. 24045833
eenger@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
Blaine A. Larson
Texas State Bar No. 24083360
blarson@hpcllp.com
William B. Collier, Jr.
State Bar No. 24097519
wcollier@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420

14

████████████████████████████████

bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile: (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

***Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC***

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record by electronic mail on July 14, 2026.

*/s/ Blaine A. Larson*

Blaine A. Larson

***Via E-mail***

Robert F. Kramer
CA Bar No. 181706
rkramer@kramerllp.com
Robert C. Mattson *(pro hac vice)*
VA Bar No. 43568
rmattson@kramerllp.com
KRAMER LLP
1133 Broadway, Suite 1510
New York, New York 10010
Telephone: (415) 419-1895

Nicole E. Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
KRAMER LLP
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 791-9250

Zachariah A. Higgins *(pro hac vice)*
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong *(pro hac vice)*
CA Bar No. 253705
jarmstrong@kramerllp.com
Ryan Dooley *(pro hac vice)*
CA Bar No. 321645
rdooley@kramerllp.com
Robert Xie
CA Bar No. 329126
rxie@kramerllp.com
Rachael Catherine Chan *(pro hac vice)*
CA Bar No. 265002
rchan@kramerllp.com
KRAMER LLP
303 Twin Dolphin Dr., Suite 600
Redwood City, California 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Counsel for Plaintiff RavenWhite Licensing LLC*

16

17