**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC., *et al.*,<br><br>Defendants. | Case No.  2:24-cv-00688-JRG-RSP<br>(Lead Case) |
| RAVENWHITE LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., *et al.*,<br><br>Defendants. | Case No.  2:24-cv-00689-JRG-RSP<br>(Member Case) |

**PLAINTIFF'S OPPOSITION TO WALMART'S MOTION FOR SUMMARY JUDGMENT**
**OF NON-INFRINGEMENT OF U.S. PATENT NOS. 11,562,402 AND 10,594,823**

i

**TABLE OF CONTENTS**

I.      Response to Statement of Issues to be Decided by the Court ................................................ 1

II.     Response to Statement of Undisputed Material Facts ("SUFs") ........................................... 1

III.    Additional Material Facts ("AMFs") .................................................................................... 2

IV.     Argument ............................................................................................................................... 3

        A.      The Court should deny summary judgment that Walmart's offsite
                advertising does not infringe the '402 Patent. .......................................................... 3

                1.      Walmart's onsite and offsite advertising use the accused infringing
                        and Walmart does not argue otherwise. ...................... 3

                2.      RavenWhite's damages expert correctly included damages for both
                        onsite and offsite advertising. ....................................................................... 6

                3.      Walmart makes and uses the accused system, including the portions
                        that display offsite ads. ................................................................................. 7

        B.      RavenWhite will not argue at trial that Walmart's mobile app infringes
                the '823 Patent. ....................................................................................................... 10

        C.      The Court should deny summary judgment of no induced
                infringement. ........................................................................................................... 10

                1.      Pre-Suit Inducement .................................................................................... 10

                2.      Post-Suit Inducement ................................................................................... 10

V.      Conclusion ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asyst Techs., Inc. v. Empak, Inc.*,
    268 F.3d 1364 (Fed. Cir. 2001) ........................................................................................5

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) .................................................................................1, 7, 9

*CloudofChange, LLC v. NCR Corp.*,
    123 F.4th 1333 (Fed. Cir. 2024), cert. denied, 145 S. Ct. 2684, 221 L. Ed. 2d
    956 (2025) .......................................................................................................................11

*N. Telecom, Inc. v. Datapoint Corp.*,
    908 F.2d 931 (Fed. Cir. 1990) ..........................................................................................5

*RavenWhite Licensing LLC v. Walmart Inc. et al.*,
    Case No. 2-23-cv-00418 (E.D. Tex.) ..............................................................................10

**Statutes**

35 U.S.C. § 271(a) .......................................................................................................................9

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Deposition Transcript of Bhanu Bhardwaj, dated April 14, 2026 (excerpts) |
| 2 | Expert Report of Dr. Hugh Smith, dated May 21, 2026 (excerpts) |
| 3 | Deposition Transcript of Dr. Hugh Smith, dated June 24, 2026 (excerpts) |
| 4 | Rebuttal Expert Report of David A. Hass, dated June 18, 2026 (excerpts) |
| 5 | Master Services Agreement (WMT-RW0504897- WMT-RW0504973), (excerpts) |
| 6 | The Walmart Defendants' Corrected Fifth Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1-28), (excerpts) |
| 7 | Rebuttal Expert Report of Kevin C. Almeroth, Ph.D., dated June 18, 2026 (excerpts) |
| 8 | Deposition Transcript of Kevin C. Almeroth, Ph.D., Dated July 1, 2026 (excerpts) |
| 9 | Expert Report of Roy Weinstein, dated May 21, 2026 (excerpts) |
| 10 | Walmart Connect Capabilities (WMT-RW0028885 - WMT-RW0028968) (excerpts) |

Plaintiff RavenWhite Licensing LLC ("RavenWhite") submits this opposition in response to Defendants Walmart Inc. and Walmart Stores Texas, LLC's (collectively, "Walmart") motion for summary judgment of non-infringement of U.S. Patent Nos. 11,562,402 and 10,594,823 ("Motion"). Dkt. 180. The Motion should be denied on multiple grounds. First, Walmart's Offsite Advertising infringes the '402 Patent. RavenWhite's technical expert, Dr. Smith, cites sufficient and reliable evidence for a jury to reasonably find that Walmart's delivery of offsite advertisements ("ad" or "ads") through third parties constitutes infringement. Walmart's motion ignores Dr. Smith's technical analysis of ad selection and the fact that third party delivery of offsite ads is done for Walmart's benefit under *Centillion*. Second, the portion of Walmart's motion regarding its mobile app is moot because RavenWhite will not allege at trial that the mobile app infringes. Third, Walmart had pre-suit knowledge of the asserted patents because of the previous case involving the same asserted patents filed in 2023 against Walmart. And, RavenWhite's induced infringement allegations are based on Walmart's customers directly infringing the asserted patents in the event that Walmart were to argue that the customers, not Walmart, are making and using the infringing system.

## I.    RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Walmart's issue (1) wrongly focuses on whether offsite ads infringe. The correct issue is whether the underlying Walmart Connect system infringes, not whether its ads infringe. Walmart's issue (2) is moot because RavenWhite takes no position on whether Walmart's mobile application infringes the '823 patent, and will not argue otherwise at trial. Issue (3) is accurate.

## II.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUFs")

SUF 2: Incomplete. Walmart contracts with The Trade Desk ("TTD") to display some of Walmart's offsite

to display ads for Walmart. Ex. 1, (Bhardwaj Dep.) 15:5-15; 95:13-20. In all cases, advertisers use

1

*Walmart* ███████████ to target offsite ads using the Walmart Demand Side Platform ("DSP") and social media ads, ████████. Ex. 1 (Bhardwaj Dep.) 90:20-24; 96:12-16; 96:21-24.

SUF 3: Disputed. Walmart argues that TTD determines the individuals who will be shown Walmart's offsite ads. ████████████████████████ ████████. Ex. 1 (Bhardwaj Dep.) 90:2-24; 96:12-16; 96:21-24. Walmart's cited documents show that, at best for Walmart, not only are Walmart's audiences (including infringing ████ used for offsite ads, but ████ may be used *in addition* to Walmart's audiences.

SUF 4: Disputed. Dr. Smith devotes a section of his report to explaining why Walmart makes and uses the accused system, including Walmart Connect, irrespective of whether third parties are involved. Ex. 2 (Smith Report) ¶¶79-87.

SUF 5: Disputed. Dr. Smith merely testified that Exhibit F of his report does not "mention offsite ads," not that offsite ads don't use the infringing ████ within the Walmart Connect system. Ex. 3 (Smith Dep.) 26:23-27:5.

SUF 8: Disputed. Walmart had pre-suit knowledge of the Asserted Patents because of the earlier 2023 case. Dkt. 26 ¶¶ 44, 56.

SUF 9: Disputed. Walmart had pre-suit knowledge of the Asserted Patents because of the earlier 2023 case. Dkt. 26 ¶¶ 44, 56.

## III.   ADDITIONAL MATERIAL FACTS ("AMFs")

AMF 1: Walmart's Rule 30(b)(6) witness for offsite ads, ████████████ ███████████████████████." Ex. 1 (Bhardwaj Dep.) 90:3-6.

AMF 2: Ms. Bhardwaj agreed that ████████████ ████. Ex. 1 (Bhardwaj Dep.) 91:11-15.

2

AMF 3: Walmart's damages expert, Mr. Haas, understands from Walmart's technical expert, Dr. Almeroth, that the "Offsite Display campaigns are executed through The Trade Desk's platform                                                                                    Ex. 4 (Haas Rebuttal Report) ¶ 58.

AMF 4: The Trade Desk platform that Mr. Haas and Dr. Almeroth refer to is the Walmart DSP. Ex. 4 (Haas Rebuttal Report) ¶ 57; Ex. 7 (Almeroth Rebuttal Report) ¶¶ 87, 92.

AMF 5: The Walmart DSP is operated with Walmart Data

Ex. 5 (WMT-RW0504897) at -904, -905.

## IV.    ARGUMENT

### A.    The Court should deny summary judgment that Walmart's offsite advertising does not infringe the '402 Patent.

Walmart appears to make two noninfringement-related arguments regarding the '402 Patent: (1) a vague assertion that Walmart "treats" offsite ads differently than onsite ads and that Dr. Smith does not separately accuse offsite ads of infringing, Dkt. 180 at 4-5, 6-7, and (2) an assertion that Walmart does not itself "display" offsite Ads. Dkt. 180 at 7.

Walmart's motion fails on both counts. First, Walmart's offsite and onsite ads use the same infringing process for determining customer quality levels—consistent with Walmart's own documentation and discovery responses—and Walmart, conspicuously, does not argue otherwise. Second, because Dr. Smith's infringement analysis is focused on Walmart's back-end systems for targeting advertisements, his analysis does not turn on whether Walmart DSP uses third-party servers to display Walmart ads.

### 1.    Walmart's onsite and offsite advertising use the accused infringing and Walmart does not argue otherwise.

RavenWhite has accused Walmart's Connect system, including its

, of infringing the '402 patent without regard to whether the ads that are ultimately selected

3

from the infringing process are used in an onsite or offsite context. Ex. 2 (Smith Report, Ex. D) at ¶¶ 3-5; (Smith Report) ¶ 148. Further, Walmart's own experts, Dr. Almeroth and Mr. Haas, confirm that the                                                        . Ex. 4 (Haas Rebuttal Report) ¶ 58. Because the asserted claims of the '402 patent are agnostic to whether a displayed ad is onsite or offsite, Walmart's "separateness" argument is irrelevant to the issue of infringement. The fact that "Walmart treats onsite and offsite advertising differently" in its *marketing* literature, Dkt. 180 at 4, or by using TTD to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Ex. 1 (Bhardwaj Dep.) at 90:5-19, does not change the fact that Walmart Connect system's                                                        .

Walmart's offsite-ads issue is simply a red herring that Walmart manufactured from the fact that RavenWhite identifies by name

            instead of identifying whether the resulting ads are onsite or offsite. Put another way, it does not matter to the issue of infringement whether ads can be separately displayed onsite or offsite; it only matters whether the ad was displayed based at least in part on the inventive process for determining quality levels for customers. '402 Patent, claims 10, 19. As set forth in Dr. Smith's report, the                              that result in infringement are


                    Ex. 2 (Smith Report) ¶¶ 148-150; Ex. 2 (Smith Report Ex. D) ¶¶ 3-5, 52, 85, 121; Ex. 2 (Smith Report Ex. G) page 1.


        Moreover, Walmart's documentation confirms that
            Ex. 2 (Smith Report Ex. D) ¶ 21 (excerpting WMT-RW0028885 at -919).


4

Ms. Bhardwaj also confirmed that the same document (WMT-RW0028885 at -919) showed the targeting options available for advertisers,

. Ex. 1 (Bhardwaj Dep.) at 122:2-15, 124:2-15. That TTD does not move the needle on noninfringement. "The addition of features does not avoid infringement if all the limitations of the patent claim are found in the accused device." *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1373 (Fed. Cir. 2001); "The addition of features does not avoid infringement, if all the elements of the patent claims have been adopted. Nor is infringement avoided if a claimed feature performs not only as shown in the patent, but also performs an additional function." *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990) (cleaned up).

Still further, Walmart's discovery responses never alleged that there are any differences between onsite ads and offsite ads with TTD that would materially affect the infringement issues in this case. As Dr. Smith notes in his report, Walmart did not identify any third parties in response to Interrogatory No. 14, which required Walmart to identify the role of all third parties involved in the implementation of the accused system. Ex. 2 (Smith Report) ¶¶ 79-80, 86. Not only did Walmart's interrogatory response fail to identify any third parties involved in offsite ads—let alone identify TTD—Walmart supplemented its response to state, "Walmart cannot locate any additional relevant information regarding this interrogatory." Ex. 6 (Walmart's Corrected 5th Supp. Resp. to Rogs. 1-28) at 80.

In reliance on Walmart's interrogatory responses, Dr. Smith opined that "there is no indication from Walmart that it contends that third parties are responsible for implementing any of the Accused System." Ex. 2 (Smith Report) ¶¶ 80, 86. Further, Dr. Smith opined that Walmart's documents show that "Walmart designed its Accused System, specified the elements to be

5

included in the Accused System, and combined and configured all of those elements into a functional whole, irrespective of whether Walmart was in physical possession of every element of the Accused System." Ex. 2 (Smith Report) ¶ 81. Thus, Dr. Smith opined that, "[t]o the extent that Walmart contracts with third parties to host infringing functions of the Accused System on third-party servers and memory, Walmart is still responsible for assembling the elements of the Accused System … so that Walmart can display ads based on the                                    " Ex. 2 (Smith Report) ¶ 82.

Lastly, Walmart's arguments that there is no evidence that offsite ads infringe (Dkt. 180 at 6-7) do not address any technical differences between onsite and offsite ad selection head-on. Walmart does not rely on any technical documents to distinguish how ads are served through any involvement of TTD or any other third party. Walmart also does not rely on any portion of Dr. Almeroth's reports or any deposition testimony regarding any technical differences in how onsite and offsite ads are selected to be served. In his rebuttal report, Dr. Almeroth could not identify any separate reasons that offsite ads do not infringe, other than the "display" limitations, which Walmart raises separately and are addressed below. Ex. 7 (Almeroth Rebuttal Report) ¶ 86. Dr. Almeroth reiterated in his deposition that offsite ads did not infringe for the same reasons as onsite ads. Ex. 8 (Almeroth Depo) at 203:11-204:15. Because Walmart does not address the technical aspect of how                                    could materially differ for onsite and offsite ads, at the very least, there is a genuine issue of material fact that precludes summary judgment.

### 2. RavenWhite's damages expert correctly included damages for both onsite and offsite advertising.

Although raised by Walmart, this issue is not relevant to infringement. Dkt. 180 at 5-6. Mr. Weinstein's calculations are based on Walmart's deposition testimony and documentation. Ex. 9

6

(Weinstein Report) ¶¶ 82, 85 (excerpting WMT-RW0028885 and citing Ms. Bhardwaj); Ex. 10 (WMT-RW0028885) at -889, -891, -919; Ex. 1 (Bhardwaj Dep.) at 84:3-5.

### 3. Walmart makes and uses the accused system, including the portions that display offsite ads.

Walmart's contention that it does not "use" the accused offsite advertising system because TTD operates as a "third-party platform" fails as a matter of law and fact. Dkt. 180 at 7. Under *Centillion*, a party "uses" a system for purposes of infringement if it puts the invention into service—meaning it "control(s) the system as a whole and obtain(s) benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). The record demonstrates that Walmart controls the system for serving Walmart ads based on the Persona and PT Affinity flows and Walmart reaps its benefits, precluding summary judgment.

**First**, Walmart controls the accused system, which bases offsite ads on

Walmart admits that "Walmart contracts with the Trade Desk

" SUF 2, but misapplies the law by arguing that "there is no evidence Walmart 'controls' the Trade Desk system as a whole." Dkt. 180 at 1, 8. The relevant inquiry is not whether Walmart controls TTD's system, but whether Walmart controls the *system for serving Walmart ads* as a whole. It does.

. Ex. 1 (Bhardwaj

Dep.) at 90:2-24, 96:12-16, 96:21-24 ("Like, we wouldn't let

on the Walmart DSP."); AMF 2.

,

. Ex. 1 (Bhardwaj

Dep.) at 90:2-19.

7

Walmart's contract with TTD confirms this control. The Master Services Agreement ("MSA") for the Walmart DSP shows that TTD paid Walmart

among other services. Ex. 5 (WMT-RW0504897) at -930. Further, Walmart's contract with TTD shows that Walmart ı

. Ex. 5 (WMT-RW0504897) at -904. Additionally, Walmart

Ex. 5 (WMT-RW0504897) at 959-962. And, most relevant to audience selection, the MSA defines                as including

Ex. 5, (WMT-RW0504897) at –926, which is the same data used for the                that result in infringement of the '402 Patent. Ex. 2 (Smith report), ¶¶151-162.

Further, Walmart's belated attempt to shift blame to TTD contradicts its own discovery responses. For example, Interrogatory No. 10 required Walmart to describe the processes by which Walmart or anyone on its behalf "select and deliver advertisements." Ex. 6 (Walmart's Corrected 5th Supp. Resp. to Rogs. 1-28) at 68. In response, Walmart did not describe any involvement by third parties, much less identify TTD,                . Ex. 6 (Walmart's Corrected 5th Supp. Resp. to Rogs. 1-28) at 69-70. Similarly, Interrogatory Nos. 14 and 15 respectively required Walmart to describe (a) "the role of all third parties involved in the design and implementation of any of the Accused Instrumentalities" and (b) "the role of each third party involved in the operation of any of the Accused Instrumentalities." Ex. 6 (Walmart's Corrected 5th Supp. Resp. to Rogs. 1-28) at 79-81. Unremarkably, Walmart did not identify TTD as having any role in the design, implementation, or operation of any of the Accused Instrumentalities. Ex. 6 (Walmart's Corrected 5th Supp. Resp. to Rogs. 1-28) at 79-83. Accordingly, Walmart's

interrogatory responses demonstrate that Walmart does not view TTD as a third party that ███████████████████. And, Walmart's own expert was similarly unable to articulate the relationship between Walmart and TTD. Ex. 8 (Almeroth Dep.) at 202:12-24.

**Second**, Walmart obtains a direct benefit from the Walmart DSP and the display of Walmart's ads by TTD. ██████████████████████████████████████ ████████████ Ex. 5 (WMT-RW0504897) at -904, -905. Under the operative MSA, "Walmart will ███████████████████████████ on Walmart's behalf … and ████████████████ Ex. 5 (WMT-RW0504897) at -939. ████████████████████████████████████ ████████████████████████████████████ Ex. 6 (Walmart's Corrected 5th Supp. Resp. to Rogs. 1-28) at 77-78; Ex. 5 (WMT-RW0504897) at -942. In effect, Walmart benefits from the display of offsite ads the same way it would from onsite ads displayed from ad servers in Walmart's physical possession. Ex. 1 (Bhardwaj Dep.) at 90:2-19; Ex. 2 (Smith Report) ¶¶ 80-82, 86-87.

Because Walmart controls the ██████████████████ of ads through the Walmart DSP and financially benefits from them, a reasonable jury could readily find that Walmart "uses" the system within the meaning of 35 U.S.C. § 271(a). *Centillion*, 631 F.3d at 1284. It is immaterial whether these ads are displayed onsite or offsite because ████████████████████████████ dictate their display. Ex. 2 (Smith Report) ¶¶ 80-82, 86-87, 151-162. At a minimum, a genuine dispute of material fact exists regarding Walmart's control over the offsite ad delivery.

**B.     RavenWhite will not argue at trial that Walmart's mobile app infringes the '823 Patent.**

Walmart is not alleging that its mobile app does not infringe, and merely points out that RavenWhite's expert did not accuse the mobile app. RavenWhite takes no position on whether Walmart's mobile app infringes the '823 patent and will not argue otherwise at trial. Thus, this portion of Walmart's motion should be denied as moot, and the only issue for consideration is whether RavenWhite's damages expert included mobile app revenue in his calculation of a reasonable royalty—the subject of another motion (Dkt. 181).

**C.     The Court should deny summary judgment of no induced infringement.**

**1.     Pre-Suit Inducement**

Walmart asserts incorrectly, with no citation or explanation, that "RavenWhite does not allege that Walmart had pre-suit knowledge of the patents." Dkt. 180 at 9. On the contrary, RavenWhite's first amended complaint expressly alleges that Walmart had pre-suit knowledge of each asserted patent for purposes of induced infringement, including as a result of the earlier 2023 case in which Walmart was accused of infringing the same asserted patents:

> Walmart has knowledge of the '823 patent as a result of RavenWhite filing this lawsuit, as well as a previous lawsuit, *RavenWhite Licensing LLC v. Walmart Inc. et al.*, Case No. 2-23-cv-00418 (E.D. Tex.), accusing Walmart of infringing the '823 patent. Despite its knowledge of the '823 patent, Walmart continues to make the Walmart System available to customers, specifically intending for and inducing its customers to infringe the '823 patent.

Dkt. 26 ¶ 44; *see also id.*, ¶ 56 (same, for '402 patent).

**2.     Post-Suit Inducement**

Moreover, RavenWhite alleged induced infringement, as the citations in the previous section demonstrate. Walmart also acknowledges that RavenWhite's expert presented a theory of induced infringement such that Walmart remains liable for infringement even if Walmart alleges its customers, rather than Walmart itself, are direct infringers. Dkt. 180 at 9. In response, Walmart

10

asserts that it "does not contend" (i.e., present tense) that its customers directly infringe. Dkt. 180 at 9. Missing from Walmart's Motion, however, is a commitment to not argue at trial that its customers, rather than Walmart, directly infringe(d) the Asserted Patents during the entire damages period.

Defendants in other cases have sometimes tried to escape or escaped liability for patent infringement by asserting that their customers, rather than the defendants themselves, are direct infringers. *See e.g., CloudofChange, LLC v. NCR Corp.*, 123 F.4th 1333, 1342 (Fed. Cir. 2024), cert. denied, 145 S. Ct. 2684, 221 L. Ed. 2d 956 (2025) ("… the appropriate question is whether [the accused infringer] directed or controlled or should otherwise be vicariously liable for its customers' use of the system claim.") Walmart should not be permitted to preserve a defense that its customers are the direct infringers yet eliminate RavenWhite's prepared counter-argument to that defense.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment of non-infringement of U.S. Patent Nos. 11,562,402 and 10,594,823.

Dated: July 14, 2026

Respectfully submitted,

*/s/ Robert F. Kramer*
Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
VA Bar No. 43568
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

11

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Zachariah A. Higgins (*pro hac vice*)
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
CA Bar No. 253705
jarmstrong@kramerllp.com
Rachael Chan (*pro hac vice*)
CA Bar No. 265002
rchan@kramerllp.com
Ryan Dooley (*pro hac vice*)
CA Bar No. 321645
rdooley@kramerllp.com
Robert Y. Xie (*pro hac vice*)
CA Bar No. 329126
rxie@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 14, 2026, and any confidential versions are being served by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. No. 51) entered in this case on December 10, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer

13