IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § | CASE NO. 2:24-CV-00688-JRG-RSP |
| *Plaintiff,* | § § | *(Lead Case)* |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | |
| | § | |
| *Defendants.* | § § | |
| | § | |
| RAVENWHITE LICENSING LLC | § § § | CASE NO. 2:24-CV-00689-RWS-RSP |
| *Plaintiff,* | § § | *(Member Case)* |
| | § | |
| v. | § § | JURY TRIAL DEMANDED |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | |
| | § | |
| *Defendants.* | § § | |
| | § | |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY OF THE ASSERTED PATENTS UNDER 35 U.S.C. § 101 (Dkt. 183)**

RavenWhite improperly seeks summary judgment that both U.S. Patent No. 11,562,402 ("the '402 Patent") and U.S. Patent No. 10,594,823 ("the '823 Patent") are not invalid under 35 U.S.C. § 101. As detailed in Walmart's own summary judgment motion (Dkt. 186) and its prior response (Dkt. 205), both the '402 Patent and the '823 Patent are directed toward the kind of abstract ideas that the Federal Circuit has repeatedly held to be ineligible for patent protection, such as targeted advertising and using data to identify a device/user. RavenWhite's attempt to cloud the issue by filing its own motion for summary judgment does not alter this conclusion.

In an attempt to evade this problem, RavenWhite's reply (Dkt. 221) commits two fundamental errors. First, RavenWhite incorrectly asserts that the Court's previous denial of Walmart's Motion to Dismiss was an adjudication on the merits (it was not). Second, RavenWhite erroneously relies on allegedly inventive concepts that are neither recited in nor required by the actual claim language. As a result, the Court should reject RavenWhite's attempt to salvage the Asserted Patents from a finding of ineligibility under § 101.

### A.    Each Asserted Patents' Claim 1 is Representative

As an initial matter, RavenWhite's abrupt reversal and belated assertion—raised for the first time in its reply—that Claim 1 of the '402 Patent and Claim 1 of the '823 Patent are ***not*** actually representative of their respective patents is incompatible with RavenWhite's own motion. *See* Dkt. 221 at 2 and 5. In seeking summary judgment under § 101, RavenWhite explicitly called out and quoted these two claims for its analysis (*see* Dkt. 183 at 9 and 15) and even emphasized— without any disagreement or objection—that Walmart had previously conceded that these claims were representative. RavenWhite's attempt to now argue that these claims are not actually representative only highlights the weakness in RavenWhite's position.

For example, with respect to the '402 Patent, RavenWhite now asserts (without

explanation) that Claim 1 is not actually representative "because claim 14 requires machine learning." *See* Dkt. 221 at 2. However, Claim 14 merely recites "wherein at least one of the first quality level or the second quality level is determined at least in part by machine learning." *See* '402 Pat, cl. 14. Neither the claim language nor the specification provide any explanation of how "machine learning" is implemented or specify any details, rules, or algorithms for how machine learning can be used to determine any quality level. Like Claim 1, Claim 14 is entirely silent on *how* such determinations are made and, instead, merely refers to making subjective determinations in the abstract. The mere reference to "machine learning" does not cure this defect.

Similarly, with respect to the '823 Patent, RavenWhite now asserts that Claim 1 is not actually representative "because claim 2 requires identifying a device—as opposed to a user." *See* Dkt. 221 at 2. As argued by RavenWhite, "[u]sing the system of claim 1 to identify a device was not known." *Id.* (arguing that Walmart's evidence only shows that using cookies to identify a "user" was known). However, setting aside RavenWhite's lack of support for its assertion, RavenWhite fails to explain why identifying a "device" is substantively different from the known practice of identifying a user. Claim 2 merely requires that the client device is identified by a different sever than the one that provided the original cookies—an inherent part of the abstract concept of identification—and Claim 2 does not specify any details, rules, or algorithms for how this identification is made or how this identification process differs for a "user" versus a "device." Instead, like Claim 1, Claim 2 merely relies on conventional techniques to identify a user/device.

Under the law, courts may treat a claim as representative for purposes of § 101 if the patentee does not present any "argument for the distinctive significance of any claim limitations not found in the representative claim." *See Random Chat, LLC v. Altra Federal Credit Union*, No. 2:25-cv-478, 2026 WL 636677, at *1 (E.D. Tex. Mar. 6, 2026). Because RavenWhite's own

2

motion for summary judgment highlighted and analyzed Claim 1 from each Asserted Patent (and failed to even suggest that any dependent claims raised any distinctive significance for purposes of the § 101 analysis), the Court should reject RavenWhite's belated attempt to argue that these claims are not actually representative.

### B.    The '402 Patent is Patent Ineligible

Without any support, RavenWhite offers the conclusory assertion that the '402 Patent is directed to "perform[ing] detailed tracking and analysis of a user's Internet behavior to generate first and second quality scores (using specific rules and algorithms) to facilitate selecting an advertisement." *See* Dkt. 221 at 6.  None of this has any basis in the actual claim language.

***First***, RavenWhite's assertion that the '402 Patent is directed toward "detailed tracking" of user behavior has no basis in the actual claim language.  The claims do not specify how any user information is tracked, require any non-conventional information to be tracked, or purport to solve any alleged technological problems encountered in tracking user behavior.  Instead, the claims simply recite making abstract determinations (*e.g.*, quality levels, estimates of likelihood of an event, and conversion assessments) based on conventional user activity; namely, a user's prior searches or purchases.  The mere fact that the claims reference the use of multiple searches or purchases (*i.e.*, a first, second, and third search or purchase) does not equate to "detailed tracking" of user behavior or otherwise set forth a specific means or method for tracking user behavior that would satisfy *Alice*.

Indeed, the last element of Claim 1 simply requires "displaying an advertisement to the user based at least in part ***on at least one of*** the first quality level or the second quality level," which means that the purported purpose of the claim—selecting an advertisement—can be driven entirely by the "first quality level" alone.  However, according to Claim 1, that "first quality level"

3

only depends on "a first search" or "a first purchase" and has no direct relationship to any subsequent searches or purchases.  In other words, the majority of the abstract determinations recited in the claims do not actually have to be used for anything.  RavenWhite cannot realistically argue that the claims are directed toward "detailed tracking" when the end goal of the claimed invention can literally depend on a single, conventional data point.

*Second*, RavenWhite is also incorrect that the claims are directed to any "analysis of a user's Internet behavior."  As mentioned above, the claims simply recite making subjective determinations—including "quality levels," an "indication of interest," an "estimate of a likelihood of an event," and a "conversion assessment"—based on conventional user activity.  And the only resulting purpose of the claims is merely "displaying an advertisement to the user based at least in part on at least one of the first quality level or the second quality level."  The claims do not specify how these abstract determinations are analyzed, weighted, compared, or otherwise factored into any selection of a displayed advertisement let alone advance a technological improvement in performing such an analysis.  Instead, the claims simply recite, without any detail or specificity, that an advertisement is displayed "based at least in part on" some subjective determination(s).

*Third*, similar to the point above, RavenWhite's assertion that the claims are directed to "specific rules and algorithms" is also meritless.  Not only do the claims fail to specify how the various determinations are analyzed for purposes of selecting an advertisement, but the claims also fail to provide any explanation or requirement for how those determinations are even calculated in the first place.  For example, because there are no "specific rules or algorithms" for factoring in a user's search or purchase history, any determination of a respective "quality level" or "indication of interest" in a product category is entirely subjective.

Similarly, the claims also fail to provide any specific rule or algorithm for how "a unique

4

identifier" or "clustering" are used to determine a quality level. The Court has already rejected RavenWhite's argument that the claims require a particular clustering technique during the *Markman* phase. Specifically, the Court stated that the claim language "does not specify what is being clustered, what algorithm or mechanism performs the clustering, or what purpose the clustering serves beyond its role as an input to quality level determination." *See* Dkt. 128 at 36. Similarly, the Court observed that "no claim language requires that clustering employ a processor, a statistical algorithm, or a machine learning technique." *Id.* at 37.

Tellingly, despite asserting that the claims are directed toward "specific rules and algorithms," RavenWhite makes no attempt to describe any such rule or algorithm. In fact, later in its own brief, RavenWhite defensively states that "Walmart's arguments that the '402 claims do not require a 'specific algorithm' for clustering and other techniques ***are irrelevant***." *See* Dkt. 221 at 6 (emphasis added). But the lack of any such algorithms directly rebuts RavenWhite's argument that "the claimed first and second quality scores are generated using specific rules and algorithms, constituting a 'technological improvement' like the 'better heart monitor' [of *CardioNet*]." *Id.* at 7; *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020) (allowing an "improved cardiac monitoring device" that could more accurately identify "atrial fibrillation and atrial flutter in light of the variability in the beat-to-beat timing caused by ventricular beats"). A simple review of the claim language shows that there are no specific rules or algorithms for making any claimed determination, let alone any specific rules or algorithms that would produce a "better advertising machine" akin to CardioNet's "better heart monitor." *Id.* at 1362 (noting that CardioNet's heart monitor could "more accurately distinguish atrial fibrillation and atrial flutter from other types of arrythmias").

Indeed, as detailed in Walmart's response brief, Claim 1 does not even need to be

performed on a computer.  The practice of determining a "quality level," an "indication of interest," an "estimate of a likelihood of an event," or a "conversion assessment," is not only entirely subjective, but it can be done by sales personnel using pen and paper.[1]  *See Random Chat*, 2026 WL 636677, at *3 (stating that "[i]f a claim could be performed in the human mind or by a human using pen and paper, then it is abstract").  Because the claims do not provide any actual "rules and algorithms" for making these determinations, any such determinations—even off-the-cuff determinations or inaccurate determinations—made by such sales personnel based on the recited user behavior would suffice.  As a result, not only are the claims ***not*** directed to a technological improvement, but by failing to specify any actual rules or algorithms, the '402 Patent cannot even purport to improve the accuracy of targeted advertisements.  This is entirely unlike CardioNet's better heart monitor, which employed algorithms that specifically improved a monitor's ability to detect "atrial fibrillation and atrial flutter in light of the variability in the beat-to-beat timing."  *See CardioNet*, 955 F.3d at 1358.

As a result, the claims of the '402 Patent are directed towards an abstract idea under *Alice* Step One.  And because the claims recite only conventional and well-understood elements and tools, they cannot meet the threshold to qualify as an inventive concept under *Alice* Step Two.

### C.    The '823 Patent is Patent Ineligible

For the '823 Patent, RavenWhite argues that the claims "require using novel cookie technology—such as the claimed 'second type' of cookie—and require more than merely tracking

---

[1] Although Claims 10 and 19 recite computer elements, for the reasons discussed in Walmart's response, those claims merely recite using conventional computer components as a tool for implementing the claims.  *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (noting that the *Alice* inquiry "often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool").

a user and storing data." *See* Dkt. 221 at 4. However, during claim construction, RavenWhite dropped all pretense that the claims were limited to use of a "novel" type of cookie. As RavenWhite stated in its brief, "the claims are not limited to cache cookies or, for that matter, traditional cookies; instead, they refer to first and second ***types*** of cookies." *See* Dkt. 114 at 5 (emphasis in original). In construing the underlying terms, the Court similarly agreed that the claims were not limited to any particular embodiment of a "cache cookie"—including any allegedly novel embodiment—and that the claims' reference to two "types" of cookies broadly meant that "the cookies are different with respect to how they are accessed by a server." *See* Dkt. 128 at 12. For example, in his sworn declaration, RavenWhite's own expert explained that "other browser data, such as TIFs and browser history, are stored in storage areas native to the browser application and accessed differently than traditional cookies." *See* Dkt. 110-16 at ¶¶ 32 and 33 (stating that a browser's procedure for accessing traditional cookies "is different from the browser's procedure for accessing TIFs, which is also different from the browser's procedure for accessing browser history"). As a result, RavenWhite's own expert concluded that both TIFs and browser data could satisfy different "types" of cookies for purposes of the claims. *Id.*

Neither RavenWhite nor the '823 Patent purport to have invented TIFs or browser history data or even suggest that the patent is directed to a new browser procedure for accessing TIFs or browser history data. *See, e.g.*, Dkt, 128 at 11 (stating that "[t]he Court declines to adopt Plaintiff's 'access procedure' language because the phrase 'access procedure' appears nowhere in the '823 Patent specification and is ambiguous as to what exact procedure is being prescribed"). Instead, even the preferred embodiment of the '823 Patent is implemented using existing browser technology and procedures. For example, in an embodiment of the invention, the '823 Patent states that "browser 116 is well known in the art, for example, Microsoft Internet Explorer." *See*

'823 Pat. at 4:6-7. The patent goes on to provide a "brief background of the browser storage area 170 and *how a browser typically uses its browser storage area*," which corresponds to how the browser data is accessed. *Id.* at 4:56-63 (emphasis added). As a result, RavenWhite cannot realistically claim that the '823 Patent is limited to the use of a "novel" type of cookie.

In essence, the '823 Patent is analogous to a requirement for two forms of identification, such as a driver's license and a passport. Using this analogy, the '823 Patent does not recite or require a new type of identification and, as reflected in the Court's claim construction order, the claim language is not limited to any new type of identification (even if one was allegedly invented by the patentee). Instead, the claims merely require use of two types of identification, which would include known types of identification commonly used in the art for identification. In this regard, the patent captures traditional ways of identifying devices or objects in the real world (*i.e.*, by using different types of identification assigned at different times by different entities). As another example, a car has a license plate assigned by the state that can be removed, lost, or stolen; but it also has a VIN assigned at the time of manufacturing, which is extremely difficult to remove. However, even though a license plate and a VIN may differ in "how they are accessed," both are conventionally used to identify the vehicle. Similarly, the '823 Patent does not require either of the two types of cookies recited in Claim 1 to be used in any unconventional way, and RavenWhite does not attempt to identify how mere use of "different cookie types from different browser storage areas and different network sessions" is an *unconventional* use of such cookies. Instead, as quoted above, the patent itself talks about how such cookies and corresponding storage areas are "typical" of known browsers. *See, e.g.*, '823 Pat. at 4:56-63.

As a result, the claims of the '823 Patent are directed towards an abstract idea under *Alice* Step One. And because the claims recite only conventional and well-understood elements and

8

tools, they cannot meet the threshold to qualify as an inventive concept under *Alice* Step Two.

### D.    RavenWhite's Reliance on the Motion to Dismiss Stage is Misplaced

Lastly, RavenWhite's bold claim that "the Court already ruled on the substance" of the § 101 issue has no basis in law or fact, and the Court should reject RavenWhite's attempt to unduly bind the Court to its prior denial of Walmart's Motion to Dismiss.

In particular, during the motion to dismiss phase, this Court was ***required*** to accept Plaintiff's allegations as true, such as its assertion that the '402 Patent's use of "clustering" incorporates "a 'specific, detailed algorithm' that enables 'machine learning technology' to deliver targeted advertisements" and its assertion that the '823 Patent "bakes a new type of cookie" that adds "a new layer of authentication." *See* Dkt. 123 at 5-6.  Based on these representations, the Court concluded at the early stage of this case that "Plaintiff's complaint had pleaded sufficient facts" to demonstrate patent eligibility.  *Id.* at 5-6 and 1-2 (stating that in evaluating a motion to dismiss "a court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff").  As a result, RavenWhite is wrong to claim that the Court has already adjudicated this issue on the merits or that the Court is somehow obligated to now deny Walmart's own pending motion for summary judgment based on a denial of an earlier motion to dismiss.

Not only is the Court permitted under the law to now consider the full record in resolving the § 101 issue, but that record is fundamentally different from the bare assertions that RavenWhite previously relied upon.  For example, as highlighted above, after considering the claim construction record, the Court ***rejected*** RavenWhite's argument that the '402 Patent's reference to "clustering" incorporated any specific, detailed algorithm.  As observed by the Court, the claim language "does not specify what is being clustered, what algorithm or mechanism performs the clustering, or what purpose the clustering serves beyond its role as an input to quality level

9

determination."  *See* Dkt. 128 at 36-37 (further noting that "no claim language requires that clustering employ a processor, a statistical algorithm, or a machine learning technique").

Similarly, for the '823 Patent, RavenWhite did not even argue that the claims required a new type of cookie—and the Court did not construe the claims to require any allegedly novel cookie technology.  Instead, as highlighted above, the first and second "types" of cookies can be satisfied by ***any*** two types of cookies, including known cookies.  *See* Dkt. 128 at 12.

RavenWhite is also wrong to suggest that the Court's denial of Walmart's motion to dismiss already factored in the claim construction record and the Court's claim construction order. First, the Court issued its Report and Recommendation denying Walmart's motion on March 11, 2026, ***before*** the Court issued its Claim Construction order.  The mere fact that this Report and Recommendation was subsequently "adopted" by the District Court does not change that timeline. Second, contrary to RavenWhite's belief, the District Court's Order adopting the Report and Recommendation does not represent or suggest that the District Court reviewed or considered the Claim Construction briefing or was applying anything other than the legal standard for resolving a motion to dismiss.  *See* Dkt. 131; *see also* Dkt 123 at 1-2 (setting forth the legal standard under Rule 12(b)(6), including the requirement that "a court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff").

As a result, the Court should reject RavenWhite's suggestion that the Court's prior denial of Walmart's motion to dismiss now binds the Court on summary judgment or otherwise inhibits it from finding the patents ineligible under § 101.

10

Dated:  July 24, 2026

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

11

Facsimile:  (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile:  (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile:  (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B

12

Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and*
*Wal-Mart Stores Texas, LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 24, 2026, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record whom are Filing Users of the Court's Electronic Filing System.

*/s/ Amir H. Alavi*
Amir H. Alavi

13