████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC<br><br>  *Plaintiff*,<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.<br><br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00688-JRG-RSP<br>  *(Lead Case)*<br><br><br>JURY TRIAL DEMANDED |
| RAVENWHITE LICENSING LLC<br><br>  *Plaintiff*,<br><br>v.<br><br>WALMART INC. and WAL-MART STORES TEXAS, LLC<br><br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00689-RWS-RSP<br>  *(Member Case)*<br><br><br>JURY TRIAL DEMANDED |

**WALMART'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE OR STRIKE CERTAIN OF MR. WEINSTEIN'S OPINIONS UNDER *DAUBERT* AND RULE 702 (Dkt. 181)**

████████████████████████████████████████

Walmart submits this reply in support of its Motion to Exclude or Strike Certain of Mr. Weinstein's Opinions Under *Daubert* and Rule 702.

## I. Mr. Weinstein's entire *Georgia-Pacific* analysis is predicated on the wrong hypothetical licensor and must be excluded.

***First***, Plaintiff argues that "inaccuracies in Mr. Weinstein's report are obvious and correctable," Dkt. 204 at 1, but this representation to the Court is contrary to Mr. Weinstein's deposition testimony. Indeed, Mr. Weinstein confirmed his intentional identification of RavenWhite Licensing, not RavenWhite Security or SecurityInnovation or Dr. Jakobsson, as the hypothetical licensor, Ex. P (Weinstein Tr. 141:25-146:13), even ***after*** he testified that RavenWhite Licensing's Operating Agreement ███████████████████████ ███████████████████████████, *id.* 120:6-21. Were Mr. Weinstein's "inaccuracies" "obvious and correctable," he would have corrected it then and there; he did not because his identification of RavenWhite Licensing was intentional and he stood by it. Moreover, Mr. Weinstein knew to be cautious about identifying the wrong party—last year his damages opinions were excluded by Judge Albright for "us[ing] the wrong parties in the hypothetical negotiation." Ex. Q at 2 (WSOU Order ("Mr. Weinstein will not be allowed to testify regarding damages for the '928 Patent" because his "reasonable royalty opinion…uses the wrong parties to the hypothetical negotiation")). The consequence of Mr. Weinstein's expert, intentional choice is a legally- and methodologically-flawed damages analysis built around the wrong party, which is not "correctable" through self-serving, after-the-fact declarations.

***Second***, Plaintiff tacitly concedes that Mr. Weinstein's legal error is fatal by (1) submitting a 3-page declaration from Dr. Jakobsson to manufacture a "no harm, no foul" argument,[1] and

---

[1] Similarly, Plaintiff argues that Mr. Weinstein's "error" *only* impacts *Georgia-Pacific* factors 4, 5, and 15 (Dkt. 204 at 5), as if indicative of minimized harm. However, Factor 15 serves as the

███████████████████████████████████████████

(2) stating that Dr. Jakobsson can establish (hitherto undisclosed) predicate facts to frame the hypothetical negotiation at trial. Setting aside the impropriety of Plaintiff's "supplementation" of facts at this late stage—more than two months after the close of fact discovery and three weeks after the close of expert discovery—Dr. Jakobsson's declaration backfires by (1) identifying two never-before disclosed fact witnesses, and (2) creating a new, independent basis for excluding Mr. Weinstein's "corrected" report—that is, Dr. Jakobsson's declaration confirms unequivocally that ███████████████████████████████████████████████ in a hypothetical negotiation. Specifically, Dr. Jakobsson affirms under penalty of perjury that ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ Dkt. 204, Ex. G, ¶ 5. As for SecurityInnovation, Dr. Jakobsson affirms ███████████████ ████████████████████████████████████████████ ████ [3] *Id.*, ¶ 7 (emphasis added). Thus, ███████████████████████████ at any hypothetical negotiating table, negating entirely the premise behind Mr. Weinstein's "correction."

*Third*, even if the Court were to disregard *all* district court-level cases cited by Walmart as support for the exclusion of Mr. Weinstein as Plaintiff asks (including Judge Albright's exclusion of Mr. Weinstein for an identical methodological error),[4] Dkt. 204 at 4, the Federal Circuit may not be disregarded. And the Federal Circuit has identified the patentee as the only legally-

anchor and final summation of the entire *Georgia-Pacific* analysis. Thus, Plaintiff concedes that Mr. Weinstein's "error" infects his entire analysis and conclusions.

[2] Plaintiff has never disclosed ██████████ as an individual with relevant knowledge.

[3] Plaintiff has never disclosed █████████████ as an individual with relevant knowledge.

[4] Plaintiff argues in a *footnote* that Judge Albright's Omnibus Pretrial Order in *WSOU* provides "no analysis of, or rationale for, Judge Albright's conclusion that Mr. Weinstein's opinions were unreliable for using the wrong parties," but this statement is self-contradictory on its face. Federal Circuit law requires the use of the correct parties to the hypothetical negation; no further "analysis" or "rationale" is required when a damages expert uses the wrong parties.



recognized hypothetical licensor. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996). There is no basis in controlling law for the substitution of an ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ of the patentee (▮▮▮▮▮▮▮) or a ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ in the place of the correct hypothetical licensors (here, the entities RavenWhite Security and SecurityInnovation).

## II.     Mr. Weinstein's one-size-fits-all ROIC profit split must be excluded.

Mr. Weinstein's use of ROIC is an impermissible "rule of thumb" under *Uniloc* because it is universally applicable to any reasonable royalty analysis, regardless of the bargaining strength of the parties or the technology at issue, in contravention of *Georgia-Pacific*. And while Walmart's ROIC is tied to Walmart, it is not tied to the patentee, to Walmart's bargaining position vis-à-vis the patentee, or to the patented technology at issue. ROIC, as used by Mr. Weinstein, constitutes a default profit split, which, taken to its logical conclusion, reduces *Georgia-Pacific* to two steps: first, apportion profits to the patented technology; second, split profits using the infringer's ROIC. *Georgia-Pacific* need not exist under Mr. Weinstein's approach, rendering it unsupportable.

## III.     Mr. Weinstein failed to apportion the '402 Patent damages properly.

Having read the entirety of Ms. Bhardwaj's deposition transcript, and applying his expert technical knowledge in context, Dr. Smith concluded, without equivocation, that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ not the purported patented technology. Dkt. 181, Ex. L (Smith Rpt. Ex. D), ¶ 23. Mr. Weinstein simply ignored this opinion when he "apportioned" for the '402 Patent.[5] Moreover, Plaintiff tacitly admits that Mr. Weinstein did not apportion to the extent required by the Federal Circuit when it argues "[t]his is not a case where the damages expert has failed altogether to apportion" because Mr. Weinstein

---

[5] To the extent Plaintiff suggests Mr. Haas should have second-guessed Dr. Smith's expert technical opinions, Mr. Weinstein's complete reliance thereon must likewise be infirm.

3

████████████████████████████████████

"took several apportionment steps." Dkt. 204 at 8. But the **number** of appropriate apportionment steps is not an issue of "conflicting facts" that can be addressed on cross examination; it is a legal issue to be gate-kept by this Court under FRE 702. There is no dispute that Mr. Weinstein did not utilize Dr. Smith's ████████████████████████████████████████████ in his report; Mr. Weinstein's opinion must be excluded to the extent it fails to carve out ███████ ██████████████████ from the '402 Patent royalty base.

**IV.    Walmart ██ GMV must be excluded from Mr. Weinstein's '823 damages opinion.[6]**

Plaintiff grasps, post hoc, at an alleged ambiguity in ████████████████ (GMV) data to create a "fact issue" to avoid exclusion of the ██ from Plaintiff's '823 Patent damages claim. But that "ambiguity" is contradicted by Mr. Weinstein's own analysis and testimony. **First**, Mr. Weinstein used the same "███████ GMV" data for his '402 Patent ROAS damages calculation, understanding it to include ████████ GMV. Dkt. 181 at 13-14. **Second**, Mr. Weinstein testified he did not provide an alternative '823 damages calculation to remove ███ ██████ because (he claimed) Walmart had not produced certain information; he did not testify that ██ GMV was already excluded from ████████ GMV." Ex. P, Tr. 76:21-77:3. This testimony only makes sense if he believed ██ GMV was included in ████████ GMV."

**V.    Mr. Weinstein's use of █████ GMV uplift is untethered to the technology at issue.**

Walmart does not argue that Mr. Weinstein's GMV lift number must be excluded because "████████████████████████ have nothing to do with the accused ████████ █████████" Dkt. 204 at 12 (internal quotations omitted). Instead, Walmart relies on Dr. Smith's

---

[6] Plaintiff's perfunctory response with respect to the exclusion of ████████████████ from Mr. Weinstein's '402 Patent damages opinions effectively concedes Dr. Smith did not analyze infringement for ████████████. Activities that do not infringe the asserted claims must be excluded from Mr. Weinstein's damages calculations. *Asus Tech. Licensing Inc. v. AT&T Enters. LLC*, Dkt. 885 at 4, No. 2:23-cv-00486-JRG-RSP (E.D. Tex. July 18, 2026) (Payne, J.).



disavowal of any technical relationship between the ██████████ as the basis for finding Mr. Weinstein's opinion excludable as untethered to the facts of the case. *See* Dkt. 181 at 13, Ex. J (Smith Tr. at 166:7-10). Plaintiff asks the Court to disregard its own technical expert in favor of Mr. Weinstein's reliance on a ████████████████████. This cannot be correct.

## VI.   Mr. Weinstein's ROAS analysis must be excluded as methodologically flawed.

The issue before the Court is not whether some percentage of ██████████ is attributable to advertising.[7] The issue is whether any sales are incremental to *Walmart* rather than the ██████ Plaintiff misses the point, relying on claims of a "conservative" ROAS multiplier and labeling all sales as "Walmart sales" because they occur on ████████. Mr. Weinstein's error is a foundational, "but for" causation-in-fact failure[8] that cannot be remedied by debating the appropriate ROAS multiplier because nothing cited in Mr. Weinstein's report regarding ROAS is related to incremental sales realized by Walmart, ever. And for good reason—ROAS is definitionally a return on ad spend ███████████████████████ (which do not exist).[9] Indeed, Plaintiff highlights this, stating "██████ only care about how much money *they made* by running ads aka revenue on ad spends (RoAS)." Dkt. 204 at 14 (emphasis added).

*        *        *

For these reasons and those in Walmart's motion, Walmart respectfully requests that the Court exclude or strike Mr. Weinstein's expert opinions and testimony under *Daubert*/Rule 702.

---

[7] Plaintiff points to ¶ 112 in Mr. Weinstein's report to claim that "Walmart determines the increase in gross merchandise sales ('GMV') attributable to its advertisements," Dkt. 204 at 13-14, but no authority is cited for this proposition, and Walmart does not have "*its* [own] advertisements." All cited materials discuss sales attributable to ██████████████ not Walmart.

[8] The hypothetical posed to Mr. Weinstein in his deposition was apt, highlighting the analytical gap underpinning his ROAS model. Plaintiff's counsel objected to the question not because it was an incomplete hypothetical—the Response identifies no facts missing from or improper assumptions in the hypothetical. Rather, Mr. Weinstein's testimony was expected to be damaging.

[9] Mr. Weinstein has not disclosed an opinion that ██████████ would have impacted Walmart's position in the hypothetical negotiation, contrary to the suggestion by Plaintiff.

5

███████████████████████████████████████████

Dated:  July 21, 2026

Respectfully submitted,

/s/  *Amir H. Alavi*
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

6

███████████████████████████████████████

Facsimile:  (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley N. Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile:  (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile:  (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B

7



Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that, on July 21, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record who have consented to electronic service.

*/s/ Amir H. Alavi*
Amir H. Alavi