IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § § | CASE NO. 2:24-CV-00688-JRG-RSP |
| Plaintiff, | § § | (Lead Case) |
| v. | § § | |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | JURY TRIAL DEMANDED |
| Defendants. | § § § | |
| RAVENWHITE LICENSING LLC | § § § | CASE NO. 2:24-CV-00689-RWS-RSP |
| Plaintiff, | § § | (Member Case) |
| v. | § § | |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | JURY TRIAL DEMANDED |
| Defendants. | § § § | |

**WALMART'S OPPOSED OMNIBUS MOTIONS *IN LIMINE***

██████████████████████████████

# TABLE OF CONTENTS

MIL No. 1:    Preclusion of evidence, testimony, or argument regarding Walmart's total revenues for the accused products, unapportioned revenues on accused products, unapportioned profits on accused products, revenues on unaccused activities, profits on unaccused activities, business-unit level revenues (e.g., revenues for ██████████████████████████████████████████████), total company revenues, total company profits, business-unit level profits (e.g., summed profits for ████████████ or summed profits for ████████████████████████), and other irrelevant large financial numbers ..................................................................................................1

MIL No. 2:    Preclusion of evidence, testimony, or argument regarding lack of commercial success for any Holmes entity attributable to Holmes' care for his special needs son. .......................................................................................................7

MIL No. 3:    Preclusion of evidence, testimony, or argument as to inflammatory comparisons of the burden of proof standards to other areas of the law ..........................................8

MIL No. 4:    Preclusion of evidence, testimony, or argument regarding an expert's prior retention by a party's counsel in other matters ........................................................9

MIL No. 5:    Preclusion of evidence, testimony, or argument about the "Walmart Effect" (i.e., describing Walmart as a dominant, "big box," or large retailer that hurts small businesses; engages in business practices harmful to small businesses; or causes store closures, lower wages, and reduced competition) or any suggestion that Walmart ████████████████████████████████████████ ........................10

i

**TABLE OF AUTHORITIES**

**Cases**

*Abstrax, Inc. v. Dell, Inc.*,
  No. 2:07-cv-221-DF, 2009 WL 10677355 (E.D. Tex. Oct. 9, 2009) ...................................... 10

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-cv-72, 2010 WL 11538713 (E.D. Tex. Feb. 26, 2010)............................................... 11

*Empire Tech. Dev. LLC v Samsung Elecs. Co. Ltd.*,
  No. 2:23-cv-00427-JRG-RSP, Dkt. 223 (E.D. Tex. June 10, 2025)........................................... 1

*Ericsson, Inc. v. D-Link Sys. Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ................................................................................................ 2

*Garretson v. Clark*,
  111 U.S. 120 (1884)................................................................................................................... 2

*Garrity v. Samsung*,
  No. 2:20-cv-269-JRG, Dkt. No. 226 (E.D. Tex. Dec. 10, 2021) ............................................... 9

*IPCom Gmbh & Co. KG v. AT&T Inc.*,
  No. 2:20-cv-322-JRG, Dkt. No. 307 (E.D. Tex. Mar. 15, 2022).............................................. 10

*LaserDynamics Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ............................................................................................... 2, 7

*Longhorn HD LLC v. NetScout Systems, Inc.*,
  No. 2:20-CV-00349- JRG-RSP, Dkt. No. 119 (E.D. Tex. Mar. 2, 2022)................................... 9

*Maxell , Ltd. v. Apple Inc.*,
  No. 5:19-cv-00036-RWS, 2021 WL 3021253 (E.D. Tex. Feb. 26, 2021)............................... 12

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-cv-00126-JRG-RSP, Dkt. 384 (E.D. Tex. Oct. 2, 2022) ............................................ 8

*Mobile Telecomms. Techs., LLC v. Sprint Nextel Corp.*,
  2014 WL 5816106 (E.D. Tex. Nov. 7, 2014) ........................................................................... 2

*Optis Wireless Technology, LLC et al v. Apple Inc.*,
  No. 2-19-cv-00066-JRG, Dkt. No. 668 (E.D. Tex. Aug. 9, 2021) ............................................ 9

*SimpleAir, Inc. v. Google*,
  No. 2:14-cv-11, 2015 WL 5895401 (E.D. Tex. Oct. 6, 2015)................................................... 2

*Stragent, LLC v Intel Corp.*,
  No. 6:11-cv-421-TBD-JDL, Dkt. No. 274 (E.D. Tex. Feb. 27, 2014) ...................................... 9

*Telcom Ventures LLC v. Samsung Elec. Co., Ltd.*,
   No. 2:24-cv-00691-JRG, 2026 WL 1896025 (E.D. Tex. July 1, 2026) (Gilstrap, J.) ................ 1

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................. 2

**Statutes**

35 U.S.C. § 284 ......................................................................................................................... 2

**Rules**

Fed. R. Evid. 401 ...................................................................................................................... 9

Fed. R. Evid. 402 ...................................................................................................................... 9

Fed. R. Evid. 403 ...................................................................................................................... 9

███████████████████████████████████████████████

Defendants Walmart Inc. and Wal-Mart Texas Stores, LLC (collectively, "Walmart") respectfully move the Court *in limine* to preclude Plaintiff RavenWhite Licensing LLC ("Plaintiff"), its attorneys, and witnesses from mentioning or averring to, in the presence of the jury, either directly or indirectly, upon voir dire, statement of the case, interrogation of the witnesses, argument, objections before the jury, or by any other means or manner any of the matters set forth below.

**MIL No. 1:** **Preclusion of evidence, testimony, or argument regarding Walmart's total revenues for the accused products, unapportioned revenues on accused products, unapportioned profits on accused products, revenues on unaccused activities, profits on unaccused activities, business-unit level revenues (e.g., revenues for ████████████ ████████████, total company revenues, total company profits, business-unit level profits (e.g., summed profits for ███████████ or summed profits for ████████████████████), and other irrelevant large financial numbers.**

The Court's Standing MIL Order #3 precludes the parties from introducing evidence, testimony, or argument concerning any party's overall financial size, wealth, or executive compensation. Pursuant to Rules 402, and 403, Walmart also requests that the Court preclude Plaintiff from referring to Walmart's total accused product revenues, unapportioned revenues or profits on accused products, revenues and profits on unaccused activities, business-unit level and total company revenues, total company and business-unit level profits, and any other large financial numbers that are not necessary for Plaintiff to present its damages calculation. This Court routinely grants similar motions. *See*, *e.g.*, *Telcom Ventures LLC v. Samsung Elec. Co., Ltd.*, No. 2:24-cv-00691-JRG, 2026 WL 1896025, at \*5 (E.D. Tex. July 1, 2026) (Gilstrap, J.) (excluding references to "revenue or income of either Samsung Defendant as an enterprise"); *Empire Tech. Dev. LLC v Samsung Elecs. Co. Ltd.*, No. 2:23-cv-00427-JRG-RSP, Dkt. 223 at 3 (E.D. Tex. June 10, 2025) ("This motion in limine is GRANTED to the extent of precluding dollar amounts of total revenue and total profits from the accused products."); *SimpleAir, Inc. v. Google*, No. 2:14-cv-11,

1

2015 WL 5895401, at *3 (E.D. Tex. Oct. 6, 2015) (granting defendant's request to exclude "'overall product revenue' from reaching the jury"); *Mobile Telecomms. Techs., LLC v. Sprint Nextel Corp.*, 2014 WL 5816106, at *3 (E.D. Tex. Nov. 7, 2014) (granting motion to exclude "overall revenues and sales of the accused products").

Additionally, a patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). "The governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys. Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). To permit otherwise would unfairly "skew the damages horizon for the jury." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *see also Ericsson, Inc.*, 773 F.3d at 1226 ("[C]are must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product."); *LaserDynamics Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("Admission of such overall revenues which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" (quoting 35 U.S.C. § 284)).

Here, Plaintiff's damages expert, Mr. Weinstein, has included the following in his report, which must be excluded from presentation to the jury to avoid undue prejudice:

(a) Walmart's overall revenues and profits (e.g., Weinstein Rep., Ex. 3);

(b) ▮▮▮▮▮▮▮▮ topline net sales revenues and summed profits, which includes numerous ▮▮▮▮▮▮▮▮▮▮ that are not accused of infringement and

2

██████████████████████████████████████████

"breakdowns" of sales and revenues that are irrelevant (e.g., Weinstein Rep., Exs. 6, 6A, 7, 7A, 7B);

(c) Revenues and summed profits on ████████████ and ████████████████ that are not accused of infringement (e.g., Weinstein Rep., Exs. 7, 7A, 7B, 8, 8A, 8B);

(d) Revenues and summed profits on unaccused functionality, features, and/or contributors of value within accused ████████████ and ████████████ (e.g., Weinstein Rep., Exs. 7, 7A, 7B, 8, 8A, 8B);

(e) Revenues and profits on ████████████, for which Dr. Smith has offered no infringement opinion (e.g., Weinstein Rep., Exs. 7, 7A, 7B, 8, 8A, 8B);

(f) Total revenues from merchandise sales (a/k/a "gross merchandise value" or "GMV") and summed profits of Walmart's ████████████████ (e.g., Weinstein Rep., Exs. 5, 9); and

(g) Revenues and profits on GMV associated with ████████, for which Dr. Smith has offered no infringement opinion (e.g., Weinstein Rep., Ex. 9).

Thus, any trial use of exhibits to Mr. Weinstein's report, identical or analogous calculations contained therein, and/or demonstratives derived therefrom must excise the prejudicial information set forth above.

Additionally, Plaintiff has included numerous documents on its trial exhibit list[1] that reference impermissible "large numbers":

(h) R021 (beginning with WEINSTEIN00000341): includes, e.g., business-unit level revenues and summed total operating margins;

---

[1] Walmart does not seek to exclude all materials in the referenced exhibits; rather, implicated information therein should be, at minimum, redacted prior to the publication of such exhibits to the jury.

███████████████████████████████████████

(i) R022 (beginning with WEINSTEIN00000608): includes, e.g., business-unit level revenues and growth unrelated to accused products or accused functionality;

(j) R023 (beginning with WEINSTEIN00000695): includes, e.g., reference to ██████ ██████ growth without connection to accused products or accused functionality;

(k) R028 (beginning with WEINSTEIN00001479): includes, e.g., company-wide revenues, net earnings;

(l) R029 (beginning with WEINSTEIN00001754): includes, e.g., company-wide gross and net revenues and business-unit revenues;

(m) R030 (beginning with WEINSTEIN00002068): includes, e.g., company-wide global, US, and state revenues, net earnings;

(n) R031 (beginning with WEINSTEIN00002120): includes, e.g., business-unit levels revenues, company-wide gross revenues, cash flow;

(o) R040 (beginning with WMT-RW0005870): includes, e.g., revenues from unaccused products, unapportioned revenues;

(p) R044 (beginning with WMT-RW0018833): includes, e.g., total ad spend by advertisers;

(q) R045 (beginning with WMT-RW0019448): includes, e.g., total ad spend by advertisers;

(r) R052 (beginning with WMT-RW0029132): includes, e.g., business-unit level total expenses;

(s) R053 (beginning with WMT-RW0029133): includes, e.g., business-unit level net sales and operating income;

(t)  R054 (beginning with WMT-RW0029134): includes, e.g., business-unit level total expenses;

(u)  R060 (beginning with WMT-RW0029147): includes, e.g., business-unit level gross and net sales, total expenses, operating and net income;

(v)  R061 (beginning with WMT-RW0035202): includes, e.g., business-unit level gross and net sales, revenues for unaccused products, unapportioned revenues, total ad spend by advertisers;

(w) R062 (beginning with WMT-RW0173793): includes, e.g., business-unit level gross and net sales, revenues for unaccused products, unapportioned revenues, total ad spend by advertisers;

(x)  R066 (beginning with WMT-RW0207005): includes, e.g., business-unit level gross and net sales, revenues for unaccused products, unapportioned revenues, total ad spend by advertisers;

(y)  R068 (beginning with WMT-RW0219647): includes, e.g., business-unit level gross and net sales, revenues for unaccused products, unapportioned revenues, total ad spend by advertisers;

(z)  R073 (beginning with WMT-RW0409454): includes, e.g., business-unit level revenues for unaccused functionality;

(aa)    R074 (beginning with WMT-RW0410913): includes, e.g., business-unit level gross and net sales, revenues for unaccused products, unapportioned revenues;

(bb)    R076 (beginning with WMT-RW0424728): includes, e.g., business-unit level gross and net revenues and operating income;

5

(cc)    R082 (beginning with WMT-RW0486475): includes, e.g., business-unit level gross and net sales, revenues for unaccused products, unapportioned revenues, total expenses, operating income;

(dd)    R084 (beginning with WMT-RW0492947): includes, e.g., business-unit level revenues for unaccused products, unapportioned revenues;

(ee)    R085 (beginning with WMT-RW0496966): includes, e.g., revenues for unaccused products, unapportioned revenues;

(ff) R086 (beginning with WMT-RW0511480): includes, e.g., business-unit level revenues, revenues for unaccused products, unapportioned revenues, total ad spend by advertisers;

(gg)    R087 (beginning with WMT-RW0547653): includes, e.g., revenues for unaccused products, unapportioned revenues;

(hh)    R089 (beginning with WMT-RW0644149): includes, e.g., revenues for unaccused products, unapportioned revenues;

(ii) R090 (beginning with WMT-RW0664290): includes, e.g., revenues for unaccused products, unapportioned revenues, operating income; and

Any trial use of these exhibits and/or demonstratives derived therefrom must excise the prejudicial information contained therein before publication to the jury.

Walmart's total accused product revenues, unapportioned revenues or profits on accused products, revenues and profits on unaccused activities, business-unit level and total company revenues, total company and business-unit level profits, and any other large financial numbers that are not necessary for Plaintiff to present its damages calculation have no relevance or probative value for calculating damages for the Asserted Patents. To the extent they have any marginal

6

relevance, it is substantially outweighed by the risk of unfair prejudice to Walmart. *See LaserDynamics*, 694 F.3d at 68. Thus, Plaintiff should not be permitted to introduce such evidence to the jury.

**MIL No. 2:     Preclusion of evidence, testimony, or argument regarding lack of commercial success for any Holmes entity attributable to Holmes' care for his special needs son.**

The Court should preclude Plaintiff from presenting any evidence, testimony, or argument regarding lack of commercial success purportedly attributable to Mr. Holmes's care for his special needs son. Mr. Holmes is the sole owner of Plaintiff RavenWhite Licensing LLC, as well as a number of other LLC entities, including a patent brokerage company named PatentBridge LLC and another entity, InnovateLeap LLC, that is the sole member of Plaintiff RavenWhite Licensing LLC.

During his deposition, Mr. Holmes referenced his adult son's special needs in testimony about his own business activities. On at least four occasions, Mr. Holmes attributed the inactivity of his company PatentBridge, LLC to his son's condition. When asked when PatentBridge last had revenue, Mr. Holmes testified: "I have a special needs child…. I made the painful decision that my son was more important than my business." Ex. 1, Holmes Tr. 23:25-24:14. When asked about his work schedule, Mr. Holmes stated that caring for his son is "a sensitive, emotional topic," that he "get[s] choked up" thinking about it, and that it "takes a lot of time." *Id.*, 30:24-31:12. When asked why PatentBridge still maintains a website, Mr. Holmes explained he keeps it "[o]n the hope that I will have more time with my son," described his son's ongoing "relapse," and noted his son's therapist had seen him "three times, I think, last week." *Id.*, 41:18-42:6. When asked again about PatentBridge's cessation of revenue, Mr. Holmes testified he stopped taking engagements when "my son became more complicated in his mental needs." *Id.*, 38:21-25.

7

Mr. Holmes's son's special-needs status and his caregiving obligations are not relevant to any issue the jury will decide. The jury will resolve questions of patent infringement, validity, and damages. Mr. Holmes's choice to walk away from his patent brokerage business, and his reasons for doing so, have no bearing on infringement, validity, or damages.

Even if there were some marginal relevance, the unfair prejudice from this evidence far outweighs any probative value. References to a parent's sacrifice for a disabled child would unfairly generate sympathy for the witness and, by extension, for Plaintiff's case. Courts in this district—and across the Fifth Circuit—regularly exclude evidence that invites a verdict rooted in sympathy rather than fact. For example, in *Mobile Equity Corp. v. Walmart Inc.*, this Court granted Walmart's motion *in limine* to preclude evidence and argument that "a judgment in this case in favor of Walmart will adversely affect the inventor's family," stating that "any such suggestion has no relevance and would be solely an appeal for sympathy." No. 2:21-cv-00126-JRG-RSP, Dkt. 384 at 11 (E.D. Tex. Oct. 2, 2022). Here, any testimony about Mr. Holmes' care for his special needs son likewise has no relevance and would be an appeal for sympathy.

Walmart requests that the Court order Plaintiff, its counsel, and its witnesses to refrain from any reference at trial to Mr. Holmes's son, his special-needs status, medical care or therapy, Mr. Holmes's role as a caregiver for his son, or any issues that Mr. Holmes claims to have experienced with his son in managing his business obligations.

**MIL No. 3:    Preclusion of evidence, testimony, or argument as to inflammatory comparisons of the burden of proof standards to other areas of the law.**

The Court should preclude evidence, testimony, or argument that the clear and convincing standard burden of proof to invalidate a patent under Title 35 of the U.S. Code is similar or analogous to the Texas Family Code's clear and convincing standard required to remove a child from the home. Such comparisons are inflammatory and would impose marked prejudice on

Walmart. Fed. R. Evid. 401-403. In particular, no party should be allowed to suggest or mention that the clear and convincing standard is the standard applied to personal injury, fraud, family law, or other areas of the law where the risk of personal loss is prejudicially high, nor should the parties analogize or compare to burden associated with criminal law.

Analogizing the invalidity of a patent to, for example, removing a child from the family home or committing an individual to a mental institution, would be confusing, mislead the jury, and improperly influence the jury's decision-making process by inviting members of the jury to compare their past experiences or preconceptions from unrelated areas of law to this case, to Walmart's prejudice. The Court has granted this preclusion in similar litigations. *See*, *e.g.*, *Longhorn HD LLC v. NetScout Systems, Inc.*, No. 2:20-CV-00349- JRG-RSP, Dkt. No. 119 at \*10 (E.D. Tex. Mar. 2, 2022); *Optis Wireless Technology, LLC et al v. Apple Inc.*, No. 2-19-cv-00066-JRG, Dkt. No. 668 at \*3, (E.D. Tex. Aug. 9, 2021); *Stragent, LLC v Intel Corp.*, No. 6:11-cv-421-TBD-JDL, Dkt. No. 274 at \*2 (E.D. Tex. Feb. 27, 2014) (excluding "[r]eferences to the 'clear and convincing' standard in the Texas Family Code"); *Garrity v. Samsung*, No. 2:20-cv-269-JRG, Dkt. No. 226 at 9 (E.D. Tex. Dec. 10, 2021) (noting that the court, not the parties, will instruct on burdens).

Accordingly, Walmart requests that the Court preclude comparisons to unrelated burdens of proof or other legal standards.

**MIL No. 4:    Preclusion of evidence, testimony, or argument regarding an expert's prior retention by a party's counsel in other matters.**

The parties should be precluded from presenting evidence, testimony, or argument regarding, or inquiries attempting to elicit testimony regarding, experts previously or currently working for any party's outside litigation counsel in other cases. This includes any reference to whether a party's expert witness was previously considered for retention by, was retained by, or is

9

currently retained by the opposing party's counsel. An expert's prior or ongoing engagement in an unrelated lawsuit has no bearing on any issue in this case. Such unrelated litigations involve different patents, parties, and issues, and are thus irrelevant, misleading, confusing to the jury, and prejudicial. *See Abstrax, Inc. v. Dell, Inc.*, No. 2:07-cv-221-DF, 2009 WL 10677355, at \*1 (E.D. Tex. Oct. 9, 2009) ("[E]vidence or testimony concerning other litigation is irrelevant and any probative value is outweighed by the danger of prejudice and confusion of the jury."). This Court has precluded such discussion in the past. *See*, *e.g.*, *IPCom Gmbh & Co. KG v. AT&T Inc.*, No. 2:20-cv-322-JRG, Dkt. No. 307, at 10 (E.D. Tex. Mar. 15, 2022) (granting defendants' MIL 1 and holding that "both sides are precluded from discussing the number of times any experts worked for either a law firm or a party in the case without prior leave of Court"). The same limitations should apply here.

Plaintiff's counsel have indicated that Plaintiff does not oppose Walmart's MIL #4.

**MIL No. 5:    Preclusion of evidence, testimony, or argument about the "Walmart Effect" (i.e., describing Walmart as a dominant, "big box," or large retailer that hurts small businesses; engages in business practices harmful to small businesses; or causes store closures, lower wages, and reduced competition) or any suggestion that Walmart** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The Court should preclude Plaintiff from presenting evidence, testimony, or argument describing or characterizing Walmart as a dominant, "big box," or large retailer that hurts small or independent businesses; engages in business practices harmful to small or independent retailers through its pricing, operations at scale, or operations at a loss; or otherwise has a negative economic impact on small or independent retailers and local communities and economies, such as store closures, lower wages, and reduced competition, sometimes referred to as the "Walmart Effect." The term "Walmart Effect" has been used to describe economic changes, such as store closures and lower wages, that occur in local communities when a Walmart store opens in the area. Smaller retailers that do not have the same buying power as Walmart may struggle to compete



with Walmart's lower prices, streamlined supply chain, and extensive product selection, leading to reduced foot traffic and potential closures of small, local, and independent businesses.

Relatedly, the Court should preclude Plaintiff from presenting evidence, testimony, or argument suggesting that ███████████████████████████████████████ ██████. Walmart is especially concerned that the subject matter of this case, i.e., Walmart's use of "cookies" and ███████████████ in targeted advertisements, presents Plaintiff with the opportunity to describe Walmart's business practices as an invasion of customer privacy. Plaintiff's exhibit R133 aptly illustrates Walmart's concerns, as it includes statements such as (i) ████████████████████████████████████ (ii) ███████████ ███████████████████████████████████ and (iii) ██████ ████████████████████████████████ *See* R133 at WMT-RW0019989. Walmart seeks to exclude inflammatory descriptions and pejorative terms that characterize or suggest Walmart's business activities as ████████ or an ███████████████

***First***, evidence and argument concerning these issues is irrelevant and should be excluded under FRE 402 because it does not bear on whether Walmart infringes the Asserted Patents, whether the asserted claims are valid, or the amount of damages at issue.

***Second***, such evidence and argument should be excluded under FRE 403 because it is misleading and highly prejudicial, and the only possible use of such evidence by Plaintiff would be to cast Walmart in an unfavorable light and "invite an emotion[al] response from the jury" and general hostility toward Walmart. *See DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2010 WL 11538713, at *14 (E.D. Tex. Feb. 26, 2010) (granting Wells Fargo's MIL #1 and excluding any reference to TARP or "bailouts" as irrelevant and unduly prejudicial to banks, where connection to willful patent infringement was "speculative and attenuated"); *Maxell , Ltd. v. Apple*

11

███████████████████████████████████████████

*Inc.*, No. 5:19-cv-00036-RWS, 2021 WL 3021253, at \*10 (E.D. Tex. Feb. 26, 2021) (excluding evidence or references to Apple's foreign operations used to imply that Apple outsources American jobs or "sources from abroad" as unfairly prejudicial). Any suggestion that Walmart's business practices are unfair to small, local, or independent businesses, or have a negative economic impact on local communities or economies, has no probative value and would unfairly prejudice Walmart in the eyes of the jury. Similarly, any suggestion by Plaintiff that Walmart's business practices and ████████████████████████ are improper, ████████ ████████, or ██████████████ has no probative value and would have no purpose other than to invite a negative emotional jury response. Such evidence should be excluded.

Plaintiff's counsel have indicated that Plaintiff does not oppose Walmart's MIL #5 in relation to the first issue, i.e., the "Walmart Effect." However, Plaintiff's counsel have indicated that Plaintiff opposes Walmart's MIL #5 in relation to the second issue, i.e., any suggestion that Walmart ████████████████████████████████████.

Dated:  July 21, 2026

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

13

████████████████████████████████████

Facsimile:  (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley N. Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile:  (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile:  (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B

14



Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and*
*Wal-Mart Stores Texas, LLC*

## CERTIFICATE OF CONFERENCE

The parties met and conferred by phone on July 20, 2026, regarding the issues raised in Walmart's motions *in limine*. Except where indicated, the parties could not reach agreement and the discussion ended in an impasse. Accordingly, the motion is opposed.

*/s/ Amir H. Alavi*
Amir H. Alavi

## CERTIFICATE OF SERVICE

I hereby certify that, on July 21, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record who have consented to electronic service.

*/s/ Amir H. Alavi*
Amir H. Alavi

15