**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § § | |
| *Plaintiff,* | § § | CASE NO. 2:24-CV-00688-JRG-RSP |
| v. | § § | (*Lead Case*) |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § § § § | |

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § § | |
| *Plaintiff,* | § § § | CASE NO. 2:24-cv-00689-JRG-RSP (*Member Case*) |
| v. | § § | |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § § § § | |

**DEFENDANTS' REPLY TO THEIR PARTIAL MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NOS. 11,562,402 AND 10,594,823 (Dkt. 180)**

**TABLE OF CONTENTS**

I.      There is No Evidence that Offsite Ads Infringe the '402 Patent.............................1

       A.     The Asserted Claims Require "Display(ing) an Advertisement to the User" .................1

       B.     There is No Evidence Conflating Onsite and Offsite Ads ................................................2

       C.     Walmart Does Not Control the Trade Desk Under *Centillion*.........................................2

II.     There is No Evidence that Walmart's Mobile App Infringes the '823 Patent.......................4

III.    There is No Evidence in the Record of Induced Infringement................................................4

███████████████████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. 2k Sports, Inc.*,
   15 F.4th 1069 (Fed. Cir. 2021) ...................................................................................................3

*Asyst Techs., Inc. v. Empak, Inc.*,
   268 F.3d 1364 (Fed. Cir. 2001)). ................................................................................................1

*Centillion Data Sys. v. Qwest Communs. Int'l*,
   631 F.3d 1279 (Fed. Cir. 2011). ............................................................................................2, 3

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
   987 F.3d 1358 (Fed. Cir. 2021) ...................................................................................................3

**I.      There is No Evidence that Offsite Ads Infringe the '402 Patent**

**A.      The Asserted Claims Require "Display(ing) an Advertisement to the User"**

RavenWhite argues that Walmart's onsite and offsite ads both utilize Walmart's Persona and PT Affinity flows; therefore, both infringe. *See* Resp. at 3-4. But this argument impermissibly reads out a claim limitation—"display(ing) an advertisement to the user"—with respect to offsite ads.

RavenWhite cannot establish infringement by showing that offsite ads infringe ***most*** of the claim limitations. As Walmart argued (and RavenWhite does not dispute), RavenWhite's infringement expert does not even mention offsite ads when addressing the "display" limitation. *See* WM Ex. 17 (Smith Ex. H) at 43-46). RavenWhite contends that ███████████████

████████████████████████████████████████████████

Resp. at 4. Not so. It is not sufficient for Walmart to play a role in the pre-display ad selection process. This is not a scenario where Walmart merely adds functionality to an infringing system. *See* Resp. at 5 (quoting *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1373 (Fed. Cir. 2001)). Walmart itself ***does not perform*** every claim limitation.

Nonetheless, RavenWhite argues that Walmart still infringes ████████████████

████████████████████████████████████████████████

████████████     Resp. at 6 (citing RW Ex. 2 at ¶¶79-87). But the role of third party Trade Desk goes well beyond merely hosting Walmart information on its servers. The Trade Desk ***itself selects*** the final audience and displays the ads. WM Ex. 14-16.

RavenWhite argues that ███████████████████████████

████████████████████████████████████████████████

████████████████████     Resp. at 5.  But Walmart's response to Interrogatory 3 (which asked about non-infringement) states that ██████████████████████████

████████████████████████████████████████████████

1

██████████████████████████████

███████████████████████ WM Ex. 18 (Rog 3 Resp.) at 31. Moreover, the questions RavenWhite asked during depositions indicate it was well aware of the distinction between onsite and offsite displays. WM Ex. 19 (Bhardwaj Dep.) at 94:7-12 █████████████████████ ████████████████████ WM Ex. 20 (Bhargava Dep.) at 258:14-21 ████████████ ███████████████████ RavenWhite cannot credibly argue surprise.

**B.    There is No Evidence Conflating Onsite and Offsite Ads**

RavenWhite presumes that Walmart's onsite and offsite ads operate the same way. *See* Resp. at 3, 4 ████████████████████████████████████████████ ████████████ But Dr. Smith never offers that opinion, nor does he identify a specific "process" or "flow" that is used to display any offsite ads. Walmart cites numerous pages from Dr. Smith's report (Resp. at 4), none of which state that onsite and offsite ads operate the same.

RavenWhite disputes Walmart's statement that ████████████████████████████ ████████████████████████ (*see* Resp. at 2 (SUF #5)), instead contending that ██████████ ████████████████████████████████████████ *Id*. This is a distinction without meaning. When asked, "Are you alleging that off-site ads infringe the '402 patent," he responded, █████████████████████████ and asked to be referred to a specific section of his report. WM Ex. 12 at 25:19-26:6. When pressed, (1) he identified the accused products in Exhibit F and (2) conceded that Exhibit F does not mention offsite ads. *Id*. at 26:7-27:5. Saying ██████████ █████████████████████████████████ has the practical effect as ████████████████ █████████████████ And tellingly, even in its Response, RavenWhite does not cite *a single sentence* from Dr. Smith's report where he addresses offsite ads—because he does not.

**C.    Walmart Does Not Control the Trade Desk Under *Centillion***

"Control" under *Centillion* means "the ability to place the system as a whole into service." *Centillion Data Sys. v. Qwest Communs. Int'l*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). There is no

2

evidence Walmart possesses control over "each and every element" of the system, without the intervention of a third party, as required for joint infringement.[1] *Id*. Rather, after Walmart sends data to Trade Desk, Trade Desk acts independently before any offsite ad is displayed to any customer. WM Ex. 19 (Bhardwaj Dep.) at 94:7-12 ███████████████████████████████ This level of independence from Trade Desk merits summary judgment. *See Acceleration Bay LLC v. 2k Sports, Inc.*, 15 F.4th 1069, 1078 (Fed. Cir. 2021) (affirming SJ of non-infringement where "the customer, not [the defendant], completes the system by providing the hardware component and installing the client software" (alterations omitted)); *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) (affirming SJ of non-infringement where the claims required software and hardware, but the defendant only provided hardware).

RavenWhite relies on two pieces of evidence to show "control." *See* Resp. at 7-9. First, RavenWhite cites three passages from Ms. Bhardwaj's deposition for the proposition that ████████

██████████████████████████████████████████████████████

(Resp. at 7), but Ms. Bhardwaj never said that Walmart causes Trade Desk to serve ads or dictates the audiences. In the first passage, she testified that Trade Desk keeps Walmart's customer data separate ("a separate instance") so that Walmart's competitors (*e.g.*, Kroger) cannot target Walmart's customers using Walmart's proprietary customer data. RW Ex. 1 at 90:2-24. And the second and third cited passages from Ms. Bhardwaj's testimony address ████████████████████ RW Ex. 1 at 96:12-24. Ms. Bhardwaj confirmed that ████████████████████████ ████████████████████████ *Id*. at 95:13-17.

---

[1] *Centillion* also states that "to put the system into service, the end user must be ***using*** all portions of the claimed invention." *Centillion*, 631 F.3d at 1284 (emphasis added). Walmart does not use Trade Desk's display software and hardware. Only Trade Desk uses Trade Desk's display software and hardware. And RavenWhite does not identify any other potential end user.

3

Second, RavenWhite cites the Master Services Agreement between Walmart and Trade Desk. Resp. at 8. The fact that Walmart retains the intellectual property rights to work performed by Trade Desk on Walmart's behalf does not mean that Walmart "controls" Trade Desk. *See* Resp. at 8 (citing RW Ex. 5). Moreover, the ***full*** Agreement (that RavenWhite did not provide for the Court) makes clear that "Provider [Trade Desk] will provide Walmart DSP Services to Walmart and advertisers as described in this SOW." WM Ex. 21 (MSA) at -929.

## II.   There is No Evidence that Walmart's Mobile App Infringes the '823 Patent

Walmart acknowledges RavenWhite's representation that "RavenWhite takes no position on whether Walmart's mobile app infringes the '823 patent and will not argue otherwise at trial." Resp. at 10. However, the issue remains live in this case. RavenWhite's complaint (Dkt. 26 at ¶41) and infringement contentions (WM Ex. 22 ('823 Infringement Contentions) at 1) both identify Walmart's mobile app as an accused product. RavenWhite's damages expert has also included mobile app activities in his damages calculation. Because there is no evidence in the record that Walmart's mobile app infringes, Walmart is entitled to summary judgment of no infringement.

## III.   There is No Evidence in the Record of Induced Infringement

RavenWhite contends it should be permitted to argue that Walmart indirectly infringes if Walmart argues at trial that its customers directly infringe. *See* Resp. at 11. Walmart will not argue its customers directly infringe the Asserted Patents. *See* Mot. at 9. But more importantly, even if this is merely a "prepared counter-argument" (Resp. at 11), RavenWhite (bearing the burden of proof) still must present evidence of its customers' direct infringement. Its infringement expert admitted he did not perform that analysis.[2] WM Ex. 12 at 76:11-16, 85:2-7.

---

[2] RavenWhite also criticizes Walmart for failing to specify whether it was referring to the 2023 initial case filing or the 2024 amended complaint. Resp. at 10. Walmart was referring to the original 2023 complaint.

███████████████████████████

DATED:  July 21, 2026

Respectfully submitted,

By: */s/ Blaine A. Larson*

Michael F. Heim
Texas State Bar No. 09380923
mheim@hpcllp.com
Eric J. Enger
Texas State Bar No. 24045833
eenger@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
Blaine A. Larson
Texas State Bar No. 24083360
blarson@hpcllp.com
William B. Collier, Jr.
State Bar No. 24097519
wcollier@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420

5

███████████████████████████████

bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile: (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

***Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC***

6

███████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record by electronic mail on July 21, 2026.

/s/ Blaine A. Larson
Blaine A. Larson

*Via E-mail*

Robert F. Kramer
CA Bar No. 181706
rkramer@kramerllp.com
Robert C. Mattson *(pro hac vice)*
VA Bar No. 43568
rmattson@kramerllp.com
KRAMER LLP
1133 Broadway, Suite 1510
New York, New York 10010
Telephone: (415) 419-1895

Nicole E. Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
KRAMER LLP
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 791-9250

Zachariah A. Higgins *(pro hac vice)*
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong *(pro hac vice)*
CA Bar No. 253705
jarmstrong@kramerllp.com
Ryan Dooley *(pro hac vice)*
CA Bar No. 321645
rdooley@kramerllp.com
Robert Xie
CA Bar No. 329126
rxie@kramerllp.com
Rachael Catherine Chan *(pro hac vice)*
CA Bar No. 265002
rchan@kramerllp.com
KRAMER LLP
303 Twin Dolphin Dr., Suite 600
Redwood City, California 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Counsel for Plaintiff RavenWhite Licensing LLC*

7

8