**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00688-JRG-RSP<br>(Lead Case) |
| THE HOME DEPOT, INC., *et al.*, | |
| Defendants. | |
| RAVENWHITE LICENSING LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00689-JRG-RSP<br>(Member Case) |
| WALMART INC., *et al.*, | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE
OPINIONS OF EXPERT KEVIN C. ALMEROTH, PH.D**

**TABLE OF CONTENTS**

I.    Non-Infringing Alternatives.................................................................................................. 1

II.   The Home Depot Agreement and IPR Proceedings ............................................................. 4

III.  The PayPal Agreement ....................................................................................................... 5

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barco, Inc. v. Yealink (USA) Network Tech Co., Ltd.*,
　　No. 2:23-cv-00521-JRG-RSP (E.D. Tex. Oct. 14, 2025) .................................................... 1

*CLO Virtual Fashion Inc. v. Zhejiang Lingdi Digital Technology Co., Ltd.*,
　　No. 2:23-cv-00274-JRG-RSP (E.D. Tex. July 9, 2025) ..................................................... 2

*Correct Transmission, LLC v. Nokia of Am., Corp.*,
　　No. 2:22-cv-00343-JRG-RSP (E.D. Tex. March 26, 2024)........................................... 3**,** 4

*Finjan, Inc. v. Secure Computing Corp.*,
　　626 F.3d 1197(Fed. Cir. 2010)....................................................................................... 5

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
　　318 F. Supp. 1116 (S.D.N.Y. 1970), Dkt. 201................................................................ 4

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
　　392 F.3d 1317 (Fed. Cir. 2004)....................................................................................... 4

**Rules**

Fed. R. Evid. 702 ........................................................................................................... 2, 3

████████████████████████

## TABLE OF EXHIBITS

| Ex. | Description |
|---|---|
| K | Expert Report of Dr. Hugh Smith Relating to Infringement By Walmart of U.S. Patent Nos. 10,594,823 and 11,562,402 ("Smith Report") |
| L | Plaintiff's Disclosure of Asserted Claims and Infringement Contentions to Walmart Defendants (P.R. 3-1), Exhibit 2 – Claim Chart for U.S. Patent No. 11,562,402 ("Initial Infringement Contentions") |
| M | Amended Infringement Contentions dated March 20, 2026, Redline Exhibit 2 – U.S. Patent No. 11,562,402 ("Amended Infringement Contentions") |
| N | Email of March 20, 2026, evidencing service of Amended Infringement Contentions |
| O | Deposition Transcript for Kevin C. Almeroth, Ph.D (July 1, 2026) |
| P | Rebuttal Expert Report of David A. Haas ("Haas Report") |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| RavenWhite | Plaintiff RavenWhite Licensing LLC |
| Walmart | Defendants Walmart Inc. and Walmart Stores Texas, LLC |
| Home Depot | The Home Depot, Inc. and Home Depot U.S.A., Inc. |
| Almeroth Opening Report | Opening Invalidity Expert Report of Dr. Kevin C. Almeroth, Ph.D. |
| Almeroth Rebuttal Report | Rebuttal Expert Report of Dr. Kevin C. Almeroth, Ph.D. |
| Haas Report | Rebuttal Expert Report of David A. Haas |
| Asserted Patents | U.S. Patent No. 10,594,823 and U.S. Patent No. 11,562,402 |

## I.     NON-INFRINGING ALTERNATIVES

Walmart does not dispute that NIA opinions must appear in an expert's opening report. Nor does it deny that Dr. Almeroth's Rebuttal Report presents new NIA opinions. Dkt. 201, Opp. at 1. Instead, Walmart tries to justify these new opinions for several flawed reasons.[1]

***First***, Walmart asserts that ¶¶ 535-539 permissibly "provide greater detail" to Dr. Almeroth's Opening Report by rebutting the report of RavenWhite's expert, Dr. Smith. Dkt. 201 at 2. But Dr. Smith merely pointed out the many deficiencies in Walmart's NIA interrogatory responses. Ex. K (Smith Report) ¶¶ 118-123. His doing so should not relieve Walmart of its burden of establishing NIAs in an opening report, or give it an opportunity to fill in the details it should have provided in the first place. *Barco, Inc. v. Yealink (USA) Network Tech Co., Ltd.*, No. 2:23-cv-00521-JRG-RSP (E.D. Tex. Oct. 14, 2025), Dkt. 220 at 4 ("The onus was on Defendants to include NIA opinions in their opening report, and Defendants may not avoid this by claiming that they are in response to Plaintiff's experts' timely disclosed opinions.").

***Second***, Walmart argues that ¶¶ 540-551 permissibly rebut Dr. Smith's opinions "that certain prior art would not be a proper non-infringing alternative." Dkt. 201 at 3. But Dr. Smith offers no such opinions. Instead, he explains why Walmart's undeveloped interrogatory responses do not establish any NIAs based on prior art. Ex. K ¶¶ 124-129, 136-138. Walmart's justification for Dr. Almeroth's new opinions is both baseless and improper under *Barco*.

***Third***, Walmart argues that ¶¶ 552-554 of the Almeroth Rebuttal Report permissibly identify a new NIA, because it is based on an infringement argument purportedly disclosed for the first time in the Smith Report. Dkt. 201 at 3-4. This allegedly caused Dr. Almeroth to realize that

---

[1] Walmart says nothing at all about its failure to include NIAs for the '402 patent in Almeroth's Opening Report. Accordingly, all opinions about NIAs for the '402 patent should be excluded.

Walmart's algorithms would behave the same way either with or without considering a customer's purchase history, so that turning off and ignoring purchase history results in an NIA. *Id.* at 3.

But there is no reason Dr. Almeroth could not have identified this NIA in his Opening Report. Because the claims of the '402 patent recite a series of purchases, Walmart's use of customer purchase history has been a prevalent issue from the beginning. It was identified in the First Amended Complaint as an infringing functionality, Dkt. 26-4 ¶¶ 6, 8, 15, 16, 18, 19, 22, 27, and throughout RavenWhite's infringement contentions, Ex. L at 8, 29, 31, 38, 39, 41, 42, 45, 50. Moreover, RavenWhite's amended contentions served **March 20, 2026,** put Walmart on notice that the "UserFeatureTag" object, specifically, is an accused functionality. Ex. M at 168-169; Ex. N. Walmart's opposition overlooks these contentions. Dkt. 201 at 3. Thus, Dr. Almeroth and Walmart have no excuse for their failure to timely raise this alleged NIA.

***Finally***, Walmart incorrectly asserts that RavenWhite's motion failed to account for the four-factor test for excluding untimely evidence. Dkt. 201 at 2-3, 4. Not so. Dkt. 185 at 4 ("the factors … favor excluding Dr. Almeroth's opinions" (citations omitted)). Walmart also tries to excuse its untimely opinions by arguing that RavenWhite should have supplemented Dr. Smith's opinions or requested a continuance. Dkt. 201 at 2, 3, 4. That argument improperly shifts the burden onto RavenWhite of correcting the deficiencies in the Almeroth Opening Report. *CLO Virtual Fashion Inc. v. Zhejiang Lingdi Digital Technology Co., Ltd.*, no. 2:23-cv-00274-JRG-RSP (E.D. Tex. July 9, 2025), Dkt. 293 at 12. As for the importance of the evidence, other factors favor striking the untimely NIAs, even if they were very important to Walmart's damages case—which they are not—because Mr. Haas does not use them in his reasonable-royalty calculations.

Turning to the issue of admissibility, Walmart fails to establish that any NIA is both reliable and relevant. *See* Fed. R. Evid. 702 (placing burden on proponent). Notably, Dr. Almeroth did not

bother to discuss the alleged NIAs with anyone at Walmart to determine whether they were feasible to implement or whether they would have been acceptable to Walmart's retail customers and advertiser customers. Ex. O (Almeroth Dep.) at 226:16-21.

For the Almeroth Opening Report, Walmart defends only one NIA as being both available and acceptable: eliminating browser storage areas. Dkt. 201 at 4-5. Given Walmart's burden under Rule 702, testimony about any other NIAs should be excluded. But even for this one NIA, Walmart fails to show how the Almeroth Opening Report establishes acceptability. Dkt. 201 at 5 (characterizing ¶ 518). Walmart's argument glosses over what Dr. Almeroth actually said, which is that "[m]uch of the claimed improvements of the '823 are achievable using methods that do not determine an identity of a client device or a user of the client device based on the second cookie of the second type." This conclusory statement does not explain *why* it would be acceptable to either advertisers or retail customers if the accused system did not determine users' identities or *how* it would even be feasible for Walmart to do so.

Walmart likewise fails to establish how any of Dr. Almeroth's opinions are relevant. Mr. Haas does not use any NIA in his analysis of what constitutes a reasonable royalty. Nevertheless, Walmart tries—again—to justify its NIA opinions as proper rebuttal, this time when Mr. Haas criticizes Mr. Weinstein for failing to consider NIAs in his reasonable royalty calculation. Dkt. 201 at 6. Mr. Weinstein does not consider any NIAs because Walmart has not established any NIAs that would impact a hypothetical negotiation. If there were any, Walmart had the burden of establishing both their existence and their effect on the reasonable royalties. *See Correct Transmission, LLC v. Nokia of Am., Corp.*, No. 2:22-cv-00343-JRG-RSP (E.D. Tex. March 26, 2024), Dkt. 244, at 8 (equating "[NIA] analysis *as part of a reasonable royalty damages theory*" to an affirmative defense), at 9 (experts failed to "provide any *financial analysis of the impact*"

3

of NIAs).[2] Walmart has failed on both counts.

## II.    THE HOME DEPOT AGREEMENT AND IPR PROCEEDINGS

Walmart identifies only one reason why the opinions in ¶¶ 214, 485 and 542 of the Almeroth Opening Report are relevant: commercial success. Dkt. 201 at 8-9, 11. Commercial success is only relevant if there is affirmative evidence of a nexus between the claimed invention and marketplace success. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). Walmart has presented no such evidence, and neither has RavenWhite. As such, Dr. Almeroth's opinions about the substance of the IPR proceedings—a purported lack of respect for the Asserted Patents, and a speculative concern about invalidity—serve no purpose other than to confuse the jury and mislead it into making an improper invalidity analysis.

Walmart also fails to identify the relevance of any of the opinions in ¶¶ 431-438 of the Almeroth Rebuttal Report. First, it asserts that the Home Depot Agreement is relevant to *Georgia-Pacific* Factor 1, "[t]he royalties received … tending to prove ***an established royalty***." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Dkt. 201 at 7. But neither party's experts allege that there is an established royalty for the Asserted Patents. And, Walmart provides no explanation for why similarities between its systems and Home Depot's would tend to prove an established royalty (or have relevance to any claim or defense in the case).

Walmart next asserts that Dr. Almeroth's opinions are relevant to technical comparability. Dkt. 201 at 7, 9. Technical comparability arises under *Georgia-Pacific* Factor 2, the rates paid by the licensee to license ***other patents*** that are comparable to the asserted patents. *Georgia-Pacific*, 318 F. Supp. at 1120. There are no such other patents included in the Home Depot Agreement.

---

[2] Walmart tries to distinguish *Correct* because, purportedly, "there was no analysis whatsoever of NIAs in the report of the defendant's damages expert." Dkt. 201 at 6. It is not apparent from the opinion whether Walmart's statement is correct, particularly given the Court's explicit statement about a lack of *financial* analysis (as opposed to *no* analysis). *Correct*, Dkt. 244 at 9.

And, Dr. Almeroth's testimony focuses on whether Home Depot's system infringes the Asserted Patents, not other technically comparable patents. Tellingly, both parties' damages experts agree that Factor 2 is inapplicable in this case. Ex. P (Haas Report) at 136. Walmart offers no credible explanation for why its accused systems or Home Depot's would be relevant to Factor 2.

*Finjan* does not hold otherwise. Dkt. 201 at 8. In that case, the defendant tried to overturn a damages award for infringement of three patents by comparing the amount of the award to a smaller lump sum paid by another party for a portfolio license. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211-1212 (Fed. Cir. 2010). The court ruled that the jury was free to discount the portfolio license based on differences between that licensing scenario and a hypothetical negotiation with the defendant. *Id*. at 1212. Technical similarities between the defendant's products and the portfolio licensee's products were not raised, and there is nothing in the opinion suggesting that such similarities would make the Home Depot Agreement relevant.

Dr. Almeroth's testimony therefore serves no purpose other than to confuse and mislead the jury into making an improper infringement analysis. While Walmart now tries to distance itself from Dr. Almeroth's opinion that "if Home Depot did not infringe the '402 and '823 Patents, then Walmart does not either," Dkt. 201 at 10, that statement exposes the true purpose of the Home Depot analysis and the risk that the jury will be led to infer the same conclusion.

### III.    THE PAYPAL AGREEMENT

Walmart does not deny that the Almeroth and Haas Reports present conflicting opinions about the PayPal Agreement. Instead, it attributes the conflict to a miscommunication. Dkt. 201 at 12-13. While that may (or may not) explain why the conflict happened, it does not resolve it. The fact remains that Mr. Haas's opinion is that the PayPal Agreement is not technically comparable. Dr. Almeroth's conflicting opinion is irrelevant and potentially confusing to the jury.

███████████████████████████████

Dated: July 21, 2026

Respectfully submitted,

*/s/ Robert F. Kramer*

Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Zachariah A. Higgins (*pro hac vice*)
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
jarmstrong@kramerllp.com
Ryan Dooley (*pro hac vice*)
rdooley@kramerllp.com
Robert Xie (*pro hac vice*)
rxie@kramerllp.com
Rachel C. Chan (*pro hac vice*)
rchan@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street**,** Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

6

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

7

███████████████████████

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 21, 2026. A confidential version of this filing was served upon all counsel of record by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on October 15, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer