████████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE HOME DEPOT, INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00688-JRG-RSP <br> (Lead Case) |
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00689-JRG-RSP <br> (Member Case) <br><br> ████████████████ |

**PLAINTIFF'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
OF NO INVALIDITY OF THE '823 AND '402 PATENTS UNDER 35 U.S.C. § 101**

**TABLE OF CONTENTS**

I.    The Court's prior 101 rulings are still applicable and valid ................................................... 1

II.   The '823 claims are patent eligible ...................................................................... 2

    A.    The '823 claims are eligible at *Alice* Step One ............................................ 2

    B.    The '823 claims are eligible at *Alice* Step Two ........................................... 5

III.  The '402 claims are patent eligible ..................................................................... 5

    C.    The '402 claims are eligible at *Alice* Step One ............................................ 6

    D.    The '402 claims are eligible at *Alice* Step Two ........................................... 8

IV.   Conclusion ......................................................................................... 10

████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
788 F. App'x 882 (Fed. Cir. 2019) ...................................................................... 7

*Broadband iTV Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) ......................................................................... 7

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ....................................................................... 7, 8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................... 4

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (2020) .......................................................................................... 7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ........................................................................ 10

*Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) .......................................................................... 4

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) .......................................................................... 7

*Invitrogen Corp. v. Clontech Labs., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005) .......................................................................... 4

*Miller Mendel, Inc. v. City of Anna, Texas*,
107 F.4th 1345 (Fed. Cir. 2024) ......................................................................... 4

*Recentive Analytics, Inc. v. Fox Corp., et al.*,
134 F.4th 1205 (Fed. Cir. 2025) ......................................................................... 8

*Sanderling Mgmt. Ltd v. Snap Inc.*,
65 F.4th 698 (2023) ............................................................................................. 2

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) ........................................................................... 4

*Weisner v. Google LLC*,
    51 F.4th 1073 (Fed. Cir. 2022) ....................................................................................... 10

**Statutes**

35 U.S.C. § 101 .............................................................................................................................. 1

RavenWhite submits this reply in support of its motion for summary judgment that U.S. Patent Nos. 10,594,823 and 11,562,402 are not invalid under 35 U.S.C. § 101. Walmart's oppositiion brief merely regurgitates arguments the Court has already rejected, without raising any genuine dispute of material fact. Walmart asserts the Court's claim constructions justify altering the Court's ruling on § 101, but the constructions predate and do not affect the ruling. The Court should grant RavenWhite's motion.

### THE COURT'S PRIOR § 101 RULINGS ARE STILL APPLICABLE AND VALID.

The Court already ruled on the substance of this motion. Dkt. 205 at 1-2, 21, 29. Although the ruling was on a motion to dismiss, as Walmart emphasizes, nothing has changed. Walmart argues the Court's constructions of "clustering" and "cookie" justify changing the Court's ruling on § 101. Dkt. 205 at 2. Yet the Court ruled on claim construction before—not after—ruling on Walmart's § 101 arguments. Dkt. 128 (claim construction order), Dkt. 131 (order denying motion to dismiss under § 101). The Court did not contradict its own ruling from the previous week.

As to the '823 Patent, Walmart asserts that RavenWhite argued that the '823 claims a new type of cookie in opposing Walmart's § 101 motion, and asserts the Court's construction disproved the argument—but the question of a "new type of cookie" was not even at issue during claim construction and the Court did not rule on it. Dkt. 205 at 2, 9, 12-13; Dkt. 128. Further, Walmart does not assert that using a "second type" of cookie as claimed in the '823 Patent was known—let alone conventional. Dkt. 205; Dkt. 206 at 13-14.

As to the '402 Patent, Walmart notes that the concept of machine learning was in the Court's ruling on § 101 but not its construction of "clustering." Dkt. 205 at 1, 2, 21-22. Yet machine learning was not the sole reason the Court found that clustering supports the validity of the '402 patent. For example, as the Court's ruling points out and Walmart acknowledges, "the '402 Patent examiner specifically identified 'clustering' in its § 101 analysis to find patentability."

1

Dkt. 186 at 6-7, citing Dkt. 123 at 5. The examiner did not even mention the term "machine learning." Dkt 183; Ex. I at 3-4. Walmart asserts the examiner's determination is "irrelevant," but the case Walmart cites merely holds—as Walmart itself quotes—"courts are not required to defer" to the examiner. Dkt. 205 at 13, citing *Sanderling Mgmt. Ltd v. Snap Inc.,* 65 F.4th 698, 705 (2023). The Court cited, without deferring to, the examiner's determination. Dkt. 123 at 5. Walmart itself reinforces the examiner's conclusion that the claims require using clustering and unique identifiers in a particular way. Dkt 205 at 5 ("The '402 Patent also claims that a 'first quality level' is determined 'based at least in part on a unique identifier and clustering.'").

### THE '823 CLAIMS ARE PATENT ELIGIBLE.

Walmart asserts incorrectly that "[t]he parties agree that Claim 1 is representative of the '823 Patent's claims." Dkt. 205 at 7. On the contrary, independent claim 1 is not representative of dependent claim 2 because claim 2 requires identifying a device—as opposed to a user. Dkt. 205 at 8. Using the system of claim 1 to identify a device was not known. Dkt. 206 at 2, 7. Walmart merely alleges that using cookies to identify a "user or device" was conventional, but never asserts that identifying a device—as opposed to a user—was conventional. *See, e.g.*, Dkt. 205 at 1, 7-8.

### The '823 claims are eligible at *Alice* Step One.

There is no genuine dispute of material fact relating to *Alice* Step One. Walmart asserts that RavenWhite did not invent a new type of cookie, that cache cookies were known, and that using cookies to identify users was known. " Dkt. 205 at 8, 11-12. Yet Walmart never asserts that using a claimed cookie of the "second type" to identify users was known. In other words, even if using cookies to identify users was known, that merely indicates that traditional cookies (a first type of cookie) could be used to identify users. It does not show that using a cache cookie—let alone the claimed "second type" of cookie—to identify a user or device was known.

Walmart's evidence contradicts rather than supports Walmart's assertion that cache

2

cookies were conventional. Dkt. 205 at 14-15. Walmart characterizes Mr. Holmes's testimony as "conceding that Plaintiff did not invent cookies or cache cookies." Dkt. 205 at 12. But the text that Walmart cites to, Dkt. No. 186-8 at 88:2–18, only proves that the witness was shown the'823 Patent.  At most, Mr. Holmes merely conceded that he had not thought about the issue from the standpoint of RavenWhite: "Q Was RavenWhite the first to use cookies and cache cookies together in a single system? A First—I don't know. **I've never thought of it**." *Id.* at 87:24-88:2 (emphasis added). (Mr. Holmes is also a lay witness, so any technical opinions elicited by Walmart are inadmissible.)

And contrary to Walmart's brief, Dr. Jansen disagreed that "persons of ordinary skill knew about cache cookies." Dkt. 205-1 at 63:23-64:1 ("A. No. I would—**I would not agree** with that.") (emphasis added). Walmart's brief takes Dr. Jansen's testimony out of context because he is very clearly referencing  paragraph 215 of his report when he discusses the difference between the term "cache cookie" appearing in a pror-art reference and the new cache cookies. Dkt. 186-5 ¶ 215; Dkt. 205 at 12, citing Dkt. 205-1 at 65:15-66:1. Walmart also cites irrelevant passages that relate to "traditional cookies" not cache cookies, *id.* at 9:1-3, and "network resource reuqests" not cache cookies, *id.* at 56:5-8.

Walmart also characterizes Dr. Jakobsson's testimony as "stating that the invention used existing technologies," but the cited passage merely states "traditional cookies[] were in use"— not that cache cookies were known or that the invention merely used existing technologies. Dkt. 205 at 12, citing Dkt. 186-7 at 172:9-20. Walmart also cites testimony about the Felten paper that the '823 Patent cites, Dkt. 205 at 12. But the existence of a single academic paper that discusses "invasive cache cookies" that Dr. Jakobsson distinguishes from his inventive cache cookies does not prove that cache cookies were conventional. Dkt. 186-7 at 186:14-187:18. Nor does the'823

3

Patent ever state that cache cookies were conventional.

The remainder of Walmart's argument rehashes—by merely citing the patent without any other evidence or expert opinion—its unsuccessful arguments that the '823 claims are directed to an abstract idea. "Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony" and "does not, and cannot, support [opposing party's] burden on summary judgment." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052 (Fed. Cir. 2005). Walmart trivializes cookie technology by citing cases that found "tracking a user and data collection and storage" to be abstract, without addressing the differences between a cookie—let alone the claimed "second type" of cookie—versus the more generic concepts of tracking, collecting, and storing data. Dkt 186 at 20-23. *Miller* ruled on a claim "directed to the abstract idea of performing a background check." *Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1353 (Fed. Cir. 2024). The *USR* claims "simply recite[d] conventional actions in a generic way" and failed "to improve any underlying technology." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1349 (Fed. Cir. 2021) (citation omitted). As Walmart points out, the claims in *Content Extraction* were directed to collecting data and storing a recognized subset of that data. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). Walmart analogizes the '823 claims to *ShoppersChoice* asserting that "[t]he only difference" is the direction of data flow, but direction is merely one of many differences because the claims in that case were directed to the abstract idea of "providing advance notification of the pickup or delivery of a mobile thing." *Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181-82 (Fed. Cir. 2020) (citation omitted). In contrast to the claims in those cases, the '823 claims require using novel cookie technology—such as the claimed "second type" of cookie—and require more than merely tracking

a user and storing data—such as identifying a user or device using a cookie and data that was encoded, and making a determination based on network resource requests associated with different types of cookies. Dkt. 183, Ex. A, claim 1.

Walmart fails to address many of RavenWhite's cases, including *Enfish* and *SimpleAir*. And where Walmart does, it simply states in conclusory fashion that the '823 claims are "unlike" the claims in RavenWhite's cases "which recite a new and specific way to improve the functionality of a computer." Dkt. 205 at 13. Walmart also asserts that RavenWhite "provides no explanation or supporting evidence" regarding how the '823 claims describes how to the accomplish the desired result. *Id*, citing Dkt. 183 at 11. But the explanation and supporting evidence is on that page and the next. RavenWhite has shown (Dkt. 183 at 11-12) that the '823 claims do indeed improve computer functionality, and the claims describe how to accomplish that result because the claims present a technical solution for security and webpage customization problems via a specific, unconventional approach using different cookie types from different browser storage areas and different network sessions.

### The '823 claims are eligible at *Alice* Step Two.

Walmart's *Alice* Step 2 rebuttal is unsupported attorney argument that cannot create any genuine dispute of material fact. For example, Walmart asserts without explanation or citation that "the existence of cookies stored in different storage areas was a conventional aspect of 'non-traditional' cookies." Dkt. 205 at 14. Yet Walmart does not even show that non-traditional cookies were conventional, let alone that storing them in different areas was conventional.

### THE '402 CLAIMS ARE PATENT ELIGIBLE.

Walmart asserts incorrectly "that Claim 1 is representative." Dkt. 205 at 15. Claim 1 is no longer asserted, and independent claims 1, 10, and 19 are not representative of dependent claim 14, for example, because claim 14 requires machine learning.

5

**The '402 claims are eligible at *Alice* Step One.**

Walmart rehashes on its old arguments that the '402 claims are merely directed "targeted advertising;" that the claims do not "require a specific inventive algorithm or a concrete, non-subjective calculation;" that "to the extent they even include computer elements such as a processor or memory, the claimed computer is merely invoked as a tool;" and that a human could practice the claims without a computer. Dkt. 205 at 1, 5, 15, 17, 19-20. Walmart's description overgeneralizes the '402 claims, and Walmart ignores the innovative elements of the claims, such as the first quality level and second quality level, clustering, and conversion assessment. Dkt. 183 at 18. The '402 claims are directed to a non-abstract idea: improvements to Internet advertising systems that perform detailed tracking and analysis of a user's Internet behavior to generate first and second quality scores (using specific rules and algorithms) to facilitate selecting an advertisement. *See* Dkt. 183 at 16-17.

Walmart asserts incorrectly that Dr. Jansen "could not dispute that" a human could perform elements of the '402 patent, but Walmart has not raised any fact because Dr. Jansen did not offer any testimony on that topic. Instead, he explained he was not "asked to analyze this particular patent, so I can't analyze each of these [elements]," and the question is "outside the scope of my report." Dkt. 205 Ex. 1 (Jansen Depo.) at 216:6-17. Dr. Jansen's admission that purchase history was known does not raise a new fact, let alone a disputed material fact, because RavenWhite never asserted that the concept of purchase history, standing alone, was not known. Dkt. 205 at 17. In contrast, using purchase history in conjunction with the rest of the elements claims was not known, Dr. Jansen's testimony does not change that fact, and Walmart does not assert otherwise. *Id*.

Walmart's arguments that the '402 claims do not require a "specific algorithm" for clustering and other techniques are irrelevant. Dkt. 205 at 21. These are arguments regarding

6

whether claims are broad, not whether ideas are abstract. Walmart cites no legal authority suggesting that claim breadth relates to whether "claims are patent ineligible." Dkt. 205 at 21.

Walmart's cases addressed claims directed to "the abstract idea of targeted advertising" that are "… mental process[es] that happens to be done on a computer" Dkt. 186 at 10-12. For example, the claims in *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (2020), were "directed only to the abstract idea of 'using a computer to deliver targeted advertising to a user." Dkt. 186 at 11; *see also id.* at 1365 ("the abstract concept of delivering targeted advertising using a computer only as a tool."). Similarly, the claims in *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.* 788 F. App'x 882, 890 (Fed. Cir. 2019), were "'directed to the abstract idea of using persistent identifiers to implement targeted marketing.'" Dkt. 186 at 11. In *Broadband iTV Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1365 (Fed. Cir. 2024), the claims were "'directed to the abstract idea of collecting and using viewing history data to recommend categories of video content.'" Dkt. 186 at 11. In *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021), the "claims were directed to nothing more than" gathering information about a viewer, matching the information to targeted advertisements, and sending ads. Dkt. 186 at 12.

In contrast, the '402 claims are like those in *McRO* and *CardioNet*, because they improve Internet advertising technology (rather than merely using a computer as a tool), and thus are not abstract. Walmart does not even attempt to distinguish *McRO*, and its attempt to distinguish *Cardionet* misses the mark. The claimed first and second quality scores are generated using specific rules and algorithms, constituting a "technological improvement" like the "better heart monitor" (Dkt. 205 at 20); Walmart has not created a genuine dispute of material fact that the '402 claims "merely computerize pre-existing techniques." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1370 (Fed. Cir. 2020). As *CardioNet* explains, "it is difficult to fathom how doctors

mentally or manually used 'logic to identify the relevance of the variability [in the beat-to-beat timing] using a non-linear function of a beat-to-beat interval.'" *CardioNet,* 955 F.3d at 1371. It is equally difficult to fathom how advertisers mentally or manually determined sequential and related quality levels and indications of interest in certain categories based on searches or purchases and based on clustering and historical click behavior.

Walmart also argues "that introducing machine learning to a field does not render a patent's claims eligible." Dkt. 205 at 22. But *Recentive* merely found that claims that "do no more than apply established methods of machine learning to a new data environment" are not patent eligible. *Recentive Analytics, Inc.*, 134 F.4th 1205, 1211 (Fed. Cir. 2025). Here, the claims do more than merely apply machine learning to targeted advertising. Indeed, as Walmart itself points out, the claims other than claim 14 do not even require machine learning. Dkt. 205 at 22. As to claim 14, it does not merely apply machine learning to a new data environment, because, for example, it depends from claim 10, which in turn requires using clustering and unique identifiers in a particular, unconventional way, as the Court already held and examiner pointed out. *See* Dkt. 183 at 14-18.

### The '402 claims are eligible at *Alice* Step Two.

Walmart merely offers unsupported attorney argument on Alice Step Two, asserting without evidence that the '402 claims "are broadly generic and do not contain meaningful limitations" restricting them to "a non-routine specific application of the abstract idea." Dkt. 205 at 23. There is no genuine dispute that the '402 claims present unconventional and non-routine computer-based approaches, including a combination of novel elements including "[first / second] quality level," "clustering," and a "conversion assessment." See Dkt. 183 at 19-20. As the '402 patent examiner found, the claims "are directed to a technical solution to a technical problem

8

███████████████████████████████

associated with determining quality levels, including determining a first category, and a second category of interest based on a unique identifier and clustering …." Ex. I at 3-4. Walmart also asserts that the '402 claims contain only "abstract functional descriptions [that] are devoid of any technical explanation as to how to implement the purported invention in any inventive way." Dkt. 205 at 23. On the contrary, the claims include detailed technical explanations regarding how to implement the claim limitations in an inventive way. Dkt. 183 at 19-20. The '402 patent recites a specific technique for adapting to and learning from user behavior to identify advertisements that are best suited to individual users, leading to greater efficiency and lower spending for advertisers. These techniques are intrinsically tied to and solve problems particular to the Internet at the time of invention, and thus contains "an inventive concept."

Walmart asserts that there is nothing inventive in any of the "determining" steps, yet cites the elements that show the claims recite structured, computational steps, that were not conventional prior to the '402 Patent. Walmart does not rely on any case law in its broad generalizations regarding conventional factors. Dkt. 205 at 25. Walmart asserts that clustering was conventional. Dkt. 205 at 5, 17, 24-25, 27-28. Walmart also asserts that a unique identifier was known, but cites no facts in support of that assertion. Instead, Walmart merely cites the '402 patent specification's descriptions of the invention, not the prior art. Dkt. 205 at 24. Even if clustering and unique identifiers were known, however, that does not show it was known to use clustering and unique identifiers to determine a quality level as claimed—and Walmart does not assert otherwise. Similarly, even if conversion assessments were "routinely used"—as Walmart asserts without any supporting evidence—that does not show using conversion assessments in conjunction with clustering as claimed was conventional—and Walmart does not assert otherwise. Dkt. 205 at 28. Walmart also argues that the claims do not require using both quality levels, but does not explain

9

why that matters to subject-matter eligibility. Dkt. 205 at 25-26. It doesn't—the claims cover a system that must be capable of calculating two quality levels, and an ad can be displayed based on either one. Further, the first quality level—even without the second—includes innovative concepts that demonstrate subject-matter eligibility, as the examiner decided. Dkt 183., Ex. I at 3-4 ("… determining quality levels … based on a unique identifier and clustering ..."). As Walmart itself points out, the "'402 Patent also claims that a 'first [i.e., even without the second] quality level' is determined 'based at least in part on a unique identifier and clustering.'" Dkt 205 at 5.

Walmart does not distinguish RavenWhite's case law. Walmart admits that the *DDR* claims are "rooted in computer technology" but asserts incorrectly that the '402 claims are not. As Walmart admits, in *DDR*, "the patent-at-issue addressed 'the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink.'" Dkt. 205 at 26, citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Although a the *DDR* claims and '402 claims relate to conventional concepts like clicking, the claims are patent eligible: "[w]hen the limitations of the [] patent's claims are taken together in an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet." *DDR*, 773 F.3d at 1259. Similarly, Walmart admits that the *Weisner* claims improved "'computerized' results" but asserts incorrectly that the '402 claims do not. Dkt. 205 at 27, citing *Weisner v. Google LLC*, 51 F.4th 1073, 1086 (Fed. Cir. 2022). Like the *Weisner* claims, the '402 claims cover a "specific technique" for "'computerized' results." Dkt 183, Ex. I at 3-4 ("… a technical solution to a technical problem …").

CONCLUSION

The Court should grant RavenWhite's motion for the reasons stated above.

10

███████████████████████████████

Dated: July 21, 2026

Respectfully submitted,


*/s/ Robert F. Kramer*
Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Zachariah A. Higgins (*pro hac vice*)
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
jarmstrong@kramerllp.com
Ryan Dooley (*pro hac vice*)
rdooley@kramerllp.com
Robert Xie (*pro hac vice*)
rxie@kramerllp.com
Rachel C. Chan (*pro hac vice*)
rchan@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

11

███████████████████████████████

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 21, 2026. A confidential version of this filing was served upon all counsel of record by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on October 15, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer

13