███████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE HOME DEPOT, INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00688-JRG-RSP <br> (Lead Case) |
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00689-JRG-RSP <br> (Member Case) <br><br> ████████████████ |

**PLAINTIFF'S MOTIONS *IN LIMINE***

███████████████████████████

**TABLE OF CONTENTS**

Plaintiff's MIL #1: Preclude Walmart from presenting any evidence, argument, or testimony concerning financial terms of license agreements or patent sales not relied upon by the parties' experts to calculate a reasonable royalty.......................................................... 1

   A.  Payment terms from non-comparable technology must be excluded. ................................ 2

   B.  Payment terms from allegedly comparable agreements must be excluded because they are not tied to Mr. Haas's royalty calculation. ............................................... 3

      1.  Agreements with payment amounts not used by Mr. Haas for any reason ........................................... 3

      2.  The agreement arbitrarily selected to manufacture a damages range ..................................................................................... 5

Plaintiff's MIL #2: Preclude Walmart from presenting any evidence, argument, or testimony concerning non-infringing alternatives ("NIAs"). ........................................................... 6

Plaintiff's MIL #3: Preclude Walmart from presenting any evidence, argument, or testimony comparing the accused products to third party products.................................................. 8

Plaintiff's MIL#4: Preclude evidence, testimony, or argument as to other lawsuits related to entities owned by Dr. Markus Jakobsson or statements that Dr. Jakobsson has created shell companies, a web of companies, or other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson....................... 9

## TABLE OF AUTHORITIES

**CASES**

*Arigna Tech. Ltd. v. Nissan Motor Company, Ltd.*, Case No. 2:22-cv-00126-JRG-RSP,
Dkt. No. 323 at 2 (E.D. Tex. October 24, 2022)................................................................ 10

*CLO Virtual Fashion, LLC v. Zhejiang Lingdi Digital Tech., Ltd.*,
2025 WL 1900674 ............................................................................................................. 7

*CoreLogic Info. Sols., Inc. v. Fiserv, Inc*., No. 2:10-CV-132-RSP,
2012 WL 4761739, at *2 (E.D. Tex. Sept. 20, 2012)....................................................... 2

*Correct Transmission, LLC v. Juniper Networks, Inc.*,
No. 2:22-cv-00343-JRG, Dkt. 244....................................................................................... 7

*Daingean Technologies Ltd. V. T-Mobile USA, Inc.*, Case No. 2:23-cv-00347-JRG-RSP,
Dkt. No. 348 (E.D. Tex. Mar. 10, 2025)........................................................................... 10

*Gen. Access Sols, Ltd. v. T-Mobile USA, Inc.*, 2:23-cv-00158-JRG,
Dkt. 187 (E.D. Tex. Dec. 23, 2024).................................................................................... 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)......................................................................................... 2, 5

*Longhorn HD LLC v. NetScout Sys., Inc.*, 2022 WL 991696,
(E.D. Tex. Mar. 31, 2022)................................................................................................. 7

*Lucent Tech., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)...................................................................................... 2, 4

*Optis Cellular Tech., LLC v. Apple Inc.*,
139 F.4th 1363 (Fed. Cir. 2025) ..................................................................................... 6

*Personalized Media Commc'ns, LLC v. Apple Inc*., No. 2:15-cv-01366-JRG-RSP,
Dkt. 510 (E.D. Tex. Mar. 3, 2023).................................................................................... 2

*Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL,
2018 WL 6266300 (E.D. Tex. Nov. 15, 2018) ............................................................... 1

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010).......................................................................................... 2

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP,
2019 WL 7041725  (E.D. Tex. Dec. 20, 2019)................................................................ 1

███████████████████████████████

*Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 2:14-CV-203-JRG-RSP,
    2015 WL 13617214, at *2 (E.D. Tex. Oct. 28, 2015) ........................................................... 1

**RULES**

Fed. R. Evid.  401 ............................................................................................................ 9
Fed. R. Evid.  402 .................................................................................................... 1, 6, 9
Fed. R. Evid.  403 ...................................................................................................... passim

**Table of Exhibits**

| Exhibit | Description |
|---|---|
| A | Rebuttal Expert Report of David Haas, dated June 18, 2026 ("Haas Report") |
| B | Deposition Transcript of David Haas, dated June 30, 2026 ("Haas Dep.") |
| C | Deposition Transcript of Mark Holmes, dated May 13, 2026 ("Holmes Dep.") |
| D | *Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-cv-01366-JRG-RSP, Dkt. 510 (E.D. Tex. Mar. 3, 2023) |
| E | *Gen. Access Sols, Ltd. v. T-Mobile USA, Inc.*, 2:23-cv-00158-JRG, Dkt. 187 (E.D. Tex. Dec. 23, 2024) |
| F | Deposition Transcript of Markus Jakobsson, dated April 7, 2026 ("Jakobsson Dep.") |
| G | Deposition Transcript of Adam Vorcheimer, dated May 1, 2026 ("Vorchheimer Dep.") |
| H | Rebuttal Expert Report of Kevin Almeroth, Ph.D., dated June 18, 2026 ("Almeroth Report") |
| I | *Daingean Technologies Ltd. V. T-Mobile USA, Inc.*, Case No. 2:23-cv-00347-JRG-RSP, Dkt. No. 348 (E.D. Tex. Mar. 10, 2025) |

RavenWhite moves *in limine* to exclude the following evidence, argument, and testimony, which is inadmissible, irrelevant, and prejudicial.

**Plaintiff's MIL #1: Preclude Walmart from presenting any evidence, argument, or testimony concerning financial terms of license agreements or patent sales not relied upon by the parties' experts to calculate a reasonable royalty.**

The Court should preclude Walmart from introducing or eliciting any evidence, argument, or testimony concerning the financial terms of any license agreements and patent sales that Walmart's damages expert, David Haas, does not allege to be comparable to the licenses that would result from the hypothetical negotiations between the owners of the asserted patents and Walmart. Such evidence is irrelevant to Walmart's damages theory under FRE 402 and creates substantial risk of improper anchoring and jury confusion under FRE 403.

In his report, Walmart's damages expert, David Haas, identifies 5 technically comparable agreements and 15 agreements that he either admits are not technically comparable or does not allege to be technically comparable. Ex. A (Haas Rpt.) at ii-iii (Table of Contents listing 5 "technically comparable" agreements and 15 other agreements), Ex. A ¶¶ 152, 159 (referencing an unknown license                ). Yet, in calculating a reasonable royalty that would have resulted from the hypothetical negotiation, Mr. Haas does not rely upon a single agreement. Ex. B (Haas Dep.) at 33:21-24, 35:16-19.

Courts routinely exclude licenses, agreements, and negotiations that an expert does not rely upon to support a damages theory. *See, e.g.*, *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6266300, at *4 (E.D. Tex. Nov. 15, 2018) (excluding settlement agreement and any related testimony where expert conceded it would not have been relied upon in hypothetical negotiation); *Ziilabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:14-CV-203-JRG-RSP, 2015 WL 13617214, at *2 (E.D. Tex. Oct. 28, 2015) (precluding a license agreement that "covers non-comparable technology" because the amount would be prejudicial). *See also United*

1

*Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 7041725, at \*1 (E.D. Tex. Dec. 20, 2019) ("For an expert to introduce other licenses, agreements, negotiations, or the like to support the expert's theory surrounding the hypothetical negotiation, the Federal Circuit requires a showing of comparability."); *CoreLogic Info. Sols., Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-RSP, 2012 WL 4761739, at \*2 (E.D. Tex. Sept. 20, 2012) ("[N]o party may introduce the amount of a settlement or royalty payment until the technical and economic comparability of the settlement or license has been established or will not be disputed.").

### A.    Payment terms from non-comparable technology must be excluded.

Mr. Haas references a total of 15 total agreements that he does not even allege to be technologically comparable to the license resulting from the hypothetical negotiation. These agreements cover a spectrum of licenses and covenants not to sue involving one or more of the parties to this lawsuit, Ex. A at ii-iii, as well as a sale of an unknown patent, for unknown technology, between unknown parties, Ex. A ¶¶ 152, 159; Ex. C 45:14-46:2, 46:11-14.

Because none of the parties' experts considers any of these agreements technologically comparable to the hypothetical license, the dollar values of these agreements are not relevant to either party's reasonable royalty calculation. *See* Ex. D, *Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-cv-01366-JRG-RSP, Dkt. 510 at 10 (E.D. Tex. Mar. 3, 2023) at 10 (excluding dollar value of agreements that no expert found technologically comparable). The introduction or mention of such agreements is likely to confuse and mislead the jury, and they should thus be excluded. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012) (failure to exclude non-comparable license agreement that resulted from settlement was abuse of discretion); *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 870–72 (Fed. Cir. 2010) (holding that evidence of royalty rates from licenses without a relationship to the claimed invention could not form the basis of a reasonable royalty calculation); *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d

2

1301, 1325–26 (Fed. Cir. 2009) (license agreements damages experts agree are not comparable should be excluded as irrelevant).

**B.    Payment terms from allegedly comparable agreements must be excluded because they are not tied to Mr. Haas's royalty calculation.**

Mr. Haas contends that 5 of the 20 agreements in his report are technically comparable to the license resulting from the hypothetical negotiation. Those five are

Ex. A at 121, Table 7. Mr. Haas does not actually rely on the financial terms of any of these agreements to calculate his reasonable royalty. Instead, he arbitrarily selects the highest payment from the five to improperly anchor his damages calculation, expressing his reasonable royalty for the asserted patents as a range bounded by                            . Ex. B at 30:12-21; Ex. A ¶ 302.

**1.    Agreements with payment amounts not used by Mr. Haas for any reason**

Mr. Haas does not rely on the specific payment terms of these four agreements in his analysis; thus, these unmoored figures can offer no probative value at trial. Instead, their sole function is to improperly anchor the jury to irrelevant baseline numbers, creating a severe risk of prejudice and jury confusion under FRE 403. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1385 (Fed. Cir. 2025) (prohibiting use of a settlement agreement as a check to suggest a damages opinion was reasonable).

Further, even if Mr. Haas had attempted to rely on the payment amounts in these agreements, they must still be excluded as irrelevant because they lack any economic comparability to the hypothetical negotiation, and while Mr. Haas's report parrots back the terms of those agreements and concludes that "they provide potentially meaningful context," he has not analyzed them for

3

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

economic comparability or otherwise shown how their payment amounts would have affected the hypothetical negotiations. Ex. E, *Gen. Access Sols, Ltd. v. T-Mobile USA, Inc.*, 2:23-cv-00158-JRG, Dkt. 187 (E.D. Tex. Dec. 23, 2024) at 7.

**The ▬▬▬▬ covenant.** RavenWhite entered into that agreement ▬▬▬▬▬▬▬. Ex. F (Jakobsson Dep.) at 245:10-24; Ex. A ¶ 80. It was not negotiated under a "hypothetical negotiation" framework and did not involve any valuing of the asserted patents. *See* Ex. A (Haas Rept.) ¶ 77. Significantly, Mr. Haas admitted that he did not quantify the value to RavenWhite of ▬▬▬▬ *See* Ex. B (Haas Dep.) at 111:4-9. Accordingly, the agreement's financial terms have zero probative value to Walmart's damages theory.

**Walmart's Litigation Settlements.** The licenses with ▬▬▬▬ were executed as parts of broader settlement agreements to avoid or resolve litigation. *See* Ex. A (Haas Rept.) ¶¶ 84, 87, 90. Mr. Haas admitted that he conducted no independent investigation into these agreements. He did not speak to anyone at Walmart, does not know ▬ ▬▬▬▬▬▬▬, and is entirely ignorant of the parties' bargaining positions. Ex. B at 16:6-9, 38:7-39:7. Consequently, he had no way of evaluating whether these licenses merely reflected the ▬▬▬▬▬▬ Ex. B at 45:5-47:2.

Because Mr. Haas cannot establish that these litigation settlements are economically comparable, they lack probative value as a matter of law. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Any attempt to bypass this requirement by offering these unanalyzed agreements as a mere "reasonableness check," Ex. A ¶ 302, is highly improper and substantially outweighed by the danger of unfair prejudice under FRE 403.

4

███████████████████████████████████████████

### 2.  The agreement arbitrarily selected to manufacture a damages range

Walmart's reliance on the ███████████████ license is similarly flawed and must be excluded. Mr. Haas arbitrarily selects ███████████ payment from license to create a damages range merely because "it is the upper bound of [the five comparable] agreements." Ex. A ¶ 302; Ex. B at 108:23-109:14. This manufactured range is improper for three reasons.

First, Mr. Haas does not provide any economic reason for why he chose this license over any other to define the royalty range resulting from the hypothetical negotiation. For example, he fails to identify the ████████████████ (or any other agreement) as "the most reliable license in [the] record." *LaserDynamics*, *Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012). Nor could he. The license does not involve either of the asserted patents. And Mr. Haas offers no opinion nor explanation as to why ████████████ license is more reliable than another license that *did* involve an asserted patent and featured a lump-sum payment ████████████ Ex B at 50:3-52:18. Similarly, he offers no explanation as to why ████████ license is more reliable than the ████████ license, which was negotiated by RavenWhite and involved both of the asserted patents. Ex. B at 109:11-110:6 ("So, yeah, I—I—I—I—you know, it would be up to the finder of fact if the finder of fact determined that, you know, this is a more appropriate benchmark to use.").

Second, Walmart itself cannot explain the economic relevance (or anything else) about ████████████ agreement. Walmart's own 30(b)(6) corporate witness, Adam Vorchheimer testified that he:

- ███████████████████████████████████████ ;
- ████████████████████████████████████
- ████████████████████████████████████

5



- ███████████████████████████
- ████████████████████████████████████
  ██████████        ██████████████
  ████████████████
- ██████████████████████████████
- ██████████████████████████████
  ████████████.

Ex. G (Vorchheimer Dep.) at 162:8-165:22. Because Walmart cannot articulate the economic circumstances of its own license, and Mr. Haas did not speak to anyone at Walmart about it, there is zero foundation for economic comparability.

Last, because there is no quantitative or economic basis for tying        payment to the hypothetical negotiation in this case, its introduction serves only to improperly anchor the jury's damages calculation. This risk of substantial prejudice warrants exclusion under FRE 403. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1384 (Fed. Cir. 2025) (finding recitation of license payment "highly prejudicial" where expert could not meaningfully account for differences in scope with the hypothetical license).

**Plaintiff's MIL #2: Preclude Walmart from presenting any evidence, argument, or testimony concerning non-infringing alternatives ("NIAs").**

Walmart intends to present alleged non-infringing alternatives ("NIAs") to the jury, despite the fact that its own damages expert, Mr. Haas, abandons them in his quantitative analysis. Allowing Walmart to parade these unused NIAs before the jury serves no purpose other than to artificially drive down damages and confuse the issues. These NIAs must be excluded because they are legally irrelevant under FRE 402, highly prejudicial under FRE 403, and fail the basic legal requirements to qualify as NIAs.

The sole evidentiary purpose of a non-infringing alternative is to limit a defendant's damages. *See Correct Transmission, LLC v. Juniper Networks, Inc.*, No. 2:22-cv-00343-JRG, Dkt. 244 at 8. As this Court has previously held, if a defendant's expert fails "to provide any financial analysis of the impact of a non-infringing alternative to a reasonable royalty—i.e. rather than infringe [the defendant] would implement a non-infringing alternative at a certain cost—presenting these alternatives will only operate to confuse the jury." *Id.* at 9.

Here, Mr. Haas admits that he did not rely on potential NIAs for his reasonable royalty calculations. Ex. B (Haas Depo) at 104:15-105:12. Instead, he merely made quantitative "corrections" to Dr. Weinstein's analysis to arrive at his proposed reasonable royalties for the asserted patents. Ex. A (Haas Report) ¶¶ 293-302. None of his corrections or calculations is based on an NIA. Ex. B at 104:15-105:12. Therefore, any opinions on the alleged NIAs are irrelevant and would only operate to confuse the jury. *See Correct Transmission*, Dkt. 244, at p. 9.

Even if the NIAs were relevant to Mr. Haas's methodology for calculating a royalty, his opinions remain incomplete and thus inadmissible. A reliable opinion on a non-infringing alternative must establish that the proposed alternative is both available to the accused infringer and acceptable to the consumer. *CLO Virtual Fashion, LLC v. Zhejiang Lingdi Digital Tech., Ltd.,*, 2025 WL 1900674, at *6 (E.D. Tex. July 9, 2025); *Longhorn HD LLC v. NetScout Sys., Inc.*, 2022 WL 991696, at *4 (E.D. Tex. Mar. 31, 2022). During his deposition, Mr. Haas made a series of concessions that preclude his ability to opine on these factors. Specifically, he admitted that he:

- didn't assess the impact of the alleged NIAs on retail customers, Ex. B at 105:13-21;
- didn't assess the impact of the alleged NIAs on Walmart's advertiser customers, Ex. B at 106:2-7;

- didn't assess the impact of the alleged NIAs on the hypothetical negotiations, Ex. B at 106:8-21;

- didn't assess the feasibility of the alleged NIAs for Walmart, Ex. B at 106:22-107:2;

- failed to identify a "next-best" NIA for either Asserted Patent, Ex. B at 107:3-9; and

- consistent with the fact that he prepared his report without interviewing a single Walmart employee, Mr. Haas didn't ask anyone at Walmart if they have implemented or plan to implement the NIAs, and he has no independent knowledge of such plans, Ex. B at 108:1-15.

Because Mr. Haas cannot explain whether any alleged NIA is practically available to Walmart or commercially acceptable to its customers, his opinions are legally deficient and must be excluded in their entirety. Further, Mr. Haas is Walmart's only expert offering testimony on the hypothetical negotiations or the economic significance of NIAs. This leaves Walmart with no evidentiary sponsor to introduce these concepts at trial. Consequently, Walmart must also be precluded from referencing, arguing, or questioning any witnesses about NIAs—whether during opening statements, cross-examination, or closing arguments. Allowing attorney argument on NIAs without the requisite underlying expert testimony would blatantly violate FRE 403 by inviting the jury to speculate on economically unsupported alternatives, severely prejudicing RavenWhite.

**Plaintiff's MIL #3: Preclude Walmart from presenting any evidence, argument, or testimony comparing the accused products to third party products.**

It is improper to compare the accused product with anything but the claims. This tenet is captured in part by Court MIL No. 18, which strictly prohibits, for purposes of non-infringement, evidence, testimony, or argument that compares the accused product or method to any non-accused product or method. Nonetheless, Walmart intends to compare Walmart's accused system with

8

Home Depot's website. This is evident from the report of Walmart's technical expert, Dr. Kevin Almeroth, who opines extensively on the similarities between Home Depot's and Walmart's websites, drawing on infringement contentions that RavenWhite served on Home Depot, various articles, and Home Depot's patents, among other sources. Ex. H (Almeroth Rebuttal Report) ¶¶ 434-438. Dr. Almeroth then concludes that "if Home Depot did not infringe the '402 and '823 patents, then Walmart does not either." Ex. H ¶ 438. This comparison is improper under FRE 402 because it is irrelevant to any claim or defense in this lawsuit. The comparison also has no probative value, is highly prejudicial, and will confuse the jury, and should therefore be excluded under FRE 403.

**Plaintiff's MIL#4: Preclude evidence, testimony, or argument as to other lawsuits related to entities owned by Dr. Markus Jakobsson or statements that Dr. Jakobsson has created shell companies, a web of companies, or other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson.**

RavenWhite moves under Rules 402, 403, and this Court's Standing MIL Order No. 13 to preclude introduction of any evidence, testimony, or argument as to other lawsuits related to entities owned by Dr. Markus Jakobsson or statements that Dr. Jakobsson has created shell companies, a web of companies, or other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson. RavenWhite does not seek to preclude evidence regarding (i) Dr. Jakobsson's ownership interest in RavenWhite or either of the patent owners, including any amounts he would stand to profit from in this case or (ii) the facts and circumstances by which RavenWhite became the exclusive licensee of the asserted patents or by which the patent owners acquired the asserted patents.

Walmart should further be precluded from utilizing pejorative phrases such as "shell companies" or a "web of companies," or otherwise unduly emphasizing the sheer number of corporate entities owned or managed by Dr. Jakobsson. These labels have no bearing on the

9

parties' claims and defenses. FRE 402. Their sole function is to improperly bias the jury against Dr. Jakobsson and RavenWhite by painting them as litigious or structurally deceptive, creating a severe risk of unfair prejudice that substantially outweighs any negligible probative value. FRE 403.

This Court granted a similar motion in limine in *Daingean Technologies Ltd. v. T-Mobile USA, Inc.* Ex. I, Case No. 2:23-cv-00347-JRG-RSP, Dkt. No. 348 (E.D. Tex. Mar. 10, 2025) at 1; *see also Arigna Tech. Ltd. v. Nissan Motor Company, Ltd.*, Case No. 2:22-cv-00126-JRG-RSP, Dkt. No. 323 at 2 (Plaintiff's MIL Nos. 1 & 2) (E.D. Tex. October 24, 2022) (motions in limine granted as to references to other litigations brought by the parties, their investors, or related entities). RavenWhite asks for relief consistent with the Court's prior rulings in *Daingean* and *Arigna*.

The Court's Standing MIL Order No. 13 precludes the parties from introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations. Applying the reasoning and concerns of juror confusion and undue prejudice underlying Standing MIL Order No. 13, the Court should preclude the parties from introducing evidence, testimony, and argument concerning (i) the litigation history of other entities owned by Dr. Jakobsson, (ii) any statements regarding Dr. Jakobsson's creation, ownership, or management of shell companies or a web of companies, or (iii) other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson.

Dated: July 21, 2026

Respectfully submitted,

/s/ *Robert F. Kramer*
Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
VA Bar No. 43568

rmattson@kramerllp.com
KRAMER LLP
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
KRAMER LLP
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Zachariah A. Higgins (*pro hac vice*)
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
CA Bar No. 253705
jarmstrong@kramerllp.com
Rachael Chan (*pro hac vice*)
CA Bar No. 265002
rchan@kramerllp.com
Ryan Dooley (*pro hac vice*)
CA Bar No. 321645
rdooley@kramerllp.com
Robert Y. Xie (*pro hac vice*)
CA Bar No. 329126
rxie@kramerllp.com
KRAMER LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

11

███████████████████████████

Attorneys for Plaintiff
RavenWhite Licensing, LLC

12

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), I hereby certify that the undersigned complied with the meet and confer requirement of Local Rule CV-7(h). A telephonic meeting was held on July 20, 2026. The parties could not agree on a resolution to the issues discussed above. Further, this motion is opposed.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 21, 2026, and any confidential version is being served by electronic mail.

*/s/ Robert F. Kramer*

Robert F. Kramer

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on October 15, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer

13