**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § | |
| *Plaintiff,* | § § § | CASE NO. 2:24-CV-00688-JRG-RSP (*Lead Case*) |
| v. | § § | |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § § § § | |

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § § | |
| *Plaintiff,* | § § § | CASE NO. 2:24-cv-00689-JRG-RSP (*Member Case*) |
| v. | § § | |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § § § § | |

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INELIGIBILITY OF THE ASSERTED PATENTS UNDER 35 U.S.C. § 101

RavenWhite contends "[n]othing meaningful has changed" since Walmart's motion to dismiss. Dkt. 206 (hereinafter, "Resp.") at 3. This is false. The substantive *Markman* Order rejecting RavenWhite's core §101 arguments issued after the Report and Recommendation ("R&R") on Walmart's §101 motion. *Compare* Dkt. 128 *with* Dkt. 123. Further, the *Recentive* case from the Federal Circuit addressing patentable subject matter in the context of targeted advertising issued months after briefing on the motion to dismiss had closed. Dkt. 58.

Ruling for Walmart now does not require the Court to rule "contrary to its prior rulings." Resp. at 1. The motion to dismiss issue required the Court to accept Plaintiff's pleadings as true, and the Court concluded at that early stage that "Plaintiff's complaint had pleaded sufficient facts" to overcome a motion to dismiss. Dkt. 123 at 5-6. But now with the factual record developed, Plaintiff can no longer rely on pleaded allegations.

None of Plaintiff's allegations from its motion to dismiss remain valid. Given the Court's subsequent claim constructions and the additional evidence discussed in Walmart's Motion and below, there is no reasonable dispute that the Asserted Patents are directed towards abstract ideas. And given that these abstract ideas are simply implemented using well-understood, routine, and conventional concepts and activity, neither Asserted Patent survives § 101.

## I.    The '402 Patent Cannot Survive Alice.

RavenWhite spends much of its Response arguing terms like "clustering" and first and second "quality levels" render the claims of the '402 Patent eligible. These arguments only highlight why the Court's claim construction order establishes the ineligibility of the '402 Patent.

RavenWhite describes the claims of the '402 Patent as "a technological solution that performs three quality assessments of the user in a cascaded series of interrelated calculations." Resp. at 19. RavenWhite never explains what those "cascading" calculations are or which three "assessments" it is referring to. Regardless, even under the narrowest interpretation, the claims are

1

merely a run of the mill, three-step targeted advertising algorithm:

1. Determine a "first quality level" based on "a first search" or "a first purchase" associated with a user profile;
2. Determine "an indication of interest" based on a second search or purchase;
3. Determine that "a need" has been met based on "a third search" or "a third purchase" and determine a "second quality level."

None of these "determinations" require an inventive algorithm or any concrete, non-subjective calculation. Even Plaintiff's invalidity expert, Dr. Jansen, could not dispute that these elements of the '402 Patent can be performed in the human mind. Ex. I at 216:3-17. Recognizing this, RavenWhite resorts to handwaving and attempts to incorporate elements that are not present in the claims.

For example, RavenWhite identifies two ways in which the '402 Patent allegedly addresses drawbacks of existing technology. First, it argues "the '402 claims "perform detailed tracking and analysis of a user's Internet behavior to generate first and second quality scores to facilitate selecting an advertisement . . . using specific rules and algorithms." Resp. at 17-18. But the claims do not recite any "specific rules" or "specific algorithms" for tracking or analyzing any user behavior. Instead, the claims merely recite making subjective determinations of abstract concepts like "quality levels," an "indication of interest," or a "conversion assessment," using generic activity like searches, purchases, or "historical click behavior." The claims do not specify how those searches, purchases, or clicks are tracked nor require any improved technological method for tracking such activity. Similarly, there are no "specific rules and algorithms" for *how* searches, purchases, or clicks are used to make any recited "determinations"—rather, the claims simply state that determinations are made based on known, generic activity.

Next, RavenWhite argues that the claims "are directed to a specific computerized model that improves Internet advertising technology by adapting to and learning from user behavior to determine their value to advertisers…." Resp. at 18. But there is no "specific computerized model"

2

described in the claims, and this Court previously rejected construing the claims to require such alleged machine learning. Moreover, "adapting to and learning from user behavior" is the exact type of "machine learning" claim the Federal Circuit has rejected. *Dental Monitoring SAS v. Align Tech., Inc.*, No. 2024-2270, 2026 U.S. App. LEXIS 19691, at *11 (Fed. Cir. July 7, 2026).

The actual claim language highlights the absence of any technical innovation. For example, the method of claim 1 of the '402 Patent, which recites the same steps as the "processor" of claim 10 and "computer instructions" of claim 19, need not be performed on a computer. Claim 1 could be practiced with "pen and paper" by watching someone shopping online, including observing and recording the user's "historical click behaviors." As a result, claims 10 and 19 are nothing more than the abstract idea of claim 1, but "done on a computer."

For step two, RavenWhite argues the claims address problems "associated with determining quality levels" and recite "several structured, computational steps" Resp. at 19. But RavenWhite never explains what those specific "structured, computational steps" are, where they are in the claims, or how claims that merely recite steps of "determining" based on searches address problems with "determining."

Instead of clarifying its arguments, RavenWhite again focuses on the claimed "quality levels" and "conversion assessment." As the Court's claim constructions established, these are only a "computed value to a merchant or advertiser" and "an indication of how likely it is that a given individual will engage in a desired behavior if presented with an advertisement." Dkt. 128 at 35, 41. Neither are tied to any aspect of computers, and both can be performed by pen and paper.

## II.     The '823 Patent Cannot Survive Alice.

For the '823 Patent, RavenWhite first argues that identifying a client device in claim 2, as opposed to a client device *or* user in claim 1, somehow makes the claims not abstract. Resp. 7. Oddly, RavenWhite does not address the recited requirements of claim 2, which only requires that

3

the device be identified by a different sever than the one that provided the original cookies—an inherent part of the abstract idea of identification. And it is axiomatic that if identifying a device under claim 1 is abstract, identifying a device under claim 2 is also abstract, unless that claim contains something more than the abstract idea of identifying a device. The '823 Patent's specification also rejects this argument and describes the preferred embodiment as identifying the client device or user interchangeably. '823 Patent at 4:26-35, 6:22:24, 6:47-53 7:11-13.

RavenWhite's focus on identifying a device, rather than a user, highlights the abstract nature of the claims. They are only directed to identifying (or authenticating) someone or something using two forms of identification—in this case cookies. *See* Dkt. 186 at 19. RavenWhite insists that the second type of identification (the "second cookie") is difficult to delete. *See* Resp. at 11. Even accepting this argument, the patent claims recite only the traditional way of identifying devices or objects in the real world; *i.e.*, by using different types of identification assigned at different times by different entities. For example, cars have a licenses plate assigned by the state, that can be removed, lost, or stolen, and a VIN assigned at the time of manufacturing, which is extremely difficult to remove. Either can identify the car. Computers have similar identity pairs, such as a serial number and a MAC address, or an IP address and a MAC address.

In spite of this, RavenWhite argues that the claims of the '823 Patent are directed to "using novel cookie technology—such as the claimed 'second type" of cookie.'" Resp. 9. But RavenWhite cannot identify a "second type of cookie" that the '823 Patent has invented or claims. That is because the only difference between the claimed first and second cookie is that they "are different with respect to how they are accessed by a server," which encompasses a wide array of cookies. Dkt. 128 at 12.

RavenWhite also contends that "it was not known to use the 'second type' of cookie to

4

identify a user or device." Resp. 8. The record establishes this is not accurate, and RavenWhite's argument does not create a disputed material fact. Cookies, by their nature and regardless of type, identify devices and users. Ex. J, 126:22-127:2 ███████████████████████████████████ █████████████████████████████████████████████████████████ '823 Patent 1:46-49 ("A cookie is a message transmitted to a browser by a server. The message can include user-specific identifiers or personal information about the user") Ex. K at RW00001863 ("Cookies are small text files used to save information about an individual or their use of a web site." "[R]egular 'cookie tossing' is causing direct marketers to see more invasive methods to track individuals. One of those methods is to set a 'Local Shared Object,' also known as a 'Flash cookie' to track individuals."). The "second cookie" is a conventional tool used in a conventional way.

RavenWhite makes this same argument under step two. But as with step one, RavenWhite does not acknowledge that its inventor and its expert all recognize the invention uses existing technologies, including a "second cookie" in the form of at least cache cookies. Cookies, regardless of type, are used to identify users or devices, *id.*, and RavenWhite has no evidence that using any cookie to identify a user or device is not conventional.

Finally, RavenWhite's reliance on the alleged "four aspects" of the claimed cookies cannot save its claims. Resp. 14. "Aspects" i, iii, and iv, are inherent to using different types of cookies: i) they are different, iii) they are stored in different locations, and iv) "network resource requests" are how servers interact with cookies. *See* Ex. K. As for ii, there is plainly nothing innovative or specifically tied to technology about saving one cookie before the other one.

\* \* \* \* \*

For the reasons above and in Walmart's Motion, both the '402 patent and the '823 patent are patent ineligible under *Alice* Step One and *Alice* Step Two.

5

DATED:  July 21, 2026

Respectfully submitted,

By:  */s/ William B. Collier, Jr.*
Michael F. Heim
Texas State Bar No. 09380923
mheim@hpcllp.com
Eric J. Enger
Texas State Bar No. 24045833
eenger@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
Blaine A. Larson
Texas State Bar No. 24083360
blarson@hpcllp.com
William B. Collier, Jr.
State Bar No. 24097519
wcollier@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich

6

████████████████████████████████████

Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile: (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

***Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC***

7

████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record by electronic mail on July 21, 2026.

/s/ *William B. Collier, Jr.*
William B. Collier, Jr.

***Via E-mail***

Robert F. Kramer
CA Bar No. 181706
rkramer@kramerllp.com
Robert C. Mattson *(pro hac vice)*
VA Bar No. 43568
rmattson@kramerllp.com
KRAMER LLP
1133 Broadway, Suite 1510
New York, New York 10010
Telephone: (415) 419-1895

Nicole E. Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
KRAMER LLP
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 791-9250

Zachariah A. Higgins *(pro hac vice)*
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong *(pro hac vice)*
CA Bar No. 253705
jarmstrong@kramerllp.com
Ryan Dooley *(pro hac vice)*
CA Bar No. 321645
rdooley@kramerllp.com
Robert Xie
CA Bar No. 329126
rxie@kramerllp.com
Rachael Catherine Chan *(pro hac vice)*
CA Bar No. 265002
rchan@kramerllp.com
KRAMER LLP
303 Twin Dolphin Dr., Suite 600
Redwood City, California 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Counsel for Plaintiff RavenWhite Licensing LLC*

8