███████████████████████████████████████

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE HOME DEPOT, INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00688-JRG-RSP <br> (Lead Case) |
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00689-JRG-RSP <br> (Member Case) <br><br> ████████████████████ |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT OF INELIGIBILITY**
**OF THE ASSERTED PATENTS UNDER 35 U.S.C. § 101**

████████████████████████████████

## TABLE OF CONTENTS

I.     The Court's claim construction does not change the § 101 analysis...................................... 1

II.    The '823 claims are patent eligible. ...................................................................................... 1

III.   The '402 claims are patent eligible. ..................................................................................... 3

████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berkheimer v. HP Inc.*,
　881 F.3d 1360 (Fed. Cir. 2018)..........................................................................................2

*Dental Monitoring SAS v. Align Tech., Inc.*,
　2024-2270, 2026 WL 1959297 (Fed. Cir. July 7, 2026)............................................4

*McRO Inc., v. Bandai Namco Games Am. Inc.*,
　837 F.3d 1299 (Fed. Cir. 2016)..........................................................................................4

**Statutes**

35 U.S.C. § 101..........................................................................................................................1

████████████████████████████

## TABLE OF EXHIBITS

**The following exhibits were filed with RavenWhite's opposition brief (Dkt. 206):**

| Ex. | Description |
|-----|-------------|
| A | U.S. Patent No. 10,594,823 (excerpts) |
| B | U.S. Patent No. 11,562,402 (excerpts) |
| C | Rebuttal Expert Report of Bernard J. Jansen, Ph.D., Relating to Validity of U.S. Patent Nos. 10,594,823 and 11,562,402, served on June 18, 2026 (excerpts) |
| D | Opening Invalidity Expert Report of Kevin C. Almeroth, Ph.D., served on May 21, 2026 (excerpts) |
| E | Rebuttal Expert Report of Dr. Kevin Almeroth, served on June 18, 2026 (excerpts) |
| F | '402 Patent File History, Notice of Allowability of 10/3/2022 (excerpts) |

**The following exhibits are filed with this sur-reply:**

| Ex. | Description |
|-----|-------------|
| G | Walmart technical publication of an ad bidding model (RW_WM00000035) |

## I. The Court's claim construction does not change the § 101 analysis.

Walmart responds to RavenWhite's point that the Court ruled on claim construction after the motion to dismiss and did not contradict itself by arguing that the claim construction order issued after the R&R. Dkt. 215 at 1. But if the Court believed the claim constructions rendered the patents ineligible, its decision on the R&R is precisely when it should have, and would have, recognized the purported "change" to the § 101 analysis due to the constructions—especially in light of Walmart's objections to the R&R, where it merely reiterated its prior position that the patents were ineligible under § 101. Dkt. 129. And Walmart's response that *Recentive* "issued months after briefing on the motion to dismiss had closed" (Dkt. 215 at 1) ignores that Walmart could have, but did not, file a notice of supplemental authority prior to Court's ruling on the papers.

## II. The '823 claims are patent eligible.

At *Alice* step 1, Walmart does not rebut RavenWhite's statements that identifying a device, as required by claim 2, demonstrates that claim 1 is not representative of claim 2 and that the technique was not conventional. Instead, Walmart merely retreats to an oversimplified analogy about license plates to avoid addressing the claims' technical merits. Dkt. 215 at 4.

Walmart asserts incorrectly that "RavenWhite cannot identify a 'second type of cookie' that the '823 Patent has invented or claims." Dkt. 215 at 4. As to what the '823 Patent claims, it cannot be disputed that the '823 Patent expressly claims a "second type of cookie." As to what the '823 Patent invented, one prior art reference discloses a type of cache cookie but does not disclose the novel combination of cookies in claim 1, which recites their specific characteristics and combined use to define an invention that goes well beyond the prior art. Walmart also incorrectly asserts that "the only difference between the claimed first and second cookie" is "how they are accessed by a server." Dkt. 215 at 4. But that is only one of the two differences that the Court's claim construction requires; the other is that the cookies are stored in different browser storage

1

areas, as Walmart itself acknowledged. Dkt. 186 at 24. Walmart also asserts incorrectly that it was known to identify a user or device with the second type of cookie, but Walmart's argument is premised on its assertion that cookies "regardless of type" identify devices or users. Dkt. 215 at 4-5. On the contrary, cookies do not necessarily identify anything, and Walmart provides no support for its argument. Notably, Walmart never asserts that it was known to use cache cookies or a second type of cookie to identify a user or device. Dkt. 215 at 5. Finally, Walmart points to Flash cookies, but there is a disputed material fact regarding whether Flash cookies can qualify as a cookie under the claims, as the experts have taken opposing views regarding whether Flash cookies are stored in a "*browser* storage area," as claimed. Dkt. 215 at 5; Ex. C ¶ 124. Indeed, one of the advantages of the '823 Patent is that a server can practice the invention using the browser storage areas already resident on a user's computer, without "requiring the user to download third-party software (like Flash)" to create non-browser storage areas. Ex. C ¶ 208.

As to *Alice* step 2, Walmart repeats its assertion that cookies, regardless of type, are used to identify—which is incorrect for the reasons discussed in the previous paragraph. Dkt. 215 at 5. Walmart further argues that "RavenWhite has no evidence that using any cookie to identify a user or device is not conventional," Dkt. 215 at 5, but Walmart bears the burden of proof here to show that the use of a second type of cookie, with all the characteristics recited in the claims, was used to identify a user or device. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Walmart also argues that four aspects of the claimed cookies are inherent in using different types of cookies, but this argument (which assumes incorrectly that both types of claimed cookies were conventional) ignores the claimed "determination" function that combines the use of network resources requests associated with the two different cookie types. Dkt. 215 at 5. Further, Walmart focuses again on Flash cookies. Dkt. 215 at 5. While Flash cookies are a different type of cookie, the claimed "browser storage area" excludes Flash cookies, as discussed above. Ex. C ¶ 124.

2

**III.   The '402 claims are patent eligible.**

For *Alice* step 1, Walmart does not dispute that (1) machine learning is required by claim 14, and (2) Walmart has not shown that using machine learning as required by claim 14 was conventional. Dkt. 206 at 15. Walmart merely rehashes its arguments that the '402 claims are abstract, quibbling with RavenWhite's response without providing any additional substance. Walmart asserts incorrectly that Dr. Jansen "could not dispute that" the human mind could perform elements of the '402 Patent, Dkt. 215 at 2, but this mischaracterizes Dr. Jansen's testimony. In reality, Dr. Jansen explained he was not asked to perform that analysis, so the hypothetical question was outside the scope of his report. Dkt. 215-2 at 216:6-17.

Furthermore, Walmart's arguments that the '402 claims do not recite "specific rules," "specific algorithms," or a "specific computerized model" are irrelevant. Dkt. 215 at 2. These arguments go to whether claims are broad, not whether ideas are abstract, and Walmart cites no legal authority suggesting that claim breadth equates to claim eligibility.

Walmart also argues "there are no 'specific rules and algorithms' for ***how*** searches, purchases and clicks are used to make … determinations." *Id*. On the contrary, the claims include detailed technical explanations regarding how to implement the claim limitations in an inventive way. Dkt. 206 at 18-19. The '402 Patent describes a specific technique for adapting to and learning from user behavior to identify advertisements that are best suited to individual users, leading to greater efficiency and lower spending for advertisers. To that end, the claims recite a cascading series of calculations that generate first and second quality levels, which objectively define users by their value to a merchant or advertiser, and advertisements can be displayed, flexibly, on either the first quality level or the second quality level. These techniques are intrinsically tied to and solve problems particular to the Internet at the time of invention, thus the '402 Patent contains "an inventive concept."

3

Walmart's cited cases do not move the needle. In *Dental Monitoring*, the court determined that the claims focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Dental Monitoring SAS v. Align Tech., Inc.*, 2024-2270, 2026 WL 1959297, at *4 (Fed. Cir. July 7, 2026). It further held that the inclusion of a "deep learning device" did not change the analysis because the claims "simply appl[ied] machine learning" to the abstract ideas in a new environment, where the only assessment that was made was a determination that Orthodontists regularly made without the tool. *Id*. at *4-5. The '402 claims are different because they recite structured, computational steps such as generating a first quality level through combining clustering techniques for multiple users with a unique identifier and a user profile associated with prior purchase history. *See* Dkt. 206 at 18-22 (discussing more examples). Unlike *Dental Monitoring*, the '402 claims do not merely take a previously known process and use machine learning to implement it. In fact, Walmart still provides no evidence that the process used by previous advertising systems is the same process required by the claims of the '402 Patent. *McRO Inc., v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314, 1316 (Fed. Cir. 2016).

Walmart's argument that the claims could be practiced by pen and paper is baseless. Dkt. 215 at 3. It is effectively impossible to perform clustering on searches and purchases within a category taxonomy across users in a modern e-commerce system. For example, one of Walmart's published papers regarding an ad bidding model includes the following calculations:

4

$$\max_{\{b_g\}} E\left[\sum_{g \in G} R_g(b_g)\right] \qquad (3)$$

$$s.t. \sum_{g \in G} E\left[C_g(b_g)\right] \leq \mathcal{B}, \qquad (4)$$

where $G$ stands for the set of ad groups determined through the clustering step, and $b_g$ is the bidding value assigned to all the ads at group $g$. Based on our practical work of ad embedding and clustering, the ad group level bidding model usually only has $3\% - 5\%$ scale of the individual level bidding model. Section 4 will give a detailed discussion on the ads embedding and clustering steps.

Ex. G (RW_WM00000035) at 36. One cannot simply "[watch] someone shopping online" and perform such calculations, and none of Walmart's experts opine that any person could.

Walmart's descriptions overgeneralize the '402 claims. The claims improve Internet advertising technology, and the first quality level and second quality level (generated using specific rules and algorithms), clustering, and conversion assessment—constitute a "technological improvement." Dkt. 206 at 15-22.

For the same reason and as explained in the Opposition, at *Alice* step 2, the claims recite innovative steps. Dkt. 206 at 19-22.

Dated: July 24, 2026

Respectfully submitted,

*/s/ Robert F. Kramer*
Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
VA Bar No. 43568
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Nicole Glauser

5

Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Zachariah A. Higgins (*pro hac vice*)
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
CA Bar No. 253705
jarmstrong@kramerllp.com
Rachael Chan (*pro hac vice*)
CA Bar No. 265002
rchan@kramerllp.com
Ryan Dooley (*pro hac vice*)
CA Bar No. 321645
rdooley@kramerllp.com
Robert Y. Xie (*pro hac vice*)
CA Bar No. 329126
rxie@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 24, 2026, and any confidential versions are being served by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. No. 51) entered in this case on December 10, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer