**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, | |
| Plaintiff, | |
| v. | Case No.  2:24-cv-00688-JRG-RSP |
| | (Lead Case) |
| THE HOME DEPOT, INC., *et al.*, | |
| Defendants. | |
| | |
| RAVENWHITE LICENSING LLC, | |
| Plaintiff, | |
| v. | Case No.  2:24-cv-00689-JRG-RSP |
| | (Member Case) |
| WALMART INC., *et al.*, | |
| Defendants. | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO WALMART'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT OF
<u>U.S. PATENT NOS. 11,562,402 AND 10,594,823</u>**

i

**TABLE OF CONTENTS**

A.   Walmart uses the accused system under *Centillion* by putting the entire system into service. ...................................................................................................... 1

B.   Walmart controls the system that includes The Trade Desk. ................................................. 2

C.   Walmart never alleged that The Trade Desk exercised independent control. ........................ 4

D.   Walmart's mobile application and induced infringement arguments do not require sur-reply briefing............................................................................................. 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. 2K Sports, Inc.*,
    15 F.4th 1069 (Fed. Cir. 2021) ...........................................................................................2

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011).........................................................................................1, 2

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) ...........................................................................................4

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021).........................................................................................2

**Rules**

Fed R. Civ. P. 26...............................................................................................................................4

Fed R. Civ. P. 26(a) ..........................................................................................................................4

**TABLE OF EXHIBITS**

**The following exhibits were filed with RavenWhite's opposition brief (Dkt. 203):**

| Exhibit | Description |
|---------|-------------|
| 1 | Deposition Transcript of Bhanu Bhardwaj, dated April 14, 2026 |
| 2 | Expert Report of Dr. Hugh Smith, dated May 21, 2026 |
| 3 | Deposition Transcript of Dr. Hugh Smith, dated June 24, 2026 |
| 4 | Rebuttal Expert Report of David A. Hass, dated June 18, 2026 |
| 5 | Master Services Agreement (WMT-RW0504897- WMT-RW0504973) |
| 6 | The Walmart Defendants' Corrected Fifth Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1-28) |
| 7 | Rebuttal Expert Report of Kevin C. Almeroth, Ph.D., dated June 18, 2026 |
| 8 | Deposition Transcript of Kevin C. Almeroth, Ph.D., Dated July 1, 202 |
| 9 | Expert Report of Roy Weinstein, dated May 21, 2026 |
| 10 | Walmart Connect Capabilities (WMT-RW0028885 - WMT-RW0028968) |

**The following exhibits are filed with this sur-reply:**

| Exhibit | Description |
|---------|-------------|
| 11 | Additional excerpt from Walmart Connect Capabilities (WMT-RW0028885 - WMT-RW0028968) |
| 12 | Additional excerpts from the Deposition Transcript of Bhanu Bhardwaj, dated April 14, 2026 |
| 13 | WMT-RW0010813 - WMT-RW0010822 (excerpts) |
| 14 | Defendants Walmart Inc.'s and Wal-Mart Stores Texas, LLC's Initial and Additional Disclosures, dated December 6, 2024 |
| 15 | Additional excerpts from the Expert Report of Dr. Hugh Smith, dated May 21, 2026 |

**A.    Walmart uses the accused system under *Centillion* by putting the entire system into service.**

Walmart's reply brief argues that the system for displaying offsite ads cannot infringe claim 10 of the '402 patent because a third-party server physically displays Walmart's offsite ads. Dkt. 213 at 1. RavenWhite does not dispute that the accused system uses a third party, The Trade Desk ("TTD"), to physically display certain offsite ads. The issue is whether the *Centillion* test is met. Under *Centillion*, a party uses a system if it puts the system as a whole into service by controlling it and obtaining a benefit from it—even if it does not physically possess every component. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

Walmart tries to sidestep *Centillion* by arguing that TTD "selects the final audience and displays the ads." Dkt. 213 at 1. But the evidence demonstrates that the same system that generates audiences (███████████████████) for Walmart's onsite ads also generates the audiences for Walmart's offsite ads. Dkt. 203 at 3-5. Specifically, Walmart's ████████ ████████████████████████. Ex. 4 (Haas Rebuttal Report) ¶ 58. This allows the accused Walmart Connect system to serve "█████████████████████████ ██████████████████████████████████████████████ ██████," *not* TTD information. Ex. 11 (Walmart Connect Capabilities) WMT-RW0028885 at -922. Ms. Bhardwaj also confirmed that Walmart performs ████████████ and then "████████ ██████████████" which ████████████████████████████████████ Ex. 12 at 90:2-19, 91:16-92:9. Further, the Walmart-TTD Master Services Agreement (MSA) specifically carves out the ability for Walmart to ████████████████████████ ████████████████████████████████████████████████████████████████. Ex. 5 at -927 (§§ 1.6, 1.7), -939 ("Self-Serve Usage").



1

██████████████████████████████████████████████████

Walmart's caselaw is inapposite. *Acceleration Bay* explicitly upholds *Centillion*, holding that the customer that completed a hardware and software system was the infringer, not the software supplier. *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1078 (Fed. Cir. 2021). Similarly, in *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021), the claims required hardware and software, but the defendant provided only software. Here, Walmart puts both the hardware and software for generating audiences and displaying ads into service when it advertises through the Walmart DSP.

Lastly, Walmart does not address social media ads, which are Walmart's offsite ads displayed on social media platforms. Dkt. 213 at 3. Walmart fails to articulate how TTD's hosting functions differ in any meaningful way from ███████████████████, and does not argue that revenue from those conduits for offsite ads should be excluded from the damages base. Ex. 1 (Bhardwaj Dep.) at 15:5-15.

## B.    Walmart controls the system that includes The Trade Desk.

Walmart fails to rebut the evidence of control over TTD. Walmart argues that "Ms. Bhardwaj never said that Walmart causes Trade Desk to serve ads or dictates the audiences." Dkt. 213 at 3. To suggest that TTD would exercise independent control to *not* serve an ad where an advertiser buys an ad through Walmart, using a Walmart audience, served through the Walmart DSP that Walmart developed and owns, and where the ad links back to products sold by Walmart is unsupported by either evidence or common sense. Ex. 12 (Bhardwaj Dep.) at 58:10-18 ("███████████████████████████████████████████"). Further, as evidenced by Walmart's Connect Ad Policy, ███████████████████████. Ex. 13 (WMT-RW0010813 at 816) ██████████████████████████████████████████████████ ████████████████████████ Notably, the Self-Serve Usage

2



provision of the MSA shows that, with respect to Walmart' offsite ads, Walmart ███████

████████████████████████████████████████████████████████.



Ex. 5 at -939.

Walmart also argues that Ms. Bhardwaj said that ██████████████████████

███████████████████████████████████. Dkt. 213 at 3. But Ms.

Bhardwaj's testimony relates to ████████████████████████

████████████████████████████████████████

████████████████████. In other words, in this passage, Ms. Bhardwaj confirms

Walmart exercises control over the Walmart DSP such that it only allows the Walmart DSP for

Walmart's benefit—using Walmart audiences created from Walmart purchase histories and

linking back to Walmart products—and does not allow advertisers (like Pepsi) to use the Walmart

DSP for any competitive purpose (like buying advertisements targeting Kroger customers). Ex. 1

(Bhardwaj Dep.) at 96:12-24.

Walmart's reading of the MSA also confirms the control of the relationship rests with

Walmart, showing TTD is merely a service provider to Walmart. Dkt. 213 at 4, citing WM Ex. 21

at 929. And Walmart not only ████████████████████████████████ as

Walmart acknowledges (Dkt. 213 at 4), but Walmart also owns and controls ██████████

████████████████████████, Ex. 5 at -926, where such data is provided

"██████████████████████████████████" (Ex. 5 at -904, -905). Walmart

acknowledges such data is proprietary customer data unavailable to competitors. Dkt. 213 at 3.

3

### C.   Walmart never alleged that The Trade Desk exercised independent control.

Walmart argues that their response to Interrogatory No. 3 should have put RavenWhite on notice of its TTD noninfringement theory.  Dkt. 213 at 1-2. As described in RavenWhite's original response, Walmart never described any material difference in *ad selection*, such as describing a different algorithm for ad selection or ads selected from a different source of data performed by TTD, ███████████████, or any other third party. Dkt. 203 at 8-9, citing Interrogatory Nos. 10, 14, 15. Walmart also never disclosed TTD in its Initial Disclosures under FRCP 26. Ex. 14 (WM Initial Disclosures). Boilerplate responses and lack of disclosure under Initial Disclosures are not adequate for notice of a new noninfringement theory. *See*, for example, *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369-1370 (Fed. Cir. 2021) (striking portions of an expert report where a basis was not disclosed during discovery under FRCP 26(a) or (e)). Walmart's highlighted response in Interrogatory 3 (Dkt. 213, Ex. 18), at best, goes only towards the "displaying" limitation, not any portion of ad selection limitations such as "determining a first quality level...." The "last mile" of displaying an ad that is selected by Walmart's Connect system is properly attributable to Walmart because, absent independent targeting that materially changes the ███████████ that is developed through the infringing █████████████████, TTD merely serves the ads that are passed to it by Walmart. The display of ads, whether by Walmart itself, TTD, █████████████, or any other third party is part of the system that Walmart created and controls and is performed entirely for Walmart's benefit.

Walmart's discovery intransigence is also the subject of three motions to compel. Each of those motions, if granted, will require Walmart to provide, among other things, relevant information about the ads that it serves through third parties. Dkt. 155 at 6 (seeking revenues by targeting type other than onsite display ads); Dkt. 159 at 4 (seeking testimony on how Walmart

servers track the effectiveness of ads served by third parties); Dkt. 160 at 2 (seeking technical documentation and source code that Walmart provides to third parties regarding advertising).

Walmart also argues that RavenWhite "presumes" that Walmart's onsite and offsite ads operate the same way. The evidence is clear that they do. Ms. Bhardwaj identified that both onsite and offsite ads use data from the ████████████████████. Ex. 1 (Bhardwaj Dep.) at 90:20-24; 96:12-16; 96:21-24; Ex. 12 (Bhardwaj Dep.) at 80:2-13. Dr. Smith cites Ms. Bhardwaj's testimony and exhibits in describing the ████████████████████████████████." Ex. 15 (Smith Report) Ex. D ¶¶ 24-26. Dr. Smith does not need to perform an analysis on offsite ads specifically because, as discussed above and in Dr. Smith's report, Walmart did not identify any material differences in functionality of offsite ads, so his analysis for the ███████████ ████ is the same. Dkt. 203, Ex. 2 (Smith Report) ¶¶ 79-87, 148-162.

**D.    Walmart's mobile application and induced infringement arguments do not require sur-reply briefing.**

Walmart's reply brief has not raised new issues with respect to the mobile app or the issue of induced infringement. Accordingly, RavenWhite stands on its opposition brief for these issues.

Dated: July 24, 2026

Respectfully submitted,

*/s/ Robert F. Kramer*
Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
VA Bar No. 43568
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Nicole Glauser
Texas Bar No. 24050694

nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Zachariah A. Higgins (*pro hac vice*)
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
CA Bar No. 253705
jarmstrong@kramerllp.com
Rachael Chan (*pro hac vice*)
CA Bar No. 265002
rchan@kramerllp.com
Ryan Dooley (*pro hac vice*)
CA Bar No. 321645
rdooley@kramerllp.com
Robert Y. Xie (*pro hac vice*)
CA Bar No. 329126
rxie@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff*
RavenWhite Licensing, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 24, 2026, and any confidential versions are being served by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. No. 51) entered in this case on December 10, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer

7