# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE HOME DEPOT, INC., *et al.*, <br><br> Defendants. | Case No.  2:24-cv-00688-JRG-RSP <br> (Lead Case) |
| RAVENWHITE LICENSING LLC, <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., *et al.*, <br><br> Defendants. | Case No.  2:24-cv-00689-JRG-RSP <br> (Member Case) |

**[Proposed] Final Jury Instructions[1]**

---

[1] Submissions that are agreed to by both RavenWhite and Walmart are not highlighted. Submissions proposed by RavenWhite that are not agreed to by Walmart are bracketed and in green font. Submissions proposed by Samsung that are not agreed to by RavenWhite are bracketed and in blue font. The parties have entered their objections, explanations, and citations, and commentary in footnotes only.

**Introduction**

### I.A.  Introduction

Ladies and gentlemen of the jury, you have heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

### I.B.  Statements of the Court and Counsel

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

### I.C.  Verdict Form and Related Procedure

A verdict form has been prepared for you. You will take this form with you to the jury room when you retire to deliberate.  When you have reached a unanimous agreement as to your verdict, you will have your foreperson, whom you will select, fill in those unanimous answers in the blanks provided in the verdict form.  Then, your foreperson will date and sign the verdict form, and then notify the Court security officer that you have reached a verdict.

1

You should answer the questions as directed in the verdict form from the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

## II. Evidence

### II.A. Credibility of Witnesses and Evidence

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them; you may consider any agreements of or stipulations by the parties; and you may consider all exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all the witnesses and the weight and effect to give to all the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, and any prejudice or bias about the case that the witness may have. You may also consider the consistency or inconsistency of their testimony, considered in light of the circumstances, including whether the witness has been contradicted by other evidence or made statements at other times and places contrary to what he or she said on the witness stand. You may also consider whether there was evidence tending to prove that the witness testified falsely about some important fact or that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial.

You must give the testimony of each witness the amount of credibility that you think it deserves in light of the circumstances.

2

You must also keep in mind that a simple mistake does not mean the witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

## II.B.    Objections of Counsel

As I have told you previously, the attorneys in this case are advocates for their clients, which are opposing parties in the case, and the attorneys have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer the question. If the objection was overruled by the Court, then you must treat the question and the answer just as you would if the objection had not been made.

Allowing testimony or other evidence to be introduced over the objection of an attorney is not an indication the Court has any opinion as to the weight or effect of that evidence.

At times during the trial, it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were outside of the courtroom. This happens because often during a trial something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your hearing or presence.

## II.C.    Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence.   Circumstantial evidence is the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule,

the law makes no distinction between direct evidence or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

## II.D.  Redactions

During the course of the trial, you may have been shown documents with portions of those documents redacted. In those situations, you should not speculate about what may have been redacted or why it was redacted. Those redactions were approved by the Court prior to when the trial began.

## II.E.  Stipulated Facts

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept that stipulation as evidence and regard that fact as proven.

These facts are not disputed between the parties, and they have stipulated as follows:

[To be completed].

The system that RavenWhite accuses of infringing the Asserted Patents is made and used in the United States.

Those are the stipulations of the parties.

## II.F.  Interrogatories

Evidence has been presented to you in the form of answers of a party to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers in the same way as if they were made from the witness stand.

4

### II.G.    Testimony by Deposition

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented under oath in the form of a deposition.

Before the trial began, attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded the witness's sworn testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. Accordingly, you should determine the credibility and importance of deposition testimony to the very best of your ability, just as if the witness had testified in open court.

[[**Walmart: Some of the deposition testimony that you have heard was given by witnesses under what is called Federal Rule of Civil Procedure 30(b)(6). When a witness gives testimony under Rule 30(b)(6), the witness has been designated to give testimony on behalf of a corporation or other entity. In such situations, there is no distinction between the individual designee and the entity. Instead, the designee presents the entity's testimony.**]][2, 3]

---

[2] RavenWhite objects to Walmart's proposed language because it is unnecessary and will confuse the jury. Walmart says that the language "is consistent with jury instructions provided by this Court," but does not identify any such instructions.

[3] Walmart's proposed language is an accurate explanation of deposition testimony pursuant to Federal Rule of Civil Procedure 30(b)(6).  Because the jury will hear reference to corporate testimony, 30(b)(6) testimony, and/or testimony on behalf of a party (rather than an individual), this instruction provides clarity regarding the nature of that evidence.  The specific language is consistent with jury instructions provided by this Court

### II.H.    Reasonable Inferences from Evidence

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions, and you may reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case. However, you should not base your decisions on any evidence not presented by the parties during this case including your own personal experience with any of the parties, products, or services that are at issue in this case.

### II.I.    Sufficiency of Testimony

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary if, after considering all the evidence, you believe that single witness.

### II.J.    Expert Witnesses

When knowledge of a technical or otherwise specialized subject may be helpful to the jury, a person who has special training and experience in that field—called an "expert witness"—is permitted to state his or her opinions on those matters. However, you are not required to accept any expert witness's opinion. As with all the witnesses, it is solely up to you to decide whether to rely on it or not, or how much to rely on it.

### II.K.    Demonstratives

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's depiction, picture, or model to describe something involved in the trial. If your recollection of the evidence differs from these demonstratives, you should rely on your recollection of the evidence. Demonstrative exhibits are sometimes called "jury aids." Demonstratives themselves are not

6

evidence, but the witness's testimony concerning a demonstrative exhibit is evidence. These demonstratives will not be available for you to review during your deliberations.

### II.L.    Burdens of Proof

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on Plaintiff for some issues and on Defendant for other issues. There are two burdens of proof that you will apply in this case. They are the preponderance of the evidence and clear and convincing evidence.

The Plaintiff in this case, RavenWhite Licensing LLC, which has been referred to throughout the trial as "Plaintiff" or "RavenWhite," has the burden of proving patent infringement by a preponderance of the evidence. RavenWhite also has the burden of proving damages for any patent infringement by a preponderance of the evidence.

A preponderance of the evidence means the evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

As you have heard, the Defendants in this case are Walmart Inc. and Walmart Stores Texas, LLC, which have been collectively referred to as "Defendants" or "Walmart." Walmart has the burden of proving invalidity of RavenWhite's patent claims by clear and convincing evidence.

Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

As I have previously told you, these two burdens of proof are not to be confused in any way with the separate and different altogether burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. You should not confuse clear and convincing evidence with beyond a reasonable doubt. Clear and convincing evidence is not as high a burden, but it is a higher burden than the preponderance of the evidence.

In determining whether any fact has been proven by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider any stipulations the parties may have entered into, the testimony of all witnesses, regardless of who may have called them, and all exhibits that were received into evidence over the course of the trial, regardless of who may have introduced them.

## III.    Summary of Contentions of the Parties

As I did at the beginning of the case, I will first give you a summary of each side's contentions in this case, and I will then provide you with detailed instructions on what each side must prove in order to win on each of its contentions.

As I previously told you, this is an action for patent infringement. Remember, there are two Patents-in-Suit: U.S. Patent No. 10,594,823, which you heard referred to as the '823 Patent and U.S. Patent No. 11,562,402, which you heard referred to as the '402 Patent. RavenWhite contends that Walmart infringes claims 1 and 2 of the '823 Patent and claims 10-15, 18, and 19 of the '402 Patent.  You have heard those claims referred to as the Asserted Claims.

RavenWhite contends that Walmart has infringed the Asserted Claims of the '823 and '402 Patents by offering for sale, making, selling, and/or using in the United States Walmart's e-commerce platform, which includes Walmart's website, the Walmart Connect platform, and

8

Walmart's related systems for attributing online activity to its customers and selecting targeted advertisements.

RavenWhite also contends that Walmart has infringed the Asserted Claims of the '823 and '402 Patents by inducing others to infringe the Asserted Claims.

RavenWhite contends that it is entitled to money damages in the form of a reasonable royalty for Walmart's infringement.

RavenWhite has the burden of proof on these issues by a preponderance of the evidence.

Walmart denies that it infringes any of the Asserted Claims of the two Patents-in-Suit. Walmart denies that it offers for sale, makes, sells, and/or uses in the United States any accused product, system or method that infringes any of the Asserted Claims.  Walmart also denies that it induces any infringement by another.  Walmart also denies that it owes RavenWhite any money damages.

Walmart contends that the Asserted Claims of the '823 and '402 Patents are invalid as obvious.  Walmart also contends that the Asserted Claims of the '823 and '402 Patents are invalid because they seek to cover subject matter that is ineligible for patenting.  [[**Walmart: Invalidity is a defense to infringement.**]][4, 5]  Walmart has the burden to prove invalidity by clear and convincing evidence.

[Walmart further contends that the Asserted Claims are unenforceable because RavenWhite does not meet certain patent ownership requirements.  Unenforceability is a defense

---

[4] RavenWhite objects to the bracketed language because it is redundant with the language below. *See* section VII.A.

[5] Walmart's proposed instruction is an accurate statement of invalidity to provide context.  *See* 35 U.S.C. § 282(b)(2).  This language has been used in jury instructions in this Court. *E.g.*, *Huawei Techs. v. Verizon Commc'ns, Inc.*, 2:20-cv-00030, Tr. Vol. I at 151-152 (E.D. Tex. July 6, 2021); *The Chamberlain Grp. LLC v. Overhead Door Corp.*, 2:21-cv-0084-JRG, Dkt. 303 (Jan. 31, 2022).

to infringement. Walmart has the burden to prove unenforceability by clear and convincing evidence.] [6, 7]

Infringement, invalidity, and unenforceability are separate and distinct issues. Your job is to decide whether Walmart has infringed the Asserted Claims and whether the Asserted Claims are invalid. If you decide that any Asserted Claim has been infringed[,] [and] is not invalid[, and is not unenforceable,][8, 9] you will then need to decide the amount of money damages, if any, to be awarded to RavenWhite to compensate it for that infringement.

## IV.     Patents

### IV.A.  The Claims of a Patent

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims. The patent claims are those numbered sentences at the end of the patent.

The claims are important because it is the words of the claims that define what the claim covers. The figures and the text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the

---

[6] Walmart's proposed instruction is an accurate statement of the law and corresponding burden, following the formula for recitations of defenses in jury instructions previously provided by this Court. *See* 35 U.S.C. § 282(b)(1); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358-59 (Fed. Cir. 1984).  If the question of enforceability does not go to the jury, Walmart agrees to withdraw instructions relating to this defense.

[7] RavenWhite objects to Walmart's language concerning unenforceability because it is unaware of any precedent for its inclusion in jury instructions in this Court. Furthermore, as RavenWhite argues below and in the Proposed Verdict Form, Walmart's unenforceability defense involves questions of law and is not an appropriate issue to send to the jury.

[8] As RavenWhite explains below and in its comments to the Proposed Verdict Form, Walmart's unenforceability defense will be resolved by the Court's interpretation of RavenWhite's exclusive licenses and in conjunction with the parties' motions on this issue (Dkt. 176 and Dkt. 187), which present questions of law, not fact.

[9] Walmart's proposed language is an accurate recitation of Walmart's defenses.  If Walmart's unenforceability defenses are resolved before trial, Walmart agrees to remove reference to unenforceability from the jury instructions.

10

breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, upon what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim or whether the claim is invalid. The law says it is my role as the Judge to define the terms of the claims and it is your role as the jury to apply my definitions to the issues that you are asked to decide in this case.

Therefore, as I have explained to you at the beginning of the case, I have determined the meaning of certain language from the claims and I have provided those to you as definitions.  These definitions can be found in your juror notebooks. And you can consider and review those claim constructions or definitions in your jury notebooks during your deliberations. You must accept my definitions of these words from the claims as being correct. It is your job to take the definitions that I have provided and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you. For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. The meaning of the words of the patent claims must be the same when deciding the issues of infringement and invalidity.

Several times during these instructions and throughout the trial, you have heard reference made to a person of ordinary skill in the art or a person of ordinary skill in the field of the invention.

11

In patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called prior art. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclosed the claimed invention or elements of the claimed invention. Prior art may be authored or created by anyone.  Someone with ordinary skill in the art is a hypothetical person who is presumed to know all of the pertinent prior art, not just what the inventor or another particular individual may have actually known, in the field of the invention at the time the application for the patent was filed.

The claims are intended to define, in words, the boundaries of the inventor's rights.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually.

You have been provided with complete copies of each of the asserted patents, which are in your juror notebooks, and you may refer to them in your jury deliberations.

### IV.B.  How a Claim Defines What It Covers

I will now explain how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a product or system satisfies each of these requirements, then it is said to be covered by the claim.

There can be several claims in a patent, and each claim may be narrower or broader than any other claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as the claim elements or the claim limitations. When a system meets all the requirements of a claim, the claim is said to cover the system, and that system is said to fall within the scope of that claim. In other words, a claim covers a system where each of the claim elements or limitations is present in that system. [[**RavenWhite: A claim covers a system even if there are additional features or components**

12

**that are not covered by the claim.**]][10, 11] If a system is missing even one limitation or element of a claim, the system is not covered by the claim. If the system is not covered by the claim, the system cannot infringe that claim.

The beginning portion or preamble of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means including but not limited to or containing but not limited to. When "comprising" is used in the preamble of a claim, if you decide that an accused system includes all the requirements of the claim, the claim is infringed. That is true even if the accused system contains additional elements. For example, a claim to a table comprising a table top, legs, and glue, would be infringed by a table that includes a table top, legs, and glue, even if the table also includes other structures, such as leaves to expand the size of the table top or wheels to go on the ends of the legs. On the other hand, using the same simple example, if a claim recites a table comprising a tabletop, four legs, and glue, it will not cover  a table that has only three legs, even if it still has a tabletop and glue.  In other words, if a single feature recited in the claim is missing, a product is not covered by that claims.

[[**RavenWhite: Similarly, the body or the portion of the claim that follows the preamble may also use the phrase "at least one" to identify a non-exclusive list of**

---

[10] RavenWhite's statement is an accurate description of the law. *See Vulcan Eng'g Co., v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1375-76 (Fed. Cir. 2002) ("[W]hen all of the claimed features are present in the accused system, the use of additional features does not avoid infringement."). Moreover, it appears in prior jury instructions from this Court. *See, e.g.*, *Anonymous Media Res. Holdings, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-439-JRG, Trial Tr. Vol. 5, at 1059:5-8, Dkt. 286 (E.D. Tex. Sept. 26, 2025); *General Access Sols., Ltd. v. Cellco P'ship*, No. 2:22-CV-394-JRG, Trial Tr., Vol. 5, 1259:14-16, Dkt. 324 (E.D. Tex. June 28, 2024); *Smart Path Connections, LLC v. Nokia Corp.*, No. 2:22-CV-296-JRG, Trial Tr. Vol. 5, at 1216:2-4, Dkt. 329 (E.D. Tex. Apr. 5, 2024).

[11] Walmart objects to the inclusion of this language as unnecessarily duplicative.  The following paragraph addresses the meaning of "comprising" in patent claims, which is where this description is appropriate.

13

**requirements. For example, if a claim element or limitation is a table top including at least one of drop leaves, folding leaves, and a coat of varnish, then that claim element is met by a table top that has folding leaves, even if the table top also includes other structure such as a maple surface or a coating of varnish.**

**The body of a claim may also use the phrase "based at least in part on." When a claim states that a function is performed "based at least in part on" a particular factor, it means that the function takes into account that factor but need not be based solely on that factor. This is true even if the accused function takes into account additional factors than those recited in the claim.]]**[12, 13]

This case involves two types of patent claims: independent claims and dependent claims. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. It is not necessary to look at any other claim in the patent to determine what an independent claim covers. On the other hand, a dependent claim does not itself recite all the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim depends on another claim. A dependent claim incorporates all the requirements of the claim to which it refers or from which it depends. The dependent claim then adds its own additional requirements. So, to determine what a dependent claim covers, it is necessary to look at both the

---

[12] Walmart objects to this language as improper claim construction. RavenWhite did not propose "at least one" or "based at least in part on" for construction, the Court has not construed either term, and the plain and ordinary meaning applies. *See Cassidian Communc'ns, Inc. v. MicroDATA GIS, Inc.*, No. 2:12-cv-162, 2013 WL 3187177, at *5 (E.D. Tex. June 19, 2013) (construing a term where "additional context and explanation … is likely to assist the jury"). Unlike "comprising," a term with specialized and commonly accepted meaning in the context of patent claims, explanation is not warranted.

[13] RavenWhite's explanation is accurate and explains how this language is applied when determining the issue of infringement. Just like "comprising," it is helpful to instruct the jury on how to apply these claim phrases.

14

dependent claim and any other claim to which it refers or from which it depends. A system that meets all the requirements of both the dependent claim and the independent claim to which it refers or from which it depends, is covered by that dependent claim.

In this case: claim 1 is an independent claim and claim 2 is a dependent claim of the '823 Patent; and claims 10 and 19 are independent claims and claims 11-15 and 18 are dependent claims of the '402 Patent.

## V.    Level of Ordinary Skill in the Art

Several times in my instructions, I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art ("POSITA"). In deciding the level of ordinary skill in the field, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of persons actively working in the field of the patents-in-suit; (2) the types of problems encountered in the field; (3) previous solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology in the field of the patents-in-suit.

RavenWhite contends that the priority date for the '823 Patent is at least November 1, 2005, and the priority date for the '402 Patent is at least November 21, 2011.

RavenWhite contends that as, of the priority date, a person of ordinary skill in the art with respect to the '823 Patent would have had a bachelor's degree in computer science, computer engineering, electrical engineering, or a similar discipline, as well as two years of academic or industry experience in computer networking, or comparable industry experience.

RavenWhite contends that as, of the priority date, a person of ordinary skill in the art with respect to the '402 Patent would have had a bachelor's degree in computer science, computer engineering, electrical engineering, or a similar discipline, as well as two years of academic or industry experience in computer networking and data analysis, or comparable industry experience.

15

Walmart contends that the priority date for the '823 Patent is October 31, 2006, and the priority date for the '402 Patent is November 20, 2012.

Walmart contends that as, of the priority date, a person of ordinary skill in the art with respect to the '823 Patent would have had a Bachelors' degree in computer science, electrical or computer engineering, or a comparable field of study, plus approximately two to three years of professional experience with computer networks and digital information transmission techniques or other relevant industry experience.

Walmart contends that as, of the priority date, a person of ordinary skill in the art with respect to the '402 Patent would have had a bachelor's degree in computer science, electrical engineering, computer engineering, or the equivalent technical training. Additionally, they would have at least three years of experience in designing or programming internet-related processes, such as user profile management and/or web-based targeted advertising.

The parties have stipulated that it does not matter to the issues that have to be decided in this case which party's definition of the level of ordinary skill in the art is adapted, for either the '823 patent or the '402 patent.

## VI.    Infringement

### VI.A.  Introduction to Infringement

I will now instruct you on infringement in more detail.

If a person or corporation makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the Asserted Claims, as I may have defined them for you, to

16

the accused system, and determine whether or not there is infringement. This is the only correct comparison.

You should not compare the accused system with any specific examples set out in the patent [[**Walmart: or any figures in the patent**]][14, 15] in reaching your decision on infringement. In deciding infringement, the only correct comparison is between the accused system and the elements or limitations of the Asserted Claims as I have construed those claims. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both sides over the course of the trial.

## VI.B.  Direct Infringement

I will now instruct you on the specific rules that you must follow to determine whether RavenWhite has proven by a preponderance of the evidence that Walmart has directly infringed one or more of the patent claims involved in this case.

A patent can be infringed directly even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringing the claim. A patent may also be infringed directly even though the accused direct infringer believed in good faith that what it did was not infringing the patent. Infringement does not require proof that a party copied its product or system from the Asserted Claims.

---

[14] Walmart's proposed instruction is an accurate statement of the law.  *See TEK Global S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 789 (Fed. Cir. 2019); *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002).

[15] RavenWhite objects to Walmart's added language as redundant with "examples set out in the patent" and unnecessary.  RavenWhite is unaware of any precedent for its inclusion in Jury Instructions in this Court, and in fact prior Jury Instructions omit this language. *See, e.g.*, *Headwater Rsch LLC v. Samsung Elecs. Co. Ltd.*, No. 2:23-CV-103, Tr. at 1193:3-5, Dkt. 456 at 44 (E.D. Tex. Jul. 14, 2025).

17

Now, you have heard in this case that RavenWhite did not communicate with Walmart about its position on infringement and damages prior to the filing of a lawsuit. The presence or absence of pre-suit notice is not a factor to consider in determining whether or not the asserted claims have been directly infringed. [[**RavenWhite: Likewise, damages in a patent case are based solely on the reasonable royalty that would have resulted from a hypothetical negotiation between the parties at the time the alleged infringement first began. Accordingly, the presence or absence of any pre-suit notice is not a factor to consider regarding a determination of direct infringement or a related award of damages.**]][16, 17]

You must determine separately for each Asserted Claim whether or not there is infringement. However, if you find that an independent claim on which other claims depend is not infringed, then there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide separately whether the product or system meets the additional requirements of any dependent claims that depend from or refer to that independent claim; that is, whether those claims have also been infringed. As a reminder, a dependent claim includes all the requirements of any claim to which it refers plus additional requirements of its own.

In determining whether an accused system directly infringes a patent claim in this case, you must compare the accused system with each and every one of the requirements or limitations of that claim to determine whether the accused system contains each and every requirement recited

---

[16] Walmart objects to the inclusion of any instruction relating to damages during instructions on infringement.

[17] This language is a correct statement of law. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970).  Furthermore, it is helpful to the jury to give context about pre-suit notice, which is discussed in the immediately preceding sentence.

18

in that claim.  [[**Walmart: If an accused system omits any element recited in a claims, then you must find that the product in question does not directly infringe.**]][18]

[[**RavenWhite: To use a system for purposes of infringement, it is not necessary for the accused infringer to exercise physical or direct control over each individual component of the system. If a party puts the invention into service, that is, controls the system as a whole and obtains benefit from it, then that constitutes an infringing use of the system.**]][19, 20]

[[**A party may also be vicariously liable for another's use of the invention. Vicarious liability arises when one party controls or directs the actions of another, as through an**

---

[18] RavenWhite objects to Walmart's added language. The statement is redundant with the discussion above in "How a Claim Defines What it Covers."

[19] RavenWhite's proposed language tracks the language from the Federal Circuit's *Centillion* opinion: "The district court erred, however by holding that in order to 'use' a system under § 271(a), a party must exercise physical or direct control over each individual element of the system." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). "We hold that to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Id*.

[20] Walmart objects to this instruction as incorrect under *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011).  Under *Centillion*, Walmart can only be liable for "use" of a patented invention under 35 U.S.C. § 271(a) if Walmart itself "put[s] the claimed invention into service, i.e., control[s] the system and obtain[s] the benefit from it." *Id*. at 1286.  Importantly, this does not include putting into service less than all of the claim elements as RavenWhite's instruction implies.  *Id*. ("While [Defendant] may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means.  Supplying the software for the customer to use is not the same as using the system."); *id*. at 1284 ("direct infringement by 'use' of a system claim requires a party … to use each and every … element of a claim … In order to 'put the system into service,' the end user must be using all portions of the claimed invention"); *see also Intell. Ventures I LLC v. Motorola Mobility*, 870 F.3d 1320 (Fed. Cir. 2017) ("*Centillion* explicitly added that, to use a claimed system, what must be 'used' is each element").  If some other third party puts into service the complete system, Walmart can be liable only if Walmart can be held vicariously liable for the actions of that third party.  *Id*.  To show vicarious liability, RavenWhite would need to show that Walmart "directs" the third party or that the third party acts as Walmart's agent.  *Centillion*, 631 F.3d at 1287.  RavenWhite's proposed jury instruction seemingly conflates two separate holdings and two separate standards set forth in *Centillion*—a customer using the full system can infringe, but the provider of a subset of the claim elements cannot, absent a showing of vicarious liability.

19

**agency relationship or contractual obligation, such that the actions of the other are attributable to the party.]]** [21, 22]

[[**Walmart: If a party controls and makes use of a system that contains all of the claim requirements, the party may be an infringer even though the parts of the system do not all operate in the same place or at the same time.**]][23, 24]

An accused system infringes a system claim if it is reasonably capable of satisfying the claim elements, even though it may also be capable of non-infringing modes of operation. In other words, you can find infringement if the accused system is reasonably capable of operating in a way that satisfies the claim's limitations, even if it is also capable of operating in a way that does not. An accused system can be reasonably capable of satisfying the claim limitations if it is configured or arranged in the manner described in the claim. However, the configuration or

---

[21] RavenWhite's proposed language tracks *Centillion*: *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286-87 (Fed. Cir. 2011).

[22] Walmart objects to this instruction as misleading for the same reasons discussed *supra* at n.26. In particular, vicarious liability for the infringing act of another still requires an underlying infringing act by another. RavenWhite's proposed instruction ignores this and seeks to conflate two separate issues: (1) whether there is an infringing "use" under § 271(a) by another and (2) whether there is vicarious liability for such an infringing act by another. For example, RavenWhite's proposed instruction provides no explanation regarding the role of two separate entities for this theory of infringement. Walmart further objects to this instruction because RavenWhite has not alleged vicarious liability in this case. This theory is not present in RavenWhite's infringement report.

[23] As explained in Walmart's motion for summary judgment of noninfringement (Dkt. 191), RavenWhite does not set forth a cognizable theory of infringement of the '402 Patent under *Centillion*. Nor is RavenWhite pursuing an infringement theory based on *Centillion* for the '823 Patent. If a jury instruction is nonetheless given, Walmart proposes language consistent with the Federal Circuit's decisions in *Centillion* and *Intellectual Ventures I*, including providing an guidance to the jury regarding the meaning of "put[] the system into service." *Centillion*, 631 F.3d at 1286.

[24] RavenWhite objects to Walmart's language. It is not an accurate statement of the law. Under *Centillion*, a party uses a system if it puts the system as a whole into service by controlling it and obtaining a benefit from it—even if it does not physically possess every component. *Centillion*, 631 F.3d at 1284.

20

arrangement described in the claim need not be the default configuration or arrangement.

[[**RavenWhite: Proof of use is not required to prove infringement of a system or apparatus claim**]].[25, 26]

A claim requirement is present if it exists in an accused system just as it is described in the claim language, either as I have construed that language for you, or if I did not explain it, as it would have been understood by its plain and ordinary meaning to one of ordinary skill in the art. If an accused system omits any element recited in a claim, then you must find that particular system does not infringe that claim.

[[**RavenWhite: So long as an accused system meets each and every one of the claim requirements of a "comprising claim," infringement of that claim is shown, even if the system contains additional features or elements not required by the claims.**]][27, 28]

---

[25] Walmart objects to this instruction as misleading. RavenWhite contends that Walmart's infringing act is "use" under § 271(a). In that event, proof of use is required to demonstrate infringement.

[26] Walmart is incorrect in attempting to limit RavenWhite's infringement allegations. RavenWhite's full infringement allegation is that Walmart infringes the asserted patents "by or through making, using, selling, or offering for sale… ." First Amended Complaint ¶¶ 38, 47. Furthermore, RavenWhite's language accurately states the law. District courts applying this doctrine have consistently recognized that proof of actual use is not required to establish infringement of a system claim, and that infringement is established where the product is configured or arranged in the manner described in the claim. *See NetFuel, Inc. v. Cisco Sys. Inc.*, 438 F. Supp. 3d 1031, 1035 (N.D. Cal. 2020); *PolyVision Corp. v. Smart Technologies Inc.*, 501 F. Supp. 2d 1068, 1084–85 (W.D. Mich. 2007). The Eastern District of Texas has given a materially identical instruction in patent cases involving system and apparatus claims. *See Papst Licensing GmbH & Co. KG v. Samsung Elec. Co.*, No. 6:18-cv-388-RWS, Final Jury Instructions at 16–37 (instruction 6.2), Dkt. 291 (E.D. Tex. Nov. 6, 2018).

[27] Walmart objects to this instruction as unnecessarily cumulative, resulting in overemphasis of the term "comprising."

[28] RavenWhite's language is neutral and necessary to prevent juror confusion. It is an accurate statement of the law. *See Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1353 (Fed Cir. 2005) ("Basic patent law holds that a party may not avoid infringement of a patent claim using an open transitional phrase, such as comprising, by adding additional elements."); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 161 F. Supp. 3d 438, 456-57 (E.D. Tex. 2015) ("In the parlance of patent law, the transition 'comprising' creates a presumption that the recited elements are only a party of the device, that the claim does not exclude additional, unrecited elements.").

21

**VI.C.  Induced Infringement[2930]**

I will now instruct you on induced infringement. In addition to direct infringement, a party can be liable for infringement if it actively induces the direct infringement of a patent claim by another.

In this case, RavenWhite has accused Walmart of indirect infringement by actively inducing Walmart's customers to directly infringe various claims of the Asserted Patents.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Walmart is liable for induced infringement if RavenWhite proves by a preponderance of the evidence that:

1.  Acts have been carried out by Walmart's customers or end-users that directly infringe that claim;

2.  Walmart has taken action during the life of the asserted patents intending to cause the infringing acts by its customers or end-users; and

3.  Walmart has been aware of the Asserted Patents and knew that the acts of its customers or end-users constitute infringement of the Asserted Patents, or was willfully blind to that infringement.

---

Furthermore, it has been used in prior jury instructions by this Court.  *See, e.g.*, *General Access Sols., Ltd. v. Cellco P'Ship*, No. 2:22-CV-394-JRG, Trial Tr., Vol. 5, at 1259:12-16, Dkt. 324 (E.D. Tex. June 28, 2024).

[29] Walmart objects to the inclusion of an instruction regarding induced infringement for the reasons set forth in Walmart's motion for summary judgment of noninfringement.  Dkt. No. 180.

[30] RavenWhite has alleged induced infringement, and an instruction on it is appropriate and will be helpful to the jury. FAC ¶¶ 40-41, 49-50.

[[**RavenWhite: Willful blindness is established if Walmart believed there was a high probability that the acts, if taken, would constitute infringement of the Asserted Claims, but deliberately avoiding confirming the belief.**]][31][32]

To establish induced infringement, it is not sufficient that any user of Walmart's accused system directly infringes the claim, nor is it sufficient that Walmart was aware of the acts of users that allegedly constitute direct infringement. And the mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that Walmart specifically intended or was willfully blind to that infringement.

## VII.    Invalidity

### VII.A.  Invalidity Introduction

I'll now instruct you on the rules that you must follow in deciding whether or not Walmart has proven by clear and convincing evidence that the Asserted Claims of the patents-in-suit are invalid. Patent invalidity is a defense to patent infringement. Invalidity and infringement are separate and distinct issues that must be separately decided by you, the jury.

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout the trial as either the PTO or the Patent Office, acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

---

[31] Walmart objects to the inclusion of any instruction on willful blindness because RavenWhite has not propounded a willful blindness theory of induced infringement, including in any expert report on infringement.

[32] Walmart is incorrect. RavenWhite has alleged willful blindness. FAC ¶¶ 30, 49.  RavenWhite's instruction is an accurate statement of the law and will be helpful to the jury.

23

In order to overcome the presumption of validity, Walmart must establish by clear and convincing evidence that a claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not necessarily mean that any other claim is invalid. [[**Walmart: Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility of deciding whether the claims of the patent are valid.**]][33, 34]

Claims are construed in the same way for determining infringement as for determining invalidity, and you must apply the claim language consistently and in the same manner for the issues of infringement and for the issues of invalidity.

### VII.B. Prior Art Introduction

In order for someone to be entitled to a patent, the invention must actually be new and not obvious over what came before it, which is referred to as the prior art.

A previous device, system, method, publication, or patent that predates the patent's effective date or the effective filing date is generally called "prior art." Prior art may include items

---

[33] Following an explanation that the presumption of validity exists based on the findings of the Patent Office, and to avoid confusion, the jury should be expressly informed that they nonetheless must make that determination for themselves.  Similar language has been adopted previously by this Court.  *See The Chamberlain Grp. v. Overhead Door Corp.*, 2:21-cv-0084-JRG, Dkt. No. 303 (Jan. 31, 2022); *Vocalife v. Amazon.com, Inc.*, No. 2:19-cv-00123-JRG, Dkt. No. 340 at 38 (Oct. 9, 2020).

[34] RavenWhite objects to the bracketed language because prior Jury Instructions do not include this language.  *See, e.g.*, *Headwater Rsch LLC v. Samsung Elecs. Co. Ltd.*, No. 2:23-CV-103, Tr. at 1197:12-23, Dkt. 456 at 48 (E.D. Tex. Jul. 14, 2025). Furthermore, Walmart's proposed language undermines the presumption of patentability.

24

[[**Walmart: or products**]][35, 36] that were publicly known or that had been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. [[**Walmart: An electronic publication, including an online database, digital video, or internet publication, can be prior art.**]][37, 38]  To be prior art, an item or reference must have been made, known, used, published, or patented either before the  [[**Walmart: filing date of the Asserted Patents**]] [[**RavenWhite: invention was made or more than one year before the effective filing date of the patent application**]][39, 40].

[[**Walmart: There are different types of prior art, and I will instruct you on the relevant types that you need to consider.**]]

---

[35]  RavenWhite's reference to "items" is unclear and does not sufficiently convey products available on the market can constitute prior art.  *See Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261, 1263 (Fed. Cir. 1991).

[36]  RavenWhite objects to the addition of "or products" language because "items or products" is confusing and will mislead the jury. Furthermore, RavenWhite is unaware of any precedent for the inclusion of this additional language in jury instructions in this Court.

[37]  RavenWhite's passing reference to "publications" does not accurately reflect the full scope of prior art under 35 U.S.C. § 102. *See also Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374 (Fed. Cir. 2012).  Walmart's proposal avoids any potential confusion regarding whether an internet-based source suffices as a publication.

[38]  RavenWhite objects to the bracketed language because it is unaware of any precedent for its inclusion in jury instructions in this Court. Furthermore, this sentence improperly emphasizes Walmart's invalidity theories.

[39]  RavenWhite's language applies the correct standard for the asserted patents, which are pre-AIA patents. Walmart's language incorrectly applies the AIA "First Inventor to File" standard. The Court's jury instructions in other cases uses some form of RavenWhite's language.  *See, e.g.*, *TQ Delta, LLC v. CommScope Holding Co., Inc.*, No. 2:21-CV-00310-JRG, Trial Tr. Vol 6, Dkt. 534 (E.D. Tex. Mar. 24, 2023); *Navico, Inc. v. Garmin Int'l, Inc.*, No. 2:16-CV-190, Trial Tr. Dkt. 234 (E.D. Tex. Sept. 8, 2017) (final jury instructions).

[40]  RavenWhite's proposed language is inaccurate under pre-AIA 35 U.S.C. § 102(a) and is misleading with respect to which date is relevant for assessing whether something constitutes prior art—whether it is before the filing date or more than one year before the filing date.  In particular, RavenWhite does not argue that it is entitled to a priority date before the filing date of the Asserted Patents and so the "priority date" or when "the invention was made" is the same as the filing date. Further, Walmart does not present an invalidity theory under pre-AIA 35 U.S.C. § 102(b) such that the inventors' own works or sales prior to one year before the filing date are relevant.

25

**Prior art includes any of the following items received into evidence during trial:**

1. **Any product or method that was publicly known or used by others in the United States before the filing date of the Asserted Patent;**

2. **Any product or method that was in public use or on sale in the United States before the filing date of the Asserted Patent;**

3. **Any patent that was filed before the filing date of the Asserted Patent.**

4. **Any publications having dates of public accessibility before the filing date of the Asserted Patent.**

5. **Any product or method that was made by anyone in the United States before the filing date of the Asserted Patent where the claimed invention was not later abandoned, suppressed, or concealed.**

**Walmart contends that the following items are prior art to the '823 Patent:**

- **Hinton – U.S. Patent Application Publication No. 2003/0115267**

- **Varghese – U.S. Patent No. 7,908,645**

**Walmart contends that the following items are prior art to the '402 Patent:**

- **Grannan – U.S. Patent App. Pub. 2007/0244750**

- **Yang – Segmenting Customer Transactions Using a Pattern-Based Clustering Approach by Yinghui Yang and Balaji Padmanabhan**

- **Chung – U.S. Patent No. 7,809,740**]][41][42]

Prior art also includes the general knowledge or use of an invention by a person of ordinary skill in the art RavenWhite: in the United States at the time of the invention. In evaluating the prior art to determine whether invalidity has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the Patent Office. In deciding

---

[41] Walmart's proposed instruction is consistent with AIPLA Model Patent Jury Instructions § 5.01, the Federal Circuit Bar Association Model Patent Jury Instructions § 4.3a-2 (2020).

[42] RavenWhite objects to Walmart's proposed language because it improperly emphasizes Walmart's defenses and will confuse the jury. Furthermore, RavenWhite is unaware of any precedent for this Court using this language in prior jury instructions.

26

[[**Walmart: invalidity**]] [[**RavenWhite: validity**]][43, 44], the only correct comparison is between the prior art and the limitations of the asserted claims. It is improper to compare the prior art to the accused product.

### VII.C.  Obviousness

Walmart contends that the Asserted Claims are invalid because they were obvious to a person of ordinary skill in the art as of the priority dates of the Asserted Patents.

Even though a claimed invention may not have been identically disclosed or identically described in a single prior art reference before it was made by the inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the [[**RavenWhite: applications for the**]] patents were filed[45, 46].

Walmart may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in

---

[43] RavenWhite's proposed language is incorrect.  The jury is deciding invalidity.

[44] RavenWhite's language has been used by this Court in prior jury instructions.  *See, e.g.*, *Anonymous Media Res. Holdings, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-439-JRG, Trial Tr., Vol. 5, at 1061:23-25, Dkt. 286 (E.D. Tex. Sept. 26, 2025); *Smart Path Connections, LLC v. Nokia Corp.*, No. 2:22-CV-296-JRG, Trial Tr., Vol. 5, at 1225:20-23, Dkt. 329 (E.D. Tex. Apr. 5, 2024). RavenWhite is unaware of instances of prior usage of Walmart's language in prior jury instructions.

[45] RavenWhite's proposal more accurately states the date of invention.

[46] While RavenWhite's proposed language is not incorrect, RavenWhite does not contend that either patent is entitled to an earlier priority date than its filing date.   As a result, Walmart's proposed language is an accurate statement of the priority date in this case.  Referring to the filing date is also more straightforward and less confusing as it does not introduce the additional legal framework for conception and reduction to practice that RavenWhite does not rely on or propose explaining.  Further, RavenWhite's instruction based on conception and reduction to practice is incomplete.  If RavenWhite proposes relying on that standard instead of the filing date, then RavenWhite's proposed instructions should likewise recite RavenWhite's burden of proving the date of conception and reduction to practice. *See Purdue Pharma LP v. Boehringer Ingelheim GmbH*, 236 F.3d 1359, 1365 (Fed. Cir. 2001).

the art at the time the [[**RavenWhite: invention was made**]] [[**Walmart: patents were filed**]][47, 48].

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the [[**RavenWhite: invention was made**]] [[**Walmart: patents were filed**]][49,50], the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known in the art at the time of the invention.

---

[47] Walmart admits RavenWhite's language is "not incorrect." This language applies the correct standard for the asserted patents, which are pre-AIA patents. Walmart's language incorrectly applies the AIA "First Inventor to File" standard.

[48] While RavenWhite's proposed language is not incorrect, RavenWhite does not contend that either patent is entitled to an earlier priority date than its filing date.  As a result, Walmart's proposed language is an accurate statement of the priority date in this case.  Referring to the filing date is also more straightforward and less confusing as it does not introduce the additional legal framework for conception and reduction to practice that RavenWhite does not rely on or propose explaining.  To the extent an instruction based on conception and reduction to practice is adopted, RavenWhite's instruction using that standard should likewise recite RavenWhite's burden of proving that date.  *See Purdue Pharma LP v. Boehringer Ingelheim GmbH*, 236 F.3d 1359, 1365 (Fed. Cir. 2001).

[49] Walmart admits RavenWhite's language is "not incorrect." This language applies the correct standard for the asserted patents, which are pre-AIA patents. Walmart's language incorrectly applies the AIA "First Inventor to File" standard.

[50] While RavenWhite's proposed language is not incorrect, RavenWhite does not contend that either patent is entitled to an earlier priority date than its filing date.  As a result, Walmart's proposed language is an accurate statement of the priority date in this case.  Referring to the filing date is also more straightforward and less confusing as it does not introduce the additional legal framework for conception and reduction to practice that RavenWhite does not rely on or propose explaining.  To the extent an instruction based on conception and reduction to practice is adopted, RavenWhite's instruction using that standard should likewise recite RavenWhite's burden of proving that date.  *See Purdue Pharma LP v. Boehringer Ingelheim GmbH*, 236 F.3d 1359, 1365 (Fed. Cir. 2001).

28

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention. Further, teachings, suggestions, and motivations may also be found within the knowledge of a person of ordinary skill in the art, including inferences and creative steps that a person of ordinary skill in the art would employ. A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle. The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function; (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements in the claimed invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combination of elements in the claimed invention, such as where there is a design need or market pressure to solve

29

a problem and there are a finite number of identified predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find the invention is obvious, you must find that the prior art provided a person having ordinary skill in the art a reasonable expectation of success. [[**RavenWhite:   Obvious to try is not sufficient in unpredictable technologies.**]] [[**Walmart: That something was obvious to try is not sufficient when the field of technology is unpredictable**]][51].

[[**RavenWhite: In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight; consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of the Asserted Patents themselves.**]][52, 53]

---

[51] RavenWhite's proposed language tracks the language typically used by this Court in Jury Instructions.  *See, e.g.*, Force *Mos Tech., Co., Ltd. v. Asustek Computer, Inc.*, No. 2:22-CV-460-JRG, Trial Tr., Vol. 5, at 1054:24-25, Dkt. 373 (E.D. Tex. Feb. 13, 2025); *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., at 1234:23-24, Dkt. 322 (E.D. Tex. Oct. 10, 2025); *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Trial Tr., at 73:1-2, Dkt. 592 (E.D. Tex. Jan. 26, 2024); *Ollnova Techs., Ltd. v. ecobee, Inc.*, No. 2:22-CV-072-JRG, Trial Tr., Vol. 5, at 1246:20-21, Dkt. 279 (E.D. Tex. Oct. 5, 2023); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., Vol. 5, at 31:3-4, Dkt. 286 (E.D. Tex. Jan. 13, 2023); *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18CV474, Trial Tr., at 185:4-6, Dkt. 886 (E.D. Tex. Sept. 2, 2020); *Navico, Inc. v. Garmin Int'l, Inc.*, No. 2:16-CV-190, Trial Tr., Dkt. 234 (E.D. Tex. Sept. 8, 2017). Walmart's language will confuse and mislead the jury, and RavenWhite is not aware of any precedent for using it in this Court's prior Jury Instructions.

[52] Walmart objects to this instruction as unnecessarily cumulative, resulting in overemphasis of avoiding hindsight. For example, the following is repeated nearly verbatim from above: "Do not use hindsight; consider only what was known at the time of the invention."

[53] RavenWhite's instruction is not cumulative and provides critical information to the jury, including that the claims must be considered separately in determining obviousness. As written, it mirrors language previously used by the Court in other Jury Instructions.  *See, e.g. Headwater Res., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-103-JRG, Trial Tr., Vol. 5, at 1203:19-24, Dkt. 456 (E.D. Tex. Apr. 25, 2025); *Force Mos Tech., Co., Ltd. v. Asustek Computer, Inc.*, No. 2:22-CV-460-JRG, Trial Tr., at 1055:1-6, Dkt. 373 (E.D. Tex. Feb. 13, 2025); *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., at 1234:25-1235:6, Dkt. 322 (E.D. Tex. Oct. 9, 2025); *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-

30

In making these assessments, you should take into account any objective evidence, sometimes called "secondary considerations" [[**Walmart: or "objective indicia of non-obviousness"**]][54], that may have existed at the time of the invention, and afterwards, that may shed light on whether or not the claimed invention is obvious. The following are possible secondary considerations, but it is up to you to decide whether secondary considerations of non-obviousness exist at all:

(1) whether the invention was commercially successful as a result of the merits of the claimed invention rather than the result of design needs or market pressure, advertising, or similar activities;

(2) whether the invention satisfied a long-felt need;

(3) whether the inventor proceeded contrary to accepted wisdom in the field;

(4) whether others tried but failed to solve the problem solved by the claimed invention;

(5) whether others invented the invention at roughly the same time;

(6) whether others copied the claimed invention;

---

078-JRG, Trial Tr., at 73:11-17, Dkt. 592 (E.D. Tex. Jan. 26, 2024); *Ollnova Techs., Ltd. v. ecobee, Inc.*, No. 2:22-CV-072-JRG, Trial Tr., Vol. 5, at 1246:22-1247:2, Dkt. 279 (E.D. Tex. Oct. 5, 2023); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., at 31:5-10, Dkt. 286 (E.D. Tex. Jan. 13, 2023); *Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:21-CV-00463-JRG, Trial. Tr., Vol. 6, Dkt. 496 (E.D. Tex. Apr. 21, 2023).

[54] RavenWhite objects to Walmart's added language because it unnecessarily introduces legal jargon, is redundant, and will confuse the jury. The language previously used by the Court in other Jury Instructions does not include "or objective indicia of non-obviousness." *See, e.g.*, *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., 1235:8-9, Dkt. 322 (E.D. Tex. Oct. 9, 2025); *Smart Path Connections, LLC v. Nokia Corp.*, Inc., No. 2:22-CV-296-JRG, Trial Tr., at 1225:20-23, Dkt. 329 (E.D. Tex. Apr. 5, 2024); *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG,  73:20-21, Dkt. 592 (E.D. Tex. Jan. 26, 2024); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., at 31:12-13, Dkt. 286 (E.D. Tex. Jan. 13, 2023); *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18CV474, Trial Tr., at 185:11-12, Dkt. 886 (E.D. Tex. Sept. 2, 2020).

(7) whether others accepted licenses to the Asserted Patents because of the merits of the claimed invention;

(8) whether the claimed invention achieved unexpected results;

(9) whether others in the field praised the claimed invention;

(10) whether there were changes or related technologies or market needs contemporaneous with the invention; and

(11) whether persons having ordinary skill in the art at the time of the invention expressed surprise or disbelief regarding the invention.

These factors are relevant only if there is a connection or nexus between the factors and what differentiates the claimed invention from the prior art. RavenWhite has the burden of establishing this connection or nexus.

Moreover, even if you conclude that some of the above indicators of objective evidence has been established, those factors should be considered along with all the other evidence in this case in determining whether Walmart has proven that the claimed invention would have been obvious.

## VIII.    Ineligibility

[[RavenWhite: Walmart contends that the Asserted Claims of the '823 Patent and '402 Patent are invalid for failure to claim patent-eligible subject matter. In general, a patent may be obtained on any new and useful machine, manufacture, or composition of matter or any new and useful improvement thereof. However, there are certain types of subject matter that are not eligible

32

for patenting, such as when a patent claim does not include an inventive concept beyond the abstract idea to which it is directed.[55] You, the jury, will decide the question of patent eligibility.

An inventive concept may be found in an element or combination of elements that is recited in the claim if that element or combination of elements has not been shown to be conventional. Use of conventional components in a conventional arrangement cannot supply an inventive concept. The abstract idea, here {____} for the '823 Patent and {____} for the '402 Patent, cannot supply an inventive concept. Therefore, when considering whether the '823 or '402 Patent discloses an inventive concept, you must consider what, if anything, is in the Asserted Claims beyond the abstract idea itself.[56]

To meet its burden on this issue, Walmart must show by clear and convincing evidence that the Asserted Claims of the '823 Patent and the '402 Patent involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of November 1, 2005 and November 21, 2011, respectively. The mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional. Rather, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim to involve only technology that was well-understood, routine, and conventional as of November 1, 2005 (for the '823 Patent) and November 21, 2011 (for the '402 Patent).

---

[55] *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343, 1357 (Fed. Cir. 2026) (discussing "evaluating at step two whether the claims contained an inventive concept beyond that abstract idea.")

[56] *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343, 1358 (Fed. Cir. 2026) (citing trial transcript); *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, No. 2:22-cv-00072-JRG, Trial Tr. 1206:12-20, Dkt. 279 (E.D. Tex. June 20, 2024). RavenWhite's proposal adds the additional instruction suggested by the Federal Circuit to correct the original jury instructions in *Ollnova*.

33

You should consider all the evidence presented during the trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications within the Patents-in-Suit. If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually or when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered well-understood, routine, and conventional, then the Asserted Claims are not patent eligible.]][57]

[[**Walmart: Asserted Claims may also be proven to be invalid for lack of patent-eligible subject matter. This is a separate inquiry from whether the Asserted Claims are obvious.  An Asserted Claim can be invalid for lacking patent-eligible subject matter even if the claim is new or not obvious in light of prior art.**

**A claim is invalid as ineligible if Walmart shows by clear and convincing evidence that, apart from what are referred to as abstract idea, the other elements of the Asserted Claims involve only technology that a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the time of the invention.**

**I have already determined that the Asserted Claims of the '823 Patent are directed to the abstract idea of [[___placeholder___]] and that the Asserted Claims of the '402 Patent**

---

[57] RavenWhite cites to *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, No. 2:22-cv-00072-JRG, Trial Tr. 1206:12-20, Dkt. 279 (E.D. Tex. June 20, 2024), in support of its proposed jury instructions. But RavenWhite disregards that the Federal Circuit specifically reviewed those instructions and found them to be "erroneous." *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343, 1355 (Fed. Cir. 2026).  While RavenWhite's proposed instructions correct one of the issues with the jury instructions from *Ollnova* by identifying the yet-to-be-determined abstract idea, RavenWhite's proposed instructions still recite the wrong standard for the jury's ultimate determination.  Specifically, RavenWhite proposes to ask the jury to determine whether Walmart has shown by clear and convincing evidence whether the claim elements, when taken individually or in an ordered combination, involve only technology that was well-understood, routine, and conventional.  *See supra*.  That framing is nearly verbatim the verdict form and jury instructions the Federal Circuit rejected.  *Id.* at 1355.  Walmart's proposal seeks to incorporate the Federal Circuit's complete guidance from *Ollnova* and *Optis*.

34

are directed to the abstract idea of [[___placeholder___]].  These abstract ideas cannot supply any patent-eligible subject matter.

It is your job to determine whether the remaining elements are well-understood, routine, and conventional.[58] Statements in the patent itself can provide evidence that certain claim elements are well-understood, routine, and conventional, as can other evidence such as prior art systems, publications, and witness testimony.]] [59]

## IX.    Ownership

[[RavenWhite: ]]

[[Walmart: Plaintiff RavenWhite Licensing must prove, by a preponderance of the evidence, that it owns each Asserted Patent in order to be able to assert that patent against Walmart.[60]  You must consider the question of whether Plaintiff RavenWhite Licensing owns each patent separately.]] [61]

---

[58] Walmart's proposes instruction is consistent with the Federal Circuit's recent guidance in *Optis Cellular Tech, LLC v. Apple Inc.*, 139 F.4th 1363, 1380 & n.11 (Fed. Cir. 2025) and *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343 (Fed. Cir. 2026).

[59] RavenWhite objects to Walmart's jury instructions on ineligibility as premature.  Drafting the ineligibility instruction language should be delayed until and unless the Court identifies an abstract idea, if any, to allow the jury to decide *Alice* step 2. *See Ollnova Techs Ltd. v. ecobee Techs. ULC,* Nos. 177 F.4th 1343, 1356-58 (Fed. Cir. 2026).  However, to the extent the Court deems drafting the language necessary now, RavenWhite's proposal is included in green font.

[60] Walmart's proposed language is an accurate statement of the law.  *See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378 (Fed. Cir. 2009): *Script Sec. Sols. v. Amazon.com, Inc.*, 2:15-cv-1030, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016).  Patent ownership can constitute a factual issue appropriate for resolution by the jury.  *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 28 F.4th 1247, 1252-53, 1258, 1273-74 (Fed. Cir. 2022) (affirming-in-part jury verdict on common patent ownership under substantial evidence review). To the extent the issue of unenforceability reaches the jury, the jury will need to so be instructed. To the extent the issue of unenforceability does not reach the jury, Walmart agrees to withdraw this proposed instruction.

[61] RavenWhite objects to the inclusion of Jury Instructions on patent ownership as improper. Patent ownership is generally a question of law for the Court—not the jury—to resolve.  *See, e.g.*, *Smartflash LLC v. Apple, Inc.*, No. 6:13-CV-447-JRG-KNM, 2015 WL 11072177, at *7-8 (E.D. Tex. Feb. 3, 2015) (granting motion in limine to preclude argument and evidence that plaintiffs did not own the patents-in-suit because the "issues of standing [we]re not intertwined with the

## X.    Unenforceability

[[**RavenWhite:** ]]

[[**Walmart: Walmart contends that the Asserted Patents are unenforceable because RavenWhite did not satisfy a statutory requirement that the Asserted Patents are "commonly owned" with two earlier patents not at issue in this case. This issue arises from a Patent Office procedure known as a terminal disclaimer. In effect, a terminal disclaimer allows a patent applicant to get a new patent for an invention that is similar to an older patent, so long as the applicant does not seek to extend the life of the new patent beyond the life of the older patent. The part of that process that is relevant to you in this case is that the new patent is enforceable only when the new patent and the older patent are "commonly owned."[62] If Walmart shows, by clear and convincing evidence, that one entity owned an Asserted Patent, but a different entity owned the earlier, related patent, that Asserted Patent is unenforceable.**

---

merits such that a jury should receive the disputed facts"); *Script Security Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016) (factual questions bearing on the issue of standing would be heard by and decided by the court because the "case [wa]s not one in which a merits-based issue such as inventorship [wa]s inextricably intertwined with the factual questions necessary to resolve the issue of standing"). Here, as framed in the record, the question of ownership involves purely questions of law. Therefore, it is not so intertwined with the merits that it should go to the jury. Indeed, it is the subject of Walmart's pending MSJ of Non-Enforceability and Lack of Standing (Dkt. 176), which the Court will decide prior to trial.

[62] Dkt. 176, Exs. B & E (terminal disclaimers).

36

**To show that an entity owns a patent, it is sufficient to show that an entity holds all substantial rights in that patent, including the right to sue for patent infringement, the right to control prosecution before the Patent Office, and rights to practice the patent.**[63]]][64]

---

[63] Walmart's proposed language is an accurate statement of the law.  *See Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010); *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049 (Fed. Cir. 2020) (applying the all substantial rights test to questions of common ownership in the context of obviousness-type double patenting).  Patent ownership can constitute a factual issue appropriate for resolution by the jury.  *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 28 F.4th 1247, 1252-53, 1258, 1273-74 (Fed. Cir. 2022) (affirming-in-part jury verdict on common patent ownership under substantial evidence review).  To the extent the issue of unenforceability reaches the jury, the jury will need to so be instructed.  To the extent the issue of unenforceability does not reach the jury, Walmart agrees to withdraw this proposed instruction.

[64] For the same reasons as stated above with respect to RavenWhite's objections to including an instruction on ownership, RavenWhite objects to including an instruction on unenforceability and terminal disclaimer. As framed in the record, the disputed issues involve only questions of law that will decided by the Court's on Walmart's MSJ of Non-Enforceability and Lack of Standing (Dkt. 176). The issues in dispute as identified in the briefing on the MSJ are purely questions of law.

37

## XI.    Damages

### XI.A.   Introduction to Damages

If you find that [[**Walmart: RavenWhite has proven that**]][65] Walmart infringed any [[**RavenWhite: valid claim**]][66] of the Asserted [[**RavenWhite: Patents**]] [[**Walmart: Claims and that Walmart did not prove that those Asserted Claims are invalid, ineligible, or unenforceable, then**]][67], you must then consider what amount of damages, if any, to award to RavenWhite.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. If you find that Defendant has not infringed [[**RavenWhite: any valid claim of Asserted Patents**]] [[**Walmart:, or if you find**

---

[65] RavenWhite objects to Walmart's added language because it is redundant and overemphasizes Walmart's defenses. The parties' burdens are already provided above in the Burdens of Proof section, and repeated below. Furthermore, as RavenWhite argues above and in the Proposed Verdict Form, Walmart's unenforceability defense involves questions of law and is not an appropriate issue to send to the jury. RavenWhite's language mirrors what this Court has used in prior Jury Instructions. *See, e.g.*, *Force Mos Tech., Co., Ltd. v. Asustek Comp., Inc.*, No. 2:22-CV-460-JRG, Trial Tr., Vol. 5, at 1055:21-23, Dkt. 373 (E.D. Tex. Feb. 13, 2025); *Collision Commc'ns, Inc. v. Samsung Elecs., Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., Vol. 5, at 1241:20-22, Dkt. 322 (E.D. Tex. Oct. 9, 2025); *Gen. Access Sols., Ltd. v. Cellco P'ship*, No. 2:22-CV-394-JRG, Trial Tr., Vol. 5, at 1266:12-14, Dkt. 324 (E.D. Tex. June 28, 2024); *G+ Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Trial Tr., at 77:24-78:2, Dkt. 592 (E.D. Tex. Jan. 26, 2024); *Ollnova Techs., Ltd. v. ecobee, Inc.*, No. 2:22-CV-072-JRG, Trial Tr., Vol. 5, at 1249:11-13, Dkt. 279 (E.D. Tex. Oct. 5, 2023); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., Vol. 5, at 33:19-21, Dkt. 286 (E.D. Tex. Jan. 13, 2023); *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18CV474, Trial Tr., at 190:15-17, Dkt. 886(E.D. Tex. Sept. 2, 2020); *Navico, Inc. v. Garmin Int'l, Inc.*, No. 2:16-CV-190, Trial Tr. Dkt. 234 (E.D. Tex. Sept. 8, 2017).

[66] *See supra* RavenWhite's comment at note 72.

[67] *See supra* RavenWhite's comment at note 72.

38

**that the Asserted Claims are invalid, ineligible, or unenforceable**]][68, 69], then RavenWhite is not entitled to any patent damages.

RavenWhite has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that RavenWhite establishes it more likely than not suffered as a result of Walmart's infringement. While RavenWhite is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. RavenWhite is not entitled to damages that are remote or are only speculative.

The damages you award, if any, must be adequate to compensate RavenWhite for any infringement that you may find. You may not award RavenWhite more damages than are adequate to compensate for the infringement. You must also not include any additional amount for the purposes of punishing Walmart or setting an example.

### XI.B.  Reasonable Royalty

RavenWhite seeks damages in the form of a reasonable royalty. I'll now instruct you on how to calculate reasonable royalty damages.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty. If you find that RavenWhite has established patent infringement and that

---

[68] Walmart's proposed language is an accurate recitation of Walmart's defenses.  Walmart does not assert only noninfringement and invalidity.  Rather, Walmart also undisputedly has ineligibility and unenforceability defenses.  Those defenses would likewise render RavenWhite not entitled to any damages.  To the extent any of Walmart's defenses are resolved in advance of trial, Walmart agrees to remove references to those defenses.

[69] RavenWhite objects to Walmart's added language because it is redundant and overemphasizes Walmart's defenses. Furthermore, as RavenWhite argues above and in the Proposed Verdict Form, Walmart's unenforceability defense involves questions of law and is not an appropriate issue to send to the jury. RavenWhite's language mirrors prior Jury Instructions in this Court. *See, e.g.*, *Collision Commc'ns, Inc. v. Samsung Elecs., Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., Vol. 5, at 1241:25-1242:3, Dkt. 322 (E.D. Tex. Oct. 9, 2025); *Gen. Access Sols., Ltd. v. Cellco P'ship*, No. 2:22-CV-394-JRG, Trial Tr., Vol. 5, at 1266:17-20, Dkt. 324(E.D. Tex. June 28, 2024); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., Vol. 5, at 33:24-34:2, Dkt. 286 (E.D. Tex. Jan. 13, 2023).

39

Walmart has not established patent invalidity [[**Walmart:, ineligibility, or unenforceability**]][70], [71], RavenWhite is entitled to at least a reasonable royalty to compensate it for that infringement.

A royalty is a payment made to a patent owner in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patents were valid and infringed and that both parties were willing to enter into an agreement. [[**Walmart: For the '823 Patent, the parties to the hypothetical negotiation would have been RavenWhite Security (not Plaintiff RavenWhite Licensing) and Defendant Walmart. For the '402 Patent, the parties to the hypothetical negotiation would have been SecurityInnovation (not Plaintiff RavenWhite Licensing) and Defendant Walmart.**]][72, 73]

---

[70] Walmart's proposed language is an accurate recitation of Walmart's defenses. Walmart does not assert only noninfringement and invalidity. Rather, Walmart also undisputedly has ineligibility and unenforceability defenses. To the extent any of Walmart's defenses are resolved in advance of trial, Walmart agrees to remove references to those defenses.

[71] RavenWhite objects to Walmart's added language because it is redundant and overemphasizes Walmart's defenses. Furthermore, as RavenWhite argues above and in the Proposed Verdict Form, Walmart's unenforceability defense involves questions of law and is not an appropriate issue to send to the jury.

[72] RavenWhite's objection is inapposite. *Infra* at n.64 Walmart's proposed language identifies the parties to the hypothetical negotiation and does not ask the jury to make a determination as to ownership. Such an identification is necessary here where the parties to the hypothetical negotiation are not the same as the parties in this case.

[73] RavenWhite objects to Walmart's added language as improper because ownership is generally an issue of law for the Court—not the jury—to decide. *See, e.g., Smartflash LLC v. Apple, Inc.*, No. 6:13-CV-447-JRG-KNM, 2015 WL 11072177, at *7-8 (E.D. Tex. Feb. 3, 2015) (granting

40

The reasonable royalty that you determine must be a royalty that would have resulted from this hypothetical negotiation and not simply a royalty that either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating a reasonable royalty but only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. [[**RavenWhite: Although evidence of the actual profits an alleged infringer made may be used to determine an anticipated profit at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.**]][74, 75]

The law requires that the royalty awarded to RavenWhite corresponds to the value of the alleged inventions within the accused system, as distinct from other unpatented features of the

---

motion in limine to preclude argument and evidence that plaintiffs did not own the patents-in-suit because the "issues of standing [we]re not intertwined with the merits such that a jury should receive the disputed facts"); *Script Security Sols., LLC v. Amazon.com, Inc.*, No. 2:15-CV-1030-WCB, 2016 WL 6433776 (E.D. Tex. Oct. 31, 2016) (factual questions bearing on the issue of standing would be heard by and decided by the court because the "case [wa]s not one in which a merits-based issue such as inventorship [wa]s inextricably intertwined with the factual questions necessary to resolve the issue of standing"). Here, as framed in the record, the question of ownership involves purely questions of law. Therefore, it is not so intertwined with the merits that it should go to the jury. Indeed, it is the subject of Walmart's pending MSJ of Non-Enforceability and Lack of Standing (Dkt. 176), which the Court will decide prior to trial.

[74] This language is a correct statement of the law. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014). Furthermore, it mirrors prior Jury Instructions in this Court. *See, e.g.*, *Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, No. 2:23-CV-00059-JRG-RSP, Trial Tr. Vol. 5, at 1106:6-1138:17, Dkt. 390 (E.D. Tex. Mar. 11, 2025) *Force Mos Tech., Co., Ltd. v. Asustek Comp., Inc.*, No. 2:22-CV-460-JRG, Trial Tr., at 1057:21-1058:1, Dkt. 373 (E.D. Tex. Feb. 13, 2025); *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., Vol. 5, at 1244:18-22, Dkt. 322 (E.D. Tex. Oct. 9, 2025); *Gen. Access Sols., Ltd. v. Cellco P'ship*, No. 2:22-CV-394-JRG, Trial Tr., Vol. 5, at 1268:9-13, Dkt. 324 (E.D. Tex. June 28, 2024); *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Trial Tr., Vol. 3, at 603:1-5, Dkt. 688 (E.D. Tex. Apr. 17, 2024); *G+Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Trial Tr., at 80:13-18, Dkt. 592 (E.D. Tex. Jan. 26, 2024); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., Vol. 5, at 35:16-20, Dkt. 286 (E.D. Tex. Jan. 13, 2023).

[75] Walmart objects to RavenWhite's proposed language as RavenWhite has presented no such damages theory or evidence.  Accordingly, including such an instruction would be misleading.

41

accused system or other factors such as marketing or advertising or Walmart's size or market position. Therefore, the amount you find as damages must be based on the value attributable to the patented technology [[**Walmart: alone. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment**]][76, 77]. If unpatented features contribute to an accused system, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. RavenWhite, the Plaintiff, bears the burden to establish the amounts attributable to the patented features.

You have also heard references throughout this trial as to whether RavenWhite should be entitled to a running royalty or a lump-sum royalty. If you find RavenWhite is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a fully paid-up lump-sum royalty at the time of the hypothetical negotiation. A running royalty is a fee paid for the right to use the patented inventions. If the accused system is used in the future, any damages for that use will not be addressed by you. If you decide that a running royalty is appropriate, then the damages that you award, if any, should reflect the total amount necessary to compensate RavenWhite only for Walmart's past infringement. On the other hand, a lump-sum royalty is when the infringer pays a single price for a license covering both past and future infringement. If you

---

[76] RavenWhite objects to Walmart's added language as prejudicial. For example, it uses the term "allegedly infringing."

[77] Walmart's proposed language is an accurate statement of the law and explains the meaning of apportionment.  This language is regularly included in jury instructions provided by this Court. *E.g.*, *Headwater Rsch. LLC v. Samsung Elecs. Co.*, 2:23-cv-00103-JRG-RSP, Dkt. No. 456 at 1210:8-21 (E.D. Tex. July 14, 2025).

decide that a lump-sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate RavenWhite for both Walmart's past and future infringement.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.

The parties agree that the date of the hypothetical negotiation for the '823 Patent would have occurred in or about March 2020, and the date of the hypothetical negotiation for the '402 Patent would have occurred in or about January 2023.

Some of the kinds of factors that you may consider in making your determinations are:

1. The royalties received by the patentee or the licenses of the patents-in-suit, proving or tending to prove an established royalty;

2. The rates paid by the licensee for the use of other patents comparable to the patents-in-suit. Comparable license agreements include those covering the use of the claimed invention or similar technology. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

3. The nature and scope of the license as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold to;

4. The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

43

5. The commercial relationship between the licensor and licensee, such as whether or not they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;

7. The duration of the patent and the term of the license;

8. The established profitability of the system made under the patents, its commercial success, and its current popularity;

9. The utility and advantages of the patented invention over the old modes or devices that had been used for achieving similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts;

15. The amount that a licensor (such as the patentee) and licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and

44

voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license for the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "Georgia-Pacific factors." No one of these factors is dispositive, and you can and should consider all the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept acting as normally prudent businesspeople.

### XI.C.  Reasonable Royalty – Availability of Acceptable Noninfringement Substitutes

In determining a reasonable royalty, you may consider evidence concerning the availability of acceptable noninfringing alternatives to the patented invention. [[**RavenWhite: To be an acceptable noninfringing alternative, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. You may also consider the utility and advantages of the patented technology over any noninfringing alternatives that could be used for achieving similar results**.

45

A noninfringing alternative is a way of providing the same or comparable functionality or achieving the same result that does not require using the patent.]][78, 79]

[[Walmart: An acceptable noninfringing alternative is a product that is the next best alternative that an alleged infringer can use instead of the patented invention.]][80, 81] An

---

[78] Walmart objects to this instruction as improperly imposing requirements for noninfinging alternatives for lost profits damages to reasonable royalty damages. *E.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("an available, acceptable noninfringing alternative is something the alleged infringer "could have switched to"); *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:22-cv-0125, 2023 U.S. Dist. LEXIS 220040 (E.D. Tex. Nov. 27, 2023); *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-cv-00343, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024) (explaining that the requirements for noninfringing alternatives in the context of lost profits damages do not apply to noninfringing alternatives in the reasonable royalty context); *Salazar v. HTC Corp.*, No. 2:16-cv-01096, 2018 WL 2033709, at *3 (E.D. Tex. Mar. 28, 2018) (rejecting the notion that "acceptability" in a reasonable royalty context requires any alternative to have "certain advantages," rather, "courts consider the next-best available alternative, which is not necessarily an 'acceptable' alternative that precludes recover of lost profits under *Panduit*").

[79] RavenWhite's language is helpful to educate the jury on noninfringing alternatives. It is an accurate statement of the law. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011) ("Whether the accused infringer had *acceptable* non-infringing alternatives available to it at the time of the hypothetical negotiation may be probative of a reasonable royalty for the patented technology.") (emphasis added). Moreover, RavenWhite's language is closer to that which has been used by this Court in Jury Instructions. *See, e.g.*, *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Trial Tr., Vol. 3, at 607:24-608:11, Dkt. 688 (E.D. Tex. Apr. 17, 2024); *G+Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-CV-078-JRG, Trial Tr., at 87:7-19, Dkt. 592 (E.D. Tex. Jan. 26, 2024).

[80] Walmart's proposed instruction accurately describes noninfringing alternatives in the context of a reasonable royalty analysis whereas RavenWhite's proposed instruction is directed to noninfringing alternatives in the lost profits analysis. RaveWhite seeks only a reasonable royalty and not lost profits in this case. *See supra* at n.92.

[81] RavenWhite objects to Walmart's language. *See supra* comment by RavenWhite at note 86. RavenWhite is not aware of any prior Jury Instructions by this Court using Walmart's proposed language.

46

available noninfringing alternative need not have been actually used [[**Walmart: , actually sold, or on the market**]][82] to be relevant to the hypothetical negotiation.[83]

Defendant bears the burden of proof to show that any proposed alternative is noninfringing [[**RavenWhite: and was commercially acceptable**]][84], and available at the time of the hypothetical negotiation. You should not consider for damages purposes any alternatives that Defendant has not shown were both available and [[**RavenWhite: commercially**]][85] acceptable at the time of the hypothetical negotiation.

[[**RavenWhite: The parties disagree on whether any commercially acceptable non-infringing alternatives to taking a license from RavenWhite for the patents-in-suit were available at the time of the hypothetical negotiation.**]][86]

---

[82] RavenWhite objects to Walmart's added language because it is unnecessary and will confuse the jury.

[83] Walmart's proposed instruction is consistent with Federal Circuit law and accurately describes what satisfies the noninfringing alternatives requirement in a reasonable royalty analysis. *See Grain Processing Corp. v. Am. MaizeProds. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996).

[84] Consistent with governing Federal Circuit law, this Court has previously given a substantively identical burden instruction. *See Empire Tech. Dev. LLC v. Samsung Elecs. Co.*, No. 2:23-CV-00427-JRG-RSP, Trial Tr. Vol. 4, 955:12 -15, Dkt. 308 (E.D. Tex. Nov. 7, 2025) ("Samsung bears the burden to show by a preponderance of the evidence that this non-infringing alternative would have been available at the time of the hypothetical negotiation and during the damages period."); *Touchstream Techs., Inc. v. Charter Commc'ns, Inc.*, No. 2:23-CV-00059-JRG-RSP, Trial. Tr. Vol. 5, at 1138:7-9, Dkt. 390 (E.D. Tex. Mar. 11, 2025) ("The party asserting that there is a non-infringing alternative, here Charter, has the burden to show by a preponderance of the evidence..."); *GAS v. Verizon*, No. 2:22-cv-00394-JRG, Trial Tr. Vol. 5, 1272:21-22, Dkt. 323 (E.D. Tex. Dec. 4, 2024) (referring to "viable, commercially acceptable, non-infringing alternatives"); *see also Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Trial Tr., Vol. 5, at 1250:15-20, Dkt. 322 (E.D. Tex. Oct. 9, 2025); *Finesse Wireless, LLC v. AT&T Mobility, LLC*, No. 2:21-CV-316-JRG, Trial Tr., Vol. 5, at 40:5-10, Dkt. 286 (E.D. Tex. Jan. 13, 2023).

[85] *See supra* RavenWhite's comment at note 91.

[86] *See supra* RavenWhite's comment at note 91.

47

### XI.D.   Reasonable Royalty – Comparable Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question or for rights to similar technologies. Thus, comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and alleged infringer in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license in terms of the technologies and economic circumstances of the contracting parties when you make your reasonable royalty determination.

### XI.E.   Reasonable Royalty – Commencement of Damages

In determining the amount of damages, you must determine when the damages began. Where you find that an asserted claim has been infringed and is not invalid, **[[Walmart: ineligible, or unenforceable**]][87][88] you may not award any damages for activities occurring before the

---

[87] Walmart's proposed language is an accurate recitation of Walmart's defenses.  Walmart does not assert only noninfringement and invalidity.  Rather, Walmart also undisputedly has ineligibility and unenforceability defenses.  To the extent any of Walmart's defenses are resolved in advance of trial, Walmart agrees to remove references to those defenses.

[88] RavenWhite objects to Walmart's added language as overemphasizing Walmart's defenses.  Furthermore, as RavenWhite argues above and in the Proposed Verdict Form, Walmart's

48

damages start. [[**RavenWhite: A patentee is not entitled to damages for any infringement committed more than six years prior to the filing of the claim for infringement.**]][89, 90]

The parties dispute when the damages period would have begun for the '402 patent **[[Walmart: and it is up to you to determine what that date is.**

**If RavenWhite, or any licensee of RavenWhite practices the '402 Patent, RavenWhite must prove by a preponderance of the evidence that Walmart was put on notice of its claim for patent infringement as of the date you determine.**

**The patent holder can give notice in one of two ways. The first way is to give notice to the public in general. This can be done by substantially and continuously marking all patented articles the patent holder made or sold that included the patented invention as well as all patented articles made or sold by third parties licensed to practice the patented invention. To sufficiently mark patented articles, RavenWhite must label substantially all patented articles with the '402 Patent number, including by providing a free internet address where there is a public posting that connects the patented article with the patent number or marking a webpage intrinsic to the patented method or system. In order to satisfy this type of notice, RavenWhite must prove by a preponderance of the evidence that the patent holder marked substantially all of its patented articles and that its marking was continuous throughout the damages period.**

---

unenforceability defense involves questions of law and is not an appropriate issue to send to the jury.

[89] Walmart objects to this instruction as irrelevant and likely to cause confusion regarding the appropriate start date for damages because RavenWhite does not seek damages for the full six-year back damages window and different considerations determine the damages start date.

[90] RavenWhite's statement is consistent with Federal Law, and this Court has previously given a substantively identical instruction. *See Gen. Access Sols., Ltd. v. Cellco P'ship*, No. 2:22-CV-394-JRG, Trial Tr. Vol. 5, 1274:5-8, Dkt. 324 (E.D. Tex. June 28, 2024).

49

With respect to patented articles made or sold by third parties that the patent holder licensed to practice the patented invention, RavenWhite must show that the patent holder made reasonable efforts to ensure that the patented articles were marked.

If so, notice was given as of the date the patent holder met those requirements and that date is the earliest possible start to the damages window.

A second way that the patent holder can give notice of its patents is to directly notify Walmart with a specific claim that the accused products infringe the Asserted Patents. When this type of notice is given, the date of that notice is the earliest possible start to the damages window.

If you find that neither RavenWhite nor any licensee of RavenWhite practice the '402 Patent, then the damages period begins on January 24, 2023.]][91, 92]

[[RavenWhite: If you find that no owner or licensee of the '402 patent has used the invention prior to September 15, 2023, then the damages period would have begun on January 24, 2023, when the '402 patent issued. If you find that an owner or licensee of the

---

[91] *Arctic Cat v. Bombardier Recreational Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020).

[92] RavenWhite objects to Walmart's proposed instruction as likely to confuse the jury. Walmart's marking defense, to which the proposed language relates, is subject to RavenWhite's MSJ on Walmart's Fifth Defense on the Limitation of Damages Under 35 U.S.C. § 287(a) (Dkt. 184). As explained in RavenWhite's MSJ, section 287 is triggered only if a patentee or its licensee makes, sells, or offers for sale a tangible patented article that is capable of being marked. *Arctic Cat v. Bombardier Recreational Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (the notice provisions of § 287(a) do not "apply when a patentee never makes or sells a patented article"). This is not the case with either of the Asserted Patents.

50

**'402 patent has used the invention prior to September 15, 2023, then the damages period would have begun on that date.**]][93, 94]

The parties dispute when the damages period would have begun for the '823 patent.

RavenWhite contends that the damages period begins for the '823 patent would have begun on March 17, 2020 because the '823 patent issued that day.

Walmart contends that the damages period begins for the '823 patent would have begun on January 9, 2024 because Walmart contends that it introduced the cart merge functionality that day.

\* \* \*

Now, with these instructions, we will proceed to hear closing arguments from the attorneys in the case.

\* \* \*

## XII.    Deliberations

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duty as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Again, do not decide who you

---

[93] Walmart objects to this instruction as vague and providing insufficient guidance regarding the complete legal standards for marking under 35 U.S.C. § 287.  RavenWhite's proposed instruction ignores a scenario wherein the jury finds that RavenWhite or a RavenWhite licensee does practice the '402 Patent and also ignores that § 287 provides for presuit notice through actual notice to the alleged infringer.

[94] RavenWhite's language accurately reflects the law and outlines the issue in dispute.

51

think should win and then answer the questions [[RavenWhite: accordingly]] to reach that result. I remind you once more, your answers to those questions and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, business entities, and even individuals. A patent owner is entitled to protect his rights under the U.S. Constitution and the laws of the United States, and this includes bringing a suit in a United States District Court for infringement. A defendant is equally entitled to defend itself under the laws of the United States, and this includes bringing any or all of its available defenses under the law in a United States District Court in which it is being sued. The law recognizes no distinction among types of parties. All corporations, partnerships, other business organizations, and individuals stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you are each going to have a copy of these written jury instructions to take with you. If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by giving a written note to the Court Security Officer that is signed by your foreperson and specifying which exhibit or exhibits you would like. I will then send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you should first select your foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

52

After you have reached a unanimous verdict, your foreperson is to fill in on the verdict form your answers to the questions. Then your foreperson is to sign the verdict form, date it, and notify the Court Security Officer that the jury has reached a verdict. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken over the course of the trial are only aids to your memory. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence. A juror who has not taken notes should rely on his or her own independent recollection of the evidence produced during the course of the trial and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If during your deliberations you want to communicate with me at any time, you should give a written message or question to the Court Security Officer written and signed by your jury foreperson. The Court Security Officer will then bring it to me, and I will respond as promptly as possible either in writing or by having you brought back into the courtroom where I can address you orally. I will always first disclose to the attorneys in the case your question and my intended response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you should understand that you are not required to talk with anyone about your service in this case. By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to. The choice is 100 percent yours.

53

I am now going to hand eight printed copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer who will deliver them to you in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.

54