IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC | § | |
| | § | CASE NO. 2:24-CV-00688-JRG-RSP |
| *Plaintiff,* | § | *(Lead Case)* |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC. | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| RAVENWHITE LICENSING LLC | § | |
| | § | CASE NO. 2:24-CV-00689-RWS-RSP |
| *Plaintiff,* | § | *(Member Case)* |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| WALMART INC. and WAL-MART STORES TEXAS, LLC | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## WALMART'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* (Dkt. 223)

█████████████████████████████

## TABLE OF CONTENTS

**Response to Pla's MIL No. 1.** Preclude Walmart from presenting any evidence, argument, or testimony concerning financial terms of license agreements or patent sales not relied upon by the parties' experts to calculate a reasonable royalty.......................................................1

**Response to Pla's MIL No. 2.** Preclude Walmart from presenting any evidence, argument, or testimony concerning non-infringing alternatives ("NIAs") ...............................................7

**Response to Pla's MIL No. 3.** Preclude Walmart from presenting any evidence, argument, or testimony comparing the accused products to third party products...................................11

**Response to Pla's MIL No. 4.**  Preclude evidence, testimony, or argument as to other lawsuits related to entities owned by Dr. Markus Jakobsson or statements that Dr. Jakobsson has created shell companies, a web of companies, or other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson.....................12

███████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Comm's, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ................................................................................. 2, 6

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
616 F.3d 1283 (Fed. Cir. 2010) ............................................................................. 11, 12

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) ................................................................................... 10

*Arigna Tech. Ltd. v. Nissan Motor Company, Ltd.*,
No. 2:22-cv-00126-JRG-RSP, Dkt. 323 (E.D. Tex. Oct. 24, 2022) .......................... 14

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ..................................................................................... 2

*Cooper Excavation, Inc. v. CDI Contractors, Inc.*,
No. 4:23-cv-900-SDJ, 2026 WL 945615 (E.D. Tex. Mar. 2, 2026) ........................... 11

*Correct Transmission, LLC v. Nokia of America Corp.*,
No. 2:22-cv-00343-JRG-RSP, 2024 WL 1289821 (E.D. Tex. Mar. 26, 2024) ..................... 8, 9

*Daingean Techs. Ltd. v. T-Mobile USA, Inc.*,
No. 2:23-cv-00347-JRG-RSP, Dkt. 348 (E.D. Tex. Mar. 10, 2025) .......................... 14

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................................... 1, 2, 4

*Grain Processing Corp. v. American Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ..................................................................................... 8

*GREE, Inc. v. Supercell Oy*,
No. 2:19-cv-00071-JRG-RSP, 2020 WL 4288345 (E.D. Tex. July 20, 2020) ............ 7

*Leggett & Platt, Inc. v. Yankee Candle Co.*,
No. 4:06-cv-366-Y, 2008 WL 8792255 (N.D. Tex. Apr. 4, 2008) .............................. 11

*Mars, Inc. v. Coin Acceptors, Inc.*,
527 F.3d 1359 (Fed. Cir. 2008) ..................................................................................... 7

*PalTalk Holdings, Inc. v. Microsoft Corp.*,
No. 2:06-cv-00367, 2009 WL 10677719 (E.D. Tex. Mar. 8, 2009) ............................. 7

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-cv-00084-JDL, 2018 WL 6266300 (E.D. Tex. Nov. 15, 2018) ................... 4, 6

ii

███████████████████████████

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................................................ 4

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009) .............................................................................................. 2

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
  No. 2:17-cv-00651-JRG, 2019 WL 2267212 (E.D. Tex. May 28, 2019).................................. 6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) .............................................................................................. 2

*WellcomeMat, LLC v. Aylo Holdings S.à r.l.*,
  No. 2:23-cv-00483-JRG-RSP, Dkt. 350 (E.D. Tex. Oct. 20, 2025) ....................................... 12

*Zygo Corp. v. Wyko Corp.*,
  79 F.3d 1563 (Fed. Cir. 1996) ................................................................................................ 8

Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC (collectively, "Defendants" or "Walmart") urge the Court to reject all arguments raised in Plaintiff RavenWhite Licensing LLC's ("RavenWhite" or "Plaintiff") Motions *in Limine* (Dkt. 223).

* * * * *

**Response to Pla's MIL No. 1.        Preclude Walmart from presenting any evidence, argument, or testimony concerning financial terms of license agreements or patent sales not relied upon by the parties' experts to calculate a reasonable royalty.**

Plaintiff improperly seeks to prevent Walmart from introducing or eliciting any evidence, argument, or testimony regarding license agreements that are expressly contemplated by *Georgia-Pacific* Factors 1 and 2, i.e., "[t]he royalties received by the patentee for the licensing of the ***patent in suit***," and "[t]he rates paid by the licensee for the use of other ***patents comparable to the patent in suit***." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added). Plaintiff also seeks to exclude licenses that are not technically comparable but are relevant to the damages analysis under *Georgia-Pacific* Factor 3, "[t]he nature and scope of the [hypothetical] license." *Id.* Plaintiff's arguments are both contrary to law and internally inconsistent. The Court should deny Plaintiff's MIL No. 1.

As an initial matter, *Georgia-Pacific* contemplates a holistic approach to the calculation of reasonable royalty damages that takes into consideration fifteen enumerated (but non-exclusive), commercially-driven factors. But ***none of these factors provides a direct economic input*** into a party's damages calculation as Plaintiff's MIL suggests is required. Nor would such a reading of *Georgia-Pacific* make sense—under Plaintiff's logic, once "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit" are established under *Georgia-Pacific* Factor 2, the other *Georgia-Pacific* factors would become irrelevant and the analysis would end—all that

1



would remain is multiplication.[1] This is not the law.

### *Georgia-Pacific* Factors 1 and 2 Licenses

The technical comparability of Plaintiff's ▌ license agreement[2] with �_▌▌▌ for both Asserted Patents is uncontested. And while Dr. Smith addressed the technical comparability of the ▌▌▌▌▌▌▌▌▌▌), he did not address or rebut Dr. Almeroth's opinions regarding the comparability of the (1) ▌▌▌▌▌▌▌▌▌▌▌▌ (2) ▌ ▌▌▌▌▌▌▌▌▌▌, and (3) ▌▌▌▌▌▌▌▌▌▌▌. Under *Georgia-Pacific* Factors 1-2, these agreements are expressly relevant to the damages analysis in this case.[3]

Nevertheless, Plaintiff's MIL seeks to exclude evidence, argument, and testimony regarding these agreements because Mr. Haas (1) did not "use" them as "direct economic inputs" to his calculation (a sweeping non-existent legal proposition for which Plaintiff cites no authority), or (2) cherry-picked which agreement's number he would use (in a manner that purportedly benefited Walmart). Dkt. 223 at 3. At core, however, Plaintiff seeks to exclude *all* of these licenses because the amounts paid for the Asserted Patents and comparable technologies range from ▌

---

[1] Plaintiff's artificially-constrained reading of *Georgia-Pacific* Factor 2 also fails to explain how "economic inputs" into the royalty analysis would be addressed by multiple, technically-comparable licenses with different structures (lump-sum or running royalty) or rates.

[2] Plaintiff consistently characterizes this agreement as merely a "covenant not to sue," but the Federal Circuit has found that the difference between an unconditional covenant not to sue ▌ ▌▌▌▌▌▌▌▌▌ and a license "is only one of form, not substance – both are properly viewed as 'authorizations.'" *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009).

[3] Moreover, as a general rule, "[t]he degree of comparability of [ ] license agreements as well as any failure on the part of [a party's] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Comm's, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *see also Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373-74 (Fed. Cir. 2020) (same); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331 (Fed. Cir. 2014) (same).

██████████████████████████████████████████

█████████████ to ██████████████████████ That Plaintiff does not like the numbers in these agreements does not render them confusing, unduly prejudicial or preemptively excludable.

*First*, Plaintiff argues that four of the "five" technically comparable agreements identified by Dr. Almeroth should be excluded because *Mr. Haas did not use* their payment amounts. Dkt. 223 at 3-4. Plaintiff's argument is nonsense—Mr. Haas used the payment amount from ██████ ██████ (one of the "five") because it had the *highest* payment amount of all technically-comparable agreements—██████ ██████. The other agreements had (sometimes substantially) lower payment amounts, ranging from ██████████ to ████████████[4] Ex. 1, Haas Rpt., ¶¶ 81, 86, 89, 93. Had Mr. Haas used the ██████████ payment amount, then Mr. Haas would have calculated Plaintiff's damages at ██ (and Plaintiff would have complained). Alternatively, had Mr. Haas used all of the payment amounts, as Plaintiff appears to suggest he should have done, or had he used an average of the payment amounts, then Walmart's reasonable royalty calculation would have been far lower (and Plaintiff would have complained). Plaintiff faults Mr. Haas for taking a conservative approach and using the highest possible payment amount to adjust his reasonable royalty ranges for both Asserted Patents ████████████████████ ██████████. Ex. 1, Haas Rpt. ¶¶ 300-302 (*increasing upper bound* for '402 Patent reasonable royalty from ████████████████ and using ██████████ as *lower bound* of reasonable royalty range for '823 Patent). Mr. Haas's decision to give Plaintiff the benefit of the doubt by using the highest payment is not a proper basis for exclusion; Plaintiff just seeks to exclude highly-probative information for which it has no credible cross-examination.

---

[4] Dr. Almeroth also identified the ██████ agreement as technically comparable to both Asserted Patents. Ex. 2, Almeroth Reb. Rpt. ¶¶ 524-534. That agreement had a payment amount of ██████ ██████████████████. Ex. 1, Haas Rpt. ¶ 107. Dr. Smith offered no opinion on its technical comparability. Ex. 2, Almeroth Reb. Rpt. ¶ 526.

3

████████████████████████████████████████████████████████

**Second**, Plaintiff complains that Mr. Haas did not "analyze" the ████████████ ██████████████████████ agreements for economic comparability and used them to "anchor the jury to irrelevant baseline numbers." Dkt. 223 at 3-4. But each of those agreements is relevant to *Georgia-Pacific* Factors 1 and 2. Moreover, Mr. Haas did analyze them, as he discussed key terms from each agreement and the reasons why each provides meaningful context to the hypothetical negotiation. Ex. 1, Haas Rpt., ¶¶ 75-95, ¶¶ 105-107. Plaintiff's complaint is not valid basis for exclusion. *See Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, 2018 WL 6266300, at *3-4 (E.D. Tex. Nov. 15, 2018) (licenses entered into under different circumstances may be used in a *Georgia-Pacific* analysis, with differences in circumstances going to weight rather than admissibility).

**Third**, Plaintiff argues that ████████████████████ has "zero probative value" because ███████████████████████████████████████████ and ████████████████ the Asserted Patents. Dkt. 223 at 4. But the direct evidence is that RavenWhite ████████████, and ██████████ did as well—and ██████████████ Similarly, Plaintiff argues that Walmart's litigation settlements with ████████████████████████ ██████ "lack probative value." *Id.* But, settlement licenses can be—and often are—the "most reliable" evidence in the record regarding a reasonable royalty analysis. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). Moreover, Mr. Haas considered and discussed the litigation contexts behind each of the technically comparable settlement agreements Plaintiff identifies, as well as their negotiation. Ex. 1, Haas Rpt., ¶¶ 76-81 ████████████ ¶ 84 ████████████ ██████████████ ¶ 87 ██████ ¶ 90 ██████████████ The fact that these are "settlement" agreements is not a basis for exclusion. *See ResQNet.com*, 594 F.3d at 872. Likewise, Plaintiff's ***motivation to***

████████████████████████████████████████████████

█████████████ **both Asserted Patents** is an issue for cross-examination, not wholesale exclusion based on Plaintiff's trial-driven thematics.

**Fourth**, after arguing that four of the "five" technically-comparable agreements should be excluded because Mr. Haas ***did not use their payment amounts***, Plaintiff complains that Mr. Haas's use of the ████████████████████ (the fifth of the "five") should be excluded because Mr. Haas ***used its payment amount*** to adjust his reasonable royalty ranges for both Asserted Patents. Dkt. 223 at 5. Plaintiff argues this was an "arbitrary" selection by Mr. Haas used to improperly "manufacture" a damages range. *Id.* But as discussed above, this was by no means arbitrary. Mr. Haas explained the economic reasons for this choice: "Taking into consideration as a reasonableness check these additional fee inputs … related to technically comparable licenses, as well as the track records and preferences of the hypothetical negotiators, I have considered it to be appropriate to broaden the range of reasonable royalty compensation that would have been acceptable to both parties in the hypothetical negotiations." Ex. 1, Haas Rpt. ¶ 302.

Plaintiff's complaint that Mr. Haas did not opine on or explain why the ███████████ license was "more reliable" that the ██████████ license or the ████████ license is likewise illogical. Dkt. 223 at 5. First, the █████████ license is certainly relevant and probative because it ████████████████, as discussed above. But, if Mr. Haas had used its payment terms, then the ***upper and lower limits*** of Mr. Haas's reasonable royalty calculation ███████████████, and Plaintiff would have faulted Mr. Haas for using it. Second, as to the ████████, Mr. Haas properly deferred to Dr. Almeroth on issues of technical comparability, and cited to "Dr. Jakobbson's [sic] testimony that ████████████████████████

████████████████████████████████████████████████

████." Ex. 3, Haas Tr. 50:8-51:5; Ex. 1, Haas Rpt. ¶ 113; *see also* Dkt. 184, Ex. 2 at 251:22-24.

5

█████████████████████████████████████████████

On that record, Plaintiff cannot reasonably fault Mr. Haas for not having identified the ████

agreement as "more reliable" than ████████████. And in any event, challenges to economic

comparability to go the weight of the evidence, not its admissibility. *Uniloc USA, Inc. v. Samsung*

*Elecs. Am., Inc.*, No. 2:17-cv-00651-JRG, 2019 WL 2267212, at *13 (E.D. Tex. May 28, 2019)

(citing *ActiveVideo*, 694 F.3d at 1333).

***Finally***, Plaintiff's complaints about Mr. Vorchheimer's testimony regarding ███████

███████, Dkt. 223 at 5-6, are irrelevant. It was Dr. Almeroth's and Mr. Haas's responsibility as

expert witnesses—not Mr. Vorchheimer's—███████████████████████████████

███████████████████████████ to the hypothetical negotiation. And

both experts determined that it was. The "'degree of comparability' is a factual issue, not a flaw in

methodology, and is best addressed by cross examination, rather than exclusion." *See Realtime*,

2018 WL 6266300, at *3 (citing *VirnetX*, 767 F.3d at 1331); *see also ActiveVideo*, 694 F.3d at

1333.

### *Georgia-Pacific* **Factor 3 Licenses**[5]

Plaintiff seeks to exclude "payment terms" from "other" agreements produced by Plaintiff

and Walmart that Dr. Almeroth did not identify as technically comparable, including the

"introduction or mention" of such agreements. Dkt. 223 at 2-3. Plaintiff does not identify any

specific licenses in connection with its request; it simply argues that the "dollar values of these

agreements are not relevant" and the mere "mention of such agreements" will confuse and mislead

---

[5] Walmart stipulates that it will not introduce or elicit any evidence, argument, or testimony regarding the ***dollar amounts*** of license agreements that have not been found technically comparable by Walmart's technical expert, Dr. Almeroth. However, Walmart maintains that testimony by ████████████████████████, should not be excluded; it is a highly-probative party admission.

the jury." *Id.* at 2. But the mere fact that licenses are not technically comparable is insufficient to warrant exclusion.

Courts allow damages experts to rely on non-comparable agreements to inform *Georgia-Pacific* Factor 3, i.e., the nature and scope of the hypothetical license. *See*, *e.g.*, *PalTalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-cv-00367, 2009 WL 10677719, at *2 (E.D. Tex. Mar. 8, 2009) (denying MIL and finding non-comparable licenses relevant to reasonable royalty assessment under Factor 3). For example, damages experts may use non-comparable licenses to establish the form a reasonable royalty would take in a hypothetical negotiation between the parties, or to provide information about the parties' licensing policies and competitive positions. *See, e.g., id.*, 2009 WL 10677719, at *2 (expert testimony regarding "framework and structure of royalty rates that [defendant] has agreed to pay for rights to certain technology … will likely assist the trier of fact"); *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00071-JRG-RSP, 2020 WL 4288345, at *4 (E.D. Tex. July 20, 2020) (allowing expert to rely on non-comparable licenses and testify as to the form of reasonable royalty (i.e., lump sum vs. running royalty). Such issues should be addressed through vigorous cross-examination, not preemptive exclusion. *See id.*

**Response to Pla's MIL No. 2.        Preclude Walmart from presenting any evidence, argument, or testimony concerning non-infringing alternatives ("NIAs").**

Plaintiff's MIL No. 2 argues that evidence relating to NIAs must be excluded because Walmart's damages expert, Mr. Haas, "abandons them in his quantitative analysis." Dkt. 223 at 6. But the Federal Circuit in *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359 (Fed. Cir. 2008), explicitly stated that it is "***wrong as a matter of law*** to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative." *Id.* at 1373 (emphasis added). Under *Mars, Inc.*, Mr. Haas's analysis would have been excludable had he used cost inputs from NIAs as quantitative inputs into his damages calculations—because

7

doing so would have driven down reasonable royalty damages using a legally-impermissible cap.[6]

Plaintiff's MIL No. 2 invites legal error by arguing NIAs must be excluded because "[n]one of [Mr. Haas's] corrections or calculations is based on an NIA." Dkt. 223 at 7.

Indeed, the Federal Circuit has held that the existence of a non-infringing alternative "is a factor relevant to the determination of a proper royalty during hypothetical negotiations." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996). And here, both damages experts recognize that evidence regarding NIAs is ***relevant*** to the hypothetical negotiation and ***important*** to the reasonable royalty analysis. Plaintiff's expert, Mr. Weinstein, acknowledges that the "benchmark or proxy product theory" of damages "endorsed" by the Federal Circuit "involves comparing the value of infringing features based upon comparable features in the marketplace, or valuing infringing features by comparing the accused product to non-infringing alternatives." Ex. 4, Weinstein Rpt. ¶ 29. Mr. Haas states that "a reasonable royalty should: … (5) account for available non-infringing alternatives, if present." Ex. 1, Haas Rpt. ¶ 144.

Recognizing their relevance and importance, Plaintiff's and Walmart's technical and damages experts each discussed NIAs in their expert reports. First, Dr. Almeroth addressed NIAs

---

[6] Plaintiff cites this Court's Memorandum Order in *Correct Transmission, LLC v. Nokia of Am. Corp.*, which in turn cites *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999), for the proposition that an expert's failure "to provide any financial analysis of the impact of a non-infringing alternative to a reasonable royalty" necessitates exclusion. Dkt. 223 at 7 (internal quotations omitted). Respectfully, *Grain Processing Corp.*, is a decision concerning non-infringing alternatives and their "availability" in the context of ***lost profits*** damages. 185 F.3d at 1349. *Grain Processing Corp.* does not address the necessity of, or limitations on, capping reasonable royalty damages based on a non-infringing alternative as suggested by Plaintiff and cited in this Court's order in *Correct Transmission*. *See* No. 2:22-cv-00343-JRG, Dkt. 244 at 8. *Grain Processing Corp.* merely states, in the ***context of summarizing the proceedings below***, that "[t]he district court also found that American Maize's production cost difference between infringing and noninfringing Lo–Dex 10 effectively capped the reasonable royalty award" after finding lost profits were unavailable. *Grain Processing Corp.*, 185 F.3d at 1347. The Federal Circuit did not address whether the district court's reasonable royalty analysis was proper.

to the asserted claims of the '823 Patent in his Opening Report on invalidity. Ex. 5, Almeroth Op. Rpt., ¶¶ 516-519. Dr. Smith and Mr. Weinstein also addressed the NIAs Walmart identified in response to Interrogatory No. 26 in their reports. Ex. 6, Smith Op. Rpt., ¶¶ 114-140; Ex. 4, Weinstein Rpt., ¶¶ 104-107. Dr. Almeroth also provided a non-infringing alternative to the '402 Patent after reviewing Dr. Smith's report on infringement and ▮▮▮▮ cited therein.[7] *See* Ex. 2, Almeroth Reb. Rpt., ¶ 552-554. Dr. Almeroth and Mr. Haas responded to Dr. Smith's and Mr. Weinstein's opinions, respectively, regarding NIAs in their rebuttal reports.[8] Ex. 2, Almeroth Reb. Rpt., ¶¶ 535-554, 577; Ex. 1, Haas Rpt., ¶¶ 256-259. Finally, Plaintiff's rebuttal expert, Dr. Jansen, rebutted Dr. Almeroth's opinions on NIAs. Ex. 7, Jansen Reb. Rpt., ¶¶ 340-360.

While all but the last two sentences in Plaintiff's MIL No. 2 focus on Mr. Haas, as written, Plaintiff's MIL No. 2 would preclude Walmart's counsel from cross-examining Dr. Smith and Mr. Weinstein on errors and omissions in their opinions and methodologies, including those related to NIAs. For example, Dr. Almeroth critiques and rebuts Dr. Smith's conclusion that there are no commercially acceptable non-infringing alternatives to the Asserted Patents. Ex. 2, Almeroth Reb. Rpt., ¶¶ 535-554. Mr. Haas identifies "errors, omissions, and unsupported assumptions" that render Mr. Weinstein's opinions incomplete and unreliable for the purposes of determining reasonable royalty damages, including the fact that Mr. Weinstein "ignored acceptable non-infringing

---

[7] As Dr. Almeroth testified, "So, generally, the noninfringing alternatives and the additional discussion of NIAs comes about because of the details that I first became aware of based on Dr. Smith's infringement report." Ex. 8, Almeroth Tr. 227:19-23.

[8] Plaintiff's reliance on *Correct Transmission* is misplaced. There, defendant Nokia did not disclose NIAs during discovery, and its damages expert did not address NIAs in his report. *See Correct Transmission, LLC v. Nokia of America Corp.*, No. 2:22-cv-00343-JRG-RSP, 2024 WL 1289821, at *4 (E.D. Tex. Mar. 26, 2024). In contrast, here, Walmart disclosed NIAs in its interrogatory responses, and all of Plaintiff's and Walmart's technical and damages experts addressed NIAs in their reports. In view of these key differences, *Correct Transmission* does not support Plaintiff's position.

alternatives that were available to Walmart." Ex. 1, Haas Rpt. ¶ 16; *see also id.* at 117-119, § V.F (entitled "Mr. Weinstein does not account for Walmart's ability to utilize non-infringing alternatives"). Walmart's counsel should be allowed to explore the credibility and reliability of Dr. Smith's and Mr. Weinstein's opinions and analysis on all issues addressed in their reports, including their opinions that Walmart's NIAs are not commercially acceptable, through vigorous cross-examination.

Plaintiff also criticizes Mr. Haas's opinions for failing to "establish" that the NIAs were available and acceptable to Walmart. *See* Dkt. 223 at 7. But Walmart's technical expert, Dr. Almeroth, addressed the availability and acceptability of those NIAs in his own reports. *See* Ex. 5, Almeroth Op. Rpt., ¶¶ 516-519 & Ex. 2, Almeroth Reb. Rpt., ¶¶ 536-551 (rebutting Dr. Smith's opinions that there are no commercially acceptable NIAs). And Mr. Haas properly relied on discussions with Dr. Almeroth to support his own opinions that "Walmart could modify its system" to accommodate NIAs. *See* Ex. 1, Haas Rpt., ¶¶ 258-259, nn.504-507, nn.509-510 (citing "Discussions with Dr. Almeroth"). It was not necessary for Mr. Haas to reiterate Dr. Almeroth's opinions on availability and acceptability of NIAs in his own report. Moreover, it remains the province of the jury to credit or discredit the opinions of Dr. Almeroth and Mr. Haas as to the feasibility, commercial acceptability, cost and availability of their proposed NIAs. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314-15 (Fed. Cir. 2014) (discussing jury's role "as the arbiter of the weight and credibility of expert testimony").

***Finally***, Plaintiff did not challenge Mr. Haas's opinions on NIAs under *Daubert* or Rule 702. Yet, Plaintiff's attempt to exclude Walmart's NIAs stems from a direct ***challenge*** to Mr. Haas's ***methodology***, which is a *Daubert*/Rule 702 issue. Plaintiff's MIL No. 2, thus, is an untimely *Daubert* motion masquerading as a *limine*, and it should be construed—and denied—as

10



such. *See*, *e.g.*, *Cooper Excavation, Inc. v. CDI Contractors, Inc.*, No. 4:23-cv-900-SDJ, 2026 WL 945615, at *3 (E.D. Tex. Mar. 2, 2026) ("Though styled as a motion in limine, Defendants' request to exclude expert testimony properly belongs in a *Daubert* motion."); *see also Leggett & Platt, Inc. v. Yankee Candle Co.*, No. 4:06-cv-366-Y, 2008 WL 8792255, at *1 (N.D. Tex. Apr. 4, 2008) (denying MIL as "untimely filed *Daubert* motion … styled as a motion in limine").

**Response to Pla's MIL No. 3.        Preclude Walmart from presenting any evidence, argument, or testimony comparing the accused products to third party products.**

Plaintiff has licensed the Asserted Patents ███████████████████████. Ex. 9 (███████████████). And Plaintiff granted ███████████████████████████████████████████████████████████████████████. Ex. 10, Holmes Tr. 29:14-30:18. To assess comparability, Walmart's technical expert reviewed the ███████████████████ and compared it to the accused Walmart system to see if Walmart's system was technically comparable (and thus also eligible for a ███████████).

Specifically, Dr. Almeroth reviewed Plaintiff's infringement allegations in ███████████ complaint and contentions; articles about the ███████████████; ███████████ patents related to its accused system; and parts of the ███████████████ detailing how its accused system works. Ex. 2, Almeroth Reb. Rpt., ¶¶ 434-438. After reviewing that information (as well as voluminous information about the Walmart system), Dr. Almeroth concludes "there are substantial similarities between the ████████████████████████████████████." *Id.*, ¶¶ 437-438. Under these circumstances—where Plaintiff alleges that ███ ██████████████████████████████████—it is permissible to compare that ███████████ ███████████ to the accused Walmart system. *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1289 (Fed. Cir. 2010) ("when a commercial product meets all of the claim

████████████████████████████████████████████████

limitations, then a comparison to that product" is appropriate); *WellcomeMat, LLC v. Aylo Holdings S.à r.l.*, No. 2:23-cv-00483-JRG-RSP, Dkt. 350 at 4 (E.D. Tex. Oct. 20, 2025) (denying MIL to preclude evidence comparing accused and non-accused products "as to both infringement and damages, in view of the narrow exception made in *Adams Respiratory* … [to] the Court's Standing MIL No. 18").

Notwithstanding that Plaintiff both ███████████████████████████ and filed a lawsuit alleging such infringement, Plaintiff's expert, Dr. Smith, pivoted during his deposition to suggest that ███████████████████████                    which Plaintiff may use to justify ███████████████████████. Ex. 11, Smith Tr. 102:24-103:14 ████████████████████████████████████████ To the extent Plaintiff attempts to ██████████████████████████████████████████, Walmart should be permitted to rebut that position. Dr. Almeroth's opinion—namely, "there are substantial similarities between the ██████████████████████████████ ████████████ (*i.e.*, if ███████████████ the '402 and '823 Patents, then ███████ ████████████)"—shows that ██████████████████████████ ████████████████ is just pretext. Ex. 2, Almeroth Reb. Rpt., ¶¶ 437-438. Should Plaintiff "open the door" on this issue, Walmart ought to be permitted to respond.

**Response to Pla's MIL No. 4.        Preclude evidence, testimony, or argument as to other lawsuits related to entities owned by Dr. Markus Jakobsson or statements that Dr. Jakobsson has created shell companies, a web of companies, or other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson.**

Plaintiff's MIL No. 4 should be denied. Dr. Jakobsson owns or manages a number of entities that are relevant to this case. Those entities include

█████████████████████████████████████████████████████████

; and ██████████████████████████████████

████████████. Plaintiff asks the Court to preclude references to "shell companies," a "web of companies," or "other statements that would unduly emphasize the number of companies owned or managed by Dr. Jakobsson," without defining what that phrase is intended to cover. References to "shell companies" are precluded by Court MIL No. 11, and Walmart has not used the term "web of companies" in its filings, expert reports, depositions, or briefs. Indeed, Plaintiff does not offer a single example of any testimony, exhibit, or argument from Walmart that it contends would cross this line. Walmart should not be limited in how it chooses to accurately and factually describe those entities or Dr. Jakobsson's interests therein.

Plaintiff's *limine* is broad enough to sweep in core evidence about the Jakobsson entities. For example, entities that Jakobsson owns or controls are

, as noted above. Walmart is entitled to                    for the jury. Evidence about the entities goes to the value of the patented inventions, which matters in a case where Plaintiff is seeking ██████████████ in running royalty damages. For example, whether these entities used, licensed, or received any interest in the Asserted Patents shows whether the patents have generated any real world value. Likewise, licenses entered into by the Jakobsson entities, such as the ████████████████████████████████████████████████████

████████ have been addressed by both damages experts in this case. Plaintiff's *limine* would exclude, to Walmart's detriment, highly relevant contextual evidence for those agreements: the litigations leading to those settlements. Also, if Plaintiff presents itself to the jury as a small, unsophisticated actor, Walmart should be permitted to rebut it with evidence of other patent litigation brought by Jakobsson entities.

13

Plaintiff cites authority that does not support its requested relief. For example, the *Daingean* order that Plaintiff cites was entered by ***agreement of the parties***, so it was not a ruling on a disputed issue like here. *See Daingean Techs. Ltd. v. T-Mobile USA, Inc.*, No. 2:23-cv-00347-JRG-RSP, Dkt. 348 at 2 (E.D. Tex. Mar. 10, 2025) ("This motion *in limine* is **GRANTED** by agreement of the parties"). Plaintiff also cites *Arigna Tech. Ltd. v. Nissan Motor Company, Ltd.*, No. 2:22-cv-00126-JRG-RSP, Dkt. 323 (E.D. Tex. Oct. 24, 2022), and the Court's Standing MIL No. 13, which relates to either party's other litigations, arbitrations and parallel proceedings in other courts or tribunals. But neither the *Arigna* order nor Court MIL No. 13 supports the exclusion of highly relevant evidence such as assignment chains, commercial use, licensing history, ownership interests, and litigation settlement agreements ***involving the Asserted Patents***. The Court should deny Plaintiff's MIL No. 4.

14

████████████████████████████████████

Dated:  August 3, 2026

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

████████████████████████████████

Facsimile: (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile: (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B

16

████████████████████████████████

Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile:  (903) 534-1137

*Counsel for Defendants Walmart Inc. and
Wal-Mart Stores Texas, LLC*

██████████████████████████

███████████████████████████████████
████████████

█████████

## CERTIFICATE OF SERVICE

I hereby certify that, on August 3, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record who have consented to electronic service.

*/s/ Amir H. Alavi*
Amir H. Alavi

17