██████████████████████

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| RAVENWHITE LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00688-JRG-RSP<br>(Lead Case) |
| RAVENWHITE LICENSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00689-JRG-RSP<br>(Member Case)<br><br>██████████████ |

**PLAINTIFF'S RESPONSE TO WALMART'S**
**<u>OPPOSED OMNIBUS MOTIONS *IN LIMINE*</u>**

██████████████████████████████████

# TABLE OF CONTENTS

Response to Walmart MIL No. 1:  Preclusion of evidence, testimony, or argument regarding Walmart's total revenues for the accused products, unapportioned revenues on accused products, unapportioned profits on accused products, revenues on unaccused activities, profits on unaccused activities, business-unit level revenues (e.g., revenues for ██████████████████████████████████), total company revenues, total company profits, business-unit level profits (e.g., summed profits for █████████████ or summed profits for ████████████████████████ ██████ ), and other irrelevant large financial numbers. ............................................... 1

    A. RavenWhite will present the jury with apportioned royalty bases for each of the asserted patents. ..................................................................................... 2

    B. Percentages, rates, and qualitative information are not "large numbers" and thus cannot "unfairly skew the damages horizon for the jury."......................................... 2

    C. Walmart's complaints about unaccused revenue are not a separate evidentiary concern. ..................................................................................................... 3

Response to Walmart MIL No. 2: Preclusion of evidence, testimony, or argument regarding lack of commercial success for any Holmes entity attributable to Holmes' ████ ████████████. ........................................................................................................ 4

Response to Walmart MIL No. 3: Preclusion of evidence, testimony, or argument as to inflammatory comparisons of the burden of proof standards to other areas of the law.................. 5

Response to Walmart MIL No. 4: Preclusion of evidence, testimony, or argument regarding an expert's prior retention by a party's counsel in other matters. ................................. 6

Response to Walmart MIL No. 5: Preclusion of evidence, testimony, or argument about the "Walmart Effect" (i.e., describing Walmart as a dominant, "big box," or large retailer that hurts small businesses; engages in business practices harmful to small businesses; or causes store closures, lower wages, and reduced competition) or any suggestion that Walmart ███████████████████████████████████████. ........................ 6

████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daingean Techs. Ltd. v. AT&T Inc.*,
   No. 2:23-cv-00123-JRG-RSP (E.D. Tex. July 25, 2025) .......................................................1, 6

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-CV-72 DF, 2010 WL 11538713 (E.D. Tex. Feb. 26, 2010)......................................7

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2004)...............................................................................................4

*Maxell, Ltd. v. Apple Inc.*,
   No. 5:18-CV-0036-RWD, 2021 WL 3021253 (E.D. Tex. Feb. 26, 2021) ...............................8

*Miles Labs., Inc. v. Shandon Inc.*,
   997 F.2d 870 (Fed. Cir. 1993)..................................................................................................4

███████████████████████████████████████

For the following reasons, each of Walmart's motions *in limine* should be denied.

**Response to Walmart MIL No. 1:  Preclusion of evidence, testimony, or argument regarding Walmart's total revenues for the accused products, unapportioned revenues on accused products, unapportioned profits on accused products, revenues on unaccused activities, profits on unaccused activities, business-unit level revenues (e.g., revenues for ██████ ██████ or ███████████████████████████), total company revenues, total company profits, business-unit level profits (e.g., summed profits for ████████████ or █████████████████████████████████), and other irrelevant large financial numbers.**

RavenWhite has already agreed not to introduce total, unapportioned revenues or profits to the jury in absolute dollar amounts. Thus, it is inappropriate that Walmart is trying to use the Court's reluctance to permit large, unapportioned financial numbers as a means to exclude relevant percentages, rates, and qualitative descriptions, as well as the steps required to explain apportionment. Consistent with this Court's practice, RavenWhite should be permitted to present apportioned royalty bases and the standard financial metrics that inform the analysis of its damages expert, Mr. Roy Weinstein. *See, e.g., Daingean Techs. Ltd. v. AT&T Inc.*, No. 2:23-cv-00123-JRG-RSP, Order on Motions *In Limine*, Dkt. 473 (E.D. Tex. July 25, 2025) at 4-5 (Ex. A).

Accordingly, RavenWhite proposes the following compromise for Walmart's MIL No. 1:

- RavenWhite may not show the jury the total revenue or profit numbers for Walmart, but can show the jury, for example, the revenue or profits resulting from advertisements that use the accused processes as part of its damages model.

- If Walmart opens the door at trial by challenging the way that Mr. Weinstein reached his royalty base, RavenWhite may seek leave to support his calculations with numbers otherwise excluded by the Court's ruling.

RavenWhite agrees to abide by this framework. However, because Walmart has thus far avoided articulating the intended scope of its MIL No. 1, it remains unclear whether Walmart intends to sweep standard economic indicators and qualitative descriptors into its prohibition on

"large numbers." To the extent Walmart intends this broader prohibition, it would be improper, as explained below.

### A. RavenWhite will present the jury with apportioned royalty bases for each of the asserted patents.

Walmart requests the exclusion of "total accused product revenues" and "unapportioned revenues." RavenWhite does not dispute that the jury should not be presented with raw, unapportioned dollar figures that may potentially skew the damages horizon.

For the '823 Patent, Mr. Weinstein's damages calculation relies on a proxy technology that resulted in a ▓▓▓▓▓▓▓▓. To prevent potential prejudice, RavenWhite agrees to not show the raw, unmultiplied total Gross Merchandise Value (GMV) for ▓▓▓▓▓▓. Instead, RavenWhite will start its presentation with the sales lift attributable exclusively to the accused functionality (i.e., GMV sales lift multiplied by ▓▓▓).

For the '402 Patent, RavenWhite will start its presentation with the apportioned ad revenue for advertisements that utilized the accused processes (▓▓▓▓▓▓▓▓▓▓▓▓▓▓). For the '402 Patent, there is also a GMV sales lift attributable to the ads that utilized the accused processes. Here again, RavenWhite's presentation will start with the GMV lift attributable only to advertisements that utilized the accused processes.

### B. Percentages, rates, and qualitative information are not "large numbers" and thus cannot "unfairly skew the damages horizon for the jury."

Because Walmart's MIL No. 1 does not explain what it means by "preclusion of evidence … regarding" large numbers, RavenWhite objects to any attempt by Walmart to exclude percentages, rates, and qualitative descriptions of financial metrics. By definition, percentages and rates do not trigger the prejudice associated with "large financial numbers." Thus, RavenWhite and its damages expert must be permitted to present the jury with percentages, qualitative descriptions, and other non-dollar metrics describing profitability, growth, and the percentage

2

████████████████████████████████████████████

contribution of ████████████████████ to Walmart's overall income. Similarly, financial, e-commerce, and advertising metrics should not be precluded because they don't reflect total dollar sums. Examples of these standard metrics include Return on Invested Capital (ROIC), ████████ ███████████████████████████████

RavenWhite intends to present evidence to the jury regarding Walmart's market share, number of customers, U.S. population coverage, average shopper spend, and online visits. This contextual information does not include dollar sums that will skew the damages horizon. Furthermore, RavenWhite must be allowed to discuss the growing importance of ████████— and ██████████ specifically—to Walmart's broader business strategy. This evidence is highly relevant to establishing the value of the accused processes to the infringer in a hypothetical negotiation.

### C. Walmart's complaints about unaccused revenue are not a separate evidentiary concern.

Because RavenWhite already agrees, and informed Walmart, that unaccused revenues and profits will not be presented to the jury, Walmart's concerns about ██████████████ and the Walmart app are not properly raised via a motion *in limine*. Dkt. 217 at 3 (items (e) and (f)). Whether those figures must be apportioned out of Mr. Weinstein's analysis is a substantive question that depends entirely on the Court's resolution of Walmart's pending motion for summary judgment of noninfringement (Dkt. 180) and motion to strike (Dkt. 181).

Finally, it is worth noting that Walmart's complaint about unaccused revenue is a problem of its own making. RavenWhite has moved to compel Walmart to disclose its revenues broken down by advertising, channel, and targeting type/tactic. Dkt. 155. This granular information, if properly disclosed by Walmart, would permit both parties to accurately identify and isolate the incremental profits attributable to RavenWhite's inventions, thereby rendering the underlying

3

█████████████████████████████████

concerns in Walmart's MIL No. 1 (and corresponding issues in its summary judgment and *Daubert* motions) largely moot. Walmart cannot use its own refusal to produce granular data as an evidentiary shield to broadly exclude Mr. Weinstein's otherwise reliable methodology.

\* \* \*

RavenWhite has agreed to limit its presentation of absolute dollar figures to the apportioned royalty bases tied to the accused functionalities, resolving Walmart's stated prejudice concerns. Walmart cannot use this MIL as a backdoor to exclude standard percentages, rates, vital business context, or Mr. Weinstein's apportionment methodology. For these reasons, Walmart's MIL No. 1 should be denied in part.

**Response to Walmart MIL No. 2: Preclusion of evidence, testimony, or argument regarding lack of commercial success for any Holmes entity attributable to Holmes' ███████ ███████.**

Walmart improperly seeks to exclude evidence that RavenWhite would use—if at all—in rebuttal to an issue that Walmart may try improperly to raise at trial. Specifically, MIL No. 2 suggests that Walmart intends to argue a *lack* of commercial success to disparage the RavenWhite patents and bolster its obviousness defense. But Walmart's doing so would be improper if RavenWhite does not first raise the *presence* of commercial success as a secondary consideration of nonobviousness. Such evidence, if present, would weigh in favor of non-obviousness, but the lack of such evidence does not weigh in favor of obviousness. *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 878 (Fed. Cir. 1993).

Moreover, MIL No. 2 improperly ties a purported lack of commercial success to "any Holmes entity," when commercial success instead requires a nexus to the claimed invention. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). There is no scenario where a Holmes entity's commercial success or lack thereof would be relevant to

obviousness unless a commercial product existed, and neither party alleges that a Holmes entity ever had a commercial product.

RavenWhite does not intend to introduce evidence regarding Mr. Holmes' ██████ ███████████ in its case-in-chief. But, if Walmart is permitted to—and does—open the door by attacking Mr. Holmes for a purported failure to monetize the patents, RavenWhite must be permitted to offer rebuttal testimony explaining Mr. Holmes' situation. Further, if Walmart attempts to paint a false narrative to the jury that the patents were abandoned because they lacked technical merit or value, RavenWhite is entitled to provide the factual context for Mr. Holmes' business operations and other commitments in his personal life. Walmart cannot choose to inject the issue of monetization into the trial and simultaneously use a motion in limine to suppress the factual rebuttal to that exact issue.

RavenWhite plans to introduce this evidence if Walmart opens the door, and Walmart's MIL No. 2 should be denied.

**Response to Walmart MIL No. 3: Preclusion of evidence, testimony, or argument as to inflammatory comparisons of the burden of proof standards to other areas of the law.**

RavenWhite does not oppose this motion, provided the preclusion is reciprocal and preserves RavenWhite's right to conduct standard voir dire. RavenWhite agrees not to introduce inflammatory comparisons between the burdens of proof applicable in this case and standards used in unrelated areas of law. For example, RavenWhite will not analogize the "clear and convincing" standard required to prove patent invalidity to the standards for removing a child from a family home or civil commitment proceedings.

However, RavenWhite contends that it should, nevertheless, be permitted to inquire, during voir dire, about a potential juror's prior experience with respect to other areas of law. As Walmart notes in its motion, the Court has carved out voir dire when granting this motion in limine in similar

██████████████████████████████████████████████████

circumstances. Ex. A, Order on Motions *in Limine* at 5 (precluding burden-of-proof analogies but expressly permitting voir dire into whether "members of the panel have experience in cases involving criminal law, family law, divorce, or civil commitment.").

If the Court grants Walmart's MIL No. 3, RavenWhite respectfully requests that the Order apply equally to all parties and adopt the framework utilized in *Daingean*, thereby precluding inflammatory burden-of-proof analogies while fully preserving the parties' right to explore jurors' prior litigation experiences during voir dire.

**Response to Walmart MIL No. 4: Preclusion of evidence, testimony, or argument regarding an expert's prior retention by a party's counsel in other matters.**

During the parties' pre-filing meet and confer on July 20, 2026, RavenWhite informed Walmart that it would agree to MIL No. 4. RavenWhite remains agreeable to MIL No. 4.

**Response to Walmart MIL No. 5: Preclusion of evidence, testimony, or argument about the "Walmart Effect" (i.e., describing Walmart as a dominant, "big box," or large retailer that hurts small businesses; engages in business practices harmful to small businesses; or causes store closures, lower wages, and reduced competition) or any suggestion that Walmart ████ ████████████████████████████████████████████.**

RavenWhite opposes this motion in part. RavenWhite agrees not to introduce evidence or argument concerning the socio-economic "Walmart Effect" (i.e., that Walmart hurts small businesses, causes store closures, or reduces competition). And, RavenWhite further agrees not to use intentionally inflammatory, pejorative terms such as suggesting Walmart ████████ or ████████████████████ its customers. But RavenWhite opposes Walmart's attempt to wholesale preclude RavenWhite from presenting evidence, testimony, or argument that Walmart ████████ ████████ because this subject matter is incorporated into the claimed invention of both asserted patents.

As Walmart itself concedes, the subject matter of this case involves "Walmart's use of … 'customer purchase data' in targeted advertisements" (the '402 Patent) and "Walmart's use of …

6

'cookies'" (the '823 Patent). Dkt. 217 at 11. Walmart cannot use a motion in limine to bar RavenWhite from factually describing the technology and processes accused of infringement.

Furthermore, Walmart fails to explain how factual statements from its own documents would be prejudicial, mislead the jury, or elicit an "emotional response." Dkt. 217 at 11. Nor does Walmart support its assertions of prejudice. Instead, it cites an internal Walmart document (Exhibit R133) and asserts, without explanation, that certain statements therein, made by Walmart itself, would be prejudicial. Dkt. 217 at 11.

In fact, the quotes Walmart pulls from R133—an internal Walmart presentation—illustrate the relevance of this subject matter to RavenWhite's claims. Dkt. 217 at 11. Walmart boasts in R133 that its " ██████████████████████████████████ " and that it collects " ██████████████████████████████████ ." These facts demonstrate the extent of Walmart's use of, and the tremendous value it derives from, the patented technology. Similarly, Walmart expresses concerns about its statement that " ██████████ ██████████████████████████████ ." Dkt 217 at 11. But this, and statements like it, directly relate to RavenWhite's claims for infringement of the asserted patents, which involve ██████████████████████ .

Walmart's cited cases are inapposite. In *DataTreasury*, unlike here, the subject matter sought to be precluded was not key to plaintiff's claims. The defendant sought to exclude references to government "bailouts" of banks as prejudicial. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11538713, at *14 (E.D. Tex. Feb. 26, 2010). Plaintiff argued that "[t]he banks' acceptance of government bailouts is evidence that Defendants believe that the government will not let them fail no matter how many financial risks that Defendants take, which Plaintiff argues is relevant to willfulness." *Id*. (internal quotation marks removed). In contrast, the

challenged evidence here concerns the very technology accused of infringement because it relates

to Walmart's use of cookies to ███████████████████████████, which is central to

RavenWhite's infringement claims for the '823 and '402 Patents, respectively.

In *Maxell*, the court denied the defendant's motion in part, carefully carving out the portion

of the MIL request that directly related to plaintiff's ability to present evidence in support of its

claims. Specifically, the court permitted the plaintiff to refer to foreign suppliers to the extent

relevant, while prohibiting it from "imply[ing] that Apple outsources American jobs[ or] sources

from abroad" because that was prejudicial. *Maxell, Ltd. v. Apple Inc.*, No. 5:18-CV-0036-RWD,

2021 WL 3021253, at *9-10 (E.D. Tex. Feb. 26, 2021).

Evidence regarding Walmart's ██████████ is therefore highly relevant because it is

central to RavenWhite's infringement claims, and its probative value substantially outweighs any

minimal prejudice to Walmart.

In sum, RavenWhite does not oppose preclusion of evidence, testimony, or argument

regarding "the Walmart Effect," or making inflammatory statements to the effect that "that

Walmart ██████████████████████████. However, RavenWhite should be

permitted to present factual (i.e., non-critical and non-pejorative) evidence, testimony, and

argument concerning Walmart's ██████████████. Walmart's MIL No. 5 should be denied

to the extent it seeks to preclude non-pejorative evidence and argument that Walmart ████

██████.

Dated: August 3, 2026                      Respectfully submitted,

                                           /s/ *Robert F. Kramer*
                                           Robert F. Kramer
                                           CA Bar No. 181706 (Admitted E.D. Texas)
                                           rkramer@kramerllp.com
                                           Robert C. Mattson (*pro hac vice*)
                                           VA Bar No. 43568

8

████████████████████████████████████

rmattson@kramerllp.com
KRAMER LLP
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
KRAMER LLP
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Zachariah A. Higgins (*pro hac vice*)
CA Bar No. 190225
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
CA Bar No. 253705
jarmstrong@kramerllp.com
Rachael Chan (*pro hac vice*)
CA Bar No. 265002
rchan@kramerllp.com
Ryan Dooley (*pro hac vice*)
CA Bar No. 321645
rdooley@kramerllp.com
Robert Y. Xie (*pro hac vice*)
CA Bar No. 329126
rxie@kramerllp.com
KRAMER LLP
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Garrett C. Parish
Texas Bar No. 24125824
garrett@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

9

Attorneys for Plaintiff
RavenWhite Licensing, LLC

10

████████████████████████████████████████████

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 3, 2026, and any confidential version is being served by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. No. 51) entered in this case on December 10, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer