IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC<br><br>*Plaintiff*,<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00688-JRG-RSP<br>*(Lead Case)*<br><br>JURY TRIAL DEMANDED |
| RAVENWHITE LICENSING LLC<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART INC. and WAL-MART STORES TEXAS, LLC<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00689-RWS-RSP<br>*(Member Case)*<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS WALMART INC. AND WAL-MART STORES TEXAS, LLC'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND DEFENSES**

Defendants Walmart Inc. and Wal-Mart Texas Stores, LLC (collectively, "Walmart" or "Defendants") by and through their undersigned counsel, file this Answer to Plaintiffs RavenWhite Licensing LLC, RavenWhite Security, Inc., and Security Technology, LLC (collectively, "Plaintiffs") Second Amended Complaint. In support, the Defendants state the following:

**NATURE OF THE ACTION**

1. This is a civil action for infringement of U.S. Patent Nos. 10,594,823 ("the '823 patent") and U.S. Patent No. 11,562,402 ("the '402 patent") (collectively, the "patents-in-suit"),

attached hereto as Exhibit 1 and Exhibit 2, under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

**Answer:** Defendants admit that Plaintiffs have filed a civil action under the patent laws of the United States, but deny that they have infringed any claim of the patents-in-suit.

2. RavenWhite brings this patent infringement action to protect its valuable patented technology relating to (1) an advanced machine-to-machine authentication technique that stores encoded information at a client device on the basis of network resource requests determined by a server; and (2) improved advertising systems that enable tiered bidding, cross-selling, and retargeting in online marketing systems

**Answer:** Denied.

## THE PARTIES

3. Plaintiff RavenWhite Licensing is a Delaware limited liability company with a principal place of business at 145 La Sandra Way, Portola Valley, CA 94028.

**Answer:** Defendants admit that Plaintiff RavenWhite Licensing has a principal place of business in Portola Valley, California. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 3 and therefore deny the same.

4. Plaintiff RavenWhite Security is a Delaware corporation with a principal place of business at 145 La Sandra Way, Portola Valley, CA 94028.

**Answer:** Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 4 and therefore deny the same.

5. Plaintiff Security Technology is a Delaware limited liability company with a principal place of business at 7 East 20th Street #12f, New York, NY 10003.

**Answer:** Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 5 and therefore deny the same.

6. Defendant Walmart Inc. is a company organized under the laws of the State of Delaware with a principal place of business at 702 SW 8th St., Bentonville, AR 72716. Walmart Inc. may be served with process through its registered agent CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

**Answer:** Admitted.

7. Defendant Wal-Mart Stores Texas, LLC is a company organized under the laws of the State of Delaware with a principal place of business at 702 SW 8th St., Bentonville, AR 72716. Wal-Mart Stores Texas, LLC may be served with process through its registered agent CT Corporations System, located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

**Answer:** Admitted.

8. Wal-Mart Stores Texas, LLC is controlled and managed by Walmart Inc. in connection with Defendants' infringing activities pleaded herein. Defendants function as an integrated organization and a single business enterprise in connection with those activities. Defendants hold themselves out as a single business enterprise in their advertising and in connection with the trademark "Walmart" in promoting the sale of products through Walmart retail stores and walmart.com, without any apparent distinction regarding which Defendant is offering or would deliver those products and services.

**Answer:** Denied.

9. Defendants control, participate in the commission of, and have a direct financial interest in the infringing acts set forth herein.

**Answer:** Denied.

## JURISDICTION AND VENUE

10. RavenWhite incorporates by reference and re-alleges the foregoing paragraphs as fully set forth herein.

**Answer:** Defendants restate and incorporate by reference their answers to Paragraphs 1–9.

11. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

**Answer:** Defendants admit that this Court has subject matter jurisdiction under the patent laws of the United States.

12. In 2000, Walmart started its eCommerce initiative through the creation of walmart.com. As Walmart states in its Annual Report, its eCommerce presence continues to grow. In 2007, Walmart, using its physical stores, started its "Site to Store" service, allowing "customers to make a purchase online and pick up merchandise in stores." Walmart 2023 Annual Report, at 6 (2023), https://s201.q4cdn.com/262069030/files/doc_financials/2023/ar/Walmart-10K-Reports-Optimized.pdf.

**Answer:** Defendants admit that Walmart began its eCommerce initiative in 2000 by creating walmart.com. Defendants admit that the 2023 Annual Report cited in Paragraph 12 states that "[s]ince then, our eCommerce presence has continued to grow." Defendants admit that in 2007, using its physical stores, Walmart started its Site to Store service, enabling customers to make a purchase online and pick up merchandise in stores. Except as expressly admitted, Defendants deny the allegations of Paragraph 12.

13. As the Report further indicates, Walmart has "heavily invested in omni-channel and eCommerce innovation" to "leverage technology, talent and expertise" to grow its service and product offerings both through the Walmart website and physical stores. *Id*. at 6.

**Answer:** Defendants admit that the 2023 Annual Report cited in Paragraphs 12 and 13 states that "[i]n recent years, we have heavily invested in omni-channel and eCommerce innovation, which has enabled us to leverage technology, talent and expertise, incubate digitally-native brands, and expand our assortment and service offerings." Except as expressly admitted, Defendants deny the allegations of Paragraph 13.

14. Walmart maintains an omni-channel sales and marketing strategy:

> [Walmart] integrat[es] retail stores and eCommerce, through services such as pickup and delivery, in-home delivery, ship-from-store, and digital pharmacy fulfillment options. As of January 31, 2023, we had more than 4,600 pickup locations and more than 3,900 same-day delivery locations. Our Walmart+ membership offering provides enhanced omni-channel shopping benefits including unlimited free shipping on eligible items with no order minimum, unlimited delivery from store, fuel discounts, access to Paramount+ streaming service, and mobile scan & go for a streamlined in-store shopping experience. We have several eCommerce websites, the largest of which is walmart.com. We define eCommerce sales as sales initiated by customers digitally and fulfilled by a number of methods including our dedicated eCommerce fulfillment centers and leveraging our stores, as well as certain other business offerings that are part of our flywheel strategy, such as our Walmart Connect advertising business....

*Id*. at 7.

**Answer:** Defendants admit that the 2023 Annual Report cited in Paragraphs 10 and 14 state that "[w]almart U.S. provides an omni-channel experience to customers, integrating retail stores and eCommerce, through services such as pickup and delivery, in-home delivery, ship-from-store, and digital pharmacy fulfillment options. As of January 31, 2023, we had more than 4,600 pickup locations and more than 3,900 same-day delivery locations. Our Walmart+ membership offering provides enhanced omni-channel shopping benefits including unlimited free shipping on eligible items with no order minimum, unlimited delivery from store, fuel discounts, access to

Paramount+ streaming service, and mobile scan & go for a streamlined in-store shopping experience. We have several eCommerce websites, the largest of which is walmart.com. We define eCommerce sales as sales initiated by customers digitally and fulfilled by a number of methods including our dedicated eCommerce fulfillment centers and leveraging our stores, as well as certain other business offerings that are part of our flywheel strategy, such as our Walmart Connect advertising business." Except as expressly admitted, Defendants deny the allegations of Paragraph 14.

15. Walmart describes how it controls and directs its physical stores and fulfillment centers in relation to its eCommerce business and omni-channel marketing and sales strategy:

> We continue to invest in supply chain automation and utilize a total of 163 distribution facilities which are located strategically throughout the U.S. For fiscal 2023, the majority of Walmart U.S.'s purchases of store merchandise were shipped through these facilities, while most of the remaining store merchandise we purchased was shipped directly from suppliers. General merchandise and dry grocery merchandise is transported primarily through the segment's private truck fleet; however, we contract with common carriers to transport the majority of our perishable grocery merchandise. We ship merchandise purchased by customers on our eCommerce platforms by a number of methods from multiple locations including from our 34 dedicated eCommerce fulfillment centers, as well as leveraging our ability to ship or deliver directly from more than 3,900 stores.

*Id*. at 8.

**Answer:** Defendants admit that the 2023 Annual Report cited in Paragraphs 10 and 15 state that "[w]e continue to invest in supply chain automation and utilize a total of 163 distribution facilities which are located strategically throughout the U.S. For fiscal 2023, the majority of Walmart U.S.'s purchases of store merchandise were shipped through these facilities, while most of the remaining store merchandise we purchased was shipped directly from suppliers. General merchandise and dry grocery merchandise is transported primarily through the segment's private truck fleet; however, we contract with common carriers to transport the majority of our perishable grocery merchandise. We ship merchandise purchased by customers on our eCommerce platforms

by a number of methods from multiple locations including from our 34 dedicated eCommerce fulfillment centers, as well as leveraging our ability to ship or deliver directly from more than 3,900 stores." Except as expressly admitted, Defendants deny the allegations of Paragraph 15.

16. As an example, when a customer residing in the Eastern District of Texas, Tyler, Texas, shops on the Walmart website, the website directs the customer to a specific Walmart store in the Eastern District of Texas that is geographically close to the customer. In image below, the webpage recommends the Tyler Supercenter in Tyler, Texas as the physical Walmart store where the customer's online shopping choices will be fulfilled.




**Answer:** Defendants admit that the image in Paragraph 16 purports to show the Tyler Supercenter as a location option. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 16 and therefore deny the same.

17. Another screenshot from the same online transaction shows that the Walmart website will provide the specific address of the store, in this case, 6801 S Broadway Ave, Tyler, Texas 75703.




**Answer:** Defendants admit that the image in Paragraph 17 purports to show the address of a store located at 6801 S Broadway Ave, Tyler, Texas 75703. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 17 and therefore deny the same.

18. Moreover, when the customer selects a specific product, the website directs the customer to a local store (the Tyler Supercenter in this example) where the customer can pick up that item. The website even informs the customer of the specific location within the store (Aisle H28 in the image below) where that item is located.




**Answer:** Defendants admit that the image in Paragraph 18 purports to show the Tyler Supercenter as a location for pickup of the pictured item and shows an aisle within the store associated with the item. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 18 and therefore deny the same.

19. As another example, the Walmart website runs a web page specifically dedicated to "Walmart in Texas." *See* https://corporate.walmart.com/about/location-facts/unitedstates/texas. That web page details and describes Walmart's operations in Texas. Further, the Walmart website also has a "Texas Walmart Stores" listing all of the Walmart stores in Texas. *See* https://www.walmart.com/store-directory Walmart has stores across the Eastern District of Texas in Allen, Denton, Frisco, Lewisville, Longview, Marshall, McKinney, Plano, Sherman, and Tyler. The Walmart in Marshall, Texas is located at 1701 E End Blvd N, Marshall, Texas 75670:

**Answer:** Defendants admit that the Walmart website has a webpage titled "Walmart in Texas" at the identified URL. Defendants admit that the webpage provides certain details of

Walmart's operations in Texas. Defendants admit the Walmart website also has a listing of Walmart stores in Texas and that Walmart has stores in the Eastern District of Texas. Defendants admit that it currently has stores in Allen, Denton, Frisco, Lewisville, Longview, Marshall, McKinney, Plano, Sherman, and Tyler. Defendants admit that the Walmart store in Marshall, Texas is located at 1701 E End Blvd N, Marshall, Texas 75670. Except as expressly admitted, Defendants deny the allegations of Paragraph 19.

20. Walmart has and maintains substantial contacts with the State of Texas by maintaining its physical retail operations, which includes retail stores and fulfillment centers. These are managed in conjunction with Walmart's direction and control of the Walmart website. In total, Walmart has more than 500 retail stores and 25 distribution and fulfillment centers in Texas. In addition, Walmart's Global Tech corporate operation conducts business out of an office in Plano, Texas. This department develops and manages technology synonymous with Walmart's intricate and extensive supply chain infrastructure, which is used in managing and maintaining the business through the Walmart website. Upon information and belief, this office is located at 5830 Granite Pkwy, Suite 300, Plano, TX 75024.

**Answer:** Defendants admit that they maintain physical retail operations in this jurisdiction, which includes retail stores and distribution centers. Except as expressly admitted, Defendants deny the allegations of Paragraph 20.

21. The Court has personal jurisdiction over Walmart Inc. consistent with the Texas Long Arm Statute. This Court has personal jurisdiction over Walmart Inc. in this action because, among other reasons, Walmart Inc. has committed infringing acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with the forum state of Texas. Walmart Inc. conducts business in this District.

**Answer:** Defendants admit for purposes of this lawsuit that this Court has personal jurisdiction over Walmart Inc. in this case. Except as expressly admitted, Defendants deny the allegations of Paragraph 21.

22. Further, this Court has personal jurisdiction over Walmart Inc. because Walmart Inc. has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271. Walmart Inc. has purposefully availed itself of the privileges of conducting business in the State of Texas, and Walmart Inc. regularly conducts business within the State of Texas. Moreover, this Court has general jurisdiction over Walmart Inc., including due to its continuous and systematic contacts with the State of Texas. Further, on information and belief, Walmart Inc. is subject to the Court's jurisdiction, including because Walmart Inc. has committed patent infringement in the State of Texas.

**Answer:** Denied.

23. Walmart Inc. is subject to the specific personal jurisdiction of this Court because RavenWhite's patent infringement claims against Walmart Inc. specifically arise from Walmart Inc.'s acts of infringement in the State of Texas. Among these acts of infringement include directing and controlling the operation of the walmart.com interactive website using the patented inventions, and specifically targeting residents of Texas with this website to further the sale of products and services to those customers. Walmart's customers include retail customers, advertisers, vendors, merchants, end-users, users of Walmart's mobile aps, and visitors to Walmart's websites.

**Answer:** Denied.

24. This includes but is not limited to Walmart Inc.'s directing and controlling the operation of the Walmart website so customers can find a Walmart retail store in Texas where the

customer can shop, pick up products ordered through Walmart's website, or visit the Website for some other commercial purpose. Walmart Inc. generates immense revenue through making the Walmart website available to customers in the State of Texas.

**Answer:** Denied.

25. The Court has personal jurisdiction over Wal-Mart Stores Texas LLC consistent with the Texas Long Arm Statute. This Court has personal jurisdiction over Wal-Mart Stores Texas LLC in this action because, among other reasons, Wal-Mart Stores Texas LLC has committed infringing acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with the forum state of Texas. Wal-Mart Stores Texas LLC conducts business in this District.

**Answer:** Defendants admit for purposes of this lawsuit that this Court has personal jurisdiction over Wal-Mart Stores Texas LLC in this case. Except as expressly admitted, Defendants deny the allegations of Paragraph 25.

26. Further, this Court has personal jurisdiction over Wal-Mart Stores Texas LLC because Wal-Mart Stores Texas LLC has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271. Wal-Mart Stores Texas LLC has purposefully availed itself of the privileges of conducting business in the State of Texas, and Wal-Mart Stores Texas LLC regularly conducts business within the State of Texas. Moreover, this Court has general jurisdiction over Wal-Mart Stores Texas LLC, including due to its continuous and systematic contacts with the State of Texas.

**Answer:** Denied.

27. Wal-Mart Stores Texas LLC is subject to the specific personal jurisdiction of this Court because RavenWhite's patent infringement claims against Wal-Mart Stores Texas LLC

specifically arise from Wal-Mart Stores Texas LLC's acts of infringement in the State of Texas. Among these acts of infringement include directing and controlling the physical store and fulfillment center locations where customers who order products through Walmart's website can pick up their purchased items.

**Answer:** Denied.

28. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). Walmart maintains a continuous physical presence within the District. On information and belief, venue is proper in this District, including because Walmart has committed patent infringement in this District. Pursuant to 25 U.S.C. § 271, Walmart infringes the patents-in-suit by the infringing acts described herein. For example, Walmart directly infringes the patents-in-suit in this District, and Walmart solicits customers in this District and induces those customers to directly infringe the patents-in-suit in this District.

**Answer:** Defendants admit for purposes of this lawsuit that venue in this case is proper in this judicial district. Except as expressly admitted, Defendants deny the allegations of Paragraph 28.

29. Plaintiff incorporates the allegations stated throughout this Amended Complaint, including the paragraphs above and paragraphs below in support of its allegation that Walmart infringes the patents-in-suit in this District and venue is proper in this District to address Walmart's infringement in this lawsuit in this Court.

**Answer:** To the extent any response is necessary, Defendants restate and incorporate by reference their answers to the paragraphs above and below and deny any infringement of the patents-in-suit.

## PATENTS-IN-SUIT

30. U.S. Patent No. 10,594,823, titled "Method and Apparatus for Storing Information in a Browser Storage Area of a Client Device," duly and legally issued on March 17, 2020, from U.S. Patent Application No. 15/706,556, filed on September 15, 2017.

**Answer:** Defendants admit that U.S. Patent No. 10,594,823 is titled "Method and Apparatus for Storing Information in a Browser Storage Area of a Client Device" and purports to claim priority to U.S. Patent Application No. 15/706,556, filed on September 15, 2017. Except as expressly admitted, Defendants deny the allegations of Paragraph 30.

31. Plaintiff RavenWhite Security, Inc. is the owner by assignment of the '823 patent and joins this action as a co-Plaintiff for the purpose of enforcing the '823 patent against Defendants under the patent laws of the United States, including 35 U.S.C. § 281. RavenWhite Security is a research-oriented cybersecurity company. It develops technologies that address consumers' technical and ease-of-use demands. RavenWhite Security's mission is to make e-commerce safer for consumers.

**Answer:** Because Plaintiff RavenWhite Licensing LLC has previously represented to the Court that it owns all substantial rights to the '823 patent, including all exclusionary rights, Defendants deny that RavenWhite Security, Inc. is the owner of the '823 patent and deny that RavenWhite Security, Inc. would have constitutional standing to bring any action for infringement under the patent laws of the United States. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 31 and therefore deny the same.

32. Plaintiff RavenWhite Licensing LLC is a Delaware limited liability company, located at 145 La Sandra Way, Portola Valley, CA 94028.

**Answer:** Defendants admit that Plaintiff has a principal place of business in Portola Valley, California. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 32 and therefore deny the same.

33. Plaintiff RavenWhite Licensing LLC is the exclusive licensee of the '823 patent with certain limited rights in the '823 patent, including the right to assert infringement.

**Answer:** Because Plaintiff RavenWhite Licensing LLC has previously represented to the Court that it owns all substantial rights to the '823 patent, including all exclusionary rights, Defendants deny that RavenWhite Licensing LLC has only certain limited rights in the '823 patent. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 33 and therefore deny the same.

34. U.S. Patent No. 11,562,402, titled "Advertising Model," duly and legally issued on January 24, 2023, from U.S. Patent Application No. 17/201,306, filed on March 15, 2021.

**Answer:** Defendants admit that U.S. Patent No. 11,562,402 is titled "Advertising Model" and purports to claim priority to U.S. Patent Application No. 17/201,306, filed on March 15, 2021. Except as expressly admitted, Defendants deny the allegations of Paragraph 34.

35. Plaintiff Security Technology, LLC is the owner by assignment of the '402 patent and joins this action as a co-Plaintiff for the purpose of enforcing the '402 patent against Defendants under the patent laws of the United States, including 35 U.S.C. § 281.

**Answer:** Because Plaintiff RavenWhite Licensing LLC has previously represented to the Court that it owns all substantial rights to the '402 patent, including all exclusionary rights, Defendants deny that Security Technology, LLC is the owner of the '402 patent and deny that Security Technology, LLC would have constitutional standing to bring any action for infringement

under the patent laws of the United States. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 35 and therefore deny the same.

36. Plaintiff RavenWhite Licensing LLC is the exclusive licensee of the ’402 patent with certain limited rights in the ’402 patent, including the right to assert infringement.

**Answer:** Because Plaintiff RavenWhite Licensing LLC has previously represented to the Court that it owns all substantial rights to the ’402 patent, including all exclusionary rights, Defendants deny that RavenWhite Licensing LLC has only certain limited rights in the ’402 patent. Defendants lack the knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 36 and therefore deny the same.

**’823 Patent Background**

37. The ’823 patent relates generally to client-server communications and causes a browser to store information in a browser storage area of a client device. More specifically, the ’823 patent discloses an advanced machine-to-machine authentication technique that stores encoded information at a client device on the basis of network resource requests determined by a server. Authentication has grown significantly in importance as e-commerce has shifted retail sales online and customers have a growing need to create online accounts.

**Answer:** Denied.

**’402 Patent Background**

38. The ’402 patent relates to improved advertising systems that enable tiered bidding, cross-selling, and retargeting in online marketing systems. Cross-selling is the notion of offering a second product based on a believed purchase of a first product. Retargeting (also known as remarketing) is the notion of reaching out to a user in response to a non-purchase and offering them a product.

**Answer:** Denied.

**COUNT I**

**(Walmart's Infringement of U.S. Patent No. 10,594,823)**

39. RavenWhite incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.

**Answer:** Defendants restate and incorporate by reference its answers to Paragraphs 1–38.

40. Walmart has infringed and continues to infringe one or more claims of the '823 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a) *et seq.* by or through making, using, selling, or offering for sale within the U.S., or importing into the U.S., systems and components thereof for online shopping and advertising. For example, Walmart creates, maintains, and operates its system of physical stores and computer networks ("the Walmart System") including the servers through which it operates the Walmart website and allows customers to make online shopping selections that can be fulfilled at physical stores. Walmart has infringed and continues to infringe the '823 patent through its provision of the Walmart System.

**Answer:** Denied.

41. Exhibit 3 is an exemplary claim chart, demonstrating on an element-by-element basis, how the Walmart System infringes claims 1 and 6 of the '823 patent.

**Answer:** Denied.

42. Upon information and belief, Walmart has indirectly infringed and continues to indirectly infringe at least claim 1 of the '823 patent in violation of 35 U.S.C. §271(b). From at least the time Walmart received notice of the '823 patent, Walmart has induced others to infringe at least claim 1 of the '823 patent under 35 U.S.C. §271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Walmart's customers, whose use of the Walmart system constitutes direct

infringement of at least one claim of the ’823 patent. By using the Walmart System, which infringes at least claim 1 of the ’823 patent, Walmart’s customers directly infringe at least claim 1 of the ’823 patent under 35 U.S.C. § 271(a).

**Answer:** Denied.

43. Walmart aids, instructs, or otherwise acts with the intent to cause customers to perform acts of direct infringement by, for example, (1) hosting websites and providing mobile apps for customers to interact with and use the Walmart System and (2) providing instruction materials, support training, and services, and actively inducing its customers to sign up for online accounts and use the Walmart System. *See, e.g.*,




https://www.walmart.com/help/article/create-or-edit-an-account/147a20c9cada4d75b8e0128b16fb6fda; *See also:* https://www.walmart.com/account/login?vid=oaoh&tid=0&returnUrl=%2Fhelp%2Farticle%2Fcreate-or-edit-an-account%2F147a20c9cada4d75b8e0128b16fb6fda%3FchatBot%3Dopen; https://www.walmart.com/help; https://corporate.walmart.com/askwalmart/what-if-i-have-aquestion-about-customer-support;

https://one.walmart.com/content/walmartethics/tr_tr/contactus.html;

https://corporate.walmart.com/about/contact; and

https://sellerhelp.walmart.com/s/contact?language=en_US.

**Answer:** Denied.

44. Additionally, Walmart touts the features and benefits that customers gain access to when they create an online account with the Walmart System.

**With an account you can check:**

- Order Status
  - We'll send email confirmations when your items have shipped.
  - Email notifications in case our Customer Service needs to contact you about your order.
- Address Book
  - Store unlimited names and addresses and access them for easy checkout.
- Photo Center
  - Upload, store and share your photos online.
- Wish Lists & Registries
  - Keep a running list of your favorite items and planned purchases.

https://www.walmart.com/help/article/create-or-edit-an-account/147a20c9cada4d75b8e0128b16fb6fda.

**Answer:** Defendants admit that the www.walmart.com website identifies features and benefits to creating a Walmart account. Except as expressly admitted, Defendants deny the allegations of Paragraph 44.

45. Walmart also gives instructions as to how to maintain the account once created, such as editing personal information or delivery address.

**Changing or removing delivery addresses**

1. Select **Account**.
2. Select **Delivery addresses**.
3. Select **Add new address** next to "Add delivery address" or **Edit** or **Remove** next to the delivery address you wish to change.

https://www.walmart.com/help/article/create-or-edit-an-account/147a20c9cada4d75b8e0128b16fb6fda.

**Answer:** Defendants admit that the www.walmart.com website provides instructions for maintaining a Walmart account, such as editing personal information or a delivery address. Except as expressly admitted, Defendants deny the allegations of Paragraph 45.

46. Walmart knew that its customers' use of the Walmart System would directly infringe at least claim 1 of the '823 patent. Walmart has knowledge of the '823 patent as a result of RavenWhite filing this lawsuit, as well as a previous lawsuit, *RavenWhite Licensing LLC v. Walmart Inc. et al.*, Case No. 2-23-cv-00418 (E.D. Tex.), accusing Walmart of infringing the '823 patent. Despite its knowledge of the '823 patent, Walmart continues to make the Walmart System available to customers, specifically intending for and inducing its customers to infringe the '823 patent.

**Answer:** Denied.

47. Alternatively, and upon information and belief, Walmart is liable as a contributory infringer of the '823 patent under 35 U.S.C. §271(c) by having offered to sell, sold, and/or imported and continuing to offer to sell, sell, and/or import into the United States the software that implements the Walmart System, including the server-side and/or client-side software, mobile app and/or web-browser code. The software constitutes a material part of the claimed invention because it implements the functionalities set forth in claim 1 of the '823 patent. Specifically

designed for this purpose, Walmart's software lacks a substantial non-infringing use, and Walmart has been aware of its infringing nature since receiving notice of the '823 patent.

**Answer:** Denied.

**COUNT II**

**(Walmart's Infringement of U.S. Patent No. 11,562,402)**

48. RavenWhite incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein.

**Answer:** Defendants restate and incorporate by reference its answers to Paragraphs 1–47.

49. Walmart has infringed and continues to infringe one or more claims of the '402 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a) *et seq.* by or through making, using, selling, or offering for sale within the U.S., or importing into the U.S., systems and components thereof for online shopping and advertising, including the Walmart System. For example, Walmart Connect is an advertising platform and service provided by Walmart within the Walmart System. Walmart has infringed and continues to infringe the '402 patent through its provision of Walmart Connect.

**Answer:** Denied.

50. Exhibit 4 is an exemplary claim chart, demonstrating on an element-by-element basis, how Walmart Connect infringes claims 1, 10, and 19 of the '402 patent.

**Answer:** Denied.

51. Upon information and belief, Walmart has indirectly infringed and continues to indirectly infringe at least claims 10 and 19 of the '402 patent in violation of 35 U.S.C. §271(b). From at least the time Walmart received notice of the '402 patent, Walmart has induced others to infringe at least claims 10 and 19 of the '402 patent under 35 U.S.C. §271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe,

including but not limited to Walmart's customers (including but not limited to retail customers, advertisers, vendors, merchants, end-users, users of Walmart's mobile aps, and visitors to Walmart's websites), whose use of the Walmart System including Walmart Connect constitutes direct infringement of at least one claim of the '402 patent. By using the Walmart System, including the Walmart Connect platform and the computer program for implementing Walmart Connect, which infringes at least claims 10 and 19 of the '402 patent, Walmart's customers (including at least vendors, advertisers, and end-users), directly infringe claims 10 and 19 of the '402 patent under U.S.C. § 271(a).

**Answer:** Denied.

52. Walmart aids, instructs, or otherwise acts with the intent to cause customers to perform acts of direct infringement by, for example, (1) hosting websites and providing mobile apps for customers to interact with and use the Walmart System, including Walmart Connect, and (2) providing instruction materials, support training, and services, and actively inducing its customers to sign up for online accounts and use the Walmart System, including Walmart Connect. *See, e.g.*,.



https://www.walmart.com/help/article/create-or-edit-an-account/147a20c9cada4d75b8e0128b16fb6fda; *See also:* https://www.walmart.com/account/login?vid=oaoh&tid=0&returnUrl=%2Fhelp%2Farticle%2Fcreate-or-edit-an-account%2F147a20c9cada4d75b8e0128b16fb6fda%3FchatBot%3Dopen; https://www.walmart.com/help; *see also* https://corporate.walmart.com/askwalmart/what-if-i-have-a-question-about-customer-support; https://one.walmart.com/content/walmartethics/tr_tr/contact-us.html; https://corporate.walmart.com/about/contact; and https://sellerhelp.walmart.com/s/contact?language=en_US.

**Answer:** Denied.

53. Additionally, Walmart aids, instructs, or otherwise acts with the intent to cause customers, such as advertisers and vendors, to perform acts of direct infringement by, for example, inducing advertisers and vendors to use Walmart Connect to display advertisements to end-user customers. For example, Walmart Connect advertises its "Brand Shop & Shelf," feature to "help boost awareness and sales of your items," "Display," for "display ads," which are shown both "onsite on our digital properties" and "in our stores," and "Sponsored Search," which helps to "increase product sales and visibility and defend your market share with cost-effective ads that reach customers as they search and browse Walmart.com." Walmart provides a login for both "Seller Center" and "Supplier Center" for third-party advertisers to manage these elements of Walmart Connect. *See* Walmart Connect Ad Center, available at https://advertising.walmart.com/signin?adtechClientId=d8e4dc23-caef-4401-9e36-fa89422644a2. Further details are advertised for the "Brand Shop & Shelf" to advertisers, noting that the Shelf can serve as a landing page for advertisers' media activations, and encouraging

advertisers to "get started." *See* Walmart Connect Brand Shop and Shelf. Available at https://www.walmartconnect.com/brand-shop.

**Answer:** Denied.

54. Walmart also advertises the availability of a self-serve template for third parties with built-in SEO optimizations for the Walmart Connect Brand Shop or Shelf. Walmart encourages third parties to use its Walmart Connect Ad Center Shop Builder to access this template. *See* Walmart Connect Brand Shop and Shelf. Walmart further advertises that its Brand Shop and Shelf will "amplify your media campaigns, help boost brand and item awareness and drive sales." *See* Walmart Connect Brand Shop and Shelf. Walmart also advertises that its Brand Shop provides access to "performance metrics to identify additional optimization opportunities." *See* Walmart Connect Brand Shop and Shelf. Similarly, Walmart advertises that its Onsite Display Ads provide further benefits to advertisers, such as allowing third parties to "influence customers on our site and app," "precisely target customers," and "help increase sales" in both "Walmart's digital properties and in our stores." *See* Onsite Display Ads, available at https://www.walmartconnect.com/display.

**Answer:** Defendants admit that the document referenced by Paragraph 54 (available at RW_WM00000681) states that Walmart has a "self-serve template accessible through the Walmart Connect Ad Center Shop Builder" and the "template includes built-in SEO optimizations to help boost discoverability." Defendants admit that this document further states "[t]ell your brand story, highlight products and extend your reach with these Walmart-hosted destinations designed to amplify your media campaigns, help boost brand and item awareness and drive sales." Defendants admit that this document further states "[c]ombine the power of a Brand Shop and campaign performance metrics to identify additional optimization opportunities that can driver awareness,

consideration and purchase decisions." Defendants admit that the document referenced by Paragraph 54 (available at RW_WM00000702) states that Walmart Onsite Display can be used to "[i]nfluence customers on our site and app" and "[p]recisely target customers across the funnel with eye-catching ads to help you build brand loyalty, promote new products, gain incremental revenue and help increase sales. Using our closed-loop measurement, we can track the effectiveness of your campaigns on Walmart's digital properties and in our stores." Except as expressly admitted, Defendants deny the allegations of Paragraph 54.

55. Further, Walmart advertises its ad-targeting ability, describing that its Onsite Display Ads use in-store and online purchase history, search behavior, and current activity to serve "precisely targeted ads to customers." *See* Onsite Display Ads. Walmart also describes that third-party advertisers will be able to "reach new customers or existing," showing targeted ads at the search and browse page, the item page, and the thank you page. *See* Onsite Display Ads. *See* Walmart also encourages third parties to purchase Homepage Feature ads to "ensure your brand reaches Walmart customers…while in a shopping mindset." *See* Onsite Display Ads. Walmart also encourages third parties to purchase ads based on "your category," including search, browse, category, and item pages. *See* Onsite Display Ads. Walmart encourages third party advertisers to "launch and manage your own campaign, work with an adtech partner or get the white-glove treatment" when purchasing ads through Walmart Connect. *See* Onsite Display Ads. Walmart further describes to third parties that Sponsored Search will allow them to "connect with Walmart customers who are actively searching and browsing for products like yours." Sponsored Search, available at https://www.walmartconnect.com/sponsored-search. Walmart advertises that Sponsored Search boosts conversion rates and product visibility, including across both digital properties (including search results, browse, category, item, and pre-checkout pages) and Walmart

stores. *See* Sponsored Search. Walmart also advertises that its advertisers see a 30% higher conversion rate with Sponsored Brands at the top of the search results page. *See* Sponsored Search. Walmart also advertises Sponsored Videos for targeting keywords within search results. *See* Sponsored Search. Walmart also encourages third party advertisers to "Start Advertising," including providing instructions to sign in to Walmart Connect Ad Center, Sponsored Search Account and Onboarding Guide, Become a Walmart Marketplace seller, get help with an existing advertising account, and find a Walmart Connect advertising partner. *See* https://www.walmartconnect.com/contact. Walmart also provides more details, such as the Sponsored Search Account and Onboarding Guide: https://advertisinghelp.walmart.com/s/guides?channel=Sponsored%20Products&article=000009952. *See also* "Start selling with Walmart." https://seller.walmart.com/signup?locale=en-US; Advertising Account help: https://advertisinghelp.walmart.com/s/contact; Walmart Connect advertising partners: https://www.walmartconnect.com/partners/partner-directory.

**Answer:** Defendants admit that the document referenced by Paragraph 55 (available at RW_WM00000702) states "[u]se proprietary omnichannel data from the #1 U.S. omnichannel retailer to serve precisely targeted ads to customers based on their in-store and online purchase history, search behavior and in-the-moment activity on our site and app." Defendants admit that this document further states "[w]hether you're trying to reach new customers or existing, we have Onsite Display placements to suit your needs across our site and app" and "[e]ngage targeted customers at every stage of their shopping journey including the search and browse page, the item page and even the thank you page." Defendants admit that this document further states that Homepage Feature ads "are designed to ensure your brand reaches Walmart customers when they visit the Walmart.com or app homepage while in a shopping mindset." Defendants admit that this

document further states "[r]each your target customers as they actively browse your category on Walmart's digital properties" and "[u]se this highly visible placement to drive incremental sales with ads on contextually relevant search, browse, category and item pages to showcase your brand and products." Defendants admit that this document further states "[w]hether you want to launch and manage your own campaign, work with an adtech partner or get the white glove treatment, we have a service option that's right for you." Defendants admit that the Sponsored Search webpage referenced in Paragraph 55 states that it can be used to "connect with customers who are actively searching for products like yours." Defendants admit that this webpage further states that Sponsored Search can "increase conversions," "grow consideration" and "improve brand visibility." Defendants admit that the Sponsored Videos webpage referenced in Paragraph 55 states that "Sponsored Videos are a keyword-targeted placement that invite engagement as customers scroll through search results." Defendants admit that the Contact webpage referenced in Paragraph 55 provides instructions for signing in to Walmart Connect Ad Center. Defendants admit that the Walmart Connect Advertising Help webpage referenced in Paragraph 53 provides information on "how to get access to Walmart Connect Ad Center, including how to onboard, login to the platform and connect with the Walmart Connect Partner Network." Except as expressly admitted, Defendants deny the allegations of Paragraph 55.

56. Additionally, Walmart touts the features and benefits that customers gain access to by creating an online account with the Walmart System.

**With an account you can check:**

- Order Status
  - We'll send email confirmations when your items have shipped.
  - Email notifications in case our Customer Service needs to contact you about your order.
- Address Book
  - Store unlimited names and addresses and access them for easy checkout.
- Photo Center
  - Upload, store and share your photos online.
- Wish Lists & Registries
  - Keep a running list of your favorite items and planned purchases.

https://www.walmart.com/help/article/create-or-edit-an-account/147a20c9cada4d75b8e0128b16fb6fda.

**Answer:** Defendants admit that the webpage referenced in Paragraph 56 identifies features and benefits to creating a Walmart account. Except as expressly admitted, Defendants deny the allegations of Paragraph 56.

57. Walmart also gives instructions as to how to maintain the account once created, such as editing personal information or delivery address.

**Changing or removing delivery addresses**

1. Select **Account**.
2. Select **Delivery addresses**.
3. Select **Add new address** next to "Add delivery address" or **Edit** or **Remove** next to the delivery address you wish to change.

https://www.walmart.com/help/article/create-or-edit-an-account/147a20c9cada4d75b8e0128b16fb6fda.

**Answer:** Defendants admit that the webpage referenced in Paragraph 57 provides instructions for maintaining a Walmart account, such as editing personal information or a delivery address. Except as expressly admitted, Defendants deny the allegations of Paragraph 57.

58. Walmart knew that its customers' use of the Walmart System and/or Walmart Connect would directly infringe at least claims 10 and 19 of the '402 patent. Walmart has knowledge of the '402 patent as a result of RavenWhite filing this lawsuit, as well as a previous lawsuit, *RavenWhite Licensing LLC v. Walmart Inc. et al.*, Case No. 2-23-cv-00418 (E.D. Tex.), accusing Walmart of infringing the '402 patent. Despite its knowledge of the '402 patent, Walmart continues to make the Walmart System, including Walmart Connect, available to customers, specifically intending for and inducing its customers to infringe the '402 patent.

**Answer:** Denied.

59. Alternatively, and upon information and belief, Walmart is liable as a contributory infringer of the '402 patent under 35 U.S.C. §271(c) by having offered to sell, sold, and/or imported and continuing to offer to sell, sell, and/or import into the United States the software that implements the Walmart System (including Walmart Connect), including the server-side and/or client-side software, mobile app and/or web-browser code. The software constitutes a material part of the claimed invention because it implements the functionalities set forth in claims 10 and 19 of the '402 patent. Specifically designed for this purpose, Walmart's software lacks a substantial non-infringing use, and Walmart has been aware of its infringing nature since receiving notice of the '402 patent.

**Answer:** Denied

**PRAYER FOR RELIEF**

WHEREFORE, RavenWhite requests the following relief from this Court:

(A) A judgment that each defendant is liable for infringement of one or more claims of the '823 patent and the '402 patent.

(B) Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

(C) Pre-judgment interest;

(D) Post-judgment interest; and

(E) A judgment granting RavenWhite such further relief as the Court may deem just and proper.

**Answer:** Defendants deny that Plaintiffs are entitled to the relief requested in their prayer for relief and, to the extent that such prayer contains factual allegations relating to Defendants, such allegations are denied. Plaintiffs' prayer for relief should be denied, with prejudice, in its entirety, and Plaintiffs are not entitled to any relief, including any fees or costs.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, RavenWhite demands a trial by jury for all issues so triable.

**Answer:** A response is not required to Plaintiffs' demand for a jury trial. To the extent a response is deemed required, Defendants admit that Plaintiffs demand a trial by jury but deny that they are entitled to any relief that they have requested in their Amended Complaint. Defendants also demand a jury trial for all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## DEFENSES

Further answering the Complaint and as additional defenses thereto, Defendants assert the following defenses. Defendants do not intend hereby to assume the burden of proof with these matters as to which, pursuant to law, any Plaintiff bears the burden. Defendants reserve the right

to add additional defenses and/or supplement their defenses as they become known during the course of this action.

**FIRST DEFENSE**
***Non-Infringement***

Defendants do not infringe and have not infringed, directly, indirectly, contributorily, by inducement, or otherwise, any valid and enforceable claim of the ’823 patent or the ’402 patent (collectively, the “Asserted Patents”) either literally or under the doctrine of equivalents.

**SECOND DEFENSE**
***Patent Invalidity***

Plaintiffs’ purported claims for infringement of the Asserted Patents are barred because every claim of the Asserted Patents is invalid for failing to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112. Defendants incorporate by reference their Invalidity Contentions in this case. The claims of the Asserted Patents are invalid and/or unenforceable under 35 U.S.C. § 101 because the claims are directed to abstract ideas or other non-statutory subject matter and do not contain an inventive concept. The claims of the Asserted Patents are also invalid and/or unenforceable under 35 U.S.C. § 102 because the claims lack novelty and are taught and suggested by the prior art. The claims of the Asserted Patents are also invalid and/or unenforceable under 35 U.S.C. § 103 because the claims are obvious in view of the prior art. The claims of the Asserted Patents are also invalid and/or unenforceable for failure to satisfy the requirements and conditions of 35 U.S.C. § 112 including lack of adequate written description, lack of enablement, and claim indefiniteness.

**THIRD DEFENSE**
***Prosecution History Estoppel***

Plaintiffs’ causes of action for patent infringement are barred, in whole or in part, by the doctrine of prosecution history estoppel based on statements, representations, concessions,

admissions, arguments, and/or amendments, whether explicit or implicit, made by or on behalf of applicants during the prosecution of the patent applications that led to the issuance of the Asserted Patents.

**FOURTH DEFENSE**
***Equitable Defenses***

Plaintiffs' causes of action are barred, in whole or in part, by estoppel, acquiescence, waiver, laches, unclean hands, implied license, patent misuse or other equitable defenses.

**FIFTH DEFENSE**
***Limitation of Patent Damages***

Any claim by Plaintiffs for patent damages is limited under the provisions of 35 U.S.C. § 286. Plaintiffs are further barred by 35 U.S.C. § 288 from recovering costs associated with this action.

**SIXTH DEFENSE**
***Non-Enforceability of the '402 Patent Pursuant to Terminal Disclaimers***

Plaintiffs' causes of action are barred because the '402 patent is not enforceable due to the severance of the common ownership requirement contained in the corresponding terminal disclaimers. During prosecution of the underlying application, the applicant filed terminal disclaimers in response to the Examiner's rejection under the doctrine of obviousness-type double patenting. Pursuant to 35 U.S.C. § 253, those disclaimers became part of the '402 patent as issued and specify that the '402 patent "shall be enforceable only for and during such period" that it and the cited prior patents "are commonly owned." Prior to filing this lawsuit, RavenWhite Licensing LLC became the exclusive licensee of all right, title, and interest in and to the '402 patent, which under the law transferred ownership of the '402 patent to RavenWhite Licensing LLC. Conversely, RavenWhite Licensing LLC has no rights to the cited prior patents, which severed the

terminal disclaimers' common ownership requirement and rendered the '402 patent not enforceable.

**SEVENTH DEFENSE**
***Non-Enforceability of the '823 Patent Pursuant to Terminal Disclaimers***

Plaintiffs' causes of action are barred because the '823 patent is not enforceable due to the severance of the common ownership requirement contained in the corresponding terminal disclaimers. During prosecution of the underlying application, the applicant filed terminal disclaimers in response to the Examiner's rejection under the doctrine of obviousness-type double patenting. Pursuant to 35 U.S.C. § 253, those disclaimers became part of the '823 patent as issued and specify that the '823 patent "shall be enforceable only for and during such period" that it and the cited prior patents "are commonly owned." Prior to filing this lawsuit, RavenWhite Licensing LLC became the exclusive licensee of all right, title, and interest in and to the '823 patent, which under the law transferred ownership of the '823 patent to RavenWhite Licensing LLC. Conversely, RavenWhite Licensing LLC has no rights to the cited prior patents, which severed the terminal disclaimers' common ownership requirement and rendered the '823 patent not enforceable.

**EIGHTH DEFENSE**
***Limitation of Patent Damages Due to Non-Enforceability***

Any claim by Plaintiffs for patent damages would be limited to the period of enforceability of the '402 patent and '823 patent.

**NINTH DEFENSE**
***Lack of Constitutional Standing Due to Non-Enforceability***

Plaintiffs, including Plaintiff RavenWhite Licensing LLC, lack standing under Article III of the U.S. Constitution because the '823 patent and the '402 patent are not enforceable, and were not enforceable at the time this suit was filed, due to the prior severance of the common ownership

requirement contained in the corresponding terminal disclaimers. As a result of this non-enforceability, there are no exclusionary rights under either the ’823 patent or the ’402 patent that could form the basis for a cognizable injury-in-fact that is fairly traceable to the challenged conduct of the Defendants and that is likely to be redressed by a favorable judicial decision.

**TENTH DEFENSE**
***Lack of Constitutional Standing Due to No Exclusionary Rights***

Plaintiffs RavenWhite Security, Inc. and Security Technology, LLC lack standing under Article III of the U.S. Constitution because they do not possess any exclusionary rights in either the ’823 patent or the ’402 patent, and as a result cannot show any cognizable injury-in-fact that is fairly traceable to the challenged conduct of the Defendants and that is likely to be redressed by a favorable judicial decision.

**ELEVENTH DEFENSE**
***Non-Compliance with 35 U.S.C. § 287 (a) With Respect to ’402 Patent***

Defendants timely identified to RavenWhite Licensing LLC an unmarked patented article that may practice one or more claims of U.S. Patent No. 11,562,402, and is subject to the notice requirements of 35 U.S.C. § 287 (a). *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017). Plaintiffs have not shown compliance with 35 U.S.C. § 287 (a).

**TWELFTH DEFENSE**
***Limitation of Patent Damages Due to Non-Compliance with 35 U.S.C. § 287 (a)***

Any claim by Plaintiffs for patent damages against Defendants on the ’402 patent is limited to the period beginning September 15, 2023.

**THIRTEENTH DEFENSE**
***Lack of Statutory Standing under 35 U.S.C. § 281***

Plaintiffs, either collectively or individually, have not plead that they possess rights to either the ’402 patent or the ’823 patent sufficient to have standing to bring claims for patent infringement against Defendants under 35 U.S.C. § 281.

## FOURTEENTH DEFENSE
## *Unavailability of Pre-Suit Damages for Indirect Infringement*

Defendants lacked knowledge of the '402 patent and the '823 patent and/or the requisite intent for indirect infringement prior to the filing of the Complaint. Accordingly, Plaintiffs are not entitled to recover any damages for any alleged indirect infringement based on any alleged acts that transpired prior to the filing of the Complaint, nor are Plaintiffs entitled to recover for any other alleged indirect infringement because Plaintiffs are not permitted to prospectively allege post-filing conduct in an original complaint as a basis for the required knowledge and/or intent.

## JURY DEMAND

Defendants hereby demand a jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues triable of right to a jury.

## FEES AND COSTS

To the extent that Plaintiffs' case supports a finding that this is an "exceptional case," an award of attorneys' fees and costs to Defendants are justified pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that this Court enter judgment in its favor and grant the following relief:

a. Dismissing Plaintiffs' Second Amended Complaint in its entirety with prejudice;

b. Denying all relief that Plaintiffs seek in the Second Amended Complaint, at law or in equity, including an award of monetary damages, injunctive relief, or any other relief whatsoever.

c. Awarding Defendants any attorneys' fees they may be entitled to under any application rule or provision.

d. Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Defendants all reasonable costs, experts' fees, and attorneys' fees; and

e. Awarding any such other relief and further relief as the Court may deem just and equitable.

Dated: August 27, 2026

Respectfully submitted,

*/s/ Amir H. Alavi*
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

Facsimile: (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Nathaniel St. Clair, II
Texas Bar No. 24071564
nstclair@jw.com
Abigail A. Lahvis
Texas Bar No. 24138136
alahvis@jw.com
Blake Thomas Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
William Allen Moon
Texas Bar No. 24065782
wamoon@jw.com
JACKSON WALKER LLP - DALLAS
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822

Leisa Talbert Peschel
Texas Bar No. 24060414
lpeschel@jw.com
JACKSON WALKER LLP - HOUSTON
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4278
Facsimile: (713) 308-4178

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B

Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on August 27, 2026, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record whom are Filing Users of the Court's Electronic Filing System.

*/s/ Amir H. Alavi* ________
Amir H. Alavi