[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC, *et al*<br><br>*Plaintiffs*,<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00688-JRG-RSP<br>*(Lead Case)*<br><br>JURY TRIAL DEMANDED |
| RAVENWHITE LICENSING LLC, *et al*<br><br>*Plaintiffs*,<br><br>v.<br><br>WALMART INC. and WAL-MART STORES TEXAS, LLC<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00689-RWS-RSP<br>*(Member Case)*<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE REGARDING PRETRIAL HEARING ARGUMENT ON PX-20 (Dkt. 311)**

[redacted]

Walmart submits this response to Plaintiffs' opposed Notice Regarding Pretrial Hearing Argument on PX-20 ("Plaintiffs' Notice," Dkt. 311), and respectfully would show the Court the following:

## I. BACKGROUND FACTS

### A. Mr. Weinstein's use of PX-20 and JX-06

Mr. Weinstein's calculation of damages for Walmart's alleged infringement of U.S. Patent No. 10,594,823 ("the '823 Patent") is set forth in Exhibit 9 to his opening damages report. Ex. A (Exhibit 9, Reasonable Royalty Damages, '823 Patent). Mr. Weinstein starts his calculation (at Line 1 of Exhibit 9) with revenue defined as "Walmart.com GMV," which stands for Gross Merchandise Value. *Id.* There are only two source citations provided for Exhibit 9: ***Exhibit 5 to Mr. Weinstein's Report*** and WMT-RW0409454-515, at 484.[1] *Id.* at footnotes. In turn, Exhibit 5 provides the calculation of "Walmart.com Sales," including prorations for partial years at issue. Ex. B (Exhibit 5, Walmart.com Sales,). Significantly, the ***only "Source"*** listed by Mr. Weinstein for Exhibit 5 ***is WMT-RW0029147, which has been designated as PX-20***. *Id.* at footnotes.

Exhibit 7 to Mr. Weinstein's Report cites WMT-RW0035202 in connection with a discussion of how much activity, relatively, takes place on Walmart's mobile app vs. desktop vs. mobile browser. Ex. C at lines 13-15, 42-44, 57-59, footnotes (Exhibit 7, Walmart Connect Net Sales by Ad Placement and Device Type). ***WMT-RW0035202 has been designated as JX-06***.

### B. Mr. Weinstein concedes he included non-infringing mobile app GMV and Walmart moved to strike

During his deposition, Mr. Weinstein testified that he had not undertaken an alternative calculation of '823 Patent damages to remove non-infringing mobile app activities, claiming he

[1] WMT-RW0409454-515 is marked JX-08 and does not contain Walmart.com GMV numbers; it is the source for Mr. Weinstein's [redacted] used at line 2 of Exhibit 9.

[redacted]

could not provide that calculation because Walmart had not produced "separate data" for the app:

[redacted]

On June 30, 2026, Walmart moved to strike the portion of Mr. Weinstein's '823 Patent damages calculation that included non-infringing mobile app activities. Dkt. 181 at 10-11. While Plaintiffs represented to the Court that they "will not argue at trial that Walmart's mobile app infringes the '823 Patent," Dkt. 203 at 10, they argued in their opposition to the motion to strike, without foundation, that Walmart's documents were unclear on whether non-infringing mobile app activities were included. Dkt. 204 at 10-11. Plaintiffs deposed Walmart's financial witness, Mr. Vorchheimer, but did not question him at all on this issue.[2] Tellingly, Plaintiffs' argument on the "non-infringing mobile app" issue focused on the implication that Plaintiffs were entitled to recover damages on the entirety of Walmart's eCommerce business because the '823 Patent

[2] Plaintiffs' counsel marked PX-20 as an exhibit during the deposition of Mr. Adam Vorchheimer, Senior Director of Finance for Walmart Connect. Ex. F (Vorchheimer Tr. 6:21-22). Plaintiffs' counsel asked Mr. Vorchheimer nothing beyond confirmation of the labels in the left-hand column. Ex. F (Vorchheimer Tr. 48:11-19) ("Q. Exhibit 9 should be available for your download now. A. I have it downloaded. Q. This is a spreadsheet showing various metrics, including net sales, profits, and costs for Walmart.com monthly from February 2018 to January 2026; correct?...A. Yes.").

[redacted]

conferred benefits across admittedly non-infringing and allegedly infringing activities. *Id.* at 11 ("The damages theories thus apply when a mobile app is used for some or all of the customer journey."). This argument runs counter to the entire market value rule and is a tacit admission that ***Plaintiffs and Mr. Weinstein knew*** his damages calculation ***included*** mobile app activities. In its reply, Walmart cited the testimony by Mr. Weinstein that is now before the Court and noted that "[t]his testimony only makes sense if [Mr. Weinstein] believed app GMV was included in 'Walmart.com GMV.'" Dkt. 214 at 4.

**C. Walmart's damages expert, Mr. Haas, removed non-infringing mobile app activities from Mr. Weinstein's calculation and Plaintiffs have conceded his methodology is reliable**

In his rebuttal report, Walmart's expert, David Haas, corrected for Mr. Weinstein's improper inclusion of non-infringing mobile app activities. Ex. D at lines 2-3 (Haas Exhibit 8, Reasonable Royalty Damages – '823 Patent – Non-App Users Correction). He did this using data produced by Walmart in this case. Ex. I (Haas Exhibit 19, nn.1-4 (identifying source documents that separately report sales for app versus desktop versus mobile browser)). ***Mr. Haas's removal of non-infringing mobile app activities decreases the royalty base on the '823 Patent*** [redacted] *See* Ex. D at lines 1, 3. Mr. Haas confirmed during his deposition that the data he used to remove non-infringing mobile app activities from the '823 Patent damages calculation came from materials produced by Walmart. Ex. E (Haas Tr. 101:3-103:7). Plaintiffs have neither moved to exclude nor strike, under *Daubert* or *in Limine*, Mr. Haas's analysis or the methodology by which he removed non-infringing mobile app activities from the damages calculation for the '823 Patent, thereby conceding the reliability of his methodology and the Walmart data upon which it relies.

**D. Post-Final Pretrial Conference requests from Plaintiffs and Plaintiffs' Notice**

Following the Final Pretrial Conference, Plaintiffs' counsel asked Walmart to provide the portions of Mr. Weinstein's transcript referred to earlier that day during the Pretrial Conference as

well as the highlighted portions of JX-06. Ex. G (9/16/26 R. Chan email to A. Alavi and Walmart counsel). On September 17, 2026, Walmart's counsel provided two highlighted excerpts from Mr. Weinstein's deposition, as well as the requested highlighted JX-06 excerpts. Ex. H (9/17/26 A. Woodall email to R. Chan and Plaintiffs' counsel).

In Plaintiffs' Notice, Plaintiffs cited to the first deposition transcript excerpt but omitted the second excerpt. The first excerpt contains the following testimony by Mr. Weinstein:

[redacted]

The second excerpt provided to Plaintiffs' counsel (***omitted*** from Plaintiffs' Notice) contains the following testimony by Mr. Weinstein:

[redacted]

As the second excerpt makes clear, Mr. Weinstein knew that his damages calculation included mobile app revenue; his only response was that he lacked the data to exclude it.

Similarly, the highlighted excerpts from JX-06 (a Walmart Connect Executive Summary) demonstrate that PX-20 contains mobile-app revenue. To wit, JX-06 shows an entry for [redacted].

[redacted]

JX-06

[redacted]

Excerpt from WMT-RW0035202

This GMV number matches the GMV number in PX-20, which is the starting point and basis for Mr. Weinstein's damages calculation. Finally, the unredacted portion of PX-20 to which counsel for Walmart referred during the Final Pretrial Conference (but Plaintiffs' counsel did not request) shows that "Total Walmart.com site activity" GMV for January 2024 matches the [redacted] amount for the same time period shown in JX-06:[3]:

[redacted]

[3] JX-06 contains 30 days' worth of GMV for the entire eCommerce business as compared to PX-20's inclusion of 31 days' worth of GMV for the entire calendar month.

[redacted]

The highlighted excerpts from JX-06 provided to Plaintiffs' counsel also showed that mobile app, desktop, and mobile browser are included in [redacted] during the time period shown in the executive summary:

[redacted]

Excerpt from WMT-RW0035206

[redacted]

WMT-RW0035207

## II. THE COURT'S QUESTIONS AT THE FINAL PRETRIAL CONFERENCE

### A. "[W]hether Mr. Weinstein was on notice that the numbers he was using were over-inclusive"[4]

Yes, Mr. Weinstein was on notice. As shown in the deposition testimony provided to Plaintiffs' counsel and excerpted above, Mr. Weinstein testified that (1) he knew he had included non-infringing mobile app activities in his calculation of damages under the '823 Patent and (2) Walmart was to blame for his failure to remove these non-infringing activities. *See* Ex. H (9/17/26 A. Woodall email to R. Chan and Plaintiffs' counsel).

[4] Listed as Issues 1 and 2 in Plaintiffs' Notice.

[redacted]

### B. Were PX-20/JX-06 "explored with Mr. Weinstein at his deposition?"[5]

Exploration was unnecessary because Walmart is entitled to rely on Rule 26, the Court's Discovery Order, and the Local Rules of this Court, which limit Mr. Weinstein's opinions to those disclosed in his written report.

Moreover, Plaintiffs are not, as a matter of law, entitled to recover damages on non-infringing activities or sales, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) ("The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those "adequate to compensate for the infringement.'") (internal citation omitted); *see also Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (vacating jury award built on royalty applied to non-accused sales and citing *AstraZeneca AB*), and bear the burden of proving damages by a preponderance of the evidence, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 ("The burden of proving damages falls on the patentee."). Suggestions by Plaintiffs that Walmart is to blame for Mr. Weinstein's improper inclusion of non-infringing mobile app GMV in his royalty base for the '823 Patent, or that Walmart should have cross-examined Mr. Weinstein differently in deposition, are contrary to Rule 26's disclosure obligations and controlling Federal Circuit law.

With respect to PX-20, and as shown above, the source document upon which Mr. Weinstein relied in calculating "Walmart.com GMV" was clear from Exhibits 5 and 9 to his report, which disclosed only PX-20. No questions were needed to understand how Mr. Weinstein used PX-20. Additionally, Mr. Weinstein testified conclusively that he had not performed an alternative calculation that removed non-infringing mobile app activities from his '823 Patent damages calculation. He also volunteered his rationale—that Walmart was to blame because of the data they

[5] Listed as Issue 3 in Plaintiffs' Notice.

[redacted]

had provided. The questions, "what have you done?" and "why have you done it?," were fully answered without the need for questions directed to PX-20.

With respect to JX-06, Mr. Weinstein cited and relied on this document in Exhibit 7 to his report, which is unrelated to '823 Patent damages. Walmart is entitled to conclude that the manner in which Mr. Weinstein considered and relied upon JX-06 was fully disclosed in his report without requiring deposition questioning on an issue for which Mr. Weinstein did not disclose JX-06. Nor was Walmart required to "help" Mr. Weinstein fix his legally-deficient opinion by questioning him on ***what he could have done but chose not to do*** in his report.

Finally, JX-06 is one of several Walmart Connect Executive Summaries listed on the Joint Exhibit list (*see,* e.g., JX-07, JX-50, and JX-51). Mr. Adam Vorchheimer, Senior Director of Finance for Walmart Connect, was deposed on Walmart Connect Executive Summaries, but Plaintiffs' counsel did not ask him any questions related to how the revenues shown in those documents were calculated, whether they included mobile app, desktop, and mobile browser, or what was meant by [redacted] "GMV." Ex. F (Vorchheimer Tr. 7:21-22, 111:15-124:11). Walmart had no obligation to explore with Mr. Weinstein the significance of information in a document for which Plaintiffs failed to elicit any substantive information during the deposition of Mr. Vorchheimer. Rather, knowing that they had no '823 Patent infringement read on mobile app activities, and in the context of Plaintiffs' attempt to shift the burden of proof on damages to Walmart, hindsight would suggest Plaintiffs intended to manufacture a dispute on "Walmart.com GMV" through the tactical non-discovery of relevant facts.

### C. Have Plaintiffs "looked at the other exhibit that [Walmart counsel] was showing that [they say] has what is the same number from Walmart.com row and shows it broken down in both mobile app and internet revenue?"[6]

[6] Listed as Issue 4 in Plaintiffs' Notice.

[redacted]

Walmart's comparison of JX-06 to PX-20 was not intended to demonstrate how GMV was broken down—it was intended to demonstrate that the GMV data in PX-20 includes non-infringing mobile app sales. The highlighted cell on PX-20 (labeled "Total Walmart.com site activity") shows GMV for the month of January 2024 as [redacted]. Dkt. 311, Ex. 1 at 4. In turn, JX-06, which is dated January 31, 2024, also shows GMV of [redacted] for the last 30 days (R30D = "rolling 30 days"). Dkt. 311, Ex. 2 at WMT-RW0035202 (top box, orange highlighting). Significantly, JX-06 lists this effectively identical GMV[7] under the heading [redacted] referring to the ***entirety of Walmart's eCommerce business***. This confirms that the revenues shown on PX-20 are inclusive of all Walmart's eCommerce GMV, including the non-accused mobile app.

Moreover, Walmart's counsel directed the Court to two sections in JX-06 that show ad sales broken out for mobile app, desktop, and mobile browser activities—again confirming that JX-06 is directed to Walmart's activities across the non-infringing mobile app, desktop, and mobile browser. *See* September 16, 2026 Pretrial Conference Hearing, Tr. 29-30, 36-38.

Plaintiffs' argument at the Final Pretrial Conference suggests (1) Walmart unfairly sprang a "new" argument on them and (2) was confounding issues because the highlighted ad spend boxes do not relate to GMV. As to the first point, Plaintiffs did not inform Walmart of their "relevancy" argument related to the extensively redacted PX-20 until the day before the Final Pretrial Conference. Second, the point of showing the "ad spend" boxes was to demonstrate that JX-06 (and the JX-06 "GMV" number ***that matches*** the PX-20 "GMV" number) includes revenue from non-infringing mobile app activities, as well as accused desktop and mobile browser activities.

---

[7] PX-20 contains 31 days of eCommerce GMV for the full month of January 2024. In contrast, JX-06 contains only 30 days of eCommerce GMV because it is for the rolling 30 days. This is the reason for the small difference between the two numbers—it is not because they reflect different buckets of GMV.

[redacted]

Finally, Plaintiffs' argument proves too much—because it demonstrates that Mr. Weinstein had Walmart data with which he could have estimated the extent of Walmart's non-infringing mobile app activities, as Mr. Haas was able to do. Mr. Weinstein simply chose not to undertake that exercise, and now [redacted] of Plaintiffs' (improperly calculated) '823 Patent damages are at risk due to Mr. Weinstein's admitted inclusion of non-infringing mobile app activities. Mr. Haas used this data to correct for Mr. Weinstein's error, and Plaintiffs have conceded his methodology—using ad spend by device from JX-06 as a means of estimating non-infringing mobile app activity—is reliable through their decision not to challenge Mr. Haas's opinions at *Daubert* or *in Limine*.

**D. Prejudice to Walmart from the admission of PX-20**

As Walmart's counsel explained during the Pretrial Conference, Walmart will face significant prejudice if forced to explain to the jury how non-infringing mobile app activities are included in PX-20 by comparing those numbers to JX-06. In addition to wasting the time and resources of the parties, the Court, and the jury, this exercise will require publishing to the jury that Walmart [redacted], when only a small fraction of those revenues apply to accused functionality. This will effectively (i) undermine Walmart's own Motion in Limine to exclude evidence of improper "large numbers" in order to disprove a point conceded by Mr. Weinstein at his deposition; (ii) flip the burden of proof on damages onto Walmart in contravention of Federal Circuit law; and (iii) cause juror confusion and undue prejudice to Walmart. All of this can be avoided by excluding PX-20, which has no probative value.

*************************

For these reasons, Walmart respectfully requests that the Court sustain its objections to PX-20.

[redacted]

Dated: September 23, 2026

Respectfully submitted,

*/s/ Amir H. Alavi*
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

[redacted]

Facsimile: (713) 221-2021

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC*

[redacted]

[redacted]

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 23, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record whom have consented to electronic service.

*/s/ Amir H. Alavi* _________
Amir H. Alavi