[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC,<br>RAVENWHITE SECURITY, INC.,<br>SECURITY TECHNOLOGY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE HOME DEPOT, INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00688-JRG-RSP<br>(Lead Case) |
| RAVENWHITE LICENSING LLC,<br>RAVENWHITE SECURITY, INC.,<br>SECURITY TECHNOLOGY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC., *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00689-JRG-RSP<br>(Member Case)<br><br>[redacted] |

**PLAINTIFFS' OPPOSITION TO WALMART'S**
**MOTION FOR SUMMARY JUDGMENT OF LACK OF CONSTITUTIONAL STANDING**
**AND UNENFORCEABILITY OF THE ASSERTED PATENTS**

[redacted]

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. RESPONSE TO WALMART'S STATEMENT OF UNDISPUTED MATERIAL FACTS. 2

III. RESPONSE TO WALMART'S STATEMENT OF ISSUES ............................................ 2

IV. ARGUMENT ............................................................................................................ 3

A. Monetary Harm Establishes the Patent Owners' Standing. ........................................ 3

B. Having an Exclusionary Right Is Another Way to Establish Article III Standing. ............ 3

C. The Patent Owners Have Exclusionary Rights in the Asserted Patents. ........................ 5

D. This Case Can Proceed Without the Patent Owners Under Rule 19(b). .......................... 8

E. The Asserted Patents Are Not Unenforceable. ............................................................ 9

V. CONCLUSION ........................................................................................................ 10

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*ALM Holding Co. v. Zydex Indus. Private Ltd.*,
176 F.4th 1326 (Fed. Cir. 2026) ........ *passim*

*Azure Networks, LLC v. CSR PLC LLC*,
No. 6:11-cv-139-MHD-JDL, 2013 WL 12009700 (E.D. Tex. Jan. 16, 2013) ........ 5

*Azure Networks, LLC v. CSR PLC LLC*,
771 F.3d 1336 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959 (2015) ........ 4, 5

*Dainippon Screen Mfg. Co. v. CFMT, Inc.*,
142 F.3d 1266 (1998) ........ 8

*Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*,
No. 6:18-cv-00407-RWS, Dkt. 106 (E.D. Tex. July 26, 2019) ........ 9

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
655 F.3d 1291 (Fed. Cir. 2011) ........ 7

*Gensetix, Inc. v. Board of Regents of University of Texas System*,
966 F.3d 1316 (Fed. Cir. 2020) ........ 8, 9

*Hanshow Tech. Co. v. SES-imagotag GmbH*,
No. 2:23-cv-0174-RWS-RSP, 2024 WL 4399507 (E.D. Tex. Sept. 9, 2024) ........ 4

*Integrity Worldwide, Inc. v. Rapid-EPS Ltd.*,
No. 3:17-cv-00055, 2021 WL 3130082 (N.D. Tex. July 22, 2021) ........ 9

*Intellectual Tech. v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ........ 3, 4, 5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........ 3

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) ........ *passim*

*Luca McDermott Catena Gift Tr. v. Fructuoso-Hobbs SL*,
102 F.4th 1314 (Fed. Cir. 2024) ........ 4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 3, 4

[redacted]

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)....................5

*Pantech Corp. v. Oneplus Tech*,
No. 5:22-cv-00069-RWS, 2024 WL 5510402 (E.D. Tex. Aug. 20, 2024)....................4

*Pictiva Displays Int'l v. Samsung Elecs. Co*.,
No. 2:23-cv-00495-JRG-RSP, 2025 WL 2825600 (E.D. Tex. Aug. 29, 2025)....................4

*Rocky Mountain Helium, LLC v. United States*,
841 F.3d 1320 (Fed. Cir. 2016)....................4

*Thompson Street Capital Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*,
340 A.3d 1151 (Del. 2025)....................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................3, 4

*WiAV Solutions LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010)....................5

**Statutes**

35 U.S.C. § 286....................7

**Rules**

Fed. R. Civ. P. 19(b)....................1, 2, 8

[redacted]

## TABLE OF EXHIBITS

| Ex. | Description |
|---|---|
| 1 | First Amended and Restated Exclusive Patent License Agreement between Security Technology and RavenWhite (RW00007544 – RW00007553) |
| 2 | Certified Patent Assignment from SecurityInnovation LLC to Security Technology, LLC, August 22, 2023 [Reel/Frame 064668/0754] (RW00007516 - RW00007521) |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| RavenWhite | Plaintiff RavenWhite Licensing LLC |
| Walmart | Defendants Walmart Inc. and Walmart Stores Texas, LLC |
| RavenWhite Security | RavenWhite Security, Inc. |
| Security Technology | Security Technology LLC |
| ’823 patent | U.S. Patent No. 10,594,823 |
| ’402 patent | U.S. Patent No. 11,562,402 |
| Asserted Patents | ’823 and ’402 patents |
| Terminal Disclaimer Patents | U.S. Patent Nos. 8,930,549; 10,438,246; and 10,977,696 |
| Exclusive License Agreements | The Exclusive License Agreement between RavenWhite Security, Inc. and RavenWhite Licensing LLC and the First Amended and Restated Exclusive Patent License Agreement between Security Technology, LLC and RavenWhite Licensing LLC |

[redacted]

## I. INTRODUCTION

Walmart's motion asks this Court to adopt an overly-narrow and incorrect standard that would limit Article III standing in a patent infringement case to ***only*** those instances where a party holds an exclusionary right in the asserted patent. This proposed standard is inconsistent with Supreme Court precedent, which recognizes monetary harm as a basis for standing, and with recent Federal Circuit precedent which says that ***in general*** holding an exclusionary right is sufficient to establish standing.

Even under Walmart's proposed flawed standard, the Patent Owners have Article III standing because they have not transferred away to RavenWhite ***all*** exclusionary rights in the Asserted Patents. Instead, the Patent Owners have retained at least one or more exclusionary rights, including, for example, their right to assign the patents to Walmart in order to resolve this litigation, the right to veto or change any proposed litigation resolution that adversely affects their rights, a reversionary right that includes the exclusive right to damages for six years of past infringement, and the right to [redacted] revenue resulting from enforcement of either asserted patent.

In addition, Walmart's stretching and bending of the law in both its first motion for summary judgment and this one could lead to the absurd result that no one has standing to enforce the Asserted Patents. The Federal Circuit has never reached such a result. Moreover, the Supreme Court has vacated the ***only*** Federal Circuit decision finding that a patent owner lacks Constitutional standing. Should the Court nevertheless agree with Walmart and conclude that the Patent Owners lack standing here, then this case should proceed without them under Rule 19(b).

[redacted]

## II. Response to Walmart's Statement of Undisputed Material Facts

3. Disputed. On July 30, 2023, RavenWhite Security entered into an Exclusive License Agreement with RavenWhite, which granted RavenWhite some, but not all, substantial rights, including some, but not all, exclusionary rights, to the '823 Patent. *See* Dkt. 302-2, Ex. A.

4. Disputed. On August 15, 2024, Security Technology entered into the First Amended and Restated Exclusive License Agreement with RavenWhite, which granted RavenWhite some, but not all, substantial rights, including some, but not all, exclusionary rights, to the '402 Patent. *See* Ex. 1. Security Technology did not own the '402 Patent on July 30, 2023, as alleged by Walmart. *See* Ex. 2 (assigning the '402 patent to Security Technology).

6. Disputed. Whether the Patent Owners hold at least one exclusionary right in the Asserted Patents is a matter of contract interpretation, which is an issue of law. If Walmart continues to assert that it is an issue of fact, then its motion for summary judgment should be denied because it is not undisputed, for the reasons described herein.

## III. Response to Walmart's Statement of Issues

1. The Court should decide whether the Patent Owners have suffered a sufficient injury to have Article III standing, which is not limited to whether the Patent Owners have an exclusionary right in the Asserted Patents. If the Court finds that the Patent Owners lack standing, then it should decide whether this case should proceed without them under Rule 19(b).

2. The Court does not need to resolve the issues of common ownership or statutory standing in order to rule on Walmart's motion. These issues were raised and fully briefed in Walmart's first motion for summary judgment (Dkt. 176).

[redacted]

## IV. ARGUMENT

### A. Monetary Harm Establishes the Patent Owners' Standing.

To meet the requirements for Article III standing, a plaintiff must have suffered an injury-in-fact that is fairly traceable to the defendant's conduct, and that is likely to be redressed by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Monetary harms "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

RavenWhite Security and Security Innovations meet this low bar for establishing standing. They are the title owners of the Asserted Patents who will receive a portion of any net revenue generated from their licensing or enforcement. Dkt. 302-2, Ex. A, §§ 1.6, 4.1.1; Ex. 1, §§ 1.6, 4.1.1. As a result, they have suffered actual, quantifiable harm from Walmart's infringement, and that harm will be redressed by an award of damages. In other words, their concrete stake in the outcome of this case gives rise to Article III standing. *Lujan*, 504 U.S. at 573; *TransUnion*, 594 U.S. at 427 ("plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court"); *Lexmark*, 572 U.S. at 125, 132 (plaintiff who did not meet the requirements for seeking relief under the Lanham Act nevertheless had an injury-in-fact cognizable under Article III).

### B. Having an Exclusionary Right Is Another Way to Establish Article III Standing.

Earlier this year, the Federal Circuit considered the Constitutional standing of a patent owner, stating that "***in general***, the question for the constitutional injury-in-fact inquiry is whether a party has *an* exclusionary right." *ALM Holding Co. v. Zydex Indus. Private Ltd.*, 176 F.4th 1326, 1332 (Fed. Cir. 2026) (cleaned up, first emphasis added). *See also*, *Intellectual Tech. v. Zebra Techs. Corp.*, 101 F.4th 807, 816 (Fed. Cir. 2024) (using the same language), *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) ("We have

[redacted]

recognized that those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed."). The court did ***not*** hold in these cases that having an exclusionary right is the ***only*** way to establish standing. Nor has it enumerated all of the exclusionary rights afforded by a patent or fully defined their scope. *ALM*, 176 F.4th at 1332; *Zebra*, 101 F.4th at 816.

Instead, it left open the possibility of other options, including standing arising from economic harm—an issue it specifically avoided addressing. *ALM,* 176 F.4th at n.4. If and when the Federal Circuit takes up this issue, it will be bound by the Supreme Court precedent in *Lujan*, *TransUnion*, and *Lexmark*, which it has applied in other contexts to find Article III standing arising from monetary harm. *See*, *e.g*., *Luca McDermott Catena Gift Tr. v. Fructuoso-Hobbs SL*, 102 F.4th 1314, 1322-23 (Fed. Cir. 2024); *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1324 (Fed. Cir. 2016).

Notwithstanding the Federal Circuit's careful language in *ALM*, Walmart asks this Court to limit Constitutional standing to only those who hold an exclusionary right in an asserted patent. Walmart supports its overly-narrow view with outdated and inapplicable case law. Dkt. 302 pp. 4-6. *Azure,* which Walmart relies on extensively throughout its motion, has been vacated by the Supreme Court and supplanted by *ALM* and *Zebra*.[1] In addition, *Azure* considered the standing of a patent owner that transferred all substantial rights to an exclusive licensee, which is not the

[1] While the Supreme Court's vacatur removes any precedential effect of the Federal Circuit's ruling, *Azure* has been in the past relied on in the Eastern District of Texas as persuasive authority. But the opinion has only been cited once since the Federal Circuit issued *Zebra* in 2024, and not at all since *ALM* issued earlier this year. *See Hanshow Tech. Co. v. SES-imagotag GmbH*, No. 2:23-cv-0174-RWS-RSP, 2024 WL 4399507 at *3 (E.D. Tex. Sept. 9, 2024). Courts in this District are now relying upon *Zebra* as establishing the proper framework for evaluating Constitutional standing. *See, e.g., Pantech Corp. v. Oneplus Tech*, No. 5:22-cv-00069-RWS, 2024 WL 5510402 (E.D. Tex. Aug. 20, 2024); *Pictiva Displays Int'l v. Samsung Elecs. Co*., No. 2:23-cv-00495-JRG-RSP, 2025 WL 2825600 (E.D. Tex. Aug. 29, 2025).

[redacted]

case here.[2] *Morrow* and *WiAV* likewise predate *ALM* and *Zebra*, and are further inapplicable because they address a ***licensee's*** standing. "The specific inquiries for understanding whether a *licensee* was granted an exclusionary right…do not provide a reasonable proxy for understanding whether a *patent owner* retains at least one exclusionary right." *ALM*, 176 F.4th at n.7 (cleaned up) (italics in original); *Zebra,* 101 F.4th at 816.

None of these cited cases should determine the outcome here. Rather, in accordance with Supreme Court precedent, *ALM* and *Zebra*, the Patent Owner's Constitutional standing is established either by the economic harm they suffer from Walmart's infringement, as described in the prior section, or by their holding at least one or more exclusionary right in the Asserted Patents, as described in the next section.

### C. The Patent Owners Have Exclusionary Rights in the Asserted Patents.

Even under Walmart's incorrect standard, the Patent Owners have Article III standing because they have not transferred away *all* exclusionary rights. *ALM*, 176 F.4th at 1332 (as a baseline matter, a patent owner has Article III standing "unless it has transferred all exclusionary rights away"). Exclusionary rights "involve the ability to exclude others from practicing an invention or to forgive activities that would normally be prohibited under the patent statutes." *Lone Star,* 925 F.3d at 1234 (cleaned up); *ALM*, 176 F.4th at 1334 (a plaintiff must have "a concrete stake in excluding unauthorized practice of the patents and a mechanism to enforce that interest").

Here, the Patent Owners retained certain rights, including the right to sell the patents to Walmart in order to end this litigation. Because the Patent Owners have the ability to forgive

[2] While Walmart's counsel complains (Dkt. 302 p. 2) that it has "***never*** seen nor heard" of a plaintiff claiming that it lacked sufficient rights to pursue its own lawsuit, in *Azure* the licensee and patent owner sued together as co-plaintiffs because they believed, like RavenWhite and the Patent Owners do here, that the patent owner did not transfer all substantial rights to the licensee. *Azure Networks, LLC v. CSR PLC LLC*, No. 6:11-cv-139-MHD-JDL, 2013 WL 12009700 at *2 (E.D. Tex. Jan. 16, 2013).

[redacted]

Walmart's infringement in this manner, they have an exclusionary right in the Asserted Patents. *Lone Star*, 925 F.3d at 1234. Likewise, the Patent Owners have a concrete stake in ending Walmart's infringement and a mechanism for doing so by selling them the patents. *ALM*, 176 F.4th at 1334.

Nothing in the agreements prohibits this outcome. The Exclusive License Agreements did not grant RavenWhite any alienation rights in the Asserted Patents, and instead expressly prohibit RavenWhite from assigning the agreements or any of its rights thereunder. Dkt. 302-2, Ex. A § 12.1; Ex. 1, § 12.1. Whatever rights RavenWhite did not receive are necessarily retained by the Patent Owners.

Conversely, there is no language—including the non-specific language of Section 2.1 that Walmart applies (Dkt. 302 p. 7)—that expressly prohibits the Patent Owners from assigning the patents. *See Thompson Street Capital Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*, 340 A.3d 1151, 1166 (Del. 2025) ("[W]here specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."). Rather, Section 12.2 freely allows the Patent Owners to assign their rights, including title to the patents. Allowing Section 2.1 to trump these assignment rights would render Section 12.2 entirely meaningless. *See id.* at 1167 ("Contracts will be interpreted to give each provision and term effect and not render any terms meaningless or illusory.") (cleaned up).

The Patent Owners also hold shared enforcement rights with RavenWhite. While the Exclusive License Agreements give RavenWhite sole discretion to resolve enforcement proceedings without the Patent Owner's consent, that discretion can only be exercised [redacted] Dkt. 302-2, Ex. A, § 3.3; Ex. 1, § 3.3. Under this provision, the Patent Owners could, for example, prohibit a proposed settlement that they believe undervalues the Asserted Patents. They could also limit the scope of any proposed license grant,

[redacted]

prohibit RavenWhite from conceding invalidity or unenforceability of any claims of the Asserted Patents, or override its decision whether to seek a consent decree or restrictions on a sublicense. The Patent Owners therefore retain exclusionary rights in the Asserted Patents because they have substantial ongoing control such that RavenWhite cannot resolve any enforcement action free of the Patent Owners' interests. *ALM*, 176 F.4th at 1334.

Moreover, ***all*** enforcement rights revert to the Patent Owners upon expiration of the patents. Dkt. 302-2, Ex. A, § 1.7; Ex. 1, § 1.7 (constraining the maximum possible term of the agreements as the expiration of both patents). As a result, they hold a 6-year right to damages for any infringement after all of RavenWhite's rights have terminated. *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286.").

The Patent Owners also have the right to [redacted] revenue resulting from enforcement. Dkt. 302-2, Ex. A § 4.1.1; Ex. 1, § 4.1.1. While this right, by itself, may not be exclusionary, it "can further evidence an exclusionary right, particularly when paired with other provisions that involve the ability to exclude others from practicing an invention." *ALM*, 176 F.4th at 1334. In *ALM*, the court found that infringement would amount to an invasion of the patent owner's legally protected interest in the patents because it deprives the owner of royalties to which it is entitled, and the exclusive licensee could not grant sublicenses "free of [this] royalty interest." *Id*. The same is true here, where RavenWhite can only resolve an enforcement proceeding in a manner that does not adversely affect the Patent Owner's rights, including their right to a share of all net revenue resulting from enforcement.

Taken together, the Patent Owners' retained rights are collectively sufficient to establish that they retained an exclusionary right that gives them Article III standing. *ALM*, 176 F.4th at

[redacted]

1334 (considering the owner's retained rights in the aggregate). Thus, even under the incorrect standard articulated by Walmart, its motion for summary judgment should be denied.

**D. This Case Can Proceed Without the Patent Owners Under Rule 19(b).**

Walmart has identified no case where both a patent owner and its exclusive licensee lacked standing to sue for infringement, or any valid Federal Circuit precedent where a patent owner lacked Constitutional standing. This case should not be the first to permit this absurd result that Walmart argues for. But if it is, Rule 19(b) allows the case to proceed anyway, without the Patent Owners as co-plaintiffs. *See Lone Star*, 925 F.3d at 1236-37 ("the patentee must be joined, ***if feasible***, when it is a necessary party" for statutory standing).

Under Rule 19(b), if joinder of the Patent Owners is not feasible based on a lack of Constitutional standing, the case may nevertheless proceed "in equity and good conscience" based on: (1) the extent to which a judgment rendered in the Patent Owners' absence might prejudice them; (2) the extent to which that prejudice could be mitigated; (3) whether a judgment rendered in their absence would be adequate; and (4) whether RavenWhite would have an adequate remedy if this case is dismissed for nonjoinder. *See* Fed. R. Civ. P. 19(b), *Dainippon Screen Mfg. Co. v. CFMT, Inc*., 142 F.3d 1266, 1272-73 (1998) (allowing a case to proceed without the patent owner, which was not subject to personal jurisdiction); *Gensetix, Inc. v. Board of Regents of University of Texas System*, 966 F.3d 1316, 1325-26 (Fed. Cir. 2020) (applying Fifth Circuit law and allowing a case to proceed without the patent owner, which invoked sovereign immunity).

Here, RavenWhite has every incentive to enforce the Asserted Patents against Walmart to the maximum extent possible, and to vigorously defend the patents' validity and enforceability. And, under the Exclusive License Agreements, RavenWhite cannot settle this case in any manner that undermines the Patent Owners' rights. *See* Dkt. 302-2, Ex. A, § 3.3; Ex. 1, § 3.3. The Patent Owners therefore suffer no prejudice by their absence as co-plaintiffs, and the first two factors

[redacted]

favor allowing the case to proceed without them. *See Gensetix*, 966 F.3d at 1326 (relying on the licensee having identical interests to the patent owner).

Relevant to the third factor, the amount of damages resulting from Walmart's infringement will not vary based on whether the Patent Owners are present or absent. And, for the final factor, RavenWhite has no remedy if the Patent Owners are removed from the case for lack of Constitutional standing.[3] *See id*. (giving weight to the fact that the licensee had no recourse to assert its patent rights without joinder of the owner). All four factors therefore weigh in favor of allowing the case to proceed without the Patent Owners, should the court determine that they lack Constitutional standing.

**E. The Asserted Patents Are Not Unenforceable.**

Walmart's motion asserts that summary judgment is warranted for the additional reason that the Asserted Patents are unenforceable. Dkt. 302 p. 10. This issue is addressed by Walmart's first motion for summary judgment (Dkt. 176). For the reasons stated in RavenWhite's Opposition (Dkt. 196) and Sur-Reply (Dkt. 229), the Asserted Patents are not unenforceable based on a lack of common ownership. And, in any event, unenforceability is not an issue that impacts Constitutional standing. *Lone Star,* 925 F.3d at 1235; *Integrity Worldwide, Inc. v. Rapid-EPS Ltd*., No. 3:17-cv-00055, 2021 WL 3130082 (N.D. Tex. July 22, 2021); *Fall Line Patents, LLC v. Zoe's Kitchen, Inc.*, No. 6:18-cv-00407-RWS, Dkt. 106 (E.D. Tex. July 26, 2019).

[3] As fully explained in RavenWhite's responsive briefing to Walmart's first motion for summary judgment (Dkt. 196 and Dkt. 229) and in support of RavenWhite's motion for leave to amend the first amended complaint to add the Patent Owners as co-plaintiffs (Dkt. 187 and Dkt. 228), the Patent Owners should be joined for purposes of statutory standing, because the Exclusive License Agreements did not transfer all substantial rights in the patents to RavenWhite.

[redacted]

## V. CONCLUSION

For the multiple reasons explained above, the Court should deny the Motion.

Dated: September 25, 2026

Respectfully submitted,

*/s/ Robert F. Kramer*
Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (*pro hac vice*)
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Zachariah A. Higgins (*pro hac vice*)
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
jarmstrong@kramerllp.com
Ryan Dooley (*pro hac vice*)
rdooley@kramerllp.com
Robert Xie (*pro hac vice*)
rxie@kramerllp.com
Rachel C. Chan (*pro hac vice*)
rchan@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604

[redacted]

Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiffs*
RavenWhite Licensing, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 25, 2026 and any confidential versions are being served by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. No. 51) entered in this case on December 10, 2024.

*/s/ Robert F. Kramer*
Robert F. Kramer