[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAVENWHITE LICENSING LLC, *et al*<br><br>*Plaintiffs*,<br><br>v.<br><br>THE HOME DEPOT, INC. and HOME DEPOT U.S.A., INC.<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00688-JRG-RSP<br>*(Lead Case)*<br><br>JURY TRIAL DEMANDED |
| RAVENWHITE LICENSING LLC, *et al*<br><br>*Plaintiffs*,<br><br>v.<br><br>WALMART INC. and WAL-MART STORES TEXAS, LLC<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00689-RWS-RSP<br>*(Member Case)*<br><br>JURY TRIAL DEMANDED |

**WALMART'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF LACK OF CONSITUTIONAL STANDING AND UNENFORCEABILITY OF THE ASSERTED PATENTS (Dkt. 302)**

[redacted]

# I. INTRODUCTION

Over the last two years, RavenWhite Licensing pursued this case on its own, claiming that it held "all substantial rights" to the Asserted Patents. This is confirmed by the underlying agreements, which unambiguously state that RavenWhite Licensing [redacted] and granting RavenWhite Licensing [redacted] Dkt. 302, Exs. A and B at ¶¶ 3.1 and 3.3 (emphasis added). To further this stated purpose, the underlying agreements specifically transferred to RavenWhite Licensing all substantial rights in the Asserted Patents, including all exclusionary rights. *Id.*

For the last two years, RavenWhite Licensing also had no doubts as to the legal effect of these agreements. The sworn declaration of its own corporate representative unambiguously recognized that RavenWhite Licensing has [redacted] *See* Dkt. 167-1 at ¶¶ 4, 6 and 8. RavenWhite Licensing's own briefing to the Court similarly stated—without qualification—that RavenWhite Licensing has "all substantial rights in the patents." *See* Dkt. 167 at 1.

RavenWhite Licensing's sudden reversal is motivated by one single fact: it failed to appreciate that the underlying agreements render the Asserted Patents ***unenforceable*** on their face. As detailed in Walmart's prior briefing (*see* Dkt. 176), both Asserted Patents are subject to Terminal Disclaimers that require them to be "commonly owned" with certain cited Prior Patents. When RavenWhite Licensing acquired "all substantial rights" to the Asserted Patents, it became the owner of the patents under Federal Circuit law. And because RavenWhite Licensing did not

[redacted]

acquire any rights to the cited Prior Patents, the underlying agreements severed the Terminal Disclaimers' common ownership requirement and rendered the patents unenforceable.

In a misguided attempt to avoid this outcome, RavenWhite Licensing now pivots to claim, unprompted, that it ***does not*** own "all substantial rights" in the Asserted Patents—despite prior, repeated representations to the contrary—such that it now lacks sufficient rights to pursue its own lawsuit. As detailed in Walmart's prior briefing, RavenWhite Licensing's self-serving argument is flatly contradicted by the clear and unambiguous language of its own, underlying agreements. Nonetheless, to "remedy" this non-problem of its own creation, RavenWhite Licensing has joined the Prior Patent Owners under the guise of curing that alleged "defect" in ***prudential*** standing.

Critically, RavenWhite Licensing's gamesmanship and machinations now tread upon this Court's exercise of its constitutional power under Article III. Under the law, the Prior Patent Owners cannot be parties to this suit unless they have ***constitutional*** standing. RavenWhite Licensing's cavalier disregard of the underlying agreements—as well as its disavowal of its own Original Complaint, its own sworn declaration, and its own prior briefing—seeks to undermine one of the most important requirements for federal jurisdiction. As a result, for the reasons below, the Court should dismiss the Prior Patent Owners for lack of Article III standing.

## II. THE PRIOR PATENT OWNERS LACK CONSTITUTIONAL STANDING.

### A. The Prior Patent Owners Have No Exclusionary Rights.

"The touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has ***an exclusionary right*** in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010) (emphasis added); *see also Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) (holding that a plaintiff "must have the right to exclude others from making, using or selling the invention in the United States").

[redacted]

In their first argument, Plaintiffs seemingly concede that the Prior Patent Owners do not have any such exclusionary rights; instead, they tellingly claim that having an exclusionary right is simply "another way" for a plaintiff to establish Article III standing. *See* Dkt. 319 at 3. To be clear, every single time the Federal Circuit has evaluated Article III standing in a patent case, it has ***always*** analyzed whether the plaintiff held an exclusionary right, and Plaintiffs here have cited no cases that depart from this analysis. Instead, Plaintiffs rely on a footnote that explicitly ***does not*** support their argument. *See A.L.M. Holding Co. v. Zydex Indus. Private Ltd.*, 176 F.4th 1326, 1334 n.4 (Fed. Cir. 2026) (applying the "exclusionary rights" analysis and stating that "we need not reach" plaintiff's novel allegations of monetary harm). In effect, Plaintiffs ask this Court to depart from well-established Federal Circuit law and forge entirely new law with respect to Article III standing. The Court should decline Plaintiffs' invitation to do so.

### B. The Federal Circuit's Analysis in *Azure Networks* Remains Applicable.

Not only is there no case law supporting Plaintiffs' position, but the Federal Circuit has previously rejected the very arguments that Plaintiffs now make. In *Azure Networks*, Tri-County granted an exclusive patent license to Azure Networks that included, among other rights, the exclusive right to sue for infringement. *See Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959 (2015). However, mirroring the facts in the present case, Tri-County also retained certain rights, including: (1) a right to 33% of the proceeds from Azure's litigation and licensing activities; (2) a limited right to terminate under narrow circumstances; and (3) a reversionary right to the patent upon expiration. *Id.* at 1341. Nonetheless, the Federal Circuit concluded that none of those rights were sufficient for Article III standing, stating that "[b]ecause Tri-County ***does not have any exclusionary rights*** under the '129 patent, it lacks standing to join the suit as a co-plaintiff." *Id.* at 1347 (emphasis added).

Recognizing that their arguments are directly contradicted by *Azure Networks*, Plaintiffs

[redacted]

misleadingly claim that the case "has been vacated by the Supreme Court and supplanted by *ALM* and *Zebra*." *See* Dkt. 319 at 4. But the Federal Circuit in *A.L.M. Holding* would strongly disagree with Plaintiffs. Instead, in *A.L.M. Holding*, the Federal Circuit cited its prior *Azure Networks* decision ***favorably*** as an example where a nominal patent owner "lacked an exclusionary right because it transferred away all substantial rights" to an exclusive licensee. *See A.L.M. Holding*, 176 F.4th at 1333. Moreover, consistent with the rules of citation, the Federal Circuit emphasized that its earlier *Azure Networks* decision was "vacated on other grounds" that had nothing to do with the exclusionary rights analysis—namely, the Federal Circuit's improper rejection of an expert's testimony during claim construction. *Id.*; *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 320 (2015) (vacating *Azure Networks*).

As a result, Plaintiffs' attempt to portray the Federal Circuit's separate and unrelated Article III analysis as "supplanted" is simply incorrect. Indeed, *A.L.M. Holding* explicitly holds that a right to collect royalties is "not itself an exclusionary right" and that standing exists only when that right is "paired with other provisions that involve the ***ability to exclude others*** from practicing the invention." *See A.L.M. Holding*, 176 F.4th at 1334 (emphasis added).

### C. The Prior Patent Owners Have No Right to Assign and No Veto Power.

Although Plaintiffs claim that they retained "the right to sell the patents to Walmart in order to end this litigation" (*see* Dkt. 319 at 5), the agreements state the exact opposite. The Prior Patent Owners agreed that they [redacted] of the agreements. *See* Dkt. 302, Exs. A and B at ¶ 2.1. Thus, they cannot assign the patents to Walmart, and any purported assignment would be void under the plain language of the agreement and would not grant Walmart any rights. Similarly, Plaintiffs are wrong that "[w]hatever rights RavenWhite did not receive are necessarily retained by Patent Owners" as a matter of logic. *See* Dkt. 319 at 6. It is perfectly possible for a

[redacted]

licensor to transfer some rights to a licensee and, in the same agreement, also agree to give up or surrender other rights that they would have otherwise retained. This is exactly what happened here: the Prior Patent Owners granted RavenWhite Licensing an unfettered right to sublicense and, in the same agreement, also gave up any ability to grant any rights to anyone else.

The Prior Patent Owners also cannot "veto" any settlement. Not only does RavenWhite Licensing have the sole right to [redacted] but to eliminate any doubt on this point, it also has the explicit right to [redacted] *See* Dkt. 302, Exs. A and B at ¶¶ 3.1 and 3.3 (emphasis added). The mere addition of the phrase [redacted] does not give the Prior Patent Owners any veto power, and any such reading would render the phrase [redacted] meaningless. For example, Plaintiffs' argument that the Prior Patent Owners can "prohibit a proposed settlement that they believe undervalues the Asserted Patents" is not only contradicted by the plain language of the agreements but incorrectly presupposes that the Prior Patent Owners have a "right" to insist on some expected minimum value. Nothing in the agreements supports that alleged right, and the agreements explicitly state that RavenWhite Licensing can settle cases [redacted] *See* Dkt. 302, Exs. A and B at ¶¶ 3.1 and 3.3. As a result, the Court should reject Plaintiffs' arguments.

Lastly, Plaintiffs' reliance on Rule 19(b) is misplaced. Because RavenWhite Licensing has "all substantial rights" in the Asserted Patents, it has ***prudential*** standing to proceed in this lawsuit without joinder of the Prior Patent Owners. And, to the extent the Court agrees with Walmart that the unenforceability of the Asserted Patents impacts ***constitutional*** standing, then Rule 19(b) would be inapplicable.

[redacted]

Dated: October 1, 2026

Respectfully submitted,

*/s/ Amir H. Alavi*
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

[redacted]

Gabriel K. Bell *(Pro Hac Vice)*
DC Bar No. 987112
gabriel.bell@lw.com
Ashley Finger *(Pro Hac Vice)*
DC Bar No. 1644006
ashley.finger@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Eric Hugh Findlay
Texas Bar No. 00789886
efindlay@findlaycraft.com
FINDLAY CRAFT, P.C.
7270 Crosswater Ave., Suite B
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

*Counsel for Defendants Walmart Inc. and Wal-Mart Stores Texas, LLC*

[redacted]

[redacted]

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 1, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record whom have consented to electronic service.

*/s/ Amir H. Alavi*_________
Amir H. Alavi