[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| RAVENWHITE LICENSING LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC. *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00688-JRG-RSP<br>(Lead Case) |
| RAVENWHITE LICENSING LLC *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>WALMART INC. *et al.*,<br><br>Defendants. | Case No. 2:24-cv-00689-JRG-RSP<br>(Member Case)<br><br>[redacted] |

**PLAINTIFFS' SUR-REPLY TO WALMART'S**
**MOTION FOR SUMMARY JUDGMENT OF LACK OF CONSTITUTIONAL STANDING AND UNENFORCEABILITY OF THE ASSERTED PATENTS**

[redacted]

Walmart's reply rests on three things: (1) a vacated decision, *Azure*, whose facts differ from this case in the two respects that are material; (2) quotations of the Exclusive License Agreements that stop just short of the words that limit RavenWhite Licensing's rights; and (3) the premise that RavenWhite Licensing holds "all substantial rights"—a premise Walmart itself undercuts by arguing that the Patent Owners "gave up" the right to assign rather than transferring it to RavenWhite Licensing. None supports summary judgment. Each Patent Owner holds title, the power to transfer it, a broad veto over dispositions that adversely affects its rights, and [redacted] interest in net recoveries. Under *ALM*, that is "a concrete stake in excluding unauthorized practice of the patents and a mechanism to enforce that interest." *A.L.M. Holding Co. v. Zydex Indus. Private Ltd.*, 176 F.4th 1326, 1334 (Fed. Cir. 2026).

**A. An exclusionary right is not the only path to Article III standing.**

Walmart's suggestion that Plaintiffs "seemingly concede" the absence of exclusionary rights, Dkt. 321 at 3, misreads the opposition, which argues both that monetary harm alone suffices *and* that the Patent Owners retain exclusionary rights. Dkt. 319 at 3-8. Walmart's own description of *ALM*'s footnote 4, that the court "need not reach" the monetary-harm question, Dkt. 321 at 3, confirms Plaintiffs' point: whether monetary harm alone suffices remains an open question. *ALM* itself framed the exclusionary-right inquiry as what "in general" governs, *ALM*, 176 F.4th at 1333, which is not the same as holding it is the only inquiry.

Walmart's Reply has nothing to say about the Supreme Court precedent recognizing monetary harm as a concrete injury sufficient for Article III standing. *See* Dkt. 319 at 3 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). And, while Walmart asserts that the Federal Circuit has always required an exclusionary right in order to establish constitutional standing, Dkt. 321 at 3, it has identified no valid precedent since *Lexmark* where the Federal Circuit found that a *patent*

[redacted]

*owner* lacked that standing. Instead, the Federal Circuit has applied *Lexmark* and *TransUnion* in other contexts to find standing based on monetary harm, Dkt. 319 at 3, suggesting that when the court eventually applies these cases to a patent owner, it will reach the same conclusion.

**B. *Azure* does not control, and its facts differ in the two respects that matter.**

*Azure* is not precedential, and Walmart overstates *ALM*'s reliance on *Azure*. Dkt. 321 at 4. In *ALM* the Federal Circuit included *Azure* in its criticism of pre-*Lone Star* jurisprudence, where "opinions had improperly melded the injury-in-fact inquiry with the § 281 inquiry." *ALM*, 176 F.4th at 1333. The court then stated that "although the two standing inquiries are distinct, the same facts" may be relevant to both, citing *Azure*. *Id*. *ALM* thus cited *Azure* for two points: that the same facts can bear on both standing inquiries, and as an example of an owner that had "transferred away all substantial rights," *id*., a premise that is disputed here. *ALM* did not adopt *Azure* as a rule for what retained rights suffice.

Even assuming that *Azure*'s analysis retains persuasive effect after either *Lone Star* or *ALM*, which it does not, its application here would lead to a different outcome. The agreement at issue in *Azure* granted the licensee the right to assign, under certain circumstances, the entire agreement or any of its rights without the patent owner's consent. *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1341 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959 (2015). In contrast, the Exclusive License Agreements expressly *prohibit* Licensee (RavenWhite Licensing) from assigning any of its rights, while nothing in the Agreements restricts the Licensor (each Patent Owner) from transferring the Agreements or the patents, with Section 12.2 expressly contemplating that the Licensor will have "assigns." Dkt. 302-2, Ex. A §§ 12.1, 12.2; Dkt. 319-1, Ex. 1 §§ 12.1, 12.2. *See ALM*, 176 F.4th at 1334 (exclusionary rights resulting from "a concrete stake in excluding unauthorized practice of the patents and a mechanism to enforce that interest").

The licensee in *Azure* also had the unconstrained right to resolve enforcement proceedings

[redacted]

without any regard for the patent owner's interests. *Azure*, 771 F.3d at 1343. Here, RavenWhite Licensing is constrained by the requirement that no disposition can adversely affect the Patent Owners' rights. Ex. A § 3.3; Ex. 1 § 3.3. The fact that RavenWhite Licensing cannot resolve any enforcement action free of the Patent Owners' interests—unlike the licensee in *Azure*— is exactly what *ALM* treats as an exclusionary right. *See ALM*, 176 F.4th at 1334.

**C. The Patent Owners retain the right to assign their patents and to veto dispositions that adversely affect their rights.**

**The right to assign.** Walmart's only textual basis for asserting that the Patent Owners "cannot assign the patents," Dkt. 321 at 4, is the Section 2.1 language that the Licensor "will not, directly or indirectly, grant a license to or any other right to the Licensed Patent to any third party during the Term." Ex. A; Ex. 1. That is an exclusivity covenant, not a restraint on alienation. It makes the license exclusive by barring Licensor from granting competing rights under the patent to anyone else; it does not address Licensor's title. By contrast, Section 12 addresses assignment by name and places restrictions only on the Licensee, not the Licensor. Specifically, Section 12.1 makes RavenWhite Licensing's rights "personal to Licensee," bars RavenWhite Licensing from assigning them, and declares any violation "void and without effect," whereas Section 12.2 contemplates that the Agreement is "binding upon Licensor, its *successors*, and *assigns*." Ex. A; Ex. 1 (emphases added).

The parties thus knew how to prohibit and void an assignment, yet did so only for RavenWhite and expressly contemplated that the Licensor would have "assigns." Section 12's terms demonstrate that Section 2.1's exclusivity covenant does not prohibit the sale of the Licensor's patent (or of the Licensor itself) to Walmart or anyone else. The specific assignment provisions of Section 12 control over the general exclusivity covenant in Section 2.1, and Section 12.2 cannot be read out of the contract. *Thompson Street*, 340 A.3d at 1166–67; Dkt. 319 at 6. Tellingly, Walmart's reply never mentions Section 12, and its assertion that an assignment "would

[redacted]

be void under the plain language of the agreement," Dkt. 321 at 4, quotes no such language because none exists. The only voiding language applies to the Licensee.

Walmart's fallback, that the Patent Owners agreed to "give up or surrender" the right to assign without transferring it to anyone, Dkt. 321 at 4-5, identifies no provision effecting that surrender. It also confirms that Walmart does not dispute that RavenWhite Licensing received no right to assign. That cannot be squared with Walmart's premise that the Patent Owners are "nominal" owners who "transferred away all substantial rights." Dkt. 321 at 4 (quoting *ALM*, 176 F.4th at 1333). A licensee without the power to transfer title does not hold all substantial rights. *See* Dkt. 196; Dkt. 229. Thus *Azure*, which *ALM* cited as an example of an owner that had transferred all of them, has no application here.

**No dispositions adversely affecting Patent Owners' rights.** Walmart's veto argument also relies on selective quotation of the Agreements. It quotes Section 3.1's "sole discretion" language but omits the words that follow: "subject to the remainder of this Section 3." Similarly, it quotes the Section 3.3 language "without the consent of Licensor" divorced from the broad restriction that follows: "provided Licensor's rights are not adversely affected." Dkt. 321 at 1, 5; Ex. A; Ex. 1. Both phrases have effect: RavenWhite may resolve a Proceeding unilaterally when the Licensor's rights are not adversely affected, and may not when they are adversely affected. Walmart labels this limit on RavenWhite Licensing's authority to settle or otherwise dispose of a Proceeding a "mere addition" yet never says what it means.

Nor are "Licensor's rights" an empty set. They include title and reversion (§§ 1.7, 2.1, 7.1(c)); [redacted] Net Licensing Revenues, expressly including "any sums received in respect of infringement" (§§ 1.6, 4.1.1); a royalty that "shall not terminate" if a patent is "held invalid or unenforceable" (§ 4.1.2); and indemnity in any Proceeding (§ 3.3). A disposition stipulating to invalidity, entering a consent judgment of non-infringement, or granting a royalty-free sublicense

[redacted]

would adversely affect those rights, and Section 3.3 withholds RavenWhite Licensing's authority to enter into it without consent. Plaintiffs offered examples of this kind in the opposition, Dkt. 319 at 6-7, but Walmart focuses only on the "undervalues" example with a straw man about a "minimum value" that Plaintiffs never argued. This is the "pairing" *ALM* requires: the patent owner's royalty interest coupled with "other provisions that involve the ability to exclude others," such that the licensee cannot act "free of [this] royalty interest." *ALM*, 176 F.4th at 1334. And Section 13.2's injunctive-relief clause supplies "a mechanism to enforce that interest." *Id*.

**Rule 19(b).** Walmart's response to Rule 19(b) does not address the four-factor analysis. *See* Dkt. 321 at 5; Dkt. 319 at 8-9. The reply first restates that RavenWhite Licensing holds all substantial rights—a position that is undercut by, among other reasons, the fact that RavenWhite Licensing cannot assign the patents. Then, the reply assumes, incorrectly, that unenforceability is a standing defect instead of a merits defense. *See* Dkt. 319 at 9 (citing *Lone Star*, 925 F.3d at 1235). And in any event, the Asserted Patents are not unenforceable. Dkt. 196; Dkt. 229. Setting aside its unenforceability theory, Walmart itself maintains that RavenWhite Licensing may proceed with this case. Dkt. 321 at 5. So the only question the motion presents on standing is whether the Patent Owners remain as co-plaintiffs, and if the Court concludes they lack standing, the case can still proceed without them under Rule 19(b).

* * *

In sum, the Court should deny the Motion because (i) the Agreements leave title and the power to transfer it with the Patent Owners and bar any disposition that adversely affects their rights, which is an exclusionary right under *ALM*; (ii) *Azure* is not controlling and is distinguishable on exactly those facts; and (iii) monetary harm independently results in standing. And even if the Court were to conclude that the Patent Owners lack standing, the proper course under Rule 19(b) is to proceed without them, not to grant summary judgment.

[redacted]

Dated: October 7, 2026

Respectfully submitted,

*Robert F. Kramer*
Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
Robert C. Mattson (Admitted E.D. Texas)
rmattson@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475
Facsimile: (212) 730-8885

Zachariah A. Higgins (*pro hac vice*)
zhiggins@kramerllp.com
Jeremiah A. Armstrong (*pro hac vice*)
jarmstrong@kramerllp.com
Ryan Dooley (*pro hac vice*)
rdooley@kramerllp.com
Robert Xie (*pro hac vice*)
rxie@kramerllp.com
Rachel C. Chan (*pro hac vice*)
rchan@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (212) 812-8937

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (212) 363-1492

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiffs*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 7, 2026 and any confidential versions are being served by electronic mail.

*Robert F. Kramer*
Robert F. Kramer

[redacted]

[redacted]