# Exhibit C

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PIRANHA MEDIA DISTRIBUTION LLC,**
*Plaintiff-Appellant*

**v.**

**HULU, LLC,**
*Defendant-Appellee*

---

2025-1038

---

Appeal from the United States District Court for the Central District of California in No. 2:24-cv-00498-JLS-KS, Judge Josephine L. Staton.

---

Decided: October 14, 2026

---

CHARLES E. FOWLER, JR., McKool Smith, P.C., Austin, TX, argued for plaintiff-appellant. Also represented by ALAN WHITEHURST, Washington, DC; DAVID ALBERTI, HONG LIN, MICHELE R. WOODRUFF LYONS, Alberti Lim & Tonkovich LLP, Foster City, CA; NICOLE E. GLAUSER, Kramer LLP, Austin, TX; ZACHARIAH HIGGINS, Redwood City, CA; ROBERT KRAMER, New York, NY.

HARPER BATTS, Sheppard Mullin Richter & Hampton LLP, Menlo Park, CA, argued for defendant-appellee. Also

represented by JEFFREY LIANG, CHRISTOPHER SCOTT PONDER; LAI LAM YIP, San Francisco, CA.

---

Before TARANTO, HUGHES, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Piranha Media Distribution LLC ("Piranha") sued Hulu, LLC ("Hulu") for infringement of patent claims relating to the integration of advertisements in digital media. The United States District Court for the Central District of California granted Hulu's motion to dismiss, concluding that the asserted patents do not claim patent-eligible subject matter under 35 U.S.C. § 101. *Piranha Media Distrib., LLC v. Hulu, LLC*, 748 F. Supp. 3d 928, 938–39 (C.D. Cal. 2024) ("*Decision*"). We *affirm*.

## I. BACKGROUND

In January 2024, Piranha asserted U.S. Patent Nos. 10,986,403 (the "'403 patent") and 11,463,768 (the "'768 patent") (collectively, the "Asserted Patents") against Hulu. *Decision* at 930. The '768 patent is a continuation of the '403 patent. '768 patent, at [63]. The '768 patent claims "[a] digital media system," a "method . . . in form of executable instructions," and a "computer program product," all of which relate to "insertion point[s]" for "digital advertising content." '768 patent col. 44 ll. 17–39, col. 45 ll. 17–35, col. 46 ll. 8–24, col. 46 l. 57 to col. 47 l. 7. The '403 patent claims a device, a system, and a method "for controlling digital media presentations" in relation to "digital media content" and "digital advertising content." '403 patent col. 44 l. 2 to col. 45 l. 2, col. 46 l. 26 to col 47 l. 21, col. 47 l. 28 to col. 48 l. 32, col. 48 l. 33 to col. 50 l. 15. The parties agree that claim 1 of the '403 patent is representative of the claims of both patents for the purpose of resolving patent eligibility. Appellant's Br. 17; Appellee's Br. 3; *Decision* at 930; Oral Arg. 1:17–1:30, https://www.cafc.usco

urts.gov/oral-arguments/25-1038_05042026.mp3 (confirming claim 1 of the '403 patent is representative of all asserted claims of both patents).

Claim 1 of the '403 patent recites:

> 1. A digital media player device for controlling digital media presentations, the digital media player device comprising:
>
> > one or more processors for receiving data comprising digital media content and digital advertising content;
> >
> > a user interface input for allowing a user to control a course of presentation of the digital media content received;
> >
> > an intersplicer for controlling one or more insertion points of the digital advertising content into the digital media content thereby sequencing the digital media content and the digital advertising content,
> >
> > > the sequencing comprising ordering one or more data blocks of the digital media content and one or more data blocks of the digital advertising content into a content stream playable as audio or visual content perceivable by the user,
> > >
> > > the content stream comprising one or more initially sequenced insertion points at which the digital advertising content is scheduled to be presented relative to the digital media content during play;
> > >
> > > in response to user input updating a current play position in the content stream to a new play position

Case: 25-1088 Document: 46 Page: 4 Filed: 10/14/2025



in the content stream, the one or more processors using one or more adaptive preference rules to adaptively modify a presentation position of the digital advertising content from at least one of the one or more initially sequenced insertion points to one or more alternatively sequenced insertion points in the digital media content,

at least one of the one or more alternatively sequenced insertion points being different than the one or more initially sequenced insertion points relative to the digital media content within the content stream;

the one or more alternatively sequenced insertion points being adaptively selectable by the intersplicer according to selection criteria defined by the one or more adaptive preference rules taking into account the new play position and at least one of a length of time associated with playing the digital media content and a number of digital media data blocks of the digital media content to be played,

such that at least one of the alternatively sequenced insertion points is positioned at a play position in the digital media content that satisfies a condition selected from:

> > the play position being a predetermined length of time after the new play position,
> >
> > the play position being a predetermined number of digital media data blocks after the new play position; and
>
> a user interface output for causing presentation of the content stream during a play period associated with one or more states of play such that a part of the digital advertising content is adaptively played at the one or more alternatively sequenced insertion points, instead of at the one or more initially sequenced insertion points; and
>
> at least a first memory for storing a setting to indicate a first state of play, the setting including a first value to indicate presentation of a required part of the digital advertising content is in progress during presentation of the content stream such that responsive to detecting the first value in the first memory, the user interface input is disabled to prevent commands comprising at least one of a user volume control or a user navigation control from altering a course of presentation of the content stream while presentation of the required part of the digital advertising content is in progress.

’403 patent col. 44 l. 2 to col. 45 l. 2.

Hulu moved to dismiss Piranha’s complaint, arguing that the claims of the Asserted Patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101. *Decision* at 930. Hulu also argued that a 2020 decision of the

Patent Trial and Appeal Board ("Board") that rejected earlier claims submitted as part of the application that led to the '403 patent precluded Piranha from litigating the patent eligibility of the claims of the Asserted Patents in district court. *Id.* at 934; J.A. 203–08. The district court rejected Hulu's preclusion argument. *Decision* at 934. The district court granted Hulu's motion to dismiss, determining that claim 1 of the '403 patent was directed to the abstract idea of "displaying an advertisement in exchange for access to copyrighted material" and "the abstract idea of receiving, organizing, and displaying data." *Id.* at 936, 938. The district court concluded that the claim's recitation of "the intersplicer's ability to disable the user interface input and prevent the alteration of the course of presentation of the content stream" did not provide an inventive concept. *Id.* at 937–38. In sum, the district court determined that representative claim 1 did not contain an inventive concept. *Id.* at 936–38.

Piranha appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. Discussion

We apply the law of the regional circuit to review a district court's grant of a motion to dismiss. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). The Ninth Circuit reviews the grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual allegations in the complaint as true and construing the pleadings in the light most favorable to the nonmovant. *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

To determine whether a patent claim is directed to patent-ineligible subject matter under 35 U.S.C. § 101, we apply the two-step framework set forth by the Supreme Court in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012) and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). At step one, we determine whether the claims at issue are "directed to" a

Case: 25-1088 Document: 46 Page: 7 Filed: 10/14/2026



patent-ineligible concept. *Alice*, 573 U.S. at 217. At step two, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78–79). The Supreme Court has described the step two analysis "as a search for an 'inventive concept.'" *Id.* at 217 (quoting *Mayo*, 566 U.S. at 72).

Piranha makes two principal arguments on appeal: (1) the district court erred in determining that the asserted claims are directed to an abstract idea under *Alice*/*Mayo* step one, Appellant's Br. 23–45; and (2) the district court erred in holding that the asserted claims did not contain an inventive concept under *Alice*/*Mayo* step two, Appellant's Br. 46–54. Piranha's arguments regarding the asserted claims are focused on representative claim 1 of the '403 patent. Appellant's Br. 23. We address each argument in turn.

A.

Piranha first argues that the district court erred in concluding that representative claim 1 of the '403 patent is directed to an abstract idea at *Alice*/*Mayo* step one. Appellant's Br. 23–45. We disagree and conclude that claim 1 of the '403 patent is directed to the abstract idea of preventing skipping advertisements by receiving, organizing, displaying, and controlling access to data.

At *Alice*/*Mayo* step one, we "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea. *Alice*, 573 U.S. at 217. To determine whether a claim is "directed to" a patent-ineligible abstract idea, "we look to whether the claim[ ] 'focus[es] on a specific means or method that improves the relevant technology or [is] instead directed to a result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery.'" *CardioNet, LLC v. In-*

Case 2:24-cv-03688-JRC-DBP Document 45-3 Page: 8 Filed 10/14/2025 Page 9 of 16 PageID #: 11284 Case: 25-1088 Document: 46-1



*foBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (quoting *McRo, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). For software-based inventions, *Alice*/*Mayo* step one "often turns on whether the claim[ ] focus[es] on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (cleaned up).

The plain language of claim 1 of the '403 patent shows that the claims are directed to an abstract idea. "As we have by now frequently held, claims reciting generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1293 (Fed. Cir. 2024). Claim 1 recites "one or more processors for receiving data," here "digital media content and digital advertising content." '403 patent col. 44 ll. 5–6. Claim 1 provides that a piece of software called the "intersplicer" sequences the digital media content and digital advertising content into a "stream" and a "user interface output" causes presentation of the data to the user. *Id.* col. 44 ll. 10–18, 52–58. The claim also recites a memory for storing a setting, where if the setting "indicate[s] presentation of a required part of the digital advertising content," "at least one of a user volume control or a user navigation control" is disabled. *Id.* col. 44 ll. 59 to col. 45 l. 2. The claim achieves the goal of preventing skipping advertisements via steps that do nothing more than receive, organize, display, and control access to data, which places the claim squarely in line with those claims we have previously determined to be directed to computer-implemented abstract ideas. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62, 1365 (Fed. Cir. 2023) (concluding that claim was "directed to the abstract idea of matching based on questioning" when the recited steps performed

the actions of "collecting information, analyzing it, and displaying certain results"); *Miller Mendel, Inc. v. City of Anna*, 107 F.4th 1345, 1352 (Fed. Cir. 2024) (concluding that asserted claims are "directed to the abstract idea of performing a background check" where asserted claims recited steps of "receiving, storing, transmitting, determining, selecting, and generating information").

On appeal, Piranha argues that claim 1 of the '403 patent is not directed to an abstract idea because the claim provides a specific technological solution to the technological problem of "users' easily manipulating media to avoid ads." Appellant's Br. 24, 23–45. The '403 patent and Piranha's own statements to the district court belie Piranha's framing of claim 1. The '403 patent recognizes that "tape recorders, video cassette recorders, compact disk burners, digital video disk burners, and computer systems" all allow users to "manipulat[e]" media to bypass media owners' monetization strategies. '403 patent col. 3 ll. 17–19, col. 2 l. 62 to col. 3 l. 6. Consumers have used analog technology to skip advertisements in media for decades. Piranha's own filings at the district court confirm that "copyright holders . . . giving away their content for free . . . was a problem associated with many, if not all, forms of pre-existing media distribution. For example, *broadcast, cable, internet, and satellite broadcasts could be recorded and during playback, ads could be fast forwarded*." J.A. 552 (emphasis added). We conclude that claim 1 does not solve a technological problem.

The Asserted Patents' shared specification confirms that claim 1 is directed to an abstract idea. The specification describes the "object of the . . . invention" as "provid[ing] a revenue generating market for the free consumer redistribution of media content, sponsored through paid advertising that a consumer may be required to experience during the course of media playback." '403 patent col. 6 ll. 26–30. The invention is accomplished by a system

"that offers the benefits of content restriction and controlled playback." *Id.* col. 6 ll. 30–32. "Various embodiments of the invention facilitate the wide distribution of media content in a way that allows the free use of media properties, on demand . . . while at the same time enabling compensation to copyright holders." *Id.* Abstract. These parts of the specification support that the district court correctly determined that claim 1 is not directed to solving a technological problem. *Decision* at 934–36. The specification confirms that claim 1 is directed to an abstract idea at step one.

Piranha's cited cases are readily distinguishable. Regardless of the ease with which users can skip advertisements, their ability to do so is unlike the problems we found to be technological in any of the cases Piranha cites. *See* Appellant's Br. 32–35. For example, in *Data Engine Technologies LLC v. Google LLC*, the claims addressed the problem that "[u]sers were required to master complex commands" to navigate "three-dimensional or multipage electronic spreadsheets." 906 F.3d 999, 1002 (Fed. Cir. 2018). The operation of "computers and prior art electronic spreadsheets" created the specific "technological" problem. *Id.* at 1008. Other cases Piranha cites involve claims that "purport[ ] to meet a challenge unique to computer networks." *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020)*; see also SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019) (identifying "a technological problem arising in computer networks: identifying hackers or potential intruders into the network"); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1305, 1307–08 (Fed. Cir. 2020) (holding the "claims at issue are directed to a patent-eligible improvement to computer functionality" where they "overcome a problem," latency, "specifically arising in the realm of computer networks"). Piranha also cites *Finjan v. Blue Coat Systems* and *Ancora Technologies v. HTC*, both of which involved claims related to the security of computer files. Appellant's

Case: 25-1088 Document: 48 Page: 11 Filed: 10/14/2025



Br. 33–34; *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1344, 1348–49 (Fed. Cir. 2018) (discussing claim addressing a technological problem of "vulnerability of license-authorization software to hacking"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304–05 (Fed. Cir. 2018) (discussing claim addressing problem of scanning for malicious computer viruses). Advertisement skipping with relative ease is not a problem uniquely related to the operation of computer or network technology.

Claim 1 is also not directed to a "specific asserted improvement in computer capabilities." *Trinity Info Media*, 72 F.4th at 1363–64. Piranha argues that the district court erroneously concluded that claim 1 is not directed to a specific improvement in computer capabilities because the district court overgeneralized the actions of the claimed intersplicer. Appellant's Br. 36, 35–42. We disagree. Piranha's own description of the intersplicer's purportedly patent-eligible activity is nothing more than the organization of data. *See* Appellant's Br. 36 ("adaptively select, sequence, and resequence ads that are shown on the basis of user navigation"); *id.* at 37 ("step-by-step instructions for sequencing and adaptively resequencing media and ad content in response to user inputs"); *id.* at 39 ("applies rules meeting criteria specified in the claims to sequence and adaptively resequence data blocks of media content and ad content *on the fly* depending how a user manipulates the playback position"). To the extent Piranha argues that claim 1 is distinguishable from other claims because the human mind cannot perform the steps taken by the intersplicer, Appellant's Br. 39, we have specifically held that "the inability for the human mind to perform each claim step does not alone confer patentability." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016). Accordingly, we disagree with Piranha that the district court overgeneralized the steps of claim 1 and conclude that claim 1 does not provide a technological solution to a technological problem.

Case 2:24-cv-00688-JRG-RSP Document 428-1 Filed 10/16/26 Page 13 of 16 PageID #: 11288
Case: 25-1038 Document: 46 Page: 12 Filed: 10/14/2026



Finally, Piranha argues that we should conclude that claim 1 is patent eligible at step one because it purportedly does not claim solely the result of preventing users from skipping advertisements or broadly preempt the field of preventing users from skipping advertisements. Appellant's Br. 40–45. But "the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) ("[T]hat the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract."). In sum, at *Alice*/*Mayo* step one, claim 1 is directed to an abstract idea.

B.

We next turn to *Alice*/*Mayo* step two, in which we "consider the elements of [the] claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79, 78). Here, the limitations of claim 1, individually or as an ordered combination, recite "'well-understood, routine conventional activit[ies],' either by requiring conventional computer activities or routine data-gathering steps." *OIP Techs.*, 788 F.3d at 1363 (quoting *Alice*, 573 U.S. at 225).

The language of claim 1 and the specification confirm that the invention uses only generic, conventional computer components "operating according to their ordinary functions." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). Claim 1 recites "[a] digital media player device" that comprises "one or more processors," a "user interface input," a "user interface output," and at least one memory. '403 patent col. 44 ll. 2, 5–9, 52, 59. The specification confirms that "the invention applies to . . . hardware components

that may be employed in a consumer-grade computer system or other digital device to carry out the ends of the media player/viewer software." *Id.* col. 13 ll. 8–13. The claim's use of conventional computing components used in an expected manner do not provide an inventive concept.

We are not persuaded by Piranha's argument that claim 1 includes an inventive concept because the claimed intersplicer "offer[s] a specific improvement over the prior art." Appellant's Br. 46, 46–52. The intersplicer performs only insignificant data gathering steps. *See, e.g.,* '403 patent col. 44 ll. 10–51. The intersplicer "sequenc[es]" digital media and digital advertising content, *id.* col. 44 ll. 14–18, and "adaptively modif[ies]" the position of the digital advertising content to a new position when a user updates the play position in the content sequence, *id.* col. 44 ll. 23–34, based on "adaptive preference rules," *id.* col. 44 ll. 35–42. The content of these "adaptive preference rules" is that the new advertising position be "a predetermined length of time" or "predetermined number of digital media blocks" after the user's new play position. *Id.* col. 44 ll. 43–51. These steps are like "an unspecified set of rules for displaying and organizing [data] . . . we have elsewhere explained impart no inventive concept." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). The intersplicer's insignificant data gathering steps are insufficient to confer patent eligibility at *Alice*/*Mayo* step two.

Piranha also essentially repeats its *Alice*/*Mayo* step one argument that the intersplicer provides a technological solution to a technological problem in an attempt to analogize claim 1 to other claims Piranha contends we have found to cover "an unconventional technological solution . . . to a technological problem." Appellant's Br. 47, 46–48 (citing *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016)). But as described above, claim 1 (including the steps taken by the intersplicer) neither addresses a technological problem nor a

specific improvement in computer capabilities. For this reason, Piranha's cited cases are distinguishable. *See Amdocs,* 841 F.3d at 1300 ("[T]his claim entails an unconventional technological solution (enhancing data in a distributed fashion . . . .) to a technological problem (massive record flows which previously required massive databases)"); *Weisner v. Google LLC*, 51 F.4th 1073, 1085 (Fed. Cir. 2022) (holding claims directed to patent-eligible subject matter at step two where the claims "recite[d] a specific implementation of the abstract idea that purport[ed] to solve a problem unique to the Internet"); *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021) (describing the patent-at-issue as covering "a technical solution to a security problem in networks and computers"); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (concluding claim was directed to internet specific problem that "improve[d] the performance of the computer system itself"). Accordingly, we are not persuaded that claim 1 contains an inventive concept by virtue of the activity of the claimed intersplicer.

Contrary to Piranha's arguments, Appellant's Br. 47–50, the Asserted Patents' specification and Piranha's complaint do not identify an inventive concept in claim 1. Piranha's citations to the specification amount to little more than the insertion of the word "novel" or "novelty" before one or more of the intersplicer's generic functions. *See, e.g.*, '403 patent col. 7 ll. 37–42 ("The novel 'intersplicer' module . . . enforces the conveyance of required ads in their entirety at least once[.]"); *id.* col. 14 ll. 29–33 ("Novelty arises in the player/viewer software's particular ability to control use of media content while providing the means for unlimited free viewing of requested media, through a general licensing process that is transparent to the user."); *id.* col. 35 ll. 38–42 ("The ability of the player/viewer software to adaptively select, sequence, and re-sequence ads that are shown on the basis of

user navigation through a self-selected series of media content is a novel feature for media players, and it is also novel in the field of media distribution."). Similarly, Piranha's complaint offers nothing more than a conclusory rephrasing of Piranha's legal argument regarding alleged technological problems and technological solutions. J.A. 122–23. "[C]onclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept." *Trinity Info Media*, 72 F.4th at 1366. And when resolving a motion to dismiss, "we need not credit conclusory assertions or unsupported inferences." *Seagraves v. Wash. State Dep't of Child. Youth & Fams.*, 182 F.4th 1083, 1088 (9th Cir. 2026). The specification and complaint do not change our conclusion that claim 1 does not contain an inventive concept.

In sum, claim 1 does not contain an inventive concept under *Mayo*/*Alice* step two.

C.

We do not reach whether the Board decision has any preclusive effect. The district court explicitly did not rely on preclusion and instead considered the Board decision only "to the extent that the [c]ourt [found] the reasoning persuasive and relevant to the analysis of the '403 patent." *Decision* at 934. Appellate courts generally do not reach alternative arguments "that were not the basis for the decision below." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 n.5 (1996). Accordingly, we do not reach this issue.

## III. Conclusion

We have considered Piranha's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

**AFFIRMED**